# Exhibit 1

**LEVY KONIGSBERG LLP**
ATTORNEYS AT LAW
605 THIRD AVENUE, 33RD FLOOR
NEW YORK, NY 10158

NEW JERSEY OFFICE
QUAKERBRIDGE EXECUTIVE OFFICE
101 GROVERS MILL ROAD
LAWRENCEVILLE, NJ 08648
TELEPHONE: (609) 720-0400
FAX: (609) 720-0457

(212) 605-6200
FAX: (212) 605-6290
WWW.LEVYLAW.COM

ALBANY OFFICE
90 STATE STREET
ALBANY, NY 12207
TELEPHONE: (518) 286-5068

September 22, 2021

<u>Via Certified Mail, Return Receipt Requested to</u>:

Mississippi Department of Health and Director Jim Craig
C/O Thomas E. Dobbs III, MD, MPH
State Health Officer
570 East Woodrow Wilson Drive
Jackson, MS 39216

Re:   Notice of claim pursuant to Miss. Code Ann. § 11-46-11

Dear Mr. Dobbs:

Please be advised that we have been retained to represent ▉▉▉▉▉▉▉▉ a minor asserting a claim for damages against the City of Jackson, the State of Mississippi, the Mississippi State Department of Health, Mayor Chokwe A. Lumumba Jr., Tony Yarber, Kishia Powell, Robert Miller, Jarriot Smash, Jim Craig, Trilogy Engineering Services LLC, and John Does 1-40 (collectively referred to as "Defendants") and Defendants' employees/agents, arising from their negligence and conscience-shocking decisions from the summer of 2014 through the present.[1] Consistent with and pursuant to Mississippi Code Annotated § 11-46-11, this letter serves as Plaintiff's notice of intent to initiate an action against Defendants.

**The circumstances which brought about the injury:**

Plaintiff's injuries arose when Plaintiff became lead poisoned as result of consuming drinking water contaminated with toxic lead. The City of Jackson's actions and omissions caused lead from the City's aging pipes to leach into the drinking water, poisoning its residents and water users, including Plaintiff. As described below, the City of Jackson's conduct (and subsequent cover-up) created a public health crisis, which has had a devastating impact on the

---

[1] In addition to Plaintiff's negligence claims, Plaintiff will bring claims pursuant to 42 U.S.C. § 1983 in connection with the events described herein. These claims are not subject to the notice of claim requirement in § 11-46-11. *See McGehee v. DePoyster*, 708 So. 2d 77, 81 (Miss. 1998). Notwithstanding the lack of notice requirement for that claim, notice is hereby provided.

health of the City's residents. Indeed, the tragic effects of this crisis will continue to be felt for decades.

In August 2014, the City of Jackson changed water sources, causing a catastrophic spike in lead levels in the City's drinking water. The City should have known better: Lead levels had been slowly rising over the previous monitoring period under the Safe Drinking Water Act ("SDWA"); the well water source the City had been using until August 2014 had a high (and thus safe) pH, while the newer surface water source it switched to had a low (and thus dangerously corrosive) pH; and it is well known that corrosive, low-pH water causes lead to leach out of pipes and into drinking water.

In fact, the City of Jackson was warned about these hazards in the spring of 2014 before the switch, but it did not heed the warnings and switched water sources anyway. After the switch and the discovery of elevated lead levels in Jackson's water, officials with the City and the Mississippi Department of Health ("MSDH") failed to take appropriate and expedient corrective action, displaying a callous disregard for the health and safety of Jackson's water users and a deliberate indifference to their clearly established right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

As early as 2013, the City of Jackson learned that testing required by the SDWA had shown increasing levels of lead in the City's drinking water. In the spring of 2014, then-Interim Director of Public Works, Willie Bell, warned city officials, including then-Mayor Chokwe Lumumba Sr. of the likely cause of lead in the water: the water pH was dangerously acidic. It is well known that low pH (acidic) water can cause the leaching of toxic lead from aging lead pipes (like those in Jackson) directly into the drinking water. Despite Mr. Bell's urgent warnings, then-Mayor of Jackson Tony Yarber ordered the switch of Jackson's drinking water source from high pH well water to the dangerously low pH surface water from the Pearl River and Ross Barnett Reservoir. The result was a catastrophic shock to Jackson's drinking water system, that caused lead to leach from Jackson's pipes and lead levels in Jackson's drinking water to spike.

Officials from the MSDH discovered the dangerously elevated lead levels in June 2015 and confirmed them in July 2015. The MSDH officials didn't warn Jackson's citizens until January 2016. Oddly, despite the MSDH's failure to warn Jackson's citizens and water users until January 2016, the City of Jackson switched water sources back to well water in August 2015. Worse still, when the elevated lead levels were presented to Jackson, Jackson did not take any steps to ameliorate the hazard. On the contrary, the Jackson City Council took a series of actions that exacerbated the problem.

Then-Public Works Director Kishia Powell repeatedly told the media and the public that the water was safe to drink. The crisis worsened as the City had repeatedly refused to take basic actions to ensure its citizens and water users had access to safe, clean drinking water. Jackson remained out of compliance with the Safe Drinking Water Act and the U.S. Environmental Protection Agency's Lead and Copper Rule until at least 2017.

Individually and in combination, these conscience-shocking acts of deliberate indifference have caused Jackson's citizens and water users to struggle to find clean water in one of the nation's worst public water systems for years and have caused thousands of Jackson's

children to be tragically poisoned by lead and multiple strains of dangerous bacteria. Plaintiff's injuries are a direct and proximate result of Defendants' conduct. The effects of lead poisoning are well understood and heartbreakingly permanent. Plaintiff will suffer injuries including decreased cognitive capacity; Plaintiff will have a reduced earning capacity; Plaintiff will feel shame and will have a diminished sense of self-worth.

Defendants violated their legal duties owed to Plaintiff and caused Jackson's public health crisis to occur, continue, worsen, and persist for a longer period. Defendants also exacerbated the crisis by concealing and misrepresenting its scope, by failing to take effective remedial action to eliminate it, and then by lying about it to cover up their tortious conduct. These actions have violated Plaintiff's public rights. Plaintiff has sustained violations of substantive due process rights, including the fundamental right to bodily integrity, as well as the right to not have the state create, inflict and/or exacerbate dangers through the culpable actions of public officials.

**The extent of the injury:**

Upon information and belief, Plaintiff has suffered injuries, including but not limited to: cognitive deficits, behavioral changes, memory and attention deficits, learning impairments, impaired emotional functioning, and visual-perceptional deficits. The full and precise extent of Plaintiff's injuries and future harm is currently unknown.

**The time and place the injury occurred:**

▇▇▇▇▇▇▇▇▇▇▇▇▇▇ injury occurred from August 2014 to the present in Jackson, Mississippi.

**The names of all persons known to be involved:**

Persons known to be involved include but are not limited to: Mayor of Jackson, Chokwe Lumumba Jr., former Mayor of Jackson, Chokwe Lumumba Sr., former Mayor of Jackson, Tony Yarber, Former Interim Director of Public Works, Willie Bell, former Director of Public Works, Kishia Powell, former Interim Director of Public Works, Jarriot Smash, former Director of Public Works, Robert Miller, and Director of Health Protection, Jim Craig. Additionally, there are other persons who may be involved whose identity is currently unknown to Plaintiff.

**The amount of damages sought:**

Plaintiff seeks the maximum allowed by Mississippi law in the amount of $500,000.00 or the limits of any applicable insurance, whichever is greater. This amount represents just compensation for Plaintiff's personal injuries, including compensation for Plaintiff's pain and suffering, as well as economic loss resulting from Plaintiff's reduced earning capacity. The full and precise amount of damages is currently unknown. Plaintiff will seek additional monetary relief as provided by Federal law.

**The residence(s) of Plaintiff at the time of the injury:**

    Plaintiff was injured while living in the city of Jackson from 2014 through the present. Plaintiff has had the following addresses that would be considered to be "at the time of the injury" from 2014 until the present:



**The residence of Plaintiff at the time of filing of this notice:**



    I look forward to hearing from you regarding this matter and will provide the parties involved with whatever additional information I can to assist in evaluating this claim.

    Sincerely,
LEVY KONIGSBERG LLP

/s/ Corey M. Stern
Corey M. Stern, Esq.
*Attorneys for Plaintiff*
605 Third Avenue, 33rd Floor
New York, New York 10158