UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.W., a minor, by and through Amanda Williams,
Guardian and Next Friend, et al.

        Plaintiffs,                             Civil Action No.: 3:21-cv-663-CWR-LGI

v.

The City of Jackson, Mississippi; Chokwe A.
Lumumba Jr.; Tony Yarber; Kishia Powell;
Robert Miller; Jarriot Smash; the Mississippi
State Department of Health; Jim Craig; Trilogy
Engineering Services LLC; and John Does 1-40,

        Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS MISSISSIPPI DEPARTMENT OF HEALTH AND JIM CRAIG**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Mississippi State Department of Health ("MSDH") and Jim Craig ("Craig") submit this Memorandum of Law in Support of their Motion to Dismiss all claims asserted against them in Plaintiff's Amended Complaint (Doc. No. 51, "Compl.") (hereinafter "the Complaint").

## <u>WHY THIS MOTION SHOULD BE GRANTED</u>

This lawsuit is about alleged lead contamination in drinking water provided by the City of Jackson ("City") to its residents, including Plaintiff. *See generally* Compl. Generally, the Complaint argues that the named Defendants – including the City, MSDH, Craig (Senior Deputy Director and Director of Health Protection at MSDH), related government employees, and a third-party contractor – made decisions that "led to Plaintiff's exposure to toxic lead in Jackson's drinking water." *Id.* at ¶¶ 2, 70, 71. Plaintiff asserts two counts against Craig only: <u>Count I</u> - a

Section 1983 substantive due process claim of a violation of Plaintiff's right to bodily integrity; and Count II - a Section 1983 substantive due process claim of a violation of Plaintiff's right to be protected from state-created danger. Plaintiff also alleges one count against both MSDH and Craig: Count III - a state law negligence claim. *See id.* at ¶¶ 375-412. These claims are legally insufficient on multiple grounds.

A single issue precludes Plaintiff's Section 1983 claims: they fail to establish a Constitutional right that clearly existed at the time of Craig's alleged conduct. This question of law is the cornerstone of any Constitutional claim against a state actor; it is required to defeat Craig's qualified immunity defense *and* it is required to state an actionable Section 1983 claim. Without a well-established Constitutional right, Plaintiff's Section 1983 claims fail.  Even if the Court finds Plaintiff asserts such a right, Craig is still entitled to dismissal because his conduct was neither objectively unreasonable nor deliberately indifferent.

Further, Plaintiff's state law negligence claim is barred by the Mississippi Tort Claims Act's ("MTCA") discretionary function exemption, and because Plaintiff failed to comply with the MTCA's pre-suit notice of claim requirements.

### **PLAINTIFF'S FACTUAL ALLEGATIONS AGAINST MSDH AND CRAIG**

Plaintiff's Complaint is lengthy but its specific factual allegations against MSDH and Craig are scarce. Two paragraphs of the Complaint state the grounds against MSDH and Craig:

> [MSDH] is a Department of the State of Mississippi responsible for the health of Mississippi citizens, including each Plaintiff, in particular being responsible for Mississippians' health during environmental disasters and crises.  Additionally, the MSDH is the State Department that has been delegated responsibility and primacy for protection of Mississippi's drinking water under the Safe Drinking Water Act ("SDWA").

> [Craig] is sued in his individual capacity for his decision not to inform Jackson's citizens and water users until late January 2016 of the seriously elevated levels MSDH officials detected in June 2015, and also for his decision to direct lower

level MSDH employees to conduct pre-stagnation flushing during testing for lead
levels in Jackson residences.

Compl. at ¶¶ 70, 71. Plaintiff alleges only *two acts* by these Defendants gave rise to her claims:
*first*, in 2015, Craig directed MSDH staff to collect water for lead testing using a method that
differed from 2008 EPA "guidance" on the appropriate water flow rate during collection, (*Id.* at
¶¶ 199-220); and *second*, after MSDH found elevated lead levels in Jackson water in June 2015,
Craig mistakenly interpreted EPA guidelines to require a six-month monitoring period before
informing the City of the results in January 2016 (*Id.* at ¶¶ 221-243). Plaintiff's allegations
against MSDH and Craig all relate to these two acts.

First, Plaintiff's claim that Craig knew or should have known of "EPA *guidance*" from
seven years prior about the suggested rate of water flow to collect samples for lead testing but
directed MSDH staff to collect samples using a different method that yielded lower lead results
to ensure broader compliance with the EPA's Lead and Copper Rule ("LCR"). *Id.* at ¶¶ 204-207
(emphasis added).

Next, Plaintiff faults Craig's interpretation of EPA guidelines concerning the reporting of
water testing results. Specifically. Plaintiff claims Craig "did not rely upon any reasoned analysis
of the LCR or the EPA's guidelines" and that his reading of the EPA guidelines "was either
unacceptably ignorant or knowingly false." *Id.* at ¶ 231. Plaintiff further alleges that Craig
"deci[ded] to *intentionally* withhold" the information from the City and its citizens. *Id.* at ¶ 232
(emphasis added). Plaintiff also criticizes Craig for his failure to issue a separate and specific
warning for children and pregnant women until February 2016, when Craig warned this
population to boil tap water before consuming it. *Id.* at ¶¶ 236, 289-291. Plaintiff claims this
advice was delayed and "dangerously ignorant" because, according to Plaintiff, "[b]oiling water
exacerbates lead toxicity." *Id*.

3

<u>**OVERVIEW OF GROUNDS FOR DISMISSAL**</u>

MSDH and Craig are entitled to dismissal as a matter of law on all claims.

**I.    SECTION 1983 CLAIMS AGAINST CRAIG (COUNTS I-II)**

      **a.    Craig is entitled to qualified immunity on both Section 1983 claims.**
         1.    Craig's alleged acts are discretionary functions entitled to qualified immunity.
         2.    Plaintiff cannot negate Craig's qualified immunity defense.
            A.    There is no *Constitutional* right to contaminant-free water.
            B.    Even if there is a Constitutional right to contaminant-free water *today*, it was *not* clearly established at the time of Craig's conduct.
            C.    Craig's conduct was not objectively unreasonable.

      **b.    Even if Craig is not entitled to qualified immunity, the Section 1983 claims still fail on the merits.**
         1.    Plaintiff fails to state an actionable **bodily integrity** claim (Count I) because she fails to assert a clearly-established *Constitutional* right and she fails to demonstrate Craig acted with deliberate indifference.
         2.    Plaintiff fails to state a **state-created danger** claim (Count II). Such a claim is not an actionable theory of recovery in the Fifth Circuit and, even if it was, Plaintiff fails to meet the elements.

**II.    STATE LAW NEGLIGENCE AGAINST MSDH AND CRAIG (COUNT III)**

      **a.    The negligence claim against MSDH and Craig is barred by the MTCA's discretionary function immunity exemption.**
         1.    The activities at issue involved an element of choice and judgment.
         2.    The discretionary actions of MSDH and Craig are susceptible to a policy analysis.

      **b.    The negligence claim must be dismissed for failure to comply with the MTCA's notice-of-claim requirements.**

<u>**RULE 12(B)(6) STANDARD**</u>

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).

These standards are the same regarding Craig's claim to qualified immunity. *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (citing *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020)). "The crucial question is 'whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under Section 1983 [] and would overcome their qualified immunity defense." *Id.* (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015). Significantly, it "is *the plaintiff's burden to demonstrate* that qualified immunity is inappropriate." *Id.* (emphasis added).

## PLAINTIFF'S CLAIMS AGAINST CRAIG AND MSDH MUST BE DISMISSED UNDER BINDING PRECEDENT

### I.    SECTION 1983 CLAIMS AGAINST CRAIG (COUNTS I-II)

#### a.  Craig is entitled to qualified immunity on both Section 1983 claims.

A government defendant's entitlement to qualified immunity is a question of law that should be decided at the earliest possible opportunity, as it is not merely an affirmative defense but an entitlement not to face the burdens of litigation. *See Ashcroft*, 556 U.S. at 672; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Qualified immunity has two elements: "(1) whether the plaintiff alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Holloway by and through Holloway v. Marion Cty., Miss.*, 2020 WL 1469474, at *4 (S.D. Miss. March 26, 2020) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998)). Therefore, "under this test, even an official who acted unconstitutionally, but did not violate clearly established federal law[,] will be found to have acted in an objectively reasonable manner and will be protected from personal liability by qualified immunity." *Ellis v. Miss. Dep't of Health*, No: 4:07CV81, 2008 WL 2007153, at *6 (N.D. Miss. May 8, 2008). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (internal quotations and citations omitted).  Once the qualified immunity defense is raised, the burden shifts to the plaintiff to negate it.  *Jackson v. Jackson Cty., Miss.*, 956 F. Supp. 1294, 1301 (S.D. Miss. 1995).

### 1. Craig's alleged acts are discretionary functions entitled to qualified immunity.

To assert qualified immunity under Section 1983, Craig must demonstrate he is a government official whose position and conduct involve the exercise of discretion. *See Ellis*, 2008 WL 2007153, at *6. Discretionary functions are "duties positively imposed by law but which are dependent upon a [government employee's] judgment or discretion." *Id.* at *7 (quotations omitted).  Plaintiff concedes Craig was acting within the course and scope of his employment (Compl. ¶ 410) and does not allege any facts establishing that any of Craig's actions were "so far removed from the ordinary course of [his] duties … that [he could not] establish

[his] entitlement to claim immunity in the first instance." *Saldana v. Garza*, 684 F.2d 1159, 1164, n.17 (5th Cir. 1982).

Plaintiff's allegations against Craig focus on MSDH's method for collecting water samples and Craig's timing in reporting the test results to the City. These activities were in furtherance of Craig's discretionary duties under the federal and state SDWAs.[1] With respect to sampling methods, Plaintiff does not cite any statute or regulation that required Craig to implement a specific collection method during the time in question; she merely allege that MSDH's testing methods were "inconsistent" with prior "EPA guidance." *Id.* ¶ at 218.[2] Non-binding guidance cannot give rise to ministerial duties that would abrogate qualified immunity.[3]

Likewise, the federal and state SDWAs' public notice requirements are directed at public water systems, such as the City, not state regulators.[4] While Craig "*may* take any actions deemed necessary to protect public health" upon being notified that a contaminant is or may be present in a public water system, Miss. Code Ann. § 41-26-9 (emphasis added), Plaintiff does not cite any law that would have *required* Craig to report test results to water systems or the public at a specific time or in a specific manner.

---

[1] While the MSDH is charged with oversight of the State's public water supplies to ensure regulatory compliance, *see* Miss. Code Ann. § 41-26-8(1), the operational tasks alleged in the Complaint have been delegated to each public water supplier, such as the City. *See* 15 Miss. Admin. Code Pt. 20, R. 1.3.1, 1.3.2, 1.3.3 (establishing supplier's responsibility to conduct chemical sampling and analysis); R. 1.5.1, 1.5.2 (same with respect to reporting and notice requirements).

[2] Plaintiff mischaracterizes this "guidance." *See* further discussion in Section I(a)(2)(C)(ii), *infra*.

[3] *See Kirkland Masonry Co. v. C.I.R.*, 614 F.3d 532, 534 (5th Cir. 1980) ("[A] simple administrative directive to agency employees does not suffice to create a duty to the public."). *Chisolm v. Miss. Dep't of Transp.*, 942 So.2d 136, 143 (Miss. 2006) (advisory guidelines in traffic control manual did not create ministerial duties). "If a statute, regulation, or policy leaves it to a [government] agency or employee to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 449 (5th Cir. 2012).

[4] *See* 40 C.F.R. § 141.85(d)(1)-(2) (providing that public water systems must provide public notice of the results of water tests when they receive notice of the results); Miss. Code Ann. § 41-26-13(1), (2) (providing that a "public water system" shall give notice to MSDH and the public if "the system is not in compliance with the Mississippi Primary Drinking Water Regulations").

The U.S. Supreme Court has afforded "special attention" to ensure broad availability of the qualified immunity defense. *Gagne v. City of Galveston*, 805 F.2d 558, 559-60 (5th Cir. 1986) (citing *Davis v. Sherer*, 468 U.S. 183, 196 (1984)). If a state actor "is required to exercise his judgment, even if rarely or to a small degree," and even on "routine tasks," he is performing a discretionary function for purposes of qualified immunity. *Id.* at 560 (noting a "law that fails to specify the *precise* action that the official *must* take in *each* instance creates only discretionary authority") (quotation omitted; emphasis in original). Craig's alleged acts were discretionary functions and he is entitled to qualified immunity.

### 2.    Plaintiff cannot negate Craig's qualified immunity defense.

To negate Craig's qualified immunity defense, Plaintiff must establish (1) a Constitutional right that was (2) clearly established at the time of Craig's conduct, and (3) that Craig's conduct was objectively unreasonable in the light of the clearly established law at the time. *Holloway*, 2020 WL 1469474, at *4 (citation omitted). This, she cannot do.

### A.    There is no *Constitutional* right to contaminant-free water.

To state a Section 1983 substantive due process claim, a plaintiff must assert "a recognized liberty or property interest within the purview of the Fourteenth Amendment." *Doe v. San Antonio Indep. Sch. Dist.*, 197 F. App'x 296, 299 (5th Cir. 2006). The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992). The High Court requires "judicial self-restraint," which calls for "the utmost care whenever [courts] are asked to break new ground in this field." *Id.* Thus, any substantive due process analysis "must begin with a *careful* description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis added).

8

After identifying the specific asserted right, Plaintiff must demonstrate the Constitution protects that right by presenting "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Plaintiff cannot simply assert "[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts," as these fail to demonstrate a Constitutional right is "clearly established as to the specific facts of the case." *Id.*

Plaintiff generically frames her claims as the "right to bodily integrity" (Count I) and the right to be free from "state-created danger" (Count II). Compl. at ¶¶ 379-382, 383-393. These "general statement[s] of legal principle" are "precisely the type of 'general proposition' that the Supreme Court has rejected." *Gonzalez v. Huerta*, 826 F.3d 854, 857-58 (5th Cir. 2016) ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted).

Plaintiff's vaguely-stated rights to "bodily integrity" and to be free from "state-created danger" improperly fail to "carefully" describe the "constitutional right at stake." *Reno*, 507 U.S. at 302. But the obvious crux of both counts is that Plaintiff has been denied the right to be protected from exposure to contaminated water.

Neither the U.S. Supreme Court nor the Fifth Circuit has <u>ever</u> held that the Constitutional right to bodily integrity encompasses the right to contaminant-free water. Indeed, binding precedent addressing related issues demonstrates that this right does <u>not</u> exist.[5] Other courts

---

[5] *See*, *e.g.*, *L&F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 406-07 (5th Cir. 2013) (property development lacked protectable property interest in obtaining water service from city as required to support due process claim); *Kaplan v. Clear Lake City Water Auth.*, 794 F.2d 1059 (5th Cir. 1986) (denial of water service did not amount to substantive due process violation); *Jones v. City of*

across the country have also held that there is no right to contaminant-free or safe drinking water.[6]

Likewise, there is no Constitutional right (to contaminant-free water, or otherwise) under a "state-created danger" theory because the Fifth Circuit has repeatedly rejected this theory outright. *See Chavis v. Borden,* 621 F. App'x 283, 286 (5th Cir. 2015) ("[W]e have repeatedly declined to decide whether such a cause of action is viable in the Fifth Circuit") (citing cases); *Cancino v. Cameron Cty., Tex.*, 794 F. App'x 414, 416 (5th Cir. 2019) ("[O]ur decisions have consistently confirmed that the Fifth Circuit has not adopted the 'state-created danger' theory of liability.") (citations and quotations omitted).[7] "The reluctance of [the Fifth Circuit] to embrace some version of the state-created danger theory despite numerous opportunities to do so suggests that, regardless of the status of this doctrine in other circuits, a reasonable [state official] in this circuit would, even today, be unclear as to whether there is a right to be free from 'state-created danger.'" *Chavis*, 621 F. App'x at 288-89 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 332 n.12 (5th Cir. 2002) (en banc)).

---

*Picayune, Miss.*, 2010 WL 4781178, at *5 (S.D. Miss. June 1, 2010) (finding prisoner's claims including inadequate drinking water "presents no evidence" that defendants violated his constitutional rights, even if such allegations may amount to negligence); *Collins*, 503 U.S. at 128-29 (1992) (no Constitutional right to live in a contaminant-free environment). The "mere novelty of such a claim is reason enough to doubt that substantive due process sustains it." *Reno*, 507 U.S. at 303.

[6] *See, e.g.*, *Brown v. Detroit Public Sch. Comm. Dist.*, 763 F. App'x 497, 503 (6th Cir. 2019) (rejecting claim that defendants' provision of contaminated water violated plaintiff's right to bodily integrity because "neither the text nor the history of the Due Process Clause" supports a right to a contaminant-free environment); *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5 (1st Cir. 1992) (refusing to recognize a Constitutional right to safe drinking water because the "remedial devices" available under the Safe Drinking Water Act "suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983"); *Foli v. Metro. Water Dist. of S. Cal.*, 592 F. App'x 634, 635 (9th Cir. 2015) (fluoridating public drinking water does not violate any fundamental right) (citing *Cochow v. City of Escondido*, 34 Cal. Rptr. 3d 19, 30, 34 (Cal. App. 4th 2005)).

[7] *Robinson v. Webster County, Miss.*, 825 F. App'x 192, 195 (5th Cir. 2020) ("The district court correctly declined to stray from circuit precedent [as to recognition of the state-created danger theory]. And we decline as well.").

Plaintiff has no Constitutional right to contaminant-free water under either theory (bodily integrity or state-created danger). Plaintiff cannot negate the first element of Craig's qualified immunity defense.

**B. Even if the Constitutional right is found to exist *today*, it was *not* clearly established at the time of Craig's conduct.**

For a Constitutional right to be "clearly established, its contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). As such, Plaintiff must identify "cases of controlling authority in [the subject] jurisdiction at the time of the incident which clearly establis[h] the rule on which they seek to rely," or "in the absence of directly controlling authority," Plaintiff must present "a consensus of cases of persuasive authority such that a reasonable [defendant] could not have believed that his actions were lawful." *McClendon*, 305 F.3d at 328-29 (quoting *Wilson v. Layne*, 526 U.S. 603, 604 (1999)). While a case directly on point is not absolutely required, the precedent at the relevant time "must have placed the … constitutional question *beyond debate*." *Ashcroft*, 563 U.S. at 741 (emphasis added). It is "especially important" to identify supporting cases "in the realm of substantive due process, where the inherent ambiguity of what the law protects is best discerned through 'carefully refined … concrete examples'" from caselaw to demonstrate the right was well-established. *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997).

Here, Plaintiff's asserted right to contaminant-free water – even if it exists today (and it does not) – was <u>not</u> well established at the time of Craig's alleged conduct. Counsel for Craig and MSDH cannot find a Fifth Circuit case in which the court extended substantive due process rights under facts similar to the case at bar. While one court outside this Circuit has found there *may* be a Constitutional right to be free from the state's *intentional* introduction of contaminants

into drinking water, that is not alleged here. *See Guertin v State*, 912 F.3d 907, 946-47, 954-55 (6th Cir. 2019).[8] Further, *Guertin* was decided several years *after* Craig's alleged acts here. *See*, *e.g.*, Compl. at ¶ 71 (asserting conduct in 2015 and 2016).

A lone judicial decision from another Circuit expressly directed at intentional misconduct could not put Craig on notice that his discretionary acts were potentially unconstitutional. *Guertin* certainly is not "directly controlling authority" nor does it qualify as "a consensus of cases of persuasive authority" that would put Craig on notice of a "well-established" right that is "beyond debate." *See Jamison v. McClendon*, 476 F. Supp. 3d 386, 418 (S.D. Miss. 2020) (officer was entitled to qualified immunity "[g]iven the lack of precedent that places the Constitutional question 'beyond debate.'").

Thus, even if the Court finds Plaintiff has asserted a Constitutional right (the first element of qualified immunity), Plaintiff has nevertheless failed to demonstrate the right was well-established at the time of Craig's conduct (the second element of qualified immunity).

### C.  Craig's conduct was not objectively unreasonable.

"For Plaintiff's claim to survive [the objective reasonableness] prong of the qualified immunity test, the Court must find that the [defendant's] alleged conduct was objectively unreasonably under the applicable standard for deliberate indifference at the time of their conduct." *Holloway*, 2020 WL 1469474, at *5. Thus, to determine whether Craig's conduct was "objectively reasonable in light of [the] deliberate indifference standard," the Court will first consider "what constitutes deliberate indifference." *Id.*

---

[8] The majority and dissent in *Guertin* were divided on how to frame the plaintiffs' asserted right. The majority defined it as the right to be free from a government officials' knowing and intentional introduction of life-threatening substances into individuals without their consent – to which the majority found plaintiffs had a Constitutional right. The dissent defined it as the right to be protected from a foreseeable risk of harm from exposure to lead-contaminated water – to which the dissent found plaintiffs had no Constitutional right. *See Guertin*, 912 F.3d at 946-47, 954-55 (J. McKeague, concurring in part and dissenting in part).

"The Court must be mindful … that the subjective deliberate indifference standard establishes *liability*, which goes to the merits of the case, but […] we are [at the motion to dismiss stage] to assess the applicability of a *qualified immunity defens*e." *Id.* (emphasis added). "Obviously, the analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). Otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that she prevails on the merits, thus rendering qualified immunity an empty doctrine." *Hare*, 135 F.3d at 328.

Under the applicable analysis, then, the Court should first consider whether courts have held that conduct like that alleged here constitutes subjective deliberate indifference in order to inform its analysis of whether Craig's alleged conduct constitutes objective unreasonableness. In this case, Craig's conduct rises to neither standard.

### i.    Craig's conduct does not rise to deliberate indifference.[9]

The Fifth Circuit "require[s] a showing of at least deliberate indifference in order to prove a substantive due process violation has occurred." *Johnson v. Owens*, 612 F. App'x 707, 717 (5th Cir. 2015) (citations and quotations omitted) ("Substantive due process protects against arbitrary abuses of government power without reasonable justification—forbidding only the most egregious official conduct, that which shocks the conscience."). "The deliberate indifference standard is a high one." *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (citation and quotation omitted). To be deliberately indifferent, a defendant must subjectively know of and then consciously disregard an excessive risk to the plaintiff's health or safety. *Id.* (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "The state actor's <u>actual knowledge</u> [of the excessive risk] is critical to the inquiry—a failure to alleviate a significant risk that he should

---

[9] Because Craig's alleged conduct does not rise to deliberate indifference, Craig also cannot be held liable on the merits for a claim under Section 1983. *See* Section I(b). The interplay of the two standards is further explained below.

have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference." *Id.* (quoting *Farmer*, 511 U.S. at 837) (emphasis added); *see also Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference […].").

Deliberate indifference "requires more than a showing of simple or even heightened negligence." *Harris, next friend of Doe v. Parker*, 512 F.Supp.3d 714, 727 (S.D. Miss. 2021); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) (even gross negligence is not sufficient to establish deliberate indifference). Indeed, this Court has gone so far as to hold that "[a] purpose to cause harm is a prerequisite to substantive due process liability." *Bolton v. Town of Beaumont, Miss.*, 2007 WL 9773477, at *2 (S.D. Miss. Aug. 2, 2007) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842-44 (1998)) (emphasis added).[10]

Through this lens, Craig's alleged conduct[11] was not deliberately indifferent. Plaintiff alleges Craig made the decision not to inform the City of lead testing results for six months. *See, e.g.*, Compl. at ¶ 71. But Plaintiff admits that Craig did so based on an allegedly erroneous misinterpretation of an EPA regulation. *Id.* at ¶ 228 (citing 40 C.F.R. § 141.85(d)(2)). Plaintiff contends that Craig's interpretation "grossly distort[ed]" EPA guidelines, was not a "reasoned analysis," or was "unacceptably ignorant." *Id.* at ¶¶ 228, 231.[12] But importantly, the EPA

---

[10] *See also Lewis*, 523 U.S. at 848 ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

[11] Defendants do not concede any allegations asserted in the Complaint and only afford the presumption of truth as required under the Rule 12(b)(6) standard. Defendants expressly deny all allegations of wrongdoing and reserve all applicable defenses.

[12] Plaintiff's additional (unsupported) allegation that Craig's interpretation was "knowingly false" is insufficient to withstand a motion to dismiss under Rule 12(b)(6). As the Second Circuit explained:

regulation cited by Plaintiff is not even directed to MSDH; the duties in that regulation are directed to the "water system," not the state agency.[13] Plaintiff's allegation that Craig failed to follow a regulation that does not impose a mandatory duty on MSDH does not amount to deliberate indifference. *See Holloway*, 2020 WL 1469474, at *7 (Though plaintiffs contended defendants failed to follow clearly established state and federal laws, rules, and regulations, they failed to "cite any particular policy or procedure … that created an affirmative duty on the part of [the subject defendants] that was ignored."; finding no deliberate indifference).[14] In fact, even the erroneous reading of an *applicable* regulation would not rise to deliberate indifference. *See*, *e.g.*, *Dallas Indep. Sch. Dist.*, 153 F.3d at 219; *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (government official's mistake of law or fact does not rise to level of conscience-shocking conduct).

The Complaint also alleges Craig directed MSDH employees to employ a water sampling method that was inconsistent with then-seven-year-old EPA guidelines. *See* Compl. at ¶¶ 221-

---

> [W]hen agency officials decide how to reconcile competing governmental obligations in the face of disaster, only intent to cause harm arbitrarily can shock the conscience in a way that justifies constitutional liability. […] Accepting as we must the allegation that the defendants made the wrong decision by disclosing information they knew to be inaccurate, and that this had tragic consequences for the plaintiffs, we conclude that a poor choice made by an executive official between or among the harms risked by the available options is not conscience-shocking merely because for some persons it resulted in grave consequences that a correct decision could have avoided. In any event, Plaintiffs' Complaint has not adequately pleaded an allegation of knowing falsity . . . . [A] bare allegation that the head of a Government agency, guided by a relevant White House office, knew that her statements were false and "knowingly" issued false press releases is not plausible in the absence of some supporting facts.

*Benzman v. Whitman*, 523 F.3d 119, 128-29 (2d Cir. 2008). *See also Lee v. Morial*, 2000 WL 726882, at *3 (E.D. La. June 2, 2000) (rejecting claim that mayor and city were deliberately indifferent by holding press conference at which they stated untrue allegations against plaintiff).

[13] *See* 40 C.F.R. § 141.85(d)(2) ("A water system must provide the consumer notice …") (emphasis added); 40 C.F.R. § 141.2 (defining "State" as the state agency to which the EPA delegates enforcement duties over public water systems, and separately defining "public water system").

[14] Notably, the *Holloway* court also found that the defendants' acts in that case were not objectively unreasonable.

243. Neither is this deliberate indifference. Industry standards, state or federal laws and regulations, internal operating procedures, and even expert testimony as to preferred protocols do not broaden a defendant's *Constitutional* duties. *See, e.g., Gumns v. Edwards*, 2020 WL 2510248, at *13 (M.D. La. May 15, 2020) ("[T]he failure to strictly adhere to CDC guidelines is not *ipso facto* evidence of deliberate indifference. […] [M]ere departure from recommended best practices is insufficient to show deliberate indifference. It is well settled that lack of adherence to industry best practice standards is not in and of itself deliberate indifference.") (citations and quotations omitted).[15]

Plaintiff spares no opportunity to compare this lawsuit to the well-known Flint, Michigan cases, but there is a central difference between the conduct of the State of Michigan and the conduct of the State of Mississippi: in Michigan state employees allegedly acted intentionally and knowingly, while here, Plaintiff fails to assert facts that plausibly allege Craig acted with actual knowledge or disregard of an excessive risk, much less a purpose to cause harm, to Plaintiff.   At most, Plaintiff's allegations imply negligence, which is not enough to defeat immunity.

### ii.  Craig's conduct was not objectively unreasonable.

The "determination [of objective reasonableness] focuses on the particulars of the challenged conduct and/or of the factual setting in which it took place," and the Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information

---

[15] *See also Davis v. Scherer*, 468 U.S. 183 (1984) (the fact that official conduct contravenes a state statute or regulation does not necessarily amount to deliberate indifference); *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000) (violation of regulation alone does not amount to conduct sufficient to violate the Constitution); *Huffman v. Williams*, 2021 WL 3621706, at *3 (W.D. Ky. Aug. 16, 2021) ("the violation of federal guidelines does not give rise to a constitutional claim") (citing *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004)); *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998) (finding no deliberate indifference in spite of expert testimony to contrary).

then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Holloway*, 2020 WL 1469474, at \*5 (citations omitted). In the qualified immunity objective reasonableness analysis, cases deciding subjective deliberate indifference "serve only to demonstrate the clearly established law in effect at the time of the incident[.]" *Hare*, 135 F.3d at 328. Stated differently: "Examples of behavior that does (and does not) constitute deliberate indifference are relevant in assessing the scope of clearly established law and, therefore, relevant in determining whether the defendant's actions were objectively reasonable." *Holloway*, 2020 WL 1469474, at \*5 (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 459-60 (5th Cir. 2001)). In light of "the minimum standard not to be deliberately indifferent," the Court must determine "whether, as a matter of law, [Craig's acts] were *objectively* reasonable." *Hare*, 135 F.3d at 328.

Plaintiff claims that Craig directed a method of water sampling in lead testing that differed from prior EPA "guidance." Compl. at ¶ 72. Craig allegedly failed in 2015 to utilize 2008 "guidance" from the EPA regarding water sampling methods. *Id*. at ¶ 204. That "guidance" is attached as Exhibit 3 to the Complaint – a letter from the EPA to an advocacy group in Washington, D.C. concerning sampling practices of the D.C. Water and Sewer Authority. *See* Compl. at Ex. 3. Plaintiff contends this letter evidences "well-known … guidance" from the EPA on sampling procedures, of which Craig was or should have been aware. *Id*. at ¶¶ 204-207. However, the 2008 EPA letter states the sampling method (pre-flushing prior to sample collection) "fall[s] within a strict legal interpretation of [EPA] regulations" and that the EPA is continuing to "discuss this matter" with local D.C. authorities. *Id*. at Ex. 3. The 2008 EPA "guidance" cited by Plaintiff actually shows that MSDH's sampling method, allegedly directed

by Craig, did not expressly violate EPA regulations. At a minimum, the allegations as to Craig on the sampling method were not objectively unreasonable.

Plaintiff also cites a February 2016 letter from EPA to regional water division directors. *See id.* at Ex. 4. The 2016 letter simply advises of EPA "recommendations" on water sampling in an effort to "better reflect the state of knowledge" about lead in water systems. *Id.* The letter cites no applicable statute, regulation, or policy to be enforced, and no formal requirements for compliance or consequences for non-compliance with the "recommendations." *Id.* Further, the 2016 letter was issued *after* Craig allegedly directed MSDH on water sampling practices in 2015 and cannot serve to establish that the recommendations were clearly established practices at the time of Craig's alleged conduct.[16]

Courts have held that allegations that a defendant should have employed an alternative course of action fail to demonstrate objective unreasonableness, particularly when the applicable law is not clearly established (as in this case). *See, e.g., Mullenix*, 136 S. Ct. at 310 (officers who could have used a different method to subdue a suspect were not objectively unreasonable); *Behrens v. Sharp*, 15 F.3d 180, at *5 (5th Cir. 1994) (defendant officer's conduct during investigation of child sex abuse case was objectively reasonable, as law governing investigation techniques was not clearly established at the time).[17]

---

[16] Indeed, a June 2016 news article cited in the Complaint reports at least 33 cities in the U.S. were employing the practices Plaintiff complains of here, implying the practice was still common a year after MSDH collected its samples. *See* Compl. at ¶ 208, n. 41 (noting the practice was "widespread across the U.S."); *id.* at ¶ 221 (noting the "widespread nature" of these sampling techniques in early 2016).

[17] *Moore v. Lightfoot*, 286 F. App'x 844, 849 (5th Cir. 2008) (officer's methods, though ultimately unsuccessful, were reasonable to address the risk that inmate faced); *Hill v. Caroll County, Miss.*, 467 F. Supp. 2d 696, 705 (N.D. Miss. 2006) (officers' behavior was objectively reasonable in light of lack of clearly established law proscribing method of restraining a violent suspect); *Holloway*, 2020 WL 1469474, at *7 (nurses' alleged failures to follow clearly established state and federal law, rules and regulations of correctional facility, and commonly known "standards of care" may have sounded in negligence but did not amount to objective unreasonableness).

Next, Plaintiff allege Craig made the decision not to inform the City of lead testing results for six months. *See*, *e.g.*, Compl. at ¶ 71. As previously noted, Plaintiff claims that Craig made this decision based on his misinterpretation of an EPA regulation. *Id.* at ¶¶ 226-228 (citing 40 C.F.R. § 141.85(d)(2)). Yet, the regulation is not even directed to MSDH. *See* Section I(a)(2)(C)(i), *supra*. Craig was not objectively unreasonable in allegedly failing to follow an inapplicable regulation. *See Holloway*, 2020 WL 1469474, at *7.

Undersigned counsel has identified only one case that discussed qualified immunity for an alleged misinterpretation of the EPA Lead and Copper Rule. *See Guertin*, 912 F.3d at 928-29. The majority in that case found certain Michigan Department of Environmental Quality employees were not entitled to pre-discovery summary judgment on qualified immunity based largely on the allegation that the state government *purposefully* used Flint, Michigan residents as "guinea pigs" to "test lead compliance theories unsupported by the law" for a year to "pass time until water began flowing from a new [source]." *Id.* at 928-29, 950. No such facts are asserted here. Craig's alleged misinterpretation of EPA regulations pales in comparison to the malicious conduct described by the *Guertin* majority. Instead, the Complaint demonstrates, at most, that Craig (allegedly) "provided misguided advice rooted in mistaken interpretations of law – the type of conduct that, though [allegedly] led to … unfortunate consequences[,] is classically entitled to protection from suit under the doctrine of qualified immunity." *Id. at* 950 (J. McKeague, dissenting) (disagreeing with majority's characterization of plaintiffs' allegations and arguing that MDEQ officials should have been entitled to qualified immunity based on the factual allegations of the complaint). "[Q]ualified immunity 'covers mere mistakes in judgment, whether the mistake is one of fact or one of law[.]'" *Pearson*, 555 U.S. at 231 (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978). Indeed, "[t]he qualified immunity standard gives ample

room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall*, 213 F.3d at 230.  Based on the above, Craig is entitled to qualified immunity.

      **b.  Even if Craig is not entitled to qualified immunity, the Section 1983 claims still fail on the merits.**

To state an actionable Section 1983 claim under any theory, Plaintiff must demonstrate that Craig was deliberately indifferent to her well-established Constitutional right. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc) (A "[defendant's] liability arises only at the point when the [plaintiff] shows that the official, by action or inaction, demonstrates a deliberate indifference to [plaintiff's clearly-established] constitutional rights."). Plaintiff cannot meet these elements under either Count I (bodily integrity) or Count II (state-created danger).

      **1.  Plaintiff fails to state an actionable bodily integrity claim because she fail to assert a clearly-established Constitutional right and she fail to demonstrate Craig acted with deliberate indifference.**

As discussed above, there is no Constitutional right to contaminant-free water under a "bodily integrity" theory. *See* Section I(a)(2)(A), *supra*. And even if the Court finds the right exists today, it certainly was not well-established at the time of Craig's conduct. *See* Section I(a)(2)(B), *supra*. Finally, even if the Court finds Plaintiff has identified a clearly-established Constitutional right to contaminant-free water (and they have not), Craig's conduct was not deliberately indifferent to Plaintiff's rights. *See* Section I(a)(2)(C)(i), *supra*. Without a valid Constitutional right and without deliberate indifference, there is no Section 1983 liability for Plaintiff's Count I "bodily integrity" claim.

      **2.  Plaintiff fails to state an actionable state-created danger claim. The claim does not even exist in the Fifth Circuit, and even if it did, Plaintiff fails to meet the elements.**

As explained in Section I(a)(2)(A), *infra*, the "state-created danger theory" is not recognized in the Fifth Circuit. This precludes Plaintiff from stating a clearly-established Constitutional right. Therefore, Plaintiff's claim on this theory fails. But while the Fifth Circuit has declined time-and-again to recognize the state-created danger theory, it has also discussed the legal analysis that would apply *if* the exception were recognized. *See Chavis*, 621 F. App'x at 286-87. Even under this hypothetical analysis, Plaintiff's claim fails.

For a state-created danger claim, a plaintiff would be required to show "[1] [that] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff." *Robinson*, 825 F. App'x at 195, n.2. Stated differently, "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for [a] third party's [acts to create the danger]." *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997).

Additionally, the defendant must be aware of "an immediate danger facing a *known victim*." *Cancino*, 794 F. App'x at 417 (emphasis added). It is not enough that defendants know of a "risk to a class of people that included the plaintiffs" – such as "people whose geographical proximity … put them in a zone of danger." *Id.* Instead, the defendant must be "aware of the danger to the plaintiffs themselves." *Id*.

First, there is no allegation that Craig's acts *created* lead in the water. Instead, Plaintiff admits that the presence of lead in the City's water was created by "an aging network" of lead pipes that "deliver drinking water and remove wastewater," the acidity and/or corrosivity of water sources, and the presence of many homes built prior to 1980 with lead pipes and solders. *See* Compl. at ¶¶ 85-89. Plaintiff does not allege Craig himself created the subject danger.

Second, there is no allegation that Craig used his position as MSDH Deputy Director to purposefully manufacture an opportunity to allow third parties to create lead in the City's water. The allegations center on how he (allegedly) directed water sampling for lead testing, and when he provided test results to the City. *Id.* at ¶ 71. Regardless of how or whether Craig committed either of those alleged acts, the purported danger – lead in the water – existed separate and apart from Craig's conduct.

Third, the Fifth Circuit has repeatedly discussed that the "known victim" element would be required in any state-created danger cause of action. *See Chavis*, 621 F. App'x at n. 15; *Rios v. City of Del Rio*, 444 F.3d 417, 424 n. 7 (5th Cir.2006) ("'[L]iability exists only if the state actor is aware of an immediate danger facing a known victim' and does *not* extend to 'all foreseeable victims[.]'" (quoting *Lester v. City of Coll. Station*, 103 F. App'x 814 (5th Cir. 2004)) (emphasis in original).[18]  Plaintiff attempts to satisfy this element with creative pleadings. *See* Compl. at ¶ 389 (alleging the "dangers and risks of harm were discreet and special to each Plaintiff, *as a Jackson water user*, and not risks affecting the public at large") (emphasis added). But Plaintiff expressly admits Craig's alleged acts affected "Jackson's citizens" as a whole, "including Plaintiff and Plaintiff's family." *Id.* ¶¶ 15-16.[19]  Plaintiff plainly fails to demonstrate she was a "known victim."

Fourth, even if Plaintiff could meet the above elements, she still has no facts to suggest Craig acted with deliberate indifference.

---

[18] *Dixon v. Alcorn Cty. Sch. Dist.*, 499 F. App'x 364, 367–68 (5th Cir. 2012) ("[T]he school must be aware of an immediate danger to a specific and identifiable student . . . . [T]he fact that a school's policy or procedure presents a risk of harm to students in general is inadequate to satisfy [the known victim] requirement."); *Moore v. Dallas Indep. Sch. Dist.*, 370 F. App'x 455, 458 n. 1 (5th Cir. 2010) ("DISD's actions increased the danger to all school personnel, a large class of people that happened to include her. Under our precedent, the state-created danger theory is inapplicable to this type of situation."

[19] *See also id.* at ¶ 28 (alleging defendants told "Jackson's citizenry that the water was safe to drink").

## II.    STATE LAW NEGLIGENCE AGAINST MSDH AND CRAIG (COUNT III)

The MTCA waives the common-law sovereign immunity of the State and its political subdivisions for "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." Miss. Code Ann. § 11-46-5(1). "The MTCA is the exclusive civil remedy against a governmental entity or its employee for tortious acts or omissions which give rise to a suit." *K.B. v. Adams*, 480 F. Supp.3d 746, 759 (S.D. Miss. 2020); Miss. Code Ann. § 11-46-7(1).

MSDH is a governmental department of the State and was created to serve as an extension of the State Board of Health. *See generally* Miss. Code Ann. § 41-3-15 (establishing MSDH); Miss. Code Ann. § 11-46-1(j) (defining "State" to include State departments); *Ellis*, 2008 WL 2007153, at *4-5 (concluding that MSDH is an "arm of the State"). Craig is a government employee, and it is presumed that his acts at the time and place of his employment were performed in the course and scope of his employment. *See* Miss. Code Ann. §§ 11-46-1(f), 11-46-5(3), 11-46-7(7). Plaintiff also alleges that MSDH is "a Department of the State of Mississippi" and that that Craig was acting within the course and scope of his employment at MSDH.  Compl. ¶¶ 70, 410.  Accordingly, there is no dispute that Plaintiff's negligence claim against MSDH and Craig is subject to the requirements and limitations MTCA.[20]

As explained below, Plaintiff's negligence claim against MSDH and Craig cannot proceed because these Defendants are entitled to discretionary function immunity under the MTCA. Alternatively, the claim must be dismissed because Plaintiff failed to comply with MTCA's pre-suit notice requirements.

---

[20] Plaintiff may name Craig in his representative capacity in her negligence claim but cannot hold him personally liable because his actions were, as Plaintiff admits, within the course and scope of his employment.  *See* Miss. Code Ann. § 11-46-7(2).

### a. Plaintiff's negligence claim against MSDH and Craig is barred by the MTCA's discretionary function exemption.

While the MTCA generally waives the common-law sovereign immunity of governmental entities, the Legislature has adopted numerous exceptions to this waiver. These exceptions are codified in Section 11-46-9 of the Mississippi Code. Waiver of the state's sovereign immunity is "strictly construed in favor of the holder of the right" and "should be liberally construed in favor of limiting liability.'" *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 306 (5th Cir. 2006) (quoting *In re Foust*, 310 F.3d 849, 864 (5th Cir. 2002) (citations omitted)). If any of the MTCA's exemptions apply, governmental immunity remains intact. *K.N. v. Moss Point Sch. Dist.,* 167 So. 3d 1280, 1285 (Miss. 2014).

Here, Plaintiff alleges that all defendants breached various duties related to the City's drinking water, *see* Compl. ¶ 402, but the only <u>facts</u> alleged in support of the claim with respect to MSDH and Craig focus on MSDH's testing drinking water and notifying the City of the results of those tests.[21] These allegations fall squarely within the MTCA's discretionary function immunity exemption, which applies to claims "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" Miss. Code Ann. § 11-46-9(1)(d).[22]

Because discretionary function immunity applies regardless of whether the conduct at issue could be deemed an abuse of discretion, this liability exception is not subject to an

---

[21] The other duties alleged in the Complaint are unsupported by any factual allegations relating to MSDH and Craig and do not state a plausible claim to relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Cakebread Art Antiques Collectibles, Inc. v. Keno*, 2016 WL 6679990, at *2 (E.D. La. Nov. 14, 2016) (court was not required to accept allegation that defendant had "a legal duty to refrain from" taking certain actions).

[22] Defendants reserve the right to assert any other liability exemptions in Section 11-46-9 that may arise in the course of this litigation.

"ordinary care" standard. *Miss. Dep't of Transp. v. Montgomery*, 80 So. 3d 789, 797 (Miss. 2012). Instead, the Mississippi Supreme Court has adopted a two-pronged "public-policy function test" to determine whether discretionary function immunity applies. *Smith v. Miss. Transp. Comm'n*, 292 So. 3d 231, 233-34 (Miss. 2020). The Court must identify the governmental activity that gave rise to the claim. *Wilcher v. Lincoln Cty. Bd. of Supervisors & City of Brookhaven*, 243 So. 3d 177, 187 (Miss. 2018).[23] Then, the Court "must ascertain whether the activity in question involved an element of choice or judgment." *Id.* (quoting *Montgomery*, 80 So. 3d at 795). "A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof." *T.M. v. Noblitt*, 650 So. 2d 1340, 1343 (Miss.1995). By contrast, an act is ministerial if it "has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated[.]" *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136, 1141 (Miss.1999), *overruled on other grounds*, *Montgomery*, 80 So. 3d at 797.

If the activity at issue is discretionary, the Court must decide "whether that choice or judgment involved social, economic, or political-policy considerations." *Id*. Answering this question in the affirmative results in dismissal of the plaintiff's claim. The policy underlying this second prong is that "[s]tate tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness." *Womble v. Singing River Hosp.*, 618 So. 2d 1252, 1263 (Miss.1993) (quoting *Pruett v. City of Rosedale*, 421 So. 2d 1046, 1051-52 (Miss.1982)).

---

[23] In *Wilcher*, the Mississippi Supreme Court abandoned the "unworkable" test it had previously adopted in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014).

Here, Plaintiff attempts to hold MSDH and Craig liable for discretionary governmental conduct relating to the regulation of the State's public water suppliers that involved social and economic policy considerations.  Because the MTCA preserves sovereign immunity for claims based on such conduct, Plaintiff's claim must be dismissed.

### 1.   The activities at issue involved an element of choice and judgment.

Plaintiff's factual allegations focus on MSDH's method of testing Jackson's drinking water in 2015 and reporting of the results of those tests.  Each of these activities involved an element of choice or judgment on the part of Craig and/or other MSDH employees, and Plaintiff does not cite any authority that would require MSDH and Craig to carry out these functions at any specific time or in any specific manner. *L.W.*, 754 So.2d at 1141.

As discussed more fully in Section I(a)(1), *supra*, in the context of qualified immunity, the Complaint does not point to any positive law that required MSDH to carry out any of the activities giving rise to Plaintiff's claims in a specific way or at a specific time. Plaintiff only asserts that MSDH acted contrary to "EPA guidance" for testing methods, which does not rise to the level of a ministerial duty.  *See Kirkland Masonry Co.*, 614 F.3d at 534; *Chisolm*, 942 So.2d at 143. Plaintiff does not cite any statute or regulation that imposes a duty on MSDH to notify the public of testing results in a specific manner; instead, she relies solely on a federal regulation that imposes this duty on water systems like the City. *See* 40 C.F.R. § 141.85(d)(1)-(2). While the state SDWA empowers MSDH to take any actions necessary to protect the public health after being notified of the presence of contaminants in a water supply, the Act preserves MSDH's discretion to decide how to carry out this function.  *See In re Flint Water Cases*, 482 F. Supp. 3d 601, 627 (E.D. Mich. 2020) (finding that EPA's actions under federal counterpart to Section 41-

26-9 were discretionary);[24] *Harding-Wright v. District of Columbia*, 2016 WL 4211773, at *8 (D.D.C. Apr. 14, 2016) (finding that federal SDWA's reporting and notice requirements are imposed on "public water systems," not "States," and that District of Columbia could not be liable for failing to perform duties delegated to a public water system).

Plaintiff alleges that Craig did not rely on any "reasoned analysis" of EPA regulations or guidelines in deciding when to report test results to the City, but the question for discretionary function immunity is not whether the government actor exercised ordinary care. *See Montgomery*, 80 So. 3d at 797; *Gonzalez v. U.S.*, 851 F. 3d 538, 544 (5th Cir. 2017). Instead, the inquiry is whether the government was bound to take a specific action or was empowered with the discretion to decide when and how to act. *In re Katrina Canal Breaches Litig.,* 696 F.3d 436, 449 (5th Cir. 2012). Here, the Complaint does not identify any authority mandating the manner and timing of MSDH's actions.

### 2. The discretionary actions of MSDH and Craig are susceptible to a policy analysis.

The second prong of the public-policy function test is whether the activity in question is "susceptible to" a policy analysis. *Wilcher*, 243 So. 3d at 188. Decisions that bear on public policy are decisions made by individuals charged with responsibility for making those decisions that consider economic, political, or social grounds. *Smith*, 292 So. 3d at 233-34 (quoting *Wilcher*, 243 So. 3d at 182). Here, because state and federal law give MSDH wide discretion in deciding how it carries out the discretionary activities alleged in the Complaint, it must be presumed that its actions are grounded in policy. *U.S. v. Gaubert*, 499 U.S. 315, 322 (1991).

The Complaint does not allege any facts that would overcome this presumption. Instead, the allegations implicate MSDH's allocation of limited government resources to address

---

[24] The court in *In re Flint* held that the EPA was not entitled to FTCA discretionary function immunity because it had other mandatory duties under the federal SDWA, but those duties are unique to the EPA.

considerations of public safety, shared regulatory oversight with the EPA, and delegation of duties to regulated entities. In other words, they are "administrative decisions grounded in social, economic, and political policy." *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 537 (1988); *see also Dancy v. E. Miss. St. Hosp.*, 944 So. 2d 10, 17 (Miss. 2006) (finding that government conduct involves policy considerations when the activities at issue "emanate from, or relate to, matters of human welfare"). The Legislature's grant of discretion to MSDH to take any actions "deemed necessary to protect the public health" establishes that the activities at issue in this case are susceptible to a policy analysis and therefore satisfy the second prong of the public policy function test. Miss. Code Ann. § 41-26-9; *see In re Katrina*, 696 F.3d at 452 (actions in furtherance of regulation requiring consideration of factors such as "needs and welfare of the people" were susceptible to policy analysis).

Numerous courts have held that "the decision whether to warn of potential danger is a protected discretionary function." *Rosebush v. U.S.*, 119 F.3d 438, 443 (6th Cir. 1997).[25] Plaintiff's "failure to warn" allegations, just like the allegations concerning MSDH's testing regime, do not state a claim for negligence by a government agent who failed to exercise due care in the performance of a ministerial duty. Instead, she calls into question the State's discretionary decisions about how to best monitor public health based on available resources while delegating operational duties to public water systems. These activities plainly are susceptible to a social, economic, and/or political policy analysis. Accordingly, Plaintiff's

---

[25] *See also Simpson Cty. v. McElroy*, 82 So. 3d 621, 626 (Miss. Ct. App. 2011) (decision to utilize homemade road warning signs rather than traffic barriers was grounded in economic considerations) *Gonzalez*, 851 F.3d at 551 (decisions about how to publish trail warnings were based on public safety considerations and entitled to immunity); *Childers v. U.S.*, 40 F.3d 973, 976 (9th Cir. 1994) (decisions concerning warnings on hiking trails were discretionary); *Kiehn v. U.S.*, 984 F.2d 1100, 1106 (10th Cir.1993) (decision whether to warn of dangers of rock climbing a discretionary function).

allegations against MSDSH and Craig satisfy the second prong of the public policy function test, and MSDH and Craig are entitled to discretionary function immunity under the MTCA.

> **b. Alternatively, Plaintiff's negligence claim must be dismissed for failure to comply with the MTCA's notice-of-claim requirements.**

The MTCA requires plaintiffs to give government defendants notice of their claims prior to filing suit. Miss. Code Ann. § 11-46-11(1). This requirement applies equally to MSDH and Craig. *See Johnson v. City of Shelby, Miss*., 743 F.3d 59, 64 (5th Cir. 2013) *rev'd on other grounds*, 135 S. Ct. 346 (2014) (MTCA notice requirements applied to employees sued in individual capacities where plaintiff did not allege actions outside their course and scope of employment). The notice must "[c]ontain a short and plain statement of the facts upon which the claim is based," which must include the following information:

> [T]he circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought, and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(2)(b)(i) – (iii). The purpose of this requirement is to allow the governmental entity to take prompt corrective action and settle claims when appropriate. *Lane v. Miss. Dep't of Transp*., 220 So. 3d 254, 259 (Miss. 2017).

The contents of the notice must substantially comply with the above requirements. *See Lee v. Mem'l Hosp. of Gulfport*, 999 So. 2d 1263, 1267 (Miss. 2008). What constitutes "substantial compliance" is a question of law for the Court to decide. *Id*. "[T]he failure to provide any of the seven statutorily required categories of information falls short of the statutory requirement and amounts to non-compliance[.]" *Newton v. Lincoln County*, 86 So. 3d 270, 274 (Miss. Ct. App. 2012) (citation omitted).

Plaintiff's notice here does not meet this standard, as its boilerplate language is not reasonably connected to any specific claim or injury.[26] Plaintiff has not submitted any medical proof that she experienced elevated levels of lead in her blood, nor has she demonstrated that she suffers from all or even some of the conditions listed in the letter. Additionally, Plaintiff does not identify the specific periods during which she was exposed to elevated lead levels and instead generically alleges that her "injury occurred from August 2014 to the present in Jackson, Mississippi." Ex. 1 at 3. Plaintiff does not provide any evidence that her homes was tested for lead, when the testing took place, or what the tests showed.

Despite Plaintiff's allegations of an ongoing threat to the public health of Mississippi's most populous city, she provided MSDH and Craig with no factual support for her claims. Moreover, this case involves identical claims to another case pending before this Court with nearly 600 additional plaintiffs, whose notice-of-claim letters were substantially the same as Plaintiff's. *See J.R. v. City of Jackson, et al.*, No. No.: 3:21-cv-663-CWR-LGI (N.D. Miss.). Under these circumstances, this Court should find that Plaintiff did not give Defendants an opportunity to investigate and potentially resolve their claims without expending resources to engage in civil litigation. *See Marbly v. Manuel*, 210 So. 3d 1033, 1037 (Miss. Ct. App. 2015).

## CONCLUSION

Based on the foregoing, Defendants Mississippi Department of Health and Jim Craig respectfully request this Court dismiss all of Plaintiff's claims against them with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In addition and/or in the alternative, Defendants respectfully request this Court dismiss Plaintiff's negligence claim against them for failure to comply with the MTCA's notice-of-claim requirements. Defendants request any and all further relief to which this Court finds they are entitled.

---

[26] A redacted copy of Plaintiff's notice letter is attached as Exhibit 1 to this Motion.

Respectfully submitted, this the 10th day of March, 2022.

MISSISSIPPI STATE DEPARTMENT OF HEALTH
JIM CRAIG

By:    */s/ Meade W. Mitchell*
        Meade W. Mitchell, MB # 9649

ONE OF THEIR ATTORNEYS

OF COUNSEL:

Meade W. Mitchell, MB # 9649
Orlando R. (Rod) Richmond, MB # 9885
Phillip S. Sykes, MB # 10126
Edderek (Beau) Cole, MB # 100444
Margaret Z. Smith, MB # 104178
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Post Office Box 6010
Ridgeland, MS 39158-6010
Tel: 601-985-4560
Fax: 601-985-4500
Meade.Mitchell@butlersnow.com
Orlando.Richmond@butlersnow.com
Phillip.Sykes@butlersnow.com
Beau.Cole@butlersnow.com
Margaret.Smith@butlersnow.com

Gerald L. Kucia, MB #8716
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4072
Fax: (601) 359-2003
Gerald.kucia@ago.ms.gov

## CERTIFICATE OF SERVICE

I, Meade W. Mitchell, one of the attorneys for Defendants Mississippi State Department of Health and Jim Craig, do hereby certify that I have this day served a true and correct copy of the above and foregoing document by filing it using the ECF system which sent notice of such filing to all counsel of record.

SO CERTIFIED, this the 10th day of March, 2022.

*/s/ Meade W. Mitchell*
MEADE W. MITCHELL

63540010.v1