# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

J.W., A MINOR, BY AND THROUGH AMANDA WILLIAMS,
GUARDIAN AND NEXT FRIEND                                                                                    PLAINTIFF

VS                                                                          CASE NUMBER 3:21-cv-00663-CWR-LGI

THE CITY OF JACKSON, ET AL.                                                                             DEFENDANTS

### CITY OF JACKSON'S MEMORANDUM IN SUPPORT
### OF MOTION FOR JUDGMENT ON THE PLEADINGS

The City of Jackson's Motion raises three distinct questions, each rooted in well-established law:

> First, in every case in which the Fifth Circuit has found a bodily-integrity violation, the plaintiff alleged a state actor's direct, intentional physical contact with the plaintiff. Here, Plaintiff makes no such allegations. Should this Court expand substantive due process rights into unrecognized territory when the Fifth Circuit cautions against expanding substantive due process rights, and Plaintiff fails to plead facts demonstrating conscience-shocking state action?
>
> Second, the Fifth Circuit has repeatedly declined to recognize a state-created-danger theory of liability. Nevertheless, Plaintiff asserts a state-created-danger claim against the City without pleading essential elements of the claim. Should the Court disregard Fifth Circuit precedent to recognize the validity of a claim not sufficiently pleaded?
>
> Last, before filing a lawsuit asserting a claim under the Mississippi Tort Claims Act, a plaintiff must give a municipality at least 90-days' prior written notice. No amended pleading may cure a failure to give the required prior notice. May Plaintiff pursue his or her negligence claim against the City in a lawsuit that was filed one day after Plaintiff allegedly provided notice to the City?

In short, no, no, and no. Accordingly, the Court should dismiss Counts I, II, and III of Plaintiff's Amended Complaint against the City.

1

**Relevant Procedural Background**

Plaintiff alleges he or she served notice of the negligence claims pursuant to Mississippi Code § 11-46-11(3) on October 18, 2021. *See* Am. Compl. [Doc. 51] at 86 (¶ 412). Plaintiff initiated this litigation on October 19, 2021. *See* Compl. [Doc. 1].

**Relevant Factual Averments in the Amended Complaint**

In sum, Plaintiff claims the City knowingly and deliberately created (or exacerbated) a public-health crisis, arising from its operation of a public water system. *See, e.g.*, Am. Compl. [Doc. 51] at 79-80 (¶¶ 385-90). *See generally id.* at 2 (claiming "Plaintiff was poisoned by lead released into Jackson's drinking water as a result of Defendants' conscience-shocking deliberate indifference"). Plaintiff claims the City did so when it "denied, lied about, covered up, deceived, discredited and ignored" an alleged crisis. *Id.* at 79 (¶ 386). Plaintiff baldly (and generally) asserts the alleged harm caused by the crisis was discrete and special to each Plaintiff. *Id.* at 80 (¶ 389). Plaintiff does not claim the alleged harm was inflicted by a private, non-state actor.

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of a party's complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.2d 631, 634 (5th Cir. 2014); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13338, *3 (S.D. Miss. Feb. 9, 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3-4 (quoting *Iqbal*, 556 U.S. at 678). The facial plausibility standard

"demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see also Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3 ("A plaintiff's complaint must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555).

If the exhibits attached to or incorporated into the complaint contradict the allegations of the complaint, the exhibits control. *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d 500, 513-14 (S.D. Tex. 2000) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). The Court is also free to consider matters of public record or other matters appropriate for judicial notice. *Id.*; *see also Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist. LEXIS 174049, at *17-18 (S.D. Miss. Sept. 14, 2021).

The legal standard is the same for dismissal motions filed under Rule 12(c). *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010); *Atwood v. Tullos*, 312 F. Supp. 3d 553, 559-60 (S.D. Miss. 2018) ("In deciding a 12(c) motion, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.") (internal quotations omitted).

**Argument**

I. <u>Plaintiff Does Not Allege a Cognizable Constitutional Violation.</u>

Section 1983 does not create substantive rights. *Hernandez v. Tex. Dep't of Protective & Reg. Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). Instead, it provides a vehicle through which an individual may pursue civil remedies for alleged deprivations of substantive rights. *Id.*

3

Therefore, "the threshold issue presented by any case arising under Section 1983 is whether the plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution." *Id.* To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Pierce v. Hearne Indep. Sch. Dist.*, 600 Fed. App'x 194, 198 (5th Cir. 2015) (citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Plaintiff fails to plead facts sufficient to demonstrate a violation of substantive due process.

### A. The Fifth Circuit Has Not Recognized a Substantive Due Process Violation Arising From Exposure to Environmental Contaminants.

Plaintiff claims the City violated his or her substantive due process right to bodily integrity in Count I of the Amended Complaint. *See* Am. Compl. [Doc. 51] at 77-78 (¶¶ 375-82). Fifth Circuit "case law in this area is sparse." *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL 6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds*, 708 F. App'x 152 (5th Cir. 2017) (per curiam). The few cases "exploring the constitutional liberty interest in bodily integrity defines this right as the right to be free from *intentional* injury inflicted by a state actor." *Bickford v. Boerne Indep. Sch. Dist.*, No. 5:15-CV-1146-DAE, 2016 U.S. Dist. LEXIS 69101, at *11 (W.D. Tex. May 26, 2016) (dismissing substantive due process claim for student's injury in school production of *Grease*) (emphasis in original). As the *Bickford* court noted, in the Fifth Circuit, the right to bodily integrity "appears to arise almost exclusively in the context of sexual abuse by a teacher in a school setting, where a school superintendent was deliberately indifferent to such conduct, despite receiving reports from students, teachers, and parents that the abuse was taking place." *Id.* at *11 n.4; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443,

4

50-51 (5th Cir. 1994); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).

In **every** case in which the Fifth Circuit has found a violation of bodily integrity, a state actor had direct physical contact with the plaintiff. In the *Doe* cases cited above, a teacher sexually abused a student. In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir. 1987), a teacher tied a second grader to a chair. In *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006), a police officer sexually assaulted female arrestees. In *Atteberry v. Nocona General Hospital*, 430 F.3d 245, 250 (5th Cir. 2005), a nurse killed 22 patients by intentionally and physically injecting them with a paralytic drug. In short, those cases all involve the government "laying hands" on the plaintiff.

Absent direct physical contact, the Fifth Circuit has declined to find a substantive due process violation. In *Pierce*, the court found no violation of the substantive due process right to bodily integrity when a student was killed while driving his teacher's ATV. 600 F. App'x 194. In reaching that conclusion, the Fifth Circuit distinguished sexual abuse and corporeal punishment cases, finding that the teacher did not "deliberately abuse, restrain, threaten or touch [the deceased]." *Id.* at 199. The court noted Supreme Court precedent, warning courts against expanding substantive due process rights by turning a negligence claim into a constitutional matter. *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

Direct physical contact is what distinguishes a viable bodily integrity claim from a meritless environmental harm claim under § 1983. The latter is meritless because a robust consensus of cases holds there is *no* substantive due process right to a clean environment. In each of those cases, the plaintiff claimed that some pollutant—whether sewage, mold, chemicals, tobacco smoke, or radiation—had entered or threatened to enter her body and that the

5

government was aware of and responsible for the risk. None found a violation of the plaintiff's bodily integrity. To the extent the Amended Complaint states a cause of action, it is a common-law tort claim, at best. Nothing precludes Plaintiff from properly pursuing that remedy.

For instance, in *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716 (E.D. La. 1976), a group of nonsmokers brought constitutional claims to ban smoking in the Louisiana Superdome. The plaintiffs alleged that "allowing patrons to smoke in the Louisiana Superdome, [the Louisiana Stadium and Exposition District] is causing other nonsmokers involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and discomfort to those nonsmokers…." *Id.* at 717. The district court found there is "no constitutional right to a clean environment." *Id.* at 720-21. The Fifth Circuit agreed. *See Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897 (5th Cir. 1978).

The *Gasper* district court relied on *Tanner v. Armco Steel Corporation*, 340 F. Supp. 532 (S.D. Tex. 1972). In *Tanner*, the plaintiffs brought substantive due process claims for petroleum refineries' emissions of pollutants into the air, which the plaintiff alleged caused pulmonary damage. *Id.* at 534. The district court found that, assuming plaintiffs could plead sufficient state action, they still failed to state a constitutional claim. The court noted,

> [F]rom an institutional viewpoint, the judicial process, through constitutional litigation, is peculiarly ill-suited to solving problems of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes.

*Id.* at 536; *see also Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *10 (E.D. Mich. Feb. 28, 2017) (finding found no fundamental constitutional right to "freedom from harmful contaminants"); *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992) (holding the plaintiffs

6

had no "'constitutional right' to safe drinking water," and that even if they did, their claims were preempted by the Safe Water Drinking Act); *Concerned Citizens of Neb. v. United States NRC*, 970 F.2d 421, 426-27 (8th Cir. 1992) (rejecting constitutional claims for exposure to radiation from a radioactive waste disposal facility); *MacNamara v. Cty. Council of Sussex Cty.*, 738 F. Supp. 134, 142 (D. Del. 1990) (finding no substantive due process right to health where plaintiff claimed the placement of an electrical substation would harm her health); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D.W. Va. 1973) (holding that plaintiffs failed to state a constitutional claim for damage from a "rain of pollutants [with] the [attendant] stench of gasses [sic] and fumes"); *cf. In re Detroit*, 841 F.3d 684, 700 (6th Cir. 2016) ("[T]here is no fundamental right to water service.") (quoting *Golden v. City of Columbus*, 404 F.3d 950, 961 (6th Cir. 2005)). The weight of authority has not recognized a claim for violation of the substantive due process right to bodily integrity from government-caused exposure to pollutants.[1] This Court should not, either.

---

[1] The Sixth Circuit's holding in *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019), is neither controlling nor persuasive. The *Guertin* court found that "a government actor violates individuals' right to bodily integrity by knowingly and intentionally introducing life-threatening substances into individuals without their consent, especially when such substances have zero therapeutic benefit." *Id.* at 921. The Sixth Circuit quoted its earlier decision in *Boler v. Earley*, 865 F.3d 391, 408 n.4 (6th Cir. 2017), for the proposition that a "plaintiff need not 'establish any constitutional significance to the means by which the harm occurs.'" The *Boler* court made this statement, unsupported by any citation, in a footnote. In fact, *Boler* did not even decide whether the plaintiffs stated a bodily integrity claim. *See* 865 F.3d at 408.

The *Guertin* majority looked to *Washington v. Harper*, 494 U.S. 210, 213-17 (1990), to support its analysis. But in *Washington*, the Supreme Court found that the "**forcible** injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Id.* at 229 (emphasis added). In other words, in *Washington*, a state actor intentionally and physically interfered with a person's body by forcing him to take medicine. The *Guertin* cited no case in which a state actor did not intentionally act directly upon the plaintiff's body.

Ultimately, the *Guertin* court greatly expanded the law of substantive due process to analogize a state's forcible injections to a state's assurances that contaminated water was safe to drink. Because the Fifth Circuit has cautioned against expanding substantive due process rights, and because the Fifth Circuit

7

Further, for the reasons set forth in Mayor Chokwe A. Lumumba and Robert Miller's, Tony Yarber and Kisha Powell's, and Jerriot Smash's respective Motions for Qualified Immunity and to Dismiss, which the City incorporates by reference here, Plaintiff has not pleaded facts showing the City engaged in conscious-shocking state action. The bodily-integrity claim fails for that reason, too.

B. The Fifth Circuit Does Not Recognize State-Created-Danger Claims.

Count II of the Amended Complaint is not legally cognizable and is due to be dismissed. The Fifth Circuit has repeatedly declined to recognize a state-created-danger theory of liability, including in cases in which the "theory's viability has been squarely presented." *See, e.g.*, *Beltran v. El Paso*, 367 F.3d 299, 307 (5th Cir. 2004). Most recently, the Fifth Circuit refused to recognize a state-created-danger claim in *Robinson v. Webster County.* 825 F. App'x 192, 195 (5th Cir. 2020) ("[T]his Court has declined to join our sister circuits in recognizing [the state-created-danger] theory on several occasions."); s*ee also Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020) ("[T]he Fifth Circuit has never recognized this 'state-created-danger' exception."); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) ("Subsequent panels have 'repeatedly noted' the unavailability of the [state-created-danger] theory."). There is no need to revisit well-established Fifth Circuit precedent here, especially where Plaintiff has not alleged he or she suffered an injury from a third party. *See generally Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions…that will have no effect on the outcome of the case.").

---

has *never* recognized a bodily integrity violation without an intentional, direct action upon a plaintiff's body, this Court should decline finding such a violation here.

Although the Fifth Circuit has explicitly refused to recognize the state-created-danger theory of liability, it has articulated a standard for such as claim. Like its sister circuits, the Fifth Circuit recognizes the state-created-danger theory of liability redresses a state actor's failure "to protect an individual from injuries inflicted by a third party if the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to [an] individual's injury" only. *See McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002).[2] Count II is devoid of a third-party-inflicted injury allegation. *See* Am. Compl. [Doc. 51] at 79-80 (¶¶ 383-90) (failing to identify any injury inflicted by a non-state actor). This—alone—is fatal to Count II.

That notwithstanding, the Fifth Circuit has identified the following elements for a state-created-danger claim: "(1) that the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Dixon v. Alcorn Cnty. Sch. Dist.*, 499 Fed. App'x 364, 366-67 (5th Cir. 2012).[3] The state-created-danger theory "is inapposite without a known victim." *Doe*, 675 F.3d at 865. A plaintiff must "demonstrate the existence of an immediate danger facing a known

---

[2] Some Circuits read the language of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), to impose a duty on state actors to protect individuals from injuries inflicted **by a third party** if the state actor played an affirmative role in creating or exacerbating the dangerous situation that led to the individual's injury.

[3] The often-articulated test includes two elements. *See, e.g.*, *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 864-65 (5th Cir. 2012) (en banc) (explaining "the state-created danger theory requires a plaintiff to show (1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff."). "[T]he second element is then subdivided into three prongs, which combine to subsume the original first element." *Dixon*, 499 Fed. App'x at 367 n.3. *See generally Doe*, 675 F.3d at 865 (stating that to establish deliberate indifference, a plaintiff must plead facts that "the environment created by the state actors must be dangerous; they must know it is dangerous; and they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur").

victim." *Id.* at 866 (quoting *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999)). Identifying a known victim requires more than singling out a segment of the general public at large that may be affected by state action; the test articulated by the Fifth Circuit requires plaintiffs to plead the state actor was aware of an immediate danger to a specific and identifiable individual. *See id.* at 865; *see also Dixon*, 499 Fed. App'x at 368 (finding potential harm to students in general is inadequate to satisfy the known-victim requirement); *Doe*, 675 F.3d at 865-66 (same).

The Amended Complaint does not allege the City singled out Plaintiff, instead alleging each Plaintiff is a "Jackson water user." *See* Am. Compl. [Doc. 51] at 80 (¶ 389). That allegation is insufficient to state an essential element of a state-created-danger claim.[4] *See Cancino v. Cameron Cnty.*, 794 Fed. App'x 414, 417 (5th Cir. 2019) ("It is not enough for the Plaintiffs to allege that the Defendants knew of a risk to a class of people that included the Plaintiffs, namely people whose 'geographical proximity…put them in a zone of danger.'"); *Rios v. City of Del Rio*, 444 F.3d 417, 424 n.7 (5th Cir. 2006) ("[L]iability exists only if the state actor is aware of an immediate danger facing a known victim and does *not* extend to all foreseeable victims.") (emphasis in original) (internal quotations omitted). Count II should be dismissed.

Although the Fifth Circuit has not considered a state-created-danger claim under a set of facts similar to those featured here, federal courts in the Sixth Circuit rejected a virtually identical state-created-danger theory of liability in the "Flint Water Cases" because the plaintiffs failed to identify a private, third-party actor. *See, e.g.*, *Marble v. Snyder*, 453 F. Supp. 3d 970, 990 (E.D. Mich. 2020). The courts also found those plaintiffs failed to identify a special danger

---

[4] Earlier in the Amended Complaint, Plaintiff acknowledges the alleged acts giving rise to his or her claims impacted Jackson residents as a whole. *See, e.g.*, Am. Compl. [Doc. 51], at 5 (¶ 16) (stating Jackson officials failed to warn Jackson's citizens, including Plaintiff and his or her families, of the issues with corrosive water from the Pearl River and the Reservoir).

to each plaintiff in particular. *See, e.g.*, *id.* at 990-91. The Court should reach the same conclusion.

II.     Plaintiff Filed Suit Before Giving the City the Written Notice Required by the MTCA.

In Count III, Plaintiff sues the City for negligence. Am. Compl. [Doc. 51] at 81-86 (¶¶ 394-412). The MTCA provides the only avenue through which Plaintiff may bring that claim. *See Williams v. Gulfport*, Cause No. 1:07CV906 LG-JMR, 2010 U.S. Dist. LEXIS 45023, *9 (S.D. Miss. May 7, 2010). It includes a clear notice provision:

> [E]xcept that at least ninety (90) days **before instituting suit**, the person must file a notice of claim with the chief executive officer of the governmental entity.

MISS. CODE § 11-46-11(1) (Rev. 2012) (emphasis added). The notice must be served on the City's clerk. MISS. CODE § 11-46-11(2)(a)(i)(2). Proper notice is a "condition precedent to the right to maintain [a MTCA] action." *Hall v. Bolivar Cnty.*, Case No. 2:08cv174, 2010 U.S. Dist. LEXIS 22162, *6 (N.D. Miss. Mar. 10, 2010) (citing *Bunton v. King*, 995 So. 2d 694, 695 (Miss. 2008)). The Northern and Southern Districts of Mississippi strictly apply the notice provision. *Pickett v. Panola Cnty.*, No. 3:13-cv-95-DMB-SAA, 2015 U.S. Dist. LEXIS 11080, *18-19 (N.D. Miss. Jan. 30, 2015). *See generally Jones v. Miss. Inst. of Higher Learning*, 264 So. 3d 9, 27 (Miss. Ct. App. 2018) ("Strict compliance with statutory notice is required, regardless of why the plaintiff failed to provide notice.")

Before Plaintiff could bring the negligence claim, he or she was required to provide to the City's clerk—at a minimum—90-days' written notice. Plaintiff initiated this civil action on October 19, 2021, when he or she filed the Complaint [Doc. 1]. Plaintiff admits he or she did not file the required notice until October 18, 2021, falling woefully short of the statutory notice obligations. *See* Am. Compl. [Doc. 51] at 86 (¶ 412). Plaintiff's failure to adhere to the strictures of the MTCA's notice provision is fatal to the negligence claim. *See, e.g.*, *Bunton*, 995

11

So. 2d at 696 (granting a motion to dismiss where the plaintiffs filed suit seven days after sending a notice-of-claim letter); *Pickett*, 2015 U.S. Dist. LEXIS 11080, at *17-19 (dismissing tort claim filed 14 days after plaintiff provided pre-suit notice).

Filing the Amended Complaint does not absolve Plaintiff's obligations to file timely pre-suit notice. *See Esco v. Madison Cnty.*, No. 2020-CA-01013-COA, 2021 Miss. App. LEXIS 472, *16 (Miss. Ct. App. Nov. 9, 2021) (finding that an amended complaint cannot cure a party's fundamental failure to provide required pre-suit notice); *Bunton*, 995 So. 2d at 696 (finding that the argument "an amended complaint cured the ninety-day-notice problem is without merit"); *see also Pickett*, 2015 U.S. Dist. LEXIS 11080, *18-19 (rejecting argument that filing a supplemental complaint after the 90-day notice period expired cured the procedural defect of not filing pre-suit notice).[5]  Count III should be dismissed.

## Conclusion

The Court should dismiss Counts I, II and III against the City of Jackson.

RESPECTFULLY SUBMITTED, this the 12th day of May, 2022.

/s/ Clarence Webster, III
CLARENCE WEBSTER, III

Clarence Webster, III (MSB #102111)
Kaytie M. Pickett (MSB #103202)
Adam Stone (MSB #10412)
Amber L. Kipfmiller (MSB #105758)
JONES WALKER LLP
190 E. Capitol Street, Suite 800
Jackson, MS  39201
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

---

[5] Plaintiff cannot argue that the Court may exercise supplemental jurisdiction over the negligence claim, because supplemental jurisdiction "does not circumvent conditions precedent to a state's consent to such suits." *S.O. v. Hinds Cnty. School Dist.*, Civ. Action No. 3:17-CV-383-DPJ-KFB, 2017 U.S. Dist. LEXIS 172099, *5 (S.D. Miss. Oct. 18, 2017).

cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
akipfmiller@joneswalker.com
*Counsel for the City of Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2022, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

*/s/ Clarence Webster, III*
CLARENCE WEBSTER, III