**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**J.W., A MINOR, BY AND THROUGH AMANDA WILLIAMS,**
**GUARDIAN AND NEXT FRIEND**                                        **PLAINTIFF**

**VS**                                        **CASE NUMBER 3:21-cv-00663-CWR-LGI**

**THE CITY OF JACKSON, ET AL.**                                        **DEFENDANTS**

**MAYOR CHOKWE A. LUMUMBA AND ROBERT MILLER'S MEMORANDUM IN**
**SUPPORT OF THEIR MOTION FOR QUALIFIED IMMUNITY AND TO DISMISS**

Any pleading using the words "lead," "water," "children," and "poison" together naturally raises concerns, particularly for public servants like Mayor Lumumba and former Public Works Director Miller.  The facts pleaded, however, demonstrate that Mayor Lumumba and Miller worked to address those concerns during their respective terms of office, and Plaintiffs' claims should be dismissed as a matter of law.  Plaintiff brings two substantive due process claims under Section 1983 against Mayor Lumumba and Miller in their individual capacities: (1) a state-created danger claim and (2) a bodily integrity claim.

The Fifth Circuit has never recognized a state-created-danger claim, so that claim fails as a matter of law, as explained in the City's Motion for Judgment on the Pleadings, which Mayor Lumumba and Miller incorporate herein by reference.

The Fifth Circuit *also* has never recognized a bodily-integrity violation for exposure to an environmental harm, so that claim fails, too.  To demonstrate a substantive due process violation of bodily integrity, a plaintiff must plead facts showing a public official's actions shock the conscience and his decisions were made with deliberate indifference.  The news articles and exhibits Plaintiff identifies in his or her pleadings show neither Mayor Lumumba nor Miller made the kind of outrageous decisions necessary to state a substantive due process claim.

1

Both Mayor Lumumba and Miller are entitled to the protection afforded by qualified immunity, which protects government officials from liability for reasonable decisions, the outcome of those decisions notwithstanding. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.") (cleaned up). Whether, in hindsight, Mayor Lumumba or Miller could have made different decisions is irrelevant; what matters is whether "*no* reasonable [official] could have acted as [Mayor Lumumba or Miller] did here, or every reasonable officer faced with the same facts would not have [acted as Mayor Lumumba or Miller did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019). Plaintiff does not meet that burden.

## RELEVANT FACTUAL BACKGROUND[1]

The allegations in the Amended Complaint related to Mayor Lumumba and Miller are limited.

Plaintiff claims Mayor Lumumba "consistently" did not take "appropriate action to ensure that sufficient staff are available to provide Jackson's citizens with clean and safe drinking water", which Plaintiff claims "is partially responsible for the City of Jackson's failure to provide safe drinking water." Am. Compl. [Doc. 51] at 71 (¶ 340). The articles Plaintiff incorporates into the Amended Complaint contradicts that assertion, demonstrating Mayor Lumumba's—and the City's—efforts to fill two positions at O.B. Curtis, an instrument technician and plant operations supervisor, and two operators at J.H. Fewell. *See e.g.*, Steve

---

[1] Mayor Lumumba assumed office on July 3, 2017. There are no allegations he or Miller engaged in conduct giving rise to Plaintiff's claims before June 3, 2017.

Wilson, *EPA Emails Reveal City's Continued Violations*, NORTHSIDE SUN (Sept. 8, 2021),

identified in Am. Compl. [Doc. 51] at 60 n.57.  The Amended Complaint also confirms the City

installed components for optimizing the water system's corrosion control after Mayor Lumumba

assumed office.  *See id.* at 59 (¶ 279).

Miller was the City's Public Works Director from "at least October 2017 to July 2020."

The only allegations in the Amended Complaint relevant to Miller are that he (1) made the "true"

statement "there's been no detecting of lead or copper in the water supply"; and (2) "assured

Jackson's citizens water users that '[t]he water is still safe to drink.'"  Am. Compl. [Doc. 51] at

56 (¶¶ 265-68).  Regarding the second statement, Miller and Mayor Lumumba, among others,

consistently emphasized that Jackson water users should "continue to use precautions."  Those

precautions included:

> [U]sing filtered or bottled water for pregnant women, children 5
> years old and younger, and for making formula. Residents should
> run the water for one to two minutes in the morning before using it
> for the first time; clean faucet aerators; and make sure children
> have adequate lead testing done. Jacksonians should also not drink
> hot water from the tap.

Marie Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, JACKSON FREE

PRESS (July 19, 2018), identified in Am. Compl. [Doc. 51] at 57 n.53.

As of June 2021, "[r]egulators and public-work officials agree[d] that Jackson's water-

treatment facilities have completed key improvements…."  *See* Nick Judin, *EPA Tours Jackson

Water Treatment Plants as City Faces Long Road to Rehab*, MISSISSIPPI FREE PRESS (July 26,

2021), identified in Am. Compl. [Doc. 51] at 71 n.79.  Importantly, Jackson's water system has

not exceeded the lead action of 0.015 mg/L since Mayor Lumumba assumed office.  *See* Notice

of Noncompliance, attached to Am. Compl. [Doc. 51] as Exhibit 7, at 3.

## ARGUMENT AND AUTHORITIES

### I.     Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of a party's complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.2d 631, 634 (5th Cir. 2014); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13338, at *3 (S.D. Miss. Feb. 9, 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3-4 (quoting *Iqbal*, 556 U.S. at 678).

The facial plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3 ("A plaintiff's complaint must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555).

If the exhibits attached to or incorporated into the complaint contradict the pleadings, the exhibits control. *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d 500, 513-14 (S.D. Tex. 2000) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). The Court is also free to consider matters of public record or other matters appropriate for judicial notice. *Id.*;

*see also Wright v. Moore*, No. 3:20-CV-473-DPJ-FKB, 2021 U.S. Dist. LEXIS 174049, at *17-18

(S.D. Miss. Sept. 14, 2021).

The legal standard is the same for dismissal motions filed under Rule 12(c).  *In re Great*

*Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010); *Atwood v. Tullos*, 312 F. Supp.

3d 553, 559-60 (S.D. Miss. 2018) ("In deciding a 12(c) motion, the court accepts all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff.") (internal

quotations omitted).  The standard for a qualified immunity motion brought at the pleadings

stage is the same as any other Rule 12(b)(6) or 12(c) motion, save for one difference: the burden

is on the *plaintiff*, not the movant, to demonstrate the inapplicability of the defense.  *Cantrell v.*

*City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

## II.     Mayor Lumumba and Miller are entitled to qualified immunity.

For Plaintiff to meet his or her burden on a motion to dismiss for qualified immunity, the

pleading must allege "(1) defendants committed a constitutional violation under current law and

(2) the defendants' actions were objectively unreasonable in light of the law that was clearly

established at the time of the actions complained of."  *Club Retro LLC v. Hilton*, 568 F.3d 181,

194 (5th Cir. 2009) (internal quotations omitted).  The Court may consider the prongs in either

order; and the failure to satisfy one prong is fatal to a § 1983 claim.  *See Pearson*, 555 U.S. at

236.  Plaintiff cannot satisfy either prong.

### 1.     Violation of the right to bodily integrity under the substantive due process clause requires a state actor's direct and intentional contact with the plaintiff.

#### a.     Fifth Circuit bodily integrity law does not encompass exposure to contaminants.

Plaintiff claims Mayor Lumumba and Miller violated his or her bodily integrity in Count

I.  Fifth Circuit "case law in this area is sparse."  *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL

6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds*, 708 F. App'x 152 (5th Cir. 2017) (per curiam). The few cases "exploring the constitutional liberty interest in bodily integrity defines this right as the right to be free from *intentional* injury inflicted by a state actor." *Bickford v. Boerne Indep. Sch. Dist.*, No. 5:15-CV-1146-DAE, 2016 U.S. Dist. LEXIS 69101, at *11 (W.D. Tex. May 26, 2016) (dismissing substantive due process claim for student's injury in school production of *Grease*) (emphasis in original). As the *Bickford* court noted, in the Fifth Circuit, the right to bodily integrity "appears to arise almost exclusively in the context of sexual abuse by a teacher in a school setting, where a school superintendent was deliberately indifferent to such conduct, despite receiving reports from students, teachers, and parents that the abuse was taking place." *Id.* at *11, n.4; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 50-51 (5th Cir. 1994); *Doe v. Rains Cty. Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).

In every case in which the Fifth Circuit has found a violation of bodily integrity, a state actor had direct physical contact with the plaintiff. In the *Doe* cases cited above, a teacher sexually abused a student. In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir. 1987), a teacher tied a second grader to a chair. In *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006), a police officer sexually assaulted female arrestees. In *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981), a police officer struck a photographer. In *Atteberry v. Nocona General Hospital*, 430 F.3d 245, 250 (5th Cir. 2005), a nurse killed 22 patients by intentionally and physically injecting them with a paralytic drug. In short, these cases all involve the government "laying hands" on the plaintiff.

Absent direct contact, the Fifth Circuit has declined to find a substantive due process violation. In *Pierce v. Hearne Independent School District*, 600 F. App'x 194 (5th Cir. 2015),

6

the court found no violation of bodily integrity when a student was killed while driving his

teacher's ATV.  In reaching that the conclusion, the Fifth Circuit distinguished sexual abuse and

corporal punishment cases, finding that the teacher did not "deliberately abuse, restrain,

threaten or touch [the deceased]."  *Id.* at 199.  The court noted Supreme Court precedent,

warning courts against expanding substantive due process rights, thereby turning negligence

claims into a constitutional matter.  *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115,

125 (1992)).

Direct physical contact is what distinguishes a viable bodily-integrity claim from a

meritless environmental harm claim under § 1983.  The latter is meritless because a robust

consensus of cases holds there is *no* substantive due process right to a clean environment.  In

each of those cases, the plaintiff claimed that some pollutant—whether sewage, mold, chemicals,

tobacco smoke, or radiation—had entered or threatened to enter her body and that the

government was aware and responsible for the risk.  None found a violation of bodily integrity.

To the extent the Amended Complaint states a cause of action, it is a common-law tort claim, at

best.  Nothing precludes Plaintiff from properly pursuing that remedy.

For instance, in *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716

(E.D. La. 1976), a group of nonsmokers brought constitutional claims to stop smoking in the

Louisiana Superdome.  The plaintiffs alleged that "allowing patrons to smoke in the Louisiana

Superdome, [the Louisiana Stadium and Exposition District] is causing other nonsmokers

involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and

discomfort to those nonsmokers…."  *Id.* at 717.  The district court found there is "no

constitutional right to a clean environment."  *Id.* at 720-21.  The Fifth Circuit agreed.  *See*

*Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897 (5th Cir. 1978).

The *Gasper* district court opinion relied on *Tanner v. Armco Steel Corporation*, 340 F.

Supp. 532 (S.D. Tex. 1972).  In *Tanner*, the plaintiffs brought substantive due process claims for

petroleum refineries' emissions of pollutants into the air, which the plaintiff alleged caused him

pulmonary damage.  *Id.* at 534.  The district court found that, assuming plaintiffs could plead

sufficient state action, they still failed to state a constitutional claim.  The court noted,

> [F]rom an institutional viewpoint, the judicial process, through
> constitutional litigation, is peculiarly ill-suited to solving problems
> of environmental control. Because such problems frequently call
> for the delicate balancing of competing social interests, as well as
> the application of specialized expertise, it would appear that their
> resolution is best consigned initially to the legislative and
> administrative processes.

*Id.* at 536-37; *see also Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at 4 (E.D.

Mich. Feb. 28, 2017) (finding found no fundamental constitutional right to "freedom from

harmful contaminants); *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992) (holding  the

plaintiffs had no "'constitutional right' to safe drinking water," and that even if they did, their

claims were preempted by the Safe Water Drinking Act); *Concerned Citizens of Neb. v. United*

*States NRC*, 970 F.2d 421 (8th Cir. 1992) (rejecting constitutional claims for exposure to

radiation from a radioactive waste disposal facility); *MacNamara v. Cty. Council of Sussex Cty.*,

738 F. Supp. 134, 142 (D. Del. 1990) (finding there is no substantive due process right to health

in a case in which a plaintiff claimed the placement of an electrical substation would harm her

health); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D.W. Va. 1973)

(holding that plaintiffs failed to state a constitutional claim for damage from a "rain of pollutants

[with] the [attendant] stench of gasses [sic] and fumes."); *cf. In re Detroit*, 841 F.3d 684, 700

(6th Cir. 2016) ("[T]here is no fundamental right to water service.") (citation omitted).  The

weight of authority has not recognized a claim for violation of the substantive due process right to bodily integrity from government-caused exposure to pollutants.

This Court should not, either.  Neither Mayor Lumumba nor Miller injected Plaintiff with lead.  Mayor Lumumba and Miller's policy decisions on Jackson's water system do not rise to the level of a violation of Plaintiff's bodily integrity.

> **b.**     ***Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019), is neither controlling nor persuasive.**

The *Guertin* court found that "a government actor violates individuals' right to bodily integrity by knowingly and intentionally introducing life-threatening substances into individuals without their consent, especially when such substances have zero therapeutic benefit."  *Id.* at 921.  The Sixth Circuit quoted its earlier decision in *Boler v. Earley*, 865 F.3d 391, 408 n.4 (6th Cir. 2017), for the proposition that a "plaintiff need not 'establish any constitutional significance to the means by which the harm occurs.'"  The *Boler* court made this statement, unsupported by any citation, in a footnote.  In fact, *Boler* did not even decide whether the plaintiffs stated a bodily integrity claim.  *See id.* at 408.

The *Guertin* majority looked to *Washington v. Harper*, 494 U.S. 210, 213-17 (1990), to support its analysis.  But in *Washington*, the Supreme Court found that the "**forcible** injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."  *Id.* at 229 (emphasis added).  In other words, in *Washington*, a state actor intentionally and physically interfered with a person's body by forcing him to take medicine. *Guertin* cited no case in which a state actor did not intentionally act directly upon the plaintiff's body.

Ultimately, the *Guertin* court greatly expanded the law of substantive due process to analogize a state's forcible injections to a state's assurances that contaminated water was safe to

drink.  Because the Fifth Circuit has cautioned against expanding substantive due process rights,

and because the Fifth Circuit has *never* recognized a bodily integrity violation without an

intentional, direct action upon a plaintiff's body, this Court should decline finding such a

violation here.

> **2.    Plaintiff cannot demonstrate Mayor Lumumba or Miller made a conscious-shocking decision with deliberate indifference to Plaintiff's constitutional rights.**

"[I]n a due process challenge to executive action, the threshold question is whether the

behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience."  *Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see*

*also Pena v. Givens*, 637 F. App'x 775, 782 (5th Cir. 2015) (unpublished).  In *Lewis*, the

Supreme Court emphasized that "only the most egregious official conduct can be said to be

'arbitrary in the constitutional sense.'"  *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503

U.S. 115, 129 (1992)).

Not only must the executive action be conscience-shocking, but it must also be made

with subjective "deliberate indifference."  *Sanchez v. Oliver*, 995 F.3d 461, 473 (5th Cir. 2021).

"'Deliberate indifference is an extremely high standard to meet.'"  *Id.*  (quoting *Gobert v.*

*Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).  In *Pierce v. Hearne Independent School District*,

600 F. App'x 194 (5th Cir. 2015), the Fifth Circuit stressed:

> A due process violation results from "*deliberate* decisions of
> government officials to deprive a person of life, liberty, or
> property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "Actions
> and decisions by officials that are merely inept, erroneous,
> ineffective, or negligent do not amount to deliberate indifference
> and do not divest officials of qualified immunity." *Alton v. Texas*
> *A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citation
> omitted). As the Seventh Circuit has explained, deliberate
> indifference entails "conduct that reflects complete indifference to
> risk—when the actor does not care whether the other person lives

> or dies, despite knowing that there is a significant risk of
> death." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.
> 1991) (citations and internal quotations omitted).

*Id.* at 198 (emphasis in original).  Plaintiff cannot demonstrate conscience-shocking deliberate indifference with respect to *any* alleged decisions Mayor Lumumba or Miller made.

While Plaintiff's factual recitation it long, it is short on allegations that Mayor Lumumba or Miller's alleged conduct gave rise to his or her constitutional claims.  In fact, the Amended Complaint is notable for what it does not allege, *i.e.*, that the City's water system exceeded the EPA actionable lead level after Mayor Lumumba assumed office.

Instead, Plaintiff claims Mayor Lumumba "has the power to ensure that sufficient staff are available," but has not taken action to ensure sufficient staff is available.  *See* Am. Compl. [Doc. 51], at 71 (¶ 342).  That allegation is untrue; Plaintiff's own citations show that.  *See, e.g.*, *id.* at 60 n.57.  That notwithstanding, Plaintiff fails to identify what power Mayor Lumumba has to employ operators at O.B. Curtis and J.H. Fewell that he used, or failed to use, with conscious-shocking deliberate indifference.  Can he conscript private citizens and has failed to do so?  Has he discouraged operators from applying for open positions or blocked their hiring?  Has he blocked the posting and advertising of open job positions?  The answer is obviously no to all of the above.  *See id.*  Plaintiff cannot demonstrate a constitutional violation based on unreasonable, conclusory allegations.

Mayor Lumumba and Miller's statements do not provide a basis for holding either liable for a constitutional violation. *See Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008).  In *Benzman*, plaintiffs sued the EPA administrator for issuing press releases with false and misleading statements.  *Id.* at 123-24.  Specifically, the plaintiffs alleged the EPA administrator knew that the air was not safe to breathe and falsely represented in press releases that it was.  *Id.* at 125.  The Second Circuit noted that "no court has ever held a government official liable for

11

denying substantive due process by issuing press releases or making public statements." *Id.* The court held that only if the statements had been made with a subjective intent to harm could they rise to the level of conscience-shocking. *Id.* Because the statements were not, the court found no substantive due process violation.

As an initial matter, Plaintiff cannot show the statements Mayor Lumumba or Miller made were false. Further, Plaintiff's citations demonstrate Mayor Lumumba and Miller consistently informed Jackson water users of the measures they should take regarding water usage. Those precautions included (1) using filtered or bottled water for pregnant women, children 5 years old and younger, and for making formula; (2) running the water for one to two minutes in the morning before using it for the first time; (3) cleaning faucet aerators; (4) making sure children have adequate lead testing done; and (5) not drinking hot water from the tap. *See* Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, identified in Am. Compl. [Doc. 51] at 57 n.53.

Plaintiff also does not allege he or she (or his or her caregivers) *relied* on any statements Mayor Lumumba or Miller made. Plaintiff does not bother to plead what each heard or read, nor does Plaintiff plead whether he or she received the specific instructions and warnings the City distributed on how to safely consume the water. Without reliance, Plaintiff cannot demonstrate that any alleged statement caused Plaintiff to ingest lead-contaminated water.

### 3.    The law was not clearly established in 2017.

Plaintiff also cannot show a violation of clearly-established law. A law is "clearly established" when "[t]he precedent [is] clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 138 S. Ct. 577,

590 (2018) (cleaned up).  A court must determine whether a "controlling authority" or "robust consensus of cases of persuasive authority" establishes the unlawfulness of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (citation omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 327 n.10 (5th Cir. 2002).  "Generally, to satisfy this standard, the plaintiff must 'identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and . . . explain[] why the case clearly proscribed the conduct of that individual officer.'" *Cope v. Cogdill*, 3 F.4th 198, 205 (U.S. 5th Cir. 2021) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)). "While an exact case on point is not required, the confines of the officers' violation must be 'beyond debate.'" *Id.* (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)).  "**Broad general propositions are not enough to overcome qualified immunity**." *Id.* (emphasis added). "Plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'"  *Id.* at *206.

The *only* remotely analogous case to this one in the Fifth Circuit is *Gasper*, in which the court found *no* constitutional claim.  *Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897, 899 (5th Cir. 1978).  *Bradley v. Puckett*, 157 F.3d 1022 (5th Cir. 1998), is *not* analogous to the case at bar, factually or legally.  First, *Bradley* involved only an Eighth Amendment claim, not a substantive due process claim.  There, the Court found a prisoner's lack of access to bathing water while in confinement rose to the level of "cruel and unusual", which entails "restrictions of confinement [that] rise to a level that results in physical torture . . . pain without penological purpose."  *Id.* at 1025 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Second, *Bradley* plaintiff had to bathe himself in toilet water, which caused fungal infections, because he was unable to bath otherwise for several months. *Id.* A prison's decision to deprive an inmate a

bath for several months is just not similar to Mayor Lumumba and Miller's decisions on how to manage the City's water system.

All Fifth Circuit cases finding a viable bodily substantive due process claim involve direct physical contact. In light of the total absence "a case in which an officer acting under similar circumstances was held to have violated" a plaintiff's right to substantive due process, *Cope*, 3 F.4th at 205, Mayor Lumumba and Miller could not reasonably have expected to find themselves facing a substantive due process claim.

Although Plaintiff cites the Safe Drinking Water Act and EPA regulations, neither provides a basis for Plaintiff's claims. Those statutes are irrelevant to the issue before the Court. *See Gagne v. Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[N]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation -- of federal or of state law -- unless *that statute or regulation* provides the basis for the cause of action sued upon.") (citation omitted). The inquiry should be based on whether the constitutional right was clearly established at the relevant time.

There also was no "robust consensus" of persuasive authority that clearly established a constitutional violation. Courts uniformly rejected constitutional claims arising from environmental harms until the Sixth Circuit's decision in *Guertin*. But, the only authority that can be considered is that in place when the alleged violation occurred. *See Kokesh v. Curlee*, No. 20-30356, 2021 U.S. App. LEXIS 28607, at *15-20 (5th Cir. Sept. 21, 2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

*Guertin* is also not persuasive on whether Mayor Lumumba or Miller's conduct was "clearly proscribed." *See Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020). *Guertin* relies upon no Supreme Court case with analogous facts. The cases it cites deal

14

with forced surgery (*Winston v. Lee*, 470 U.S. 753 (1985)); forced medication (*Washington v. Harper*, 494 U.S. 210, 213-17 (1990)); forced stomach-pumping (*Rochin v. California*, 342 U.S. 165 (1952)); and the burden of proof for withdrawal of life support (*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269-70 (1990)).  More factually analogous are *Mattoon v. City of Pittsfield*, 980 F.2d 1 (1st Cir. 1992), dealing with contamination of a public water supply, or *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), dealing with allegedly false statements about the risk of a pollutant.

*Guertin* found the constitutional violations in that case were obvious.  In this Circuit, the exception for "obvious" violations is narrow: "[u]nder *Taylor*, plaintiffs are only excused of their obligation to identify an analogous case in extreme circumstances where the constitutional violation is obvious."  *Cope*, 3 F.4th at 206 (citing *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam)) (internal quotations omitted).  Here, where there were competing policy reasons for the switch to surface water; where the majority of the City had been served surface water with no violations; and where the City gave tailored notice to the affected citizens, the Court should find there is no "obvious" violation.  There is nothing obviously unconstitutional about public servants making difficult decisions when faced with limited resources and competing crises, particularly given that "substantive due process is not the clearest of Supreme Court doctrines…the caselaw in this area is contradictory, imprecise, and, well, messy."  *Daves v. Dall. Cty.*, 984 F.3d 381, 411 (5th Cir. 2020) (internal quotations omitted).  Certainly, when the *Guertin* court itself divided over whether a constitutional violation had occurred at all, it is not "beyond debate" that the individual defendants here violated Plaintiff's constitutional rights.

III.    **Plaintiff does not plead a MTCA claim against Mayor Lumumba and Miller individually.**

In addition to the arguments raised in the City's Motion for Judgment on the Pleadings, the negligence claims should be dismissed as to Mayor Lumumba and Miller, individually, for an additional reason.  To the extent Plaintiff asserts his or her negligence claim against Mayor Lumumba and Miller in their individual capacities, the claim should be dismissed because Plaintiff concedes Mayor Lumumba and Miller "acted in the course and scope of their employment."  Am. Compl. [Doc. 51] at 15, 17 (¶¶ 62, 66) & 86 (¶ 410).  "While the MTCA permits a government employee to 'be joined in an action against a governmental entity in a *representative* capacity if the act or omission complained of is one for which the governmental entity may be liable,' the MTCA makes clear 'no employee shall be held *personally* liable for acts or omissions occurring within the course and scope of the employee's duties.'"  *City of Clinton v. Tornes*, 252 So. 3d 34, 37 (Miss. 2018) (quoting MISS. CODE § 11-46-7(2) (Rev. 2012)) (emphasis in original); *see also Dearman v. Stone Cnty. Sch. Dist.*, Civ. No. 1:13-cv-267-HSO-RHW, 2014 U.S. Dist. LEXIS 37489, at *19-20 (S.D. Miss. Mar. 21, 2014) ("The MTCA generally provides that employees of a governmental entity who act within the course and scope of employment are not personally liable for injuries arising from their acts or omissions.").

<u>**CONCLUSION**</u>

The Court should dismiss Counts I, II and III against Mayor Lumumba and Miller.

RESPECTFULLY SUBMITTED, this the 12th day of May, 2022.

*/s/ John F. Hawkins*
JOHN F. HAWKINS

John F. Hawkins, Esquire (MSB #9556)
LT Allen, Esquire (MSB #106383)
HAWKINS LAW, P.C.

16

226 North President Street (39201)
Post Office Box 24627
Jackson, Mississippi 39225-4627
Telephone: (601) 969-9692
Facsimile: (601) 914-3580
john@hgattorneys.com
ltallen@hgattorneys.com
*Counsel for Mayor Chokwe A.*
*Lumumba and Robert Miller*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2022, I electronically filed the foregoing pleading with

the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all

counsel of record.

 */s/ John F. Hawkins*
JOHN F. HAWKINS