IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.W., a minor, by and through Amanda Williams           PLAINTIFF
as guardian and next friend

VS.                          CIVIL ACTION NUMBER 3:21-CV-663-CWR-LGI

THE CITY OF JACKSON, MISSISSIPPI; CHOWKE A.
LUMUMBA, JR.; TONY YARBER; KISHIA POWELL;
ROBERT MILLER; JARRIOT SMASH; THE MISSISSIPPI
STATE DEPARTMENT OF HEALTH; JIM CRAIG; TRILOGY
ENGINEERING SERVICES, LLC; AND JOHN DOES 1-40           DEFENDANTS

**REBUTTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS MISSISSIPPI DEPARTMENT OF HEALTH AND JIM CRAIG**

Plaintiff has not alleged facts that demonstrate a plausible claim under Section 1983 or the Mississippi Tort Claims Act ("MTCA") against the Mississippi Department of Health ("MSDH") or Jim Craig ("Craig") (collectively "State Defendants"). The Court should dismiss the State Defendants for the following reasons:

**Plaintiff's Section 1983 claims against Mr. Craig fail because:** (i) there was no clearly-established Constitutional right to lead-free drinking water at the time of Mr. Craig's alleged acts; and (ii) Mr. Craig's acts were not deliberately indifferent.

**Plaintiff's negligence claims against MSDH and Mr. Craig fail because:** (i) the State Defendants have immunity under the MTCA because their acts were discretionary and based on public policy concerns; and (ii) Plaintiff failed to meet the MTCA requirement to give the State Defendants sufficient notice of her claims.

For these reasons, the Court should dismiss the State Defendants.

**ARGUMENT**

I.   **Plaintiff's Section 1983 claims should be dismissed.**

   a. **There is no clearly-established Constitutional right to lead-free water.**

Plaintiff dedicates much of her Response (Doc. No. 79 at 15-20) to argue the State Defendants failed to show that a Constitutional right[1] to lead-free water does not exist.[2] Plaintiff attempts to distinguish the State Defendants' cited cases, claiming none foreclose a right to contaminant-free water under the right to bodily integrity.[3] However, Plaintiff's argument is fundamentally flawed: the law does not require the State Defendants to prove the right does not exist. Rather, the law requires Plaintiff to prove the right does exist. Plaintiff not only has to prove a specific Constitutional right exists *today*; they must prove that right was well-established *as of June 2015*, when the State Defendants' alleged acts began. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). Plaintiff has not, and cannot, do that.

---

[1] Plaintiff attempts a creative argument on state-created danger. *See* Doc. No. 79 at 10, n. 1 (arguing the "contours of the right" are the same under right to bodily integrity and right to be free from state-created danger; stating the Fifth Circuit has shown "ambivalence" to the state-created danger theory). These arguments are unavailing. The law is clear: there is no state-created danger claim in the Fifth Circuit. *See* Doc. No. 61 at 10. By focusing the Response almost exclusively on the right to bodily integrity, Plaintiffs essentially concede the state-created danger claim. Therefore, as does Plaintiff's Response, this Rebuttal focuses on the bodily integrity claim.

[2] The State Defendants interpret Plaintiff's asserted right as the right to contaminant-free water. *See* Doc. No. 61 at 8-11. Plaintiffs disagree with this interpretation and clarify that Craig "violated [Plaintiff's] rights to bodily integrity when he made decisions and took actions that caused, contributed to, exacerbated, and/or prolonged their ingestion of lead contaminated water." Doc. No. 79 at 15. This is a distinction without a difference. Plaintiffs argue contaminant-free drinking water is guaranteed by the Constitution, but the law does not support that argument.

[3] Because it is not the State Defendants' burden, the State Defendants will refrain from responding in detail to Plaintiff's points about the State Defendants' cited cases. But note, the State Defendants' cases "addres[s] *related* issues [to] demonstrat[e] that [Plaintiff's asserted right] does not exist." *See* Doc. No. 61 at 9 (emphasis added). The State Defendants cite cases about *related* issues because there is no case in this Circuit (or any other, except *Guertin*) recognizing this right on these (or similar) facts. The absence of on-point cases does not support Plaintiff's arguments; rather, it shows the Constitutional right Plaintiff seeks to claim is not well-established.

Plaintiff could meet this burden in one of two ways: (1) present "cases of controlling authority in [the Fifth Circuit] at the time of the incident which clearly establis[h]" the right or (2) present "a consensus of cases of persuasive authority" from other jurisdictions to show the right was sufficiently well-established to place it "beyond debate." *McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002) (en banc) (quoting *Wilson v. Layne*, 526 U.S. 603, 604 (1999)); *Ashcroft v. Iqbal*, 556 U.S. 662, 741 (2009). Plaintiff did neither.

Instead, they explained the right to bodily integrity is guaranteed by the Fourteenth Amendment (*see* Doc. No. 79 at 12-13) and that right has been found by the Fifth Circuit and U.S. Supreme Court to "encompass a variety of rights." *Id.* at 14. Conspicuously missing is any case from those courts that has held the right to bodily integrity encompasses a right to contaminant-free water.[4] That is because no such case exists.

Plaintiff claims a "long line of cases recogniz[e]" the general right to bodily integrity. *Id.* at 15. But "[t]his is merely a 'general statement[] of the law.' [C]learly established law must be particularized to the facts of the case." *Jamison*, 476 F. at 418 (citations omitted). Courts must "pay close attention to the specific context"; they will not "define clearly established law at a high level of generality." *Id.* at 416.

Relevant to Plaintiff's claims here, courts in the Fifth Circuit have not recognized a violation of a plaintiff's constitutional right to bodily integrity absent proof of direct physical contact by the defendant. *See Pierce v. Hearne Independent School District,* 600 F. App'x 194

---

[4] Plaintiff also cites Fifth Circuit and Supreme Court cases to explain that violating the Constitution requires "conscience-shocking" conduct and "deliberate indifference." *Id.* at 13. None of those courts found conduct like the State Defendants' acts alleged here rises to Constitutional liability. Further, "[i]t does not matter, as the Fifth Circuit has explained, 'that we are morally outraged, or the fact that our collective conscience is shocked by the alleged conduct ... [because it] does not mean necessarily that the officials should have realized that [the conduct] violated a constitutional right.'" *Jamison v. McClendon*, 476 F. Supp.3d 386, 404-05 (S.D. Miss. 2020).

3

(5th Cir. 2015) (finding no constitutional violation where the defendant did not "deliberately abuse, restrain, threaten or touch [the deceased]"); *Bickford v. Boerne Indep. Sch. Dist.*, No. 5:15-CV-1146-DAE, 2016 WL 3033778, at *4 (W.D. Tex. May 26, 2016) (noting that the constitutional interest in bodily integrity "appears to arise almost exclusively in the context of sexual abuse by a teacher in a school setting, where a school superintendent was deliberately indifferent to such conduct, despite receiving reports from students, teachers, and parents that the abuse was taking place."); *R.S. ex rel. Smith v. Starkville Sch. Dist.*, No. 1:12-cv-00088-SA-DAS, 2013 WL 5295685, at *5 (N.D. Miss. Sept. 19, 2013) (finding no violation of student's right to bodily integrity where "[n]owhere in the complaint do Plaintiffs allege physical harm or any physical contact committed by Defendants against R.S."). *Petty v. Venus Correctional Unit*, No. 3:00-cv-1753-M, at *3 (N.D. Tex. Apr. 10, 2001) ("To state a claim for a violation of his right to bodily integrity, plaintiff must allege some physical contact between himself and the guards or at least that he was coerced to violate his own bodily integrity.").

Applying a similar logic, other courts have routinely rejected the notion of a constitutional right to be free from exposure to pollutants. *See Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992) (holding that plaintiffs had no "'constitutional right' to safe drinking water," and that even if they did, their claims were preempted by the Safe Drinking Water Act); *Concerned Citizens of Neb. v. United States NRC*, 970 F.2d 421, 426-27 (8th Cir. 1992) (rejecting constitutional claims for exposure to radiation from a radioactive waste disposal facility); *Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *4 (E.D. Mich. Feb. 28, 2017) ("[W]henever federal courts have faced assertions of fundamental rights to a 'healthful environment' or to freedom from harmful contaminants, they have invariably rejected those claims."); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D. W. Va. 1973) (holding that plaintiffs failed to state a constitutional

4

claim for damage from a "rain of pollutants [with] the [attendant] stench of gasses [sic] and fumes."); *cf. In re City of Detroit, Mich.*, 841 F.3d 684, 700 (6th Cir. 2016) ("[T]here is no fundamental right to water service.") (citation omitted). These authorities further support the conclusion that the contours of Plaintiff's alleged right to lead-free drinking water was not clearly established within the Fifth Circuit (or anywhere else) in June 2015, the time of the alleged activities in question.

With no binding case on point and no consensus from other jurisdictions, Plaintiff relies on one case with similar (not the same) facts – a Sixth Circuit decision in the Flint, Mich. lead water litigation decided years after Defendants' alleged acts here. *See Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019). To reach its decision, the *Guertin* majority re-framed the asserted right, finding a "government actor violates individuals' right to bodily integrity by knowingly and intentionally introducing life-threatening substances into individuals without their consent." *Id.* at 921. But, there is no allegation that Mr. Craig engaged in any such conduct here.

Further, even *Guertin* had a dissenting judge who was "certain" plaintiffs failed to carry their burden to establish a Constitutional right to contaminant-free water:

> [There are] **no concrete examples** arising from the established bodily integrity jurisprudence or from our Nation's history or traditions **[that] support the right asserted here**—protection from policy or regulatory decisions or public statements that, somewhere down the line, result in exposure to contaminated water.

*Id.* at 955-56 (emphasis added).[5] The dissent was even more certain plaintiffs failed to establish that right was clearly-established at the time of the defendants' conduct. *Id.* at 954-62.

Here, Plaintiff must demonstrate a Constitutional right was clearly established in the Fifth Circuit, or that a consensus from other jurisdictions had placed the claimed Constitutional right to

---

[5] The dissent noted that the "right plaintiffs [actually] allege[d] [was] altogether different" and not well-established. *Id.* at 946-47

lead-free water beyond debate, in June 2015. Plaintiff presents only *Guertin* -- a Sixth Circuit split-decision from 2019 with a dissent centered on the very fact that the Constitutional right was not well-established. This cannot meet Plaintiff's burden.[6] As the *Guertin* dissent correctly pointed out: "The mere fact that no court of controlling authority has ever recognized the type of due process right that plaintiffs allege in this case is all we need to conclude the right is not clearly established." *Id.* at 942.

A valid Constitutional right is required to defeat Craig's qualified immunity defense and required to state an actionable Section 1983 claim. Plaintiff has failed to assert a valid right. The Section 1983 claims fail as a matter of law.

### b. Craig's alleged conduct did not amount to deliberate indifference.[7]

The Section 1983 claims also fail because Plaintiff has not pled conduct that was deliberately indifferent. Deliberate indifference is a very high standard - the defendant must subjectively know and then consciously disregard an excessive risk to the plaintiff's health. *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant's "actual knowledge [of the excessive risk] is critical to the inquiry—a failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference." *Id.* (quoting *Farmer*, 511 U.S. at 837); *see also Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and

---

[6] Even Plaintiff admits *Guertin* "cannot itself" establish the Constitutional right they claim since it came after the alleged acts in this matter. Doc. No. 79 at 23.

[7] The deliberate indifference analysis is relevant to both the qualified immunity defense and to Section 1983 liability on the merits. *Hare*, 135 F.3d at 328. Cases deciding subjective deliberate indifference demonstrate what the clearly established law was at the time of the incident in order to assess whether a defendant acted objectively reasonable to receive qualified immunity. *Id.* Here, the State Defendants' alleged acts were neither deliberately indifferent nor objectively unreasonable.

decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference […].").

Plaintiff alleges the State Defendants (1) used a water sampling method in 2015 that the EPA *later* recommended against in 2016, (2) misread an EPA regulation to delay releasing test results for six months (even though the EPA does not require the State Defendants to release those results), and (3) were ignorant of the specific scientific effects of lead concentrations in boiled water. *See* Doc. No. 79 at 14. Applying the stringent liability standard of deliberate indifference, even if these acts were negligent or grossly negligent,[8] they were not deliberately indifferent.

*Water Sampling Method*

Plaintiff argues the State Defendants "knowingly caus[ed] the MSDH to conduct testing in a manner intended to artificially lower the testing results of lead in Jackson's water." *Id.* at 14. The Court must consider the facts alleged, not Plaintiff's sweeping conclusions.[9]

Plaintiff alleges the State Defendants knew their sampling method (pre-flushing) was against EPA "guidance." Compl. ¶ 204. That "guidance" is a 2008 letter from the EPA to an advocacy group about the D.C. Water Authority. *Id.* at Ex. 3. Plaintiff alleges no facts to support their conclusory claim that the State Defendants knew of this letter (*id.* ¶ 206). Further, even if the State Defendants saw it, the letter could not give the State Defendants knowledge that pre-flushing

---

[8] The State Defendants do not admit Plaintiff's allegations and do not admit their acts were negligent or grossly negligent. Regardless, the acts alleged in the Complaint (even taken as true) do not constitute deliberate indifference.

[9] Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft*, 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*; *Jamieson by and through Jamieson v. Shaw*, 772 F.2d 1205, 1214-15 (5th Cir. 1985) ("[W]e consistently require the claimant to state specific facts, not merely conclusory allegations.").

7

was against EPA rules because the letter expressly states pre-flushing "fall[s] within a strict legal interpretation of [EPA] regulations." *Id.* at Ex. 3.

Plaintiff then argues pre-flushing "can be (and has been) used to manipulate lead testing." *Id.* ¶ 212. But Plaintiff asserts no facts that the State Defendants used pre-flushing to intentionally manipulate results. *Id.* ¶¶ 204-220. Plaintiff alleges pre-flushing is inconsistent with sampling "recommendations" mentioned in a 2016 EPA memo – not statutes, regulations, policies, or formal requirements. *Id.* ¶¶ 213-214 and Ex. 4. Notably, the State Defendants' sampling was in 2015 *before* the 2016 EPA memo. *Id.* Thus, Plaintiff improperly asks the Court to assume the State Defendants intentionally manipulated tests simply because the State Defendants used a sampling method that an EPA memo would later recommend against. Simply put, the allegation that the State Defendants' used an alternate sampling method does not rise to deliberate indifference. *See* Doc. No. 61 at 16, n. 15.

*Delayed Notice of Test Results*

Plaintiff next alleges the State Defendants "deliberately fail[ed] to provide … notice … that there was excessive lead in Jackson's drinking water." Doc. No. 79 at 14. Again, Plaintiff does not allege any facts to demonstrate that the State Defendants' delay was deliberate deception. To the contrary, Plaintiff alleges the State Defendants thought they were *supposed* to wait six months to release results, based on a misinterpreted EPA regulation. Compl. ¶¶ 227-228. Plaintiff further admits that informing the public is a duty of the water system, not of MSDH or Craig. *See* Doc. No. 79 at 7. Basically, Plaintiff alleges the State Defendants misinterpreted a regulation that creates no mandatory duty for the State Defendants in the first place. This is not deliberate indifference. *See* Doc. No. 61 at 14-15, n.12.

*Boil Water Notices*

Plaintiff alleges the State Defendants "dangerously advis[ed] that pregnant women and children in Jackson should drink boiled tap water, which concentrates lead in water." Doc. No. 79 at 14. There is no claim this was intended to harm Jackson residents. Compl. ¶¶ 289-291. *See Bolton v. Town of Beaumont, Miss.*, 2007 WL 9773477, at *2 (S.D. Miss. Aug. 2, 2007) ("[a] purpose to cause harm is a prerequisite to substantive due process liability") (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842-44 (1998)). Plaintiff argues the advice was "dangerously ignorant." Compl. ¶ 291. Even if the advice was negligent or grossly negligent, it was not deliberately indifferent. *See Harris, next friend of Doe v. Parker*, 512 F.Supp.3d 714, 727 (S.D. Miss. 2021); *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021).

Because Plaintiff has not alleged acts of deliberate indifference, her Section 1983 claims fail.

**II.  Plaintiff's negligence claims should be dismissed.**

    **a.  The State Defendants have discretionary function immunity under the MTCA because their actions were discretionary and based on public policy concerns.**

Despite the broad legal conclusions in the Complaint, Plaintiff correctly notes in her Response that the only factual allegations aimed at MSDH and Mr. Craig are three discrete acts. *See* acts summarized in § I(b), *supra*; *see also* Doc. No. 79 at 28-29. Plaintiff does not dispute (and thus concedes) that the State Defendants' acts were discretionary. *See Wilcher v. Lincoln Cty. Bd. of Supervisors & City of Brookhaven*, 243 So. 3d 177, 187 (Miss. 2018). Thus, for the MTCA's discretionary function provision to apply, the only dispute is whether the State Defendants' alleged conduct was susceptible to social, economic, or political-party considerations – *i.e.* public policy concerns. *Miss. Dep't of Transp. v. Montgomery*, 80 So. 3d 789, 797 (Miss. 2012). The allegations do involve policy concerns and the State Defendants are entitled to immunity.

Plaintiff argues the State Defendants' acts were "simple acts of negligence" and liken these acts to cases where a government entity failed to maintain or inspect its property. *See* Doc. No. 79 at 30. But the cases cited by Plaintiff involved a government employee's failure to perform an assigned duty; courts found this was a matter of personal choice, not a decision "made by a policymaker considering social, economic, or political concerns." *Smith v. Miss. Transp. Comm'n*, 292 So. 3d 231, 235 (Miss. 2020). Here, the State Defendants' acts in overseeing Jackson's public water supply are undoubtedly "decisions made by individuals charged with responsibility for making those decisions that consider economic, political, or social grounds." *Wilcher*, 243 So. 3d at 182 (citing *U.S. v. Gaubert*, 499 U.S. 315, 335 (1991)).

*Smith*, a case cited by Plaintiff, illustrates the distinction between simple acts of negligence and policy-driven decisions. In *Smith*, the Mississippi Supreme Court found the Transportation Commission vicariously liable for a flagman's negligent traffic signaling – "the job he was placed in the field to do." 292 So. 3d at 234-35. But the Commission was not liable for policymaker decisions concerning placement of traffic control devices, as those decisions "carry with them economic, political, or social concerns." *Id.* at 234. Likewise, in *Simpson County v. McElroy*, 82 So. 3d 621, 628 (2011), the Mississippi Court of Appeals found a county's decision to save budget funds by using "homemade" road warning signs was grounded in economic policy and thus subject to discretionary function immunity. The *McElroy* trial court erred when it found the county liable for failing to use "more expensive (albeit sturdier) signs"; this was an improper second-guessing of the county's administrative policy decisions. *Id.*

Here, as in *Smith* and *McElroy*, the State Defendants' alleged acts cannot be oversimplified as merely sampling water, reporting test results, or issuing warnings. Such a narrow view ignores the fact that MSDH (through a senior administrator, Craig) is the state-level policymaker tasked

10

with regulatory oversight over all public water system in Mississippi (hundreds of systems), including the City of Jackson. MSDH must balance its fundamental goal of protecting the health and welfare of Mississippi citizens against limited economic and personnel resources. The State Defendants have broad discretion to take action deemed necessary to protect the public health,[10] and their acts emanate from important economic and public-health policy considerations. As such, the State Defendants cannot be held liable for Plaintiff's allegations that the State Defendants negligently performed their duties.[11]

In sum, Plaintiff fails to demonstrate her claims against the State Defendants fall outside the MTCA's discretionary function exception. The negligence claims against the State Defendants should be dismissed.

   b.   **Additionally, Plaintiff failed to give the State Defendants sufficient notice of her claims, as required by the MTCA.**

MTCA's notice requirement gives the government an opportunity to take prompt corrective action. *Lane v. Miss. Dep't of Transp.*, 220 So. 3d 254, 259 (Miss. 2017); *Marbly v. Manuel*, 210 So. 3d 1033, 1037 (Miss. Ct. App. 2015). With this important purpose in mind, Plaintiff failed to give the State Defendants adequate notice of their claims. This is grounds for dismissal.

---

[10] Miss. Code Ann. § 41-26-9 states: "The director, upon receipt of information that a contaminant which is present in or is likely to enter a public water system may present an imminent and substantial endangerment to the public health, may take any actions deemed necessary to protect the public health."

[11] Plaintiff's reliance on *In re Flint Water Cases*, 482 F. Spp. 3d 601 (E.D. Mich. 2020), is also misplaced. *Flint* is procedurally distinguishable, as the parties had engaged in jurisdictional discovery and the court analyzed the fact disputes under a Rule 56 summary judgment standard. *Id.* at 616. Moreover, the *Flint* court rejected discretionary function immunity for the EPA because the EPA's duty to intervene under the SDWA was mandatory, *not* discretionary. *Id.* at 628-29. Thus, the EPA failed the first prong of the public policy function test. *Id.* at 632. Here, Plaintiff does not dispute that the State Defendants' alleged acts were discretionary. Also, the discussion of the "policy" prong in *Flint* was *dicta*. In any event, the court found the EPA "did not take action that it was authorized to take and should have taken upon finding that the City of Flint was in violation of several Federal Drinking Water standards." *Id.* at 634. Plaintiff alleges no similar conduct by MSDH and Craig , nor do they explain how the State Defendants' conduct amounted to "matters of scientific and professional judgment," which was at issue in *Flint*.

11

The MTCA requires all plaintiffs to provide notice of the time and place of injury, the extent of injury, and the names of all persons known to be involved. Miss. Code Ann. §11-46-11(b)(iii). While there is only one minor plaintiff in this case, it must be noted that Plaintiff's counsel has filed other identical lawsuits in this Court on behalf of hundreds of *additional* individuals. Yet, each notice letter (in all cases) is substantively identical. The State Defendants cannot determine basic details: when each individual was exposed to lead, what injuries each has suffered, or which potential witnesses may have knowledge of those injuries. Plaintiff cannot be said to have complied with the requirements of Section 11-46-11(b)(iii) to provide notice of the time and place of injury, the extent of injury, and the names of all persons known to be involved.

As to the names of the persons known to be involved, all are the same and simply list the defendants, but list no one with knowledge on the Plaintiff's side, such as parents or other guardians in the children's home. As to the time and place, all state the injury occurred from August 2014 to the present, which is boilerplate rather than meaningful information on each Plaintiff. Critically, for all of the Plaintiffs, the extent of the injury in the notice is identical – starting with the statement "upon information and belief" and ending in the statement that "the full and precise extent of Plaintiff's injuries and future harm is currently unknown." Below is the identical statement contained in each notice:

> **The extent of the injury:**
>
> Upon information and belief, Plaintiff has suffered injuries, including but not limited to: cognitive deficits, behavioral changes, memory and attention deficits, learning impairments, impaired emotional functioning, and visual-perceptional deficits. The full and precise extent of Plaintiff's injuries and future harm is currently unknown.

At best, this is a list of what Plaintiff believes could result from exposure to elevated lead levels, but it leaves unanswered the question of whether Plaintiff has been tested for elevated lead levels,

which the State Defendants submit would be a prerequisite to instituting suit, or whether Plaintiff actually suffers from any of these problems.

Allowing this action to proceed with such little information as to Plaintiff's claims nullifies the MTCA's notice requirement. The Court should dismiss Plaintiff's negligence claims and direct Plaintiff to provide Defendants the information the MTCA requires before re-filing suit.

## **CONCLUSION**

Based on the foregoing, Defendants Mississippi Department of Health and Jim Craig request that this Court dismiss all of Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In addition, and/or in the alternative, Defendants request that this Court dismiss Plaintiffs' negligence claim for failure to comply with the MTCA's notice requirements. Defendants request any and all further relief to which this Court finds they are entitled.

Respectfully submitted, this the 1st day of June 2022.

                                                MISSISSIPPI STATE DEPARTMENT OF HEALTH
                                                JIM CRAIG

                                By:    */s/ Meade W. Mitchell*
                                         Meade W. Mitchell, MB # 9649

OF COUNSEL:

Meade W. Mitchell, MB # 9649
Orlando R. (Rod) Richmond, MB # 9885
Phillip S. Sykes, MB # 10126
Edderek (Beau) Cole, MB # 100444
Margaret Z. Smith, MB # 104178
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Post Office Box 6010
Ridgeland, MS 39158-6010
Tel: 601-985-4560
Fax: 601-985-4500
Meade.Mitchell@butlersnow.com
Orlando.Richmond@butlersnow.com
Phillip.Sykes@butlersnow.com

Beau.Cole@butlersnow.com
Margaret.Smith@butlersnow.com

Gerald L. Kucia, MB #8716
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4072
Fax: (601) 359-2003
Gerald.kucia@ago.ms.gov

## CERTIFICATE OF SERVICE

    I, Meade W. Mitchell, one of the attorneys for Defendants Mississippi State Department of Health and Jim Craig, do hereby certify that I have this day served a true and correct copy of the above and foregoing document by filing it using the ECF system which sent notice of such filing to all counsel of record.

    SO CERTIFIED, this the 1st day of June 2022.

                                                */s/ Meade W. Mitchell*
                                               MEADE W. MITCHELL

64520426.v1