# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSPPI
# NORTHERN DIVISION

| | |
|---|---|
| J.W., a minor, by and through Amanda Williams, Guardian and Next Friend, | Case No. 3:21-cv-00663-CWR-LGI |
| *Plaintiffs*, | Hon. Carlton W. Reeves<br>Mag. LaKeysha Greer Isaac |
| v. | |
| The City of Jackson, Mississippi; Chockwe A. Lumumba, Jr.; Tony Yarber, Kishia Powell, Robert Miller; Jerriot Smash; The Mississippi State Department of Health; Jim Craig; Trilogy Engineering Services, LLC; and John Does 1-40,<br>*Defendants*. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE CASES NUMBERED 3:21-663, 3:21-667, AND 3:22-171**

This Motion concerns three civil suits that are perfectly situated for consolidation: *J.W. v. The City of Jackson, et al.*, ("*J.W.*"); *P.R, et al., v. The City of Jackson, et al.*, ("*P.R.*"); and *C.A., et al., v. The City of Jackson, et al.* ("*C.A.*"); (collectively referred to as the "Jackson Water Cases"). Plaintiff seeks full consolidation because it will substantially reduce costs to all parties, promote judicial economy, and allow for the efficient adjudication of all related matters, individual actions, and defenses—thereby eliminating any potential for prejudice. Every Jackson Water Case is in a very early stage of litigation and has generated repetitious motion practice. The timing is perfect for consolidation due to the infancy of this litigation and Plaintiff seeks to provide the Court with a streamlined foundation for this potentially complex body of litigation.

Consolidation is in keeping with prior rulings with this Court and the Fifth Circuit. Further it has been successfully implemented by the Eastern District of Michigan throughout the Flint

Water Cases. Consolidation worked for the children, defendants, and the court in Michigan and Plaintiffs believes it will benefit all parties throughout the litigation of the Jackson Water Cases. Additionally, Plaintiff's counsel seek leave to file a Master Complaint and Short Form Complaint after consolidation to create an efficient way to add new Plaintiffs to the litigation.

Further, all parties consent to the consolidation of these matters for the purposes of discovery. Some Defendants oppose consolidation for the purposes of motion practice and trial. Plaintiffs ask this Court to grant full consolidation despite this opposition as this measure will substantially reduce unnecessary costs and repetition.

## FACTUAL BACKGROUND

These cases are brought on behalf of hundreds of children ("Plaintiffs") in the City of Jackson, Mississippi who are suffering from various injuries and impairments caused by exposure to lead resulting from the above-named Defendants and their decisions. (*J.W.* Doc. 51; *P.R.* Doc. 41; *C.A.* Doc. 1). Lead is a development neurotoxin that can cause permanent damage to the human body and it is widely known—particularly within the public health sector—that children are the most susceptible to its effects. (*J.W.* Doc. 51, ¶¶346-356; *P.R.* Doc. 41, ¶¶354-364; *C.A.* Doc. 1, ¶¶355-365). Plaintiffs in the Jackson Water Cases were all children when exposed to this poisonous water. (*J.W.* Doc. 51, ¶¶362-367; *P.R.* Doc. 41, ¶¶370-374; *C.A.* Doc. 1, ¶¶371-375). They were born between 2003 and 2021 and have, at all material times, lived in the City of Jackson or regularly consumed the City's water. *Id*. Plaintiffs will never be the same because of the lead poisoning they have suffered at the hands of government officials and engineering contractors. (*J.W.* Doc. 51, ¶36; *P.R.* Doc. 41, ¶41; *C.A.* Doc. 1, ¶41).

Elevated lead levels started to permeate the City of Jackson's public drinking water many years ago. The City first uncovered dangerous levels of lead throughout its water system as early

as 2013. (*J.W.* Doc. 51, ¶¶125-138; *P.R.* Doc. 41, ¶¶138-151; *C.A.* Doc. 1, ¶¶139-152). At that time, City officials identified the source of the problem: lead had leached into the water from the city's corroded, outdated lead pipes. *Id*. Water is acidic and must be treated to avoid corrosion of public water systems—especially systems that are as old and full of lead components as the City of Jackson's system. (*J.W.* Doc. 51, ¶¶93-97; *P.R.* Doc. 41, ¶¶101-109; *C.A.* Doc. 1, ¶¶101-109). After City officials determined the source of the lead, they noted that it was likely because of nonfunctioning and malfunctioning equipment at the city's water treatment plant. (*J.W.* Doc. 51, ¶¶125-138; *P.R.* Doc. 41, ¶¶138-151; *C.A.* Doc. 1, ¶¶139-152). The mayor at the time—Chokwe Lumumba, Sr.—passed away shortly after he approved funding to fix this equipment. (*J.W.* Doc. 51, ¶139; *P.R.* Doc. 41, ¶152; *C.A.* Doc. 1, ¶153). Since then, the elevated levels of lead snowballed into a widespread public health crisis.

The Defendants reacted to this crisis with an inexcusably delayed response and engaged in deceptive tactics to cover up the extent of the damage, resulting in injuries to the Plaintiffs. (*J.W.* Doc. 51; *P.R.* Doc. 41; *C.A.* Doc. 1). The Defendants can generally be classified into three groups with actions specific to their involvement in this tragedy: the City Defendants, the State Defendants, and Defendant Trilogy Engineering Services, LLC. The City Defendants are comprised of the City of Jackson ("the City" or "Jackson"); Chokwe A. Lumumba, Jr. ("Lumumba"), the Current Mayor of Jackson; Tony Yarber ("Yarber"), the Former Mayor of Jackson; Kishia Powell ("Powell"), a Former Director of Public Works; Jerriot Smash ("Smash"), a Former Director of Director of Public Works; Robert Miller ("Miller"), a Former Director of Public Works; and John Does 1-20. (*J.W.* Doc. 51, ¶¶46-51 and 67; *P.R.* Doc. 41, ¶¶51-56 and 72; *C.A.* Doc. 1, ¶¶52-57 and 73). The State Defendants are comprised of the Mississippi State Department of Health ("MSDH"), the Primacy Agency with the delegated authority to enforce the

Safe Drinking Water Act ("SDWA"); Jim Craig, a Senior Deputy of MSDH and the Director of MSDH's Health Protection Division; and John Does 21-40. (*J.W.* Doc. 51, ¶¶52-53 and 72; *P.R.* Doc. 41, ¶¶57-58 and 77; *C.A.* Doc. 1, ¶¶58-59 and 78). The City hired Defendant Trilogy Engineering Services, LLC ("Trilogy") for corrosion control treatment evaluation and implementation which exacerbated and prolonged the crisis. (*J.W.* Doc. 51, ¶¶73-75; *P.R.* Doc. 41, ¶¶78-80; *C.A.* Doc. 1, ¶¶79-81).

After Lumumba, Sr. passed away in February 2014, there was a contentious two-month emergency election to fill the mayoral vacancy. (*J.W.* Doc. 51, ¶140; *P.R.* Doc. 41, ¶153; *C.A.* Doc. 1, ¶154). Thessalonian LeBlanc——the owner of Trilogy Engineering Services——held an unreported fundraiser for Defendant Yarber and his campaign to become the next mayor of Jackson. (*J.W.* Doc. 51, ¶301; *P.R.* Doc. 41, ¶¶308; *C.A.* Doc. 1, ¶¶309). Yarber was elected to that position in April 2014 and quickly eliminated any funding allocated during the prior administration to fix Jackson's corrosion control. (*J.W.* Doc. 51, ¶146; *P.R.* Doc. 41, ¶159; *C.A.* Doc. 1, ¶160). This decision is shocking by itself but becomes even more alarming when taking Yarber's prior positions into consideration. (*J.W.* Doc. 51, ¶¶141-146; *P.R.* Doc. 41, ¶¶155-159; *C.A.* Doc. 1, ¶¶156-160). Before assuming the responsibilities as Jackson's mayor, Defendant Yarber served on the city's Budget Committee as a Council Member and Vice Mayor. (*J.W.* Doc. 51, ¶¶141-146; *P.R.* Doc. 41, ¶¶155-159; *C.A.* Doc. 1, ¶¶156-160). Thus, Yarber was present for information about the dangerous rise in lead levels and the city's malfunctioning corrosion control equipment. *Id*. Worse still—Yarber knew the reasoning behind the late Lumumba, Sr.'s budget allocations for the city's corrosion control treatment and still chose to withdraw the funding. *Id*. Yarber also got rid of the officials from the prior administration who initially sounded the alarm

about the city's elevated lead levels and installed Defendant Powell as Director of Public Works. (*J.W.* Doc. 51, ¶158; *P.R.* Doc. 41, ¶161; *C.A.* Doc. 1, ¶162).

Thereafter, in June 2015, the rising levels of lead exceeded federal regulations by twice the legal limit. (*J.W.* Doc. 51, ¶181; *P.R.* Doc. 41, ¶198; *C.A.* Doc. 1, ¶199). It is highly likely that Jackson's lead levels were much higher than results indicated in 2015 because Craig was directing employees to utilize testing methodology that was directly counter to EPA guidance in order to ensure broader compliance with federal and state law. (*J.W.* Doc. 51, ¶207; *P.R.* Doc. 41, ¶161; *C.A.* Doc. 1, ¶162). Nevertheless, the June 2015 results obligated the City and State Defendants to take action to mitigate adverse health effects through a compliance plan. (*J.W.* Doc. 51, ¶¶269-283; *P.R.* Doc. 41, ¶¶276-290; *C.A.* Doc. 1, ¶¶277-291). Instead of following the law, the State Defendants chose to withhold live-saving information and warnings from the public about Jackson's water crisis. (*J.W.* Doc. 51, ¶¶221-243; *P.R.* Doc. 41, ¶¶228-244; *C.A.* Doc. 1, ¶¶229-245). Defendant Craig waited six months before disclosing Jackson's lead level exceedances. *Id*. Appropriate warnings to Jackson's residents and water users were already long and tragically overdue by the time Craig finally informed the public about Jackson's lead exceedances. (*J.W.* Doc. 51, ¶252; *P.R.* Doc. 41, ¶259; *C.A.* Doc. 1, ¶260).

The City Defendants also made decisions to deceive the public by misrepresenting and downplaying the true extent of the crisis in statements to the public for years. (*J.W.* Doc. 51, ¶¶244-268; *P.R.* Doc. 41, ¶¶251-275; *C.A.* Doc. 1, ¶¶252-276). Their public statements made every effort to portray the city's water as safe to drink from 2016 to present day. *Id*. Further, City Defendants have continued to issue dangerously ignorant advice to the public regarding boil water measures. (*J.W.* Doc. 51, ¶¶289-291; *P.R.* Doc. 41, ¶¶296-298; *C.A.* Doc. 1, ¶¶297-299). Since 2016, the

public has received notices instructing them to boil water before consuming it but, through this process, the water molecules evaporate and leave behind a much higher concentration of lead. *Id*.

Defendant MSDH mandated a compliance plan for the City of Jackson in February 2016. (*J.W.* Doc. 51, ¶¶296-323; *P.R.* Doc. 41, ¶¶276-290; *C.A.* Doc. 1, ¶¶277-291). Part of this plan required the City of Jackson to develop an "engineer-designed corrosion control study" and provide a "plan for optimization of water treatment." *Id*. Defendant Yarber and his mayoral administration gave the bid to Defendant Trilogy which was owned by Thessalonian LeBlanc— the same woman who held the off-the-books fundraiser for Yarber during his mayoral campaign. (*J.W.* Doc. 51, ¶¶296-323 and 301; *P.R.* Doc. 41, ¶¶276-290 and 308; *C.A.* Doc. 1, ¶¶277-291 and 309). For Trilogy, this fundraiser and awarded contract resulted in an advantageous and lucrative deal—the cost of which amounted to roughly the same amount of money as Lumumba, Sr.'s initial corrosion control budget. (*J.W.* Doc. 51, ¶23; *P.R.* Doc. 41, ¶28; *C.A.* Doc. 1, ¶28). The firm advised the City to switch from a liquid lime corrosion control system to soda ash treatment. (*J.W.* Doc. 51, ¶¶296-323; *P.R.* Doc. 41, ¶¶303-330; *C.A.* Doc. 1, ¶¶304-331). Because of Mississippi's humidity, the soda ash clumped and caused even more damage to the already-malfunctioning equipment—something a reasonable engineer should have anticipated. *Id*.

This conduct by the City Defendants, State Defendants, and Trilogy created a wide-spread, prolonged public health crisis which caused various injuries to thousands of Jackson children. (*J.W.* Doc. 51, ¶¶362-367; *P.R.* Doc. 41, ¶¶370-374; *C.A.* Doc. 1, ¶¶371-375). The physiological, neurological, and behavioral effects of lead poisoning in children are heartbreaking and irreversible. (*J.W.* Doc. 51, ¶¶346-356; *P.R.* Doc. 41, ¶¶354-364; *C.A.* Doc. 1, ¶¶355-365). According to the EPA, childhood exposure to lead has been linked to damage in the central and peripheral nervous system and can cause learning disabilities, shorter stature, impaired hearing,

and impaired formation and function of blood cells. *Id*. This exposure has also been linked to adverse effects in childhood brain development resulting in reduced intelligence quotient (IQ), behavioral changes such as shortening of attention span and increased antisocial behavior, and reduced educational attainment. *Id*. Lead exposure also causes anemia, hypertension, renal impairment, immunotoxicity and toxicity to the reproductive organs. *Id*. The City of Jackson remains out of compliance with federal drinking water laws to this day, placing more children across the city at risk of these very injuries. (*J.W.* Doc. 51, ¶¶334-345; *P.R.* Doc. 41, ¶¶342-353; *C.A.* Doc. 1, ¶¶343-354).

## PROCEDURAL BACKGROUND

The Jackson Water Cases that Plaintiffs initiated assert allegations against the Defendants in *J.W.* and *P.R.* on October 19, 2021. (*J.W.* Doc. 1; *P.R.* Doc. 1). They filed nearly identical Original Complaints against the exact same Defendants and the same five claims for relief: Count I – A Fourteenth Amendment Substantive Due Process Violation of Plaintiffs' Right to Bodily Integrity against the City Defendants, Craig, and John Does 1-40; Count II – A Fourteenth Amendment Substantive Due Process Violation of Plaintiffs' Right to be free from State-Created Danger against the City Defendants, Craig, and John Does 1-40; Count III – Negligence Against the City Defendants and the State Defendants; Count IV – Professional Negligence Against Trilogy; and Count V – Negligence Against Trilogy. Plaintiffs amended their pleadings in both actions on February 17, 2022 but never changed the Defendants or Counts against them. (*J.W.* Doc. 51; *P.R.* Docs. 8 and 41). On March 29, 2022, Plaintiffs initiated a third cases against the same Defendants, alleging the same facts and asserting the same claims as *J.W.* and *P.R.*

By the end of March 2022, the initial pleading stage was in full swing for all Jackson Water Cases. The State Defendants filed their Motion to Dismiss in *J.W.* and *P.R.* on March 10, 2022—

in which they argued that Plaintiffs failed to state a proper § 1983 claim, State Defendants were entitled to qualified immunity, and recovery under state negligence was not possible. (*J.W.* Docs. 60-61; *P.R.* Docs. 50-51). On March 11, 2022, the City Defendants filed their Answer to Plaintiffs' Amended Complaints in those two cases. (*J.W.* Doc. 63; *P.R.* Doc. 55). Trilogy entered its Answer and a Motion to Strike the identical language from Plaintiffs' *J.W.* and *P.R.* Pleadings on April 11, 2022. (*J.W.* Docs. 70-72; *P.R.* Docs. 64-66). While Defendants' Answers in *C.A.* are not due until June 17, 2022, Plaintiffs anticipate the responsive pleadings and/or early motion practice in that case will substantially mirror the dockets of *J.W.* and *P.R.*

On May 12, 2022, the City Defendants filed four Motions to Dismiss in each of the first two cases. (*J.W.* Docs. 80-87; *P.R.* Docs. 74-81). The City of Jackson, Yarber, Powell, Lumumba, and Miller filed the first three Motions and argued that Plaintiffs failed to state a claim upon which relief could be granted, that Defendants are entitled to immunity, and that Plaintiffs also failed to meet Mississippi Tort Claims Act ("MTCA") requirements. (*J.W.* Docs. 80-85; *P.R.* Docs. 74-79). In the fourth Motion, Defendants Smash moved to dismiss for the foregoing reasons and added that Plaintiffs failed to mention him by name in the factual allegations of their complaint. (*J.W.* Docs. 86-87; *P.R.* Docs. 80-81). Absent consolidation, Plaintiffs' will file substantially the same oppositions to Defendants' four pending motions in each case. Shortly thereafter, Plaintiffs will likely be opposing substantially the same motions in the third case.

On May 27, 2022, Judge Carlton W. Reeves held a Status Conference regarding the Jackson Water Cases and directed Plaintiffs to file a Motion to Consolidate these three actions. Accordingly, Plaintiffs seek full consolidation of these cases for the purposes of discovery, motion practice, and trial. Judge Reeves also directed Plaintiffs to confer with opposing counsel about their positions on consolidation. Plaintiffs' counsel emailed counsel for City Defendants, State

Defendants, and Defendant Trilogy. As discussed in more detail herein, the City and the State Defendants consent to consolidation for the purposes of discovery only but oppose consolidation for various reasons in regard to motion practice and trial. Trilogy does not oppose full consolidation. Thus, all parties agree that these cases should be consolidated at least for the purposes of discovery.

For these reasons and in the spirit of judicial efficiency, the Jackson Water Cases are ripe for full consolidation. Plaintiffs in all three of these cases filed nearly identical complaints in the past six months, with the initial pleadings stage for *J.W.*, *P.R.*, and *C.A.* really starting between February 17 and March 29, 2022. Each case is postured in almost the exact same way in terms of initial pleadings and early motion practice. The cases all stem from very similar complaints and raise common questions of law and fact. Each case seeks relief against the same Defendants for the exact same alleged conduct. Further, each time Defendants file an Answer or a Motion, they submit nearly identical arguments. The same is true for Plaintiffs in their responses.

## RULE 42(A) STANDARD FOR CONSOLIDATION

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[c]onsolidating actions is proper when two or more district court cases involve common questions of law and fact, and the district judge finds that consolidation would avoid unnecessary costs or delay." *Moore v. Jackson Pub. Sch. Dist.*, No. 3:18-CV-817-CWR-FKB, 2020 U.S. Dist. LEXIS 153119, at *3 (S.D. Miss. Aug. 24, 2020) (quoting *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761-62 (5th Cir. 1989) (citations omitted)); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) (finding that consolidating actions in a district court "is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay.") Consolidation also permits district courts

"to expedite the trial and eliminate unnecessary repetition and confusion." *Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-4330, 2021 U.S. Dist. LEXIS 71755, at *5-6. (S.D. Tex. Apr. 12, 2021) (quoting *Dupont v. S. Pac. Co.*, 366 F.2d 193, 195 (5th Cir. 1966)).

"A trial court has broad discretion in determining whether to consolidate a case pending before it." *Edwards v. McDermott Int'l, Inc., No. 4:18-CV-4330, 2021 U.S. Dist. LEXIS 71755, at *5-6 (S.D. Tex. Apr. 12, 2021)* (quoting *Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985)). Consolidation provides trial courts with this broad discretion in order to efficiently manage their dockets. *Wilson v. Johns-Manville Sales Corp.*, 107 F.R.D. 250, 252 (S.D. Tex. Jul. 9, 1985) (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2381 at 253 (1971)). The district court may order consolidation despite the opposition of the parties. *St. Bernard Gen. Hosp., Inc.*, 712 F.2d 978, 989 (citing *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1013 (5th Cir.1977)).

## **ARGUMENT**

### I. CONSOLIDATION IS PROPER IN THE JACKSON WATER CASES

#### a. These cases involve common questions of law and fact.

As discussed above, Plaintiffs have asserted the same causes of actions against the same Defendants arising out of the same circumstances in each of the Jackson Water Cases. In prior cases involving the same overlapping of factual circumstances and legal issues, this Court has granted consolidation.

In *Moore v. Jackson Pub. Sch. Dist.*, this Court found that consolidation of actions was appropriate for all purposes—including trial and motion practice. *Moore*, LEXIS 153119 at *6. Bessie Moore filed two actions regarding discrimination and asserted nearly identical theories of recovery against defendant Jackson Public School District. *Id* at *1-4. This Court found that the

cases would "likely utilize many of the same witnesses and records, and involve common issues of law and fact." *Id*. In the *Moore* decision, this Court relied on *St. Bernard*, 712 F.2d 978 in which a hospital sought consolidation with an existing body of litigation with other hospital plaintiffs' claims against the same insurance defendants. *Id*. On remand, the Fifth Circuit directed the district court to reconsider consolidation after finding that the hospital presented similar claims as in the existing body of insurance litigation. *Id*. at 990.

Just like in *Moore* and *St. Bernard*, the Jackson Water Cases present the perfect opportunity for this Court to exercise consolidation. Both *Moore* and *St. Bernard* involved plaintiffs suffering from similar injuries who asserted common factual allegations and claims against the same defendants. Here, too, Plaintiffs all suffer from similar injuries caused by exposure to lead at the hands of the same Defendants' egregious conduct. Plaintiffs all filed substantially similar Complaints asserting factual allegations from 2013 to present day. Plaintiffs also allege the exact same claims of relief—three claims against the government Defendants for constitutional violations and negligence; two claims against Defendant Trilogy for professional and simple negligence. These Complaints gave raise to identical early motion practice in the Jackson Water Cases, which are poised to continue this costly and repetitive trend.

### b. Consolidation will avoid unnecessary costs and delays while eliminating unnecessary repetition and confusion.

It is all but guaranteed that similar Answers and Motions will be utilized in each Jackson Water Case. Without consolidation, this litigation will continue to generate copies of these materials and will undoubtedly create substantial, avoidable costs to each party. As a perfect example: Defendants' Answers and Motions in *J.W.* and *P.R.* are substantively the same. In the present state of motion practice and anticipated responses for the Jackson Water Cases, same or similar documents will be filed by all parties across all three cases. Without consolidation, this

Court will have to manage at least three separate dockets that are substantially identical and repetitive. For certain, these cases are on track to analyze similar or identical motion arguments three times over. As these cases move into the discovery phase, Plaintiffs' discovery efforts—including depositions, interrogatories, requests for production, and requests for admission—will be substantially similar if not exactly the same in every one of these cases. All Defendants agree that, at least for the purpose of discovery, the cases should be consolidated. Further, if these cases are not consolidated, the parties will have to prepare and present identical evidence and arguments in serial trials.

Going forward, consolidation offers a streamlined approach to discovery, motion practice, and trial so that parties are not litigating the same issues over and over. All parties would benefit from consolidation of motion practice and trial, as well. In the present stage of litigation following consolidation, Plaintiffs and Defendants will be able to fully advocate for their clients through consolidated motion practice without sacrificing any legal advantage. Down the road, should the Jackson Water Cases reach the trial stage, consolidation will create an organized path to trial by cutting down on duplicated evidentiary entries. Consolidating *J.W.*, *P.R.*, and *C.A.* will certainly allow the Court to avoid unnecessary costs and delay to all parties and eliminate repetition and thus will allow this Court to "manage [its] docket[] efficiently while providing justice to [all] parties." *Wilson*, 107 F.R.D. 250, 252.

c. **Consolidation will not prejudice the rights of any parties in these cases.**

Consolidation of these cases will in no way prejudice the rights of any party represented in the Jackson Water Cases. While it is improper to consolidate actions if there is prejudice to the rights of the parties, that is not the issue in the Jackson Water Cases. *See St. Bernard Gen. Hosp.*, 712 F.2d at 140. Unlike other cases where consolidation was denied, none of the concerns the

courts identified as improper basis for consolidation are present here. For instance, in *Mills*, plaintiffs tried to consolidate cases that were at vastly different stages in their proceedings. *Mills*, 886 F.2d at 762. Here, the Jackson Water Cases are in identical initial proceedings. For the first two—*J.W.* and *P.R.*—all initial pleadings and motions have been filed and are pending full briefing and adjudication. While responses in *C.A.* are not yet due, Defendants in that case must present their Answers and Motions by June 17, 2022. The Court stayed all Motion Responses across all three cases in order to determine whether or not consolidation is proper. By the end of this consolidation briefing schedule, Plaintiffs anticipate that *C.A.* will be postured almost identically with *J.W.* and *P.R.*

In *Dupont v. Southern Pacific Co.*, 366 F.2d 193 (5th Cir. 1966), the Fifth Circuit found that the trial court committed reversible error in consolidating the claims of four plaintiffs involved in a car accident because one of the plaintiffs—the driver—was claimed to be partially liable for the other plaintiffs' injuries. *Id*. Unlike *Dupont*, there is no claim that any Plaintiff has any liability against another Plaintiff in the Jackson Water Cases. Plaintiffs are all minor children who consumed, bathed in, and ate food washed and prepared in public drinking water that was poisoned with dangerous amounts of lead. There are no allegations present in these claims where any Plaintiff would be responsible for another Plaintiff's injuries. Indeed, all allegations are against the City Defendants, State Defendants, and Trilogy.

## II.  CONSOLIDATION IN SIMILAR PROCEEDINGS

As the litigation for the Flint Water Cases rapidly expanded, the Eastern District of Michigan—which oversaw the case—successfully applied consolidation to the proceedings and it supported judicial economy in a substantial way. *See the Eastern District's Order to Consolidate from the Flint Water Cases attached as* Exhibit 1. The tragedy of the Flint, Michigan water crisis

began in 2014. Government officials and engineers in Flint and Michigan made the decision to switch the city's water supply in a callus effort to save money. This switch caused immediate corrosion of old lead pipes in the city's water system. Thousands of children who drank this poisonous water suffered great injury and filed several lawsuits against government and engineering defendants. Several attorneys stepped in to represent these children and, as a result, created a repetitive and confusing body of litigation. Some cases were class actions and many cases involved individual plaintiffs. Some cases asserted property damage claims and some cases involved adult plaintiffs in addition to the child plaintiffs. All in all, the separate cases totaled over 10 actions with thousands of plaintiffs that involved common questions of law and fact against similar defendants.

The Eastern District of Michigan began adjudicating the Flint Water Cases in 2016. Like Your Honor, Judge Judith E. Levy held a status conference regarding the many different cases, in which she directed plaintiffs to make a motion for consolidation in 2017. Counsel for the plaintiffs filed the motion and Judge Levy ordered consolidation and, within five years,[1] the litigation was a well-organized system benefitting both plaintiffs and defendants. *Id*. Every Defendant except for the engineering firms were able to reach a settlement with plaintiffs by 2022. No party lost any defenses or suffered prejudice through this consolidation — it merely provided excellent judicial efficiency.

Consolidation worked for the children of Flint, the Eastern District of Michigan, and the defendants. In the matter of the Jackson Water Cases, the Southern District of Mississippi is situated in an even better position with this present Motion for Consolidation. By the time the Flint Water Cases were consolidated in 2017, nearly a year of litigation had passed with over 10 cases

---

[1] Two of these years included strict COVID-19 pandemic measures.

filed on behalf of thousands of plaintiffs seeking similar relief from similar defendants. Presently, there are only three cases filed. Further, the Jackson Water Cases are less varied in their parties and claims than the Flint Water Cases. The Flint cases involved adults with personal injury or wrongful legionella death claims and property claims. None of those issues are present in the Jackson cases as only minor Plaintiffs asserted personal injury claims.

During the motion for consolidation, plaintiffs' counsel also informed the Eastern District of Michigan of their intent to file a Master Complaint for individual plaintiffs along with a Short Form Complaint to streamline the addition of new plaintiffs. In the present issue, counsel for Plaintiffs have more clients awaiting the commencement of their action. As such, Plaintiffs also seek to file a Master Complaint and create a Short Form Complaint for easy addition of new plaintiffs. Plaintiffs attached to this Memorandum the Flint Motion for a Master Complaint and Short Form Complaint as examples for the Jackson Water Cases. Exhibits 2 and 3. Full consolidation along with a Master Complaint and Short Form Complaint will ensure judicial efficiency for Your Honor and this Court.

### III. DEFENDANTS' POSITIONS ON CONSOLIDATION

As directed by this Court, Plaintiffs' counsel has collected the position of each of the Defendants as to consolidation and attached the relevant email correspondence to this Memorandum. Exhibit 4.

Defendant Trilogy does not oppose consolidation of these matters. *Id*.

The City Defendants do not oppose consolidation for discovery purposes only. The City Defendants filed motions, requesting, among other things, dismissal of Plaintiffs' negligence claims due to the timeliness of service of purported MTCA notices on the City in *J.W.* and *P.R.* The

City Defendants take the position that this issue must be resolved before they consider consolidation of *J.W.*, *P.R.*, and *C.A.* for any other purpose beyond discovery. *Id*.

The State Defendants are not opposed in principle to consolidation for discovery only and state that it must review Plaintiffs' motion before commenting further. The State Defendants are opposed to trial consolidation and opposed to consolidation of early motion practice since briefing is complete on their early motions in *J.W.* and *P.R. Id*.

Thus, everyone agrees that consolidation is proper for discovery purposes and the Trilogy Defendants do not oppose consolidation at all. State Defendants oppose consolidation for trial and motion practice, especially since their first motions are fully briefed before the Court. City Defendants would have this Court hold off on consolidation due to MTCA arguments that they would also be entitled to assert under consolidation.

Over the objections of some Defendants, this Court should consolidate these matters. *See St. Bernard Gen. Hosp., Inc.*, 712 F.2d 978, 989. Nothing about full consolidation deprives Defendants from asserting any defense in their motion practice as a subset of these consolidated cases. Further, nothing about full consolidation will cause prejudice to any of the parties throughout discovery, motion practice, or trial.

## **CONCLUSION**

For the reasons stated above, this Court should grant full consolidation of the Jackson Water Cases. Consolidating these mattes will provide a solid foundation for judicial efficiency and will minimize repetitive Answers and Motions throughout this litigation.

WHEREFORE, Plaintiffs respectfully request this Court grant full consolidation of these matters.

Dated: June 3, 2022.

Respectfully submitted,
**LEVY KONIGSBERG LLP**

/s/ Kimberly L. Russell
Kimberly L. Russell, *PHV* 49630
Amber R. Long, *PHV 49271*
Corey M. Stern, *PHV* 49568
John P. Guinan, *PHV* 49681
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6298
klrussell@levylaw.com
along@levylaw.com
cstern@levylaw.com
jguinan@levylaw.com

-and-

**CHHABRA & GIBBS, P.A.**

/s/ Rogen K. Chhabra
Rogen K. Chhabra
Darryl M. Gibbs
120 N. Congress St., Suite 200
Jackson, MS 39201
(601) 948-8005
rchhabra@cglawms.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, the foregoing document was filed via the U.S. District Court's CM/ECF electronic system and a copy thereof was served upon all counsel of record.

/s/ Kimberly L. Russell<br>
Kimberly L. Russell