UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.W., a minor, by and through Amanda Williams
as guardian and next friend
        Plaintiffs,

v.   Civil Action No.: 3:21-cv-663-CWR-LGI

The City of Jackson, Mississippi; Chokwe A.
Lumumba Jr.; Tony Yarber; Kishia Powell;
Robert Miller; Jarriot Smash; the Mississippi
State Department of Health; Jim Craig; Trilogy
Engineering Services LLC; and John Does 1-40,
        Defendants.

**MEMORANDUM IN SUPPORT OF
MISSISSIPPI DEPARTMENT OF HEALTH AND JIM CRAIG'S
RESPONSE TO MOTION TO CONSOLIDATE**

Defendants Mississippi Department of Health ("MSDH") and Jim Craig ("Mr. Craig")(collectively "State Defendants") submit this Memorandum in Support of their Response to the Plaintiffs' Motion to Consolidate ("Motion"), as follows:[1]

**Summary of the Argument**

Plaintiffs moved to consolidate the three Jackson water cases - case numbers 3:21-cv-663; 3:21-cv-667; and 3:22-cv-171 – for all purposes. However, Plaintiffs' requests to consolidate motion practice and employ master/short form complaints are premature and improperly fail to define needed post-consolidation procedures. The Plaintiffs' request for trial consolidation of all Plaintiffs is impermissible.

---

[1] State Defendants will serve a responsive pleading in 3:22-cv-171 and will assert qualified immunity defenses and MTCA defenses by June 17, 2022. By filing this response, the State Defendants expressly reserve all defenses, including, but not limited to, failure to state a claim for which relief can be granted under Rule 12(b)(6). Further, the State Defendants specifically preserve their defenses and incorporate the arguments in their motions to dismiss filed in #3:21-cv-663 and #3:21-cv-667.

Trial consolidation of a 1000 differing personal injury Plaintiffs should never be permitted. Plaintiffs' claims are far too divergent to permit mass trial consolidation.

Plaintiffs also request motion consolidation and master and short form complaints. The Court should deny (or at least defer) those requests. Those requests are premature, as the Court stayed these matters.[2] Though the Court can lift the stay to allow certain issues to proceed (such as formation of a Case Management Order on these issues), it has not.

Also, motion consolidation is not necessary as to the pending Rule 12 motions of the State Defendants in 3:21-cv-663 and 3:21-cv-667 (and the similar motion to filed in 3:22-cv-1710). They can be ruled on efficiently without consolidation.

As to future motion consolidation and master and short form complaints, Plaintiffs do not define the consolidated procedures to be employed. Plaintiffs' request for consolidated motion practice and master and short form complaints are conceptual proposals without details. Without specific procedures, a ruling consolidating motion practice and authorizing master and short form complaints impedes case efficiency and will lead to more motion practice.[3]

At some point, consolidated motion practice and master and short form complaints are features of consolidation the parties and Court should consider, as both could create efficiencies.

---

[2] The proceedings in 3:21-cv-663; 3:21-cv-667 are stayed pursuant to the Local Rules due to immunity motions (and 3:22-cv-171 soon will be). Rule 16(b)(3)(B) of the Local Uniform Civil Rules for the Northern and Southern Districts of Mississippi provides:
> Filing a…motion asserting an immunity defense…stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal. Whether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief.

L. U. Civ. R. 16(b)(3)(B).

[3] The State Defendants do not oppose consolidating these matters for the purposes of discovery. Although Plaintiffs did not propose consolidated discovery protocols in their Motion, that is understandable since discovery is stayed due to pending immunity motions. If the early motions are denied, the parties will have an opportunity to discuss and the Court will be permitted to consider proposed Case Management Order procedures concerning consolidated discovery.

This need not occur immediately given the stay. Consideration of the issues could easily (and we suggest should) occur after the Court rules on the early motions.

In the event the Court desires to consider the possibility of consolidated motion practice and master and short form complaints now, the Court should instruct the parties to meet in an attempt to negotiate an initial Case Management Order that deals with those two issues and, importantly, the procedures that should be employed. Plaintiffs' counsel has addressed these issues in the past and State Defendants' counsel has addressed similar issues in many MDLs.[4]

The procedures governing consolidated claims -including how rulings will apply to the consolidated matters, how the parties file motions as to all matters and how parties can file motions specific to particular Plaintiffs, master and short form complaints - are not straight-forward or defined in the Federal Rules of Civil Procedure. As such, the State Defendants request 30 days to confer to determine areas of agreement and submit a proposed Case Management Order on these issues.[5]

## Argument

### I. Consolidation

Plaintiffs devote the first few pages of the Motion to a recitation of a "Factual Background." That section is actually a recitation of allegations of the Complaint, i.e. Plaintiffs' version of facts. It is not a recitation of undisputed facts.[6] However, it is true that the three Complaints

---

[4] Plaintiffs speak of the Flint, Michigan water litigation and seek mechanisms akin to those employed in that venue. However, this is not that litigation and other procedures and protocols may be appropriate. The Flint, Michigan way is not the only way to manage complex litigation.

[5] The protocols took time to put into place in the Flint, Michigan litigation. They were adapted after conferences between the parties, mapping out of areas of agreement and disagreement, and submissions by the parties to the Court. None of that has occurred in these cases.

[6] Though the response to this Motion is not the place to refute all of the Complaint allegations, it is not accurate to suggest the lead levels in the Jackson water system remain elevated based on 90th

3

look basically the same. But, similarity does not equate to consolidation under Rule 42, and consolidation with no governing procedures is prejudicial to everyone.[7]

### A. Discovery Consolidation

Consolidating these cases for discovery makes sense. There are many depositions on the liability side that would potentially be repeated in case after case without a level of consolidation. Similarly, consolidation could streamline some aspects of disclosures, written discovery and document production. If the Court denies the early (immunity and Mississippi Tort Claims Act) motions of MSDH and Mr. Craig (as well as the COJ Defendants), the parties and the Court can then put in place procedures to govern consolidated discovery. Coordinated discovery with proper protocols, should be more efficient for the Court and permit the parties to save time and money.

### B. Trial Consolidation

As to trial consolidation, Plaintiffs' request to consolidate the trial of 1000 Plaintiffs is impermissible. The analysis of trial consolidation under Rule 42 is comparable to the analysis of

---

Percentile Method testing. The EPA action level for lead in the water is .015 milligrams per liter (15 parts per billion). Determining whether the EPA action level is exceeded is based on testing of water from a number of homes. The testing is called the 90th Percentile Method. After tap water samples are taken from a select homes, the lead from water is measured for each sample taken. Then, the 10% of the samples with the highest amount of lead are averaged and that is reported as the measure of lead in the water system. The measure is used to determine action needed. Using this test methodology, the lead levels in one of the two Jackson water systems (system number MS0250008) tested over the EPA action level under the Lead and Copper Rule for the test period ending 12/31/15. However, based on the home tap sampling employing the 90th Percentile Method, the lead levels in that system fell below the EPA action level for lead in the 1/1/17 to 6/30/17 test sampling and have remained below that level since. (Note - The second Jackson water system (system number MS0250012) never tested over the EPA action level for lead under these tests procedures.) This information is set forth in the Lead and Cooper Sample Summary Results for the two Jackson water systems which is publicly available on the MSDH website.

[7] Rule 42 governs Plaintiffs' request for consolidation. It states:
   (a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:
      (1) join for hearing or trial any or all matters at issue in the actions;
      (2) consolidate the actions; or
      (3) issue any other orders to avoid unnecessary cost or delay.

joinder under Rule 20. Both Rule 42 consolidation and Rule 20 joinder require analysis of whether the actions involve a common question of law or fact. *Compare* Fed. R. Civ. P. 20(a) ("Persons may join in one action as plaintiffs if […] they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and […] any question of law or fact common to all plaintiffs will arise in the action.") *to* Fed. R. Civ. P. 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may […] consolidate the actions."). Both rules afford similar discretion to the Court. *See Hodges v. Coldwell Banker Real Estate Corp.*, No. 4:05CV168-P-A, 2007 WL 1200118, at *3 (N.D. Miss. April 19, 2007) (discussing court's discretion to order separate trials under Rule 42 as comparable to "contours of the discretion afforded" under Rule 20).

Importantly, here, each rule respectively prohibits joinder or consolidation where there is risk of undue prejudice. *See, e.g.*, *Janssen Pharm., Inc. v. Bailey*, 878 So.2d 31, 48 (Miss. 2004) (reversing trial court's improper Rule 20 joinder of 10 plaintiffs in action against drug manufacturer; defendants were unfairly prejudiced at trial by overwhelming the jury and confusing the issues); *see also, e.g.*, *Coates v. Saia Motor Freight Line, LLC*, No. 3:20-CV-25-DMB-RP, 2020 WL 1695691, at *2 (N.D. Miss. April 7, 2020) (allowing consolidation based on finding of no risk of prejudice). As such, cases applying the Rule 20 joinder analysis – particularly with respective to potential prejudice – are instructive here.

In *Janssen Pharm. v. Armond*, 56 plaintiffs sued a drug manufacturer alleging negligent drug development, testing, manufacture, mislabeling, misrepresentation, and fraudulent advertising and continued sales even after the dangers were known or should have been known. 866 So.2d 1092, 1096 (Miss. 2004). The Mississippi Supreme Court found joinder was not

appropriate because the 56 plaintiffs had different medical histories, different injuries at different times, ingested different amounts of the drug over different periods of time, received different medical advice from 42 different doctors who each had his or her own reasons for the determination of each plaintiffs' medical treatment. *Id.* The Supreme Court found joinder was not appropriate, in large part, because "a joint trial would require 56 different fact situations, 56 sets of medical histories, and 56 sets of witnesses and testimony, all in addition to addressing the myriad causation and other [negligence] issues," which would "unavoidably confuse the jury and irretrievably prejudice the defendants." *Id.* at 1098 (also noting that personal injury cases involving large damage claims are particularly ill-suited for joint trials).

*Armond* relied on this Court's ruling in *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28 (S.D. Miss. 1994). As explained in *Armond*:

> [T]he *Demboski* complaint involved different plaintiffs, separate accidents, different crossings, different train crews, different dates and times, different driver conduct, different vehicles, different injuries, different damages, different defensive postures, and different physical facts which relate to federal preemption. Based on this, the judge found that [a]lthough Plaintiffs may develop some evidence indicating negligence on the part of Defendant that will be common to all claims, this Court is persuaded that common sense dictates that the evidence in other instances as to each specific incident will be so dissimilar that it would be very difficult to manage a consolidated trial.

*Id.* at 1099 (citing *Demboski* and quoting *Illinois Central R.R. Co. v. Travis*, 808 So.2d 928, 934 (Miss. 2002)) (internal citations and quotations omitted).

As the *Armond* court frankly stated: "the discretion to consolidate is not unfettered. Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.... The benefits of efficiency can never be purchased at the cost of fairness." *Id.* at

1100.[8]

The Mississippi Supreme Court's concerns articulated in *Armond* are even more pronounced in this case. This litigation already involves 1000 Plaintiffs, and each Plaintiff is different – different potential lead exposures from sources that have nothing to do with the Jackson water; different potential lead exposures from the Jackson water (if any); different homes (with different aged piping leading to the home and different lead make-up of those pipes); different fact witnesses (such as family members) that will support each minor's injury claims; different doctors and other causation experts; different alleged exposure dates; different educations backgrounds and intelligence levels of the minor children; and different claims and types of alleged injury.  For all the same concerns of confusion and prejudice articulated in *Armond* (where there were merely 56 plaintiffs), it is not appropriate to a consolidate for trial nearly 1000 Plaintiffs with claims differing to this degree.

While there are some common issues of fact and law on the liability side, the issues are not all common.  For example, there are not common issues as to whether each Plaintiff sustained injury from the Jackson water.  Each Plaintiff must be evaluated independently from a

---

[8] There are numerous cases holding trial joinder is improper due to the risk of prejudice of a consolidated trial. *See, e.g.*, *Cain v. Armstrong World Indust.*, 785 F. Supp. 1448, 1457 (S.D. Ala. 1992) (ordering a new trial after plaintiff overwhelmed the jury with the "impossible task of being able to carefully sort out and distinguish the facts and law of thirteen plaintiffs' cases that varied greatly in so many critical aspects … thereby prejudicing each [defendant]"); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343-45 (4th Cir. 1998) (improper joinder where plaintiffs litigated on behalf of a "composite 'perfect plaintiff' combining the strongest aspects" of all claims); *Bailey*, 878 So.2d at 48 (reversing based on improper joinder of 10 consumers' claims; "[T]here can be little doubt that this method of presentation of evidence created unfair prejudice for the defendants by overwhelming the jury with this testimony, thus creating a confusion of the issues."); *Hegwood v. Williamson*, 949 So.2d 728, 731 (Miss. 2007) (severance at trial was proper under Rules 20 and 42 to avoid risk of prejudice); *3M Co. v. Johnson*, 895 So.2d 151 (Miss. 2005) (reversing and remanding for new trial where manufacturer was unfairly prejudiced due to improper joinder; plaintiffs all alleged exposure to asbestos, but plaintiffs worked in different jobs, for different employers, at different times, used different protective equipment, and had different amounts of damages, different medical histories, different work histories, different exposures, and different diagnoses – but jury still awarded plaintiffs identical compensatory damages of $25 million each). All of the same concerns are presented here.

7

liability standpoint. Further, the damages issues are not common among the individual Plaintiffs. In sum, trial consolidation of a 1000 Plaintiffs would never be appropriate and the Court should deny Plaintiffs' request for same.[9]

*C. Motion Consolidation*

Plaintiffs also seek consolidation of motion practice. The Court should deny that portion of the Motion as premature. The cases are stayed due to immunity motions by the State Defendants (and the COJ Defendants), including a stay of issues related to any Case Management Conference and Case Management Order. Further, any consolidation of these actions for motion practice should not occur after the Court resolves the State Defendants' pending motions to dismiss.

Those motions to dismiss assert immunity defenses under both state and federal law, and the State Defendants have a right to have those defenses considered as early in the litigation as is practicable. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."); *Randle v. Lockwood*, 666 F. App'x 333, 336 (5th Cir. 2016) ("resolving the applicability of qualified immunity as early as possible serves to protect public officials" from unwarranted liability and costly discovery); *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (Miss. 3003) (immunity under the Mississippi Tort Claims Act ("MTCA") "should be resolved at the earliest possible stage of litigation."). Further, the denial of a motion to dismiss based on a defense of immunity not to be sued (such as qualified or sovereign immunity) is an immediately appealable under the collateral order doctrine. *See Zapata v. Melson*, 750 F.3d 481, 484 (5th Cir. 2014).

---

[9] This Court will need to consider at some point how the cases will be tried, but not at this stage of the litigation, and the Court should never permit a consolidated trial of 1000 Plaintiffs.

These defenses have been fully briefed in the 3:21-cv-663 and 3:21-cv-667 and the State Defendants will file a substantially similar motion to dismiss in 3:22-cv-171 shortly. These dispositive issues are ripe for consideration by the Court in two actions (and soon will be in the third). Hence, consolidation for motion purposes meaningfully will not add to case efficiencies or preserve any resources of the parties for these motions.

Further, consolidating motion practice in a manner that moots the State Defendants' motions to dismiss or otherwise requires them to be re-filed and re-briefed would be prejudicial to the State Defendants and would delay the litigation and waste the parties' resources. The State Defendants oppose consolidation of early motions if consolidation requires the re-arguing/re-filing of fully briefed motions.[10] This is not to say the Court could not rule on the State Defendants' motions in these cases at the same time. It could, as the fully briefed motions are similar, as will be the third.

Further, it is unclear what the consolidation of future motion practice in these actions would entail. Any motion consolidation order would impact the pending motions of the State Defendants (and the COJ Defendants as well). Plaintiffs have not proposed a procedure for consolidation, including protocols for handling existing motions or any future global motions and/or Plaintiff-specific motions. These are other reasons why Plaintiffs' broad request for consolidation for all purposes is inappropriate. Consolidation for the purposes of motion practice must also account for the State Defendants' right to assert any and all plaintiff-specific defenses available to them under the MTCA. For example, the MTCA requires each Plaintiff to give the State Defendants specific pre-trial notice of their claims, *see* Miss. Code Ann. § 11-46-11, and Plaintiffs cannot extinguish this requirement by joining their claims with other individuals or

---

[10] Alternatively, if this Court deems consolidation of these actions appropriate for motion practice, it should do so in a way that does not invalidate the State Defendants' motions to dismiss.

9

consolidating their cases. While there will be legal questions that apply broadly to all Plaintiffs and can be briefed on a consolidated basis, Defendants must also be able to bring Plaintiff-specific issues before the Court. Since Plaintiffs' Motion does not offer a protocol under which such issues could be raised, the Court should deny (or defer) the request to consolidate motion practice.

That is not to say the State Defendants will oppose in perpetuity the consolidation of motion practice. But, decisions on consolidation for motion practice are not simplistic and the State Defendants oppose motion consolidation without a defined plan for how it would be administered.

### II.     Master and Short Form Complaints

Plaintiffs also seek to file master and short form complaints. That request is premature. Hence, the Court should deny (or defer) the request.

First, cases 3:21-cv-663; 3:21-cv-667 are stayed due to immunity motions (and 3:22-cv-171 soon will be). Next, while Plaintiffs seek approval to file a master complaint, they have not provided a master complaint form to be used in **this** matter. Further, Plaintiffs also seek to employ a short form complaint, but they have not provided a short form Complaint to be used in **this** matter. It is premature to determine procedures such as these, or other Case Management Order issues, when there is not a proposed master complaint or short form complaint that exists tailored to this case.

Further, the filing of a master complaint would likely negate the previous motion filings on earlier complaints in these matters and force the State Defendants to re-file motions to dismiss premised on a new master complaint, which the State Defendants oppose. Also, a master

complaint by its nature would be linked to consolidated motion practice in the cases, which has not been defined by Plaintiffs' Motion or discussed among the parties.

Here, the Court has not issued a Local Rule 16(a) Order and/or requested a Case Management Order. Issues such as master complaints and short form complaints are procedures commonly addressed in such an orders. The parties have not even meet and conferred on master/short form complaints or any aspect of the content of either or how such complaints would be administered. As, such denial of Plaintiffs' request is appropriate. Again, this is not to say State Defendants will oppose in perpetuity the adoption of master and short form complaints, but they do without a properly defined plan for how such complaint practice would be administered.

### III. Future Discussion of Motion Practice and Master/Short Form Complaints

Without Case Management Order guidelines and procedures on consolidated motion practice and master and short form complaints, a consolidation order would create confusion. Though the State Defendants oppose any discovery while their immunity motions are pending, if the Court desires to lift the stay to permit consideration of the issues of consolidated motion practice and master and short form complaints, the State Defendants submit that the parties should meet and confer to attempt to develop a plan, submit a proposed Case Management Order on the issues, and have a Case Management Conference to discuss protocols needed to carry out motion consolidation and master and short form complaint practice.

There are guidelines in the Local Rules that address the procedure employed to discuss and define such practices. L. U. Civ. R. 16(a) provides that "The court will issue an Initial Order setting the deadline for the attorney conference required by FED. R. CIV. P. 26(f) and a date for a case management conference [CMC] with the magistrate judge. . . " L. U. Civ. R. 16(c) states

"The magistrate judge may require the parties to submit a proposed case management order no later than fourteen days after the attorney conference. [See Official Form No. 1]. Disagreements with the content of the proposed case management order must be noted on the submitted written plan."

Plaintiffs' request for motion consolidation and master and short form complaints, without the meet and confer envisioned by the attorney conference, without affording the parties an opportunity to seek areas of agreement, and without affording the Court suggested Case Management Order submissions is inconsistent with the Local Rules as well as Rule 26(f). The Court should deny same.

## CONCLUSION

Based on the foregoing, the Mississippi Department of Health and Jim Craig request that the Court deny Plaintiffs' request for consolidation of motion practice and master/short form complaints. Further, they request that the Court deny Plaintiffs' request for trial consolidation - trial consolidation of 1000 Plaintiffs is impermissible. The State Defendants do not oppose discovery consolidation, but submit it will be necessary in the future to develop protocols for such consolidation. The State Defendants request any and all further relief to which this Court finds they are entitled.

Respectfully submitted, this the 10th day of June 2022.

                               MISSISSIPPI STATE DEPARTMENT OF HEALTH
                               JIM CRAIG

                               By:    */s/ Meade W. Mitchell*
                                         Meade W. Mitchell, MB # 9649

OF COUNSEL:

Meade W. Mitchell, MB # 9649
Orlando R. (Rod) Richmond, MB # 9885
Phillip S. Sykes, MB # 10126
Edderek (Beau) Cole, MB # 100444
Margaret Z. Smith, MB # 104178
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Post Office Box 6010
Ridgeland, MS 39158-6010
Tel: 601-985-4560
Fax: 601-985-4500
Meade.Mitchell@butlersnow.com
Orlando.Richmond@butlersnow.com
Phillip.Sykes@butlersnow.com
Beau.Cole@butlersnow.com
Margaret.Smith@butlersnow.com

Gerald L. Kucia, MB #8716
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4072
Fax: (601) 359-2003
Gerald.kucia@ago.ms.gov

## CERTIFICATE OF SERVICE

I, Meade W. Mitchell, one of the attorneys for the Mississippi State Department of Health and Jim Craig, do hereby certify that I have this day served a true and correct copy of the above and foregoing document by filing it using the ECF system which sent notice of such filing to all counsel of record.

SO CERTIFIED, this the 10th day of June 2022.

/s/ Meade W. Mitchell
MEADE W. MITCHELL

64660678.v1