# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **J.W.** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:21-cv-663-CWR-LGI** |
| **THE CITY OF JACKSON, et al.** | **DEFENDANTS** |
| **P.R., et al.** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:21-cv-667-CWR-LGI** |
| **THE CITY OF JACKSON, et al.** | **DEFENDANTS** |
| **C.A., et al.** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:22-cv-171-CWR-LGI** |
| **THE CITY OF JACKSON, et al.** | **DEFENDANTS** |

## CITY OF JACKSON'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

The City's initial briefing posed three discrete questions – establishing each should be answered in the negative – whether the Court should: 1) expand due-process rights to guarantee safe drinking water; 2) eschew stare decisis and recognize a state-created-danger claim that Plaintiffs fail to plead; and 3) allow Plaintiffs to flaunt the notice requirement of the Mississippi Torts Claim Act. Plaintiffs' eighty-six page response is verbose, but most notable for three concessions that confirm the City is entitled to dismissal.

First, Plaintiffs do not dispute the Constitution does not guarantee the right to safe drinking water. To salvage their bodily-integrity claim, Plaintiffs assert the City compelled them to ingest lead-contaminated water, but fail to allege how.

Second, Plaintiffs concede the Fifth Circuit does not recognize the state-created danger theory of liability. Nevertheless, Plaintiffs attempt – in vain – to re-interpret Fifth-Circuit

1

precedent to remove elements of the articulated standard for a state-created-danger claim, relying on cases that directly contradict Plaintiffs' interpretation.

Last, Plaintiffs confess they did not give the required pre-suit notice for their negligence claim in *J.W. v. The City of Jackson, et al.*, No. 3:21-cv-663, and *P.R., et al. v. The City of Jackson, et al.*, No. 3:21-cv-667.

Plaintiffs' concessions are fatal to their claims against the City, and the arguments Plaintiffs chose to advance in response to the City' dispositive motions are unavailing.

## ARGUMENT

**I.    Plaintiffs' bodily-integrity claim fails, because the City did not compel them to drink water.**

A.    <u>The Constitution does not guarantee safe drinking water.</u>

Plaintiffs' attempt to expand the scope of the Fourteenth Amendment to guarantee rights not set forth in the first eight Amendments to the Constitution or rooted in the United States' history and tradition. The Supreme Court's recent decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) decision cautions against such expansion. The Court warned,

> In interpreting what is meant by the Fourteenth Amendment's reference to 'liberty,' we must guard against the natural human tendency to confuse what that Amendment protects with our own ardent views about the liberty that Americans should enjoy. That is why the Court has long been 'reluctant' to recognize rights that are not mentioned in the Constitution.

*Id.* at 2247-48 (quoting *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992)).

While many may have "ardent views" that the Fourteenth Amendment should protect a right to safe drinking water, no such right is mentioned in the Constitution. And the United States have confirmed the Constitution does not guarantee it. In the United States' Explanation of Position on the United Nations Human Rights Council's recognition of the right to water as a

human right, the government states, **"The right to safe drinking water and sanitation is not one that is protected in our Constitution, nor is it justiciable as such in U.S. courts**, though various U.S. laws protect citizens from contaminated water." *See* The United States, *Observations by the United States of America on the Relationship Between Climate Change and Human Rights*, http://www.ohchr.org/Documents/Issues/ ClimateChange/Submissions/USA.pdf (emphasis added).

Plaintiffs do not contest there is no fundamental constitutional right to safe drinking water. *See* Pls.' Resp. [Dkt. 114] at 68-69.[1]  That concession is fatal to Plaintiffs' bodily-integrity claim.  As Judge David McKeague observed, "If the Constitution does not guarantee the right to receive clean water on the one hand, how may it guarantee the right not to be exposed to contaminated water on the other?"  *See Guertin v. Michigan*, 912 F.3d 907, 955 (6th Cir. 2019) (McKeague, J., dissenting).  Taking actions that may have unintentionally failed to prevent lead from entering water may constitute negligence, may constitute violations of the Safe Drinking Water Act, or may be, otherwise, actionable.  But, it does not violate Plaintiffs' constitutional rights.

Plaintiffs seek to re-define the constitutional right to bodily integrity well beyond the limits of the Constitution. First, they rely on a *Lochner*-era case, *Meyer v. Nebraska*, 262 U.S. 290, 399 (1923), which struck a law prohibiting teaching German to a child who had not passed the eighth grade. *Meyer's* holding—the recognition of a liberty interest in "the upbringing of one's children"—survived, but its expansive *dicta* did not.  *See Wash. v. Glucksberg*, 521 U.S. 702, 720-721 (1997); *Planned Parenthood v. Casey*, 505 U.S. 833, 861 (1992) (noting that the *Lochner* line

---

[1] All references are to the Response filed in *P.R., et al. v. The City of Jackson, et al.*, No. 3:21-cv-667.

of precedent recognizing a liberty interest in the right to contract did not survive the Great Depression).

Then, Plaintiffs quote *Glucksberg*, 521 U.S. at 720-721, without following its teaching. In *Glucksberg*, the Supreme Court dismissed a claim that the Fourteenth Amendment protects a right to state-assisted suicide. The *Glucksberg* plaintiffs argued, as Plaintiffs do here, that *Cruzan v. Missouri Department of Health*, 497 U.S. 261 (1990), recognized a person's liberty interest in choosing between life and death. The *Glucksberg* Court explained that *Cruzan* "was not simply deduced from abstract concepts of personal autonomy," but from a long common-law tradition "protecting the decision to refuse unwanted medical treatment." 497 U.S. at 725. The Court found that a right to state-assisted suicide "has never enjoyed similar legal protection," and therefore dismissed the Fourteenth Amendment claim. *Id.*

*Glucksberg* emphasized that the Court must examine whether the right at issue is "deeply rooted in this Nation's history and tradition," and it must be sure of a "'careful description' of the asserted fundamental liberty interest." *Id.* at 720-21.  None of the cases Plaintiffs cite, save *Guertin v. Michigan*, involve ingestion of contaminated water. There is no "deeply rooted" constitutional right to not be exposed to contaminated water. There is a *statutory* right that was established in 1974, but Plaintiffs do not bring a statutory claim.  As *Glucksberg* cautions against, Plaintiffs extract "abstract concepts of personal autonomy" to argue the case law recognizes a constitutional right not to ingest neurotoxins in the public water supply.  The Court should not endorse Plaintiffs' efforts.

For example, Plaintiffs rely heavily on *Missouri v. McNeely*, 569 U.S. 141 (2013). *Missouri* raised the issue of whether taking a blood test of a drunk driver without a warrant violates the Fourth Amendment, as did another case Plaintiffs cite, *Schmerber v. California*, 384

4

U.S. 757 (1966). *Schmerber* found that causing blood to be withdrawn from the driver "**did not offend**" due process. 384 U.S. at 760 (emphasis added) (quoting *Breithaupt v. Abram*, 352 U.S. 432 (1956)). *McNeely* considered the Fourth Amendment in rejecting a *per se* rule of exigent circumstances justifying a warrantless blood test for alcohol. Neither of these cases recognizes a "deeply rooted right" to be protected from consuming contaminated water. In rejecting a *per se* rule allowing warrantless blood tests, *McNeely* recognized that "any **compelled** intrusion into the human body implicates significant, constitutionally protected interests." 569 U.S. at 159 (emphasis added).

That is consistent with the bulk of cases Plaintiffs rely upon, all of which recognize that when the State intentionally, directly, and forcibly intruded into or upon a person's body, his liberty interest may have been violated. *See, e.g., Rochin v. Cal.*, 342 U.S. 165 (1952) (Due Process prohibits the state from forcing a suspect to ingest a vomit-inducing solution to forcibly extract evidence); *Winston v. Lee*, 470 U.S. 753, 767 (1985) (Due Process prohibits surgery to forcibly extract a bullet from a person's chest to obtain evidence); *Wash. v. Harper*, 494 U.S. 210, 221, 223 (1990) (Due Process protects an inmate from the forcible administration of antipsychotic drugs).

Plaintiffs do not claim the City injected them with lead or physically forced them to drink contaminated water. Instead, they claim the City was deliberately indifferent to the risk of Plaintiffs drinking contaminated water, which is not comparable to the cases finding a violation of the constitutional right to bodily integrity based on forced or compelled intrusions.

B. <u>Plaintiffs' allegations do not demonstrate the City compelled them to drink water they allege is lead-contaminated.</u>

Plaintiffs know the act of drinking contaminated water, alone, is not enough. This is why they argue their consumption was not voluntary. They contend that the City's misrepresentations

5

deprived them of consent. Yet, Plaintiffs never allege they relied on, or even heard or read, any misrepresentations. The *Guertin* Court found that "[m]isleading Flint's residents as to the water's safety—so that they would continue to drink the water and Flint could continue to draw water from the Flint River—is no different than the forced, involuntary invasions of bodily integrity that the Supreme Court has deemed unconstitutional." *Guertin*, 912 F.3d at 926. If Plaintiffs never heard or read the alleged misrepresentations, then they could not have been misled. And if Plaintiffs were not misled into drinking the water, then even under *Guertin*, there is no argument that their consumption of lead was "compelled."

Plaintiffs' response reveals why this case should be dismissed. They state, "[R]eliance on misleading public statements is not a prerequisite to a bodily integrity claim, especially where the consumers are paying for safe, not poisoned, water." Pls.' Resp. [Dkt. 114] at 51. But this is contrary to their **entire argument** that they are not claiming a constitutional right to safe water.

Plaintiffs address the primary case in a footnote. In *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008), the Court found that "no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements." There, plaintiffs claimed something remarkably similar to this case: that government officials had made misrepresentations about the safety of the air quality following 9/11. Plaintiffs dismiss this case as dealing with a disaster situation involving competing government interests, and they cite *Guertin* as rejecting this argument because there are no "balancing of competing governmental interests" here. But there *are*. The City experienced frequent drops in water pressure before switching water sources. A loss in water pressure leads to an increased risk of harmful bacteria in the water supply, prompting boil water notices so that the hot water will kill the bacteria. The City sought to solve *this* problem by moving away from the well-water system. Balancing the

risk of lead with the risk of bacteria is the essence of competing government interests. And regardless of the circumstances, *Benzman* recognizes that misleading statements do not constitute a government-compelled bodily intrusion by a foreign contaminant.

Plaintiffs fall back to arguing a failure to warn theory, which sounds in negligence, not constitutional law, under *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). In *Collins*, the Court rejected a Due Process claim for failure to warn of an unsafe work environment, holding "we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law…" *Id.* at 128 (citing *Daniels v. Williams*, 474 U.S. 327, 332 (1986)). Plaintiffs' failure-to-warn case fails on the face of their pleadings, because the articles they rely upon are replete with examples of the City warning that water should not be drunk without taking precautions. But more fundamentally, it fails because failing to warn of a risk of harm does not equate to compelling ingestion of a toxic substance.

No Supreme Court case finds a violation of bodily integrity based on a failure to warn. Nor do any of the Fifth Circuit cases. Plaintiffs triumphantly point to a very recent Fifth Circuit case, *Tyson v. Cty. of Sabine*, 42 F.4th 508 (5th Cir. 2022), to claim that the violation of bodily integrity does not require physical contact between the government actor and the plaintiff. The horrific facts of *Tyson* demonstrate that when direct physical contact is not required, coercion *is*. In *Tyson*, a sheriff's deputy, conducting a purported "wellness check," coerced the plaintiff to expose her breasts, vagina, and clitoris to him while he masturbated on threat of being ticketed for possession of drug paraphernalia. *Id.* at *4-5. The Court found that "Deputy Boyd's use of coercion to compel Tyson to engage in physical sex acts against her will violated her right to bodily integrity." *Id.* at *16; *see also Petty v. Venus Corr. Unit*, No. 3:00-CV-1753-M, 2001 U.S.

Dist. LEXIS 27123, at *8 (N.D. Tex. Apr. 10, 2001) (finding uncoerced public masturbation did not violate plaintiffs' right to bodily integrity).

There are no allegations the City used threats or coercion to force Plaintiffs to ingest lead. There are no allegations that the City physically forced Plaintiffs to drink contaminated water or injected them with lead. Assuming the allegations of Plaintiffs' pleadings are true, lead came into physical contact with Plaintiffs, but the City did not.

Plaintiffs strain mightily to transform Fifth Circuit precedent into something more expansive. They rightly recognize that *Young, Taylor*, and other sexual-abuse cases do not support their claim; instead, they argue that these cases do not *foreclose* their claim. *See* Pls.' Resp. [Dkt. 114] at 60-61. That ignores the guidance of *Glucksberg* and *Collins* that the Court should be wary of creating, through expansion, due-process rights.

The extent to which Plaintiffs stretch is plain from their discussion of *Attenberry v. Nocona General Hospital*, 430 F.3d 245 (5th Cir. 2005). In *Attenberry*, a nurse intentionally injected patients with a paralytic drug. The question before the Court was her supervisors' liability, and the Court found that allegations were sufficient to establish supervisor liability for the underlying constitutional violation. Plaintiffs claim this is evidence that the Court has found constitutional violations without direct physical contact or coerced sexual abuse, because the supervisors themselves did not contact the patients—though their employee forcibly did.

Supervisor liability is not at issue in this case. Plaintiffs do not allege that some lower-level employee directly injected them with lead. *Attenberry* supports the point the City originally made that all of the Fifth Circuit bodily-integrity cases involved direct physical

contact. *Tyson*'s recognition of coerced sexual bodily exposure as a violation of the right to bodily integrity does not alter the analysis, because there is no coercion alleged here.[2]

In sum, the Supreme Court cases Plaintiffs rely on involve the government, through direct physical contact between a state actor and the plaintiff, forcing an intrusion into or upon the plaintiff's body. The Fifth Circuit cases on which Plaintiffs rely involve that or the forced physical exposure of the plaintiffs' own body to the government actor. There are no cases binding upon this Court that are similar to this one. Plaintiffs contend that is no bar to the Court's analysis, but *Collins* and *Glucksberg* counsel otherwise. The Court should not expand Due Process rights to encompass Plaintiffs' exposure to an environmental contaminant, or the City's failure to warn Plaintiffs of that contaminant, or even the City's claimed misrepresentations about that contaminant. Plaintiffs may have stated a tort claim or a statutory violation, but they have not stated a constitutional violation.

## II. A third-party crime and known victim are essential elements of a state-created-danger claim under the standard articulated in the Fifth Circuit.

Plaintiffs acknowledge "the Fifth Circuit has not adopted the state-created danger theory of liability." Pls' Resp. [Dkt. 114] at 70 n.31. Plaintiffs could (and, probably, should) have voluntarily dismissed their state-created-danger claim. Instead, they strain to re-write Fifth Circuit precedent, relying on cases that directly contradicts Plaintiffs' unique take on the law.

---

[2] *Tyson* relied upon two prior cases for the proposition that "we have recognized violations of the right to bodily integrity where the officer never physically touched the plaintiff and the plaintiff suffered purely psychological harm." *Tyson v. Cty. of Sabine*, 42 F.4th 508 (5th Cir. 2022). First, the Court cited *Petta v. Rivera*, 143 F.3d 895, 903 (5th Cir. 1998). In *Petta*, the police officer shot bullets at the plaintiffs' car, attempted to forcibly enter the vehicle, and chased the vehicle at high speeds. While he did not make physical contact with the plaintiffs, he purposefully attempted to, which the Court found sufficient to state an excessive force claim under the Fourteenth Amendment. Second, the Court cited *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004), a Fourth Amendment, not Fourteenth Amendment, case.

      A.      <u>A third-party crime is an element of a state-created-danger claim.</u>

First, Plaintiffs rely on *Doe v. Covington County School District*, 675 F.3d 849, 865 (5th Cir. 2012), to advance the novel argument that the Fifth Circuits defines the contours of a state-created-danger claim "such that third-party crime or violence" need not be shown. Pls.' Resp. [Dkt. 114] at 70. Nothing could be further from the truth. As the City has already explained, the often-articulated test for a state-created-danger claim in the Fifth Circuit **starts** with two elements. *See, e.g.*, *Doe*, 675 F.3d at 864-65 (5th Cir. 2012) (en banc) (explaining "the state-created danger theory requires a plaintiff to show (1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff."). But, the analysis does not end there. Under the test articulated by the Fifth Circuit, the second element, i.e., the deliberate indifference element, is subdivided into three prongs, which combine to subsume the first element. *Doe* is clear that the deliberate-indifference element of a state-created-danger claim requires a showing that "the environment created by the state actors must be dangerous; they must know it is dangerous; and they must have used their authority to create an opportunity that would not otherwise have existed for the **third party's crime** to occur." *Id.* at 865 (emphasis added). The third-party-crime element of a state-created-danger claim is not disputed in the Fifth Circuit; it has been recognized time and time again, including in the other case upon which Plaintiffs rely. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 313-14 (5th Cir. 2002) ("To establish [the] deliberate indifference [prong the state-created-danger theory], the plaintiff must show that the state actors created a dangerous environment, that they knew it was dangerous, and that they used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.") (internal quotations omitted); *see also Robinson v. Webster Cty.*, 825 F.

App'x 192, 195 (5th Cir. 2020) (noting the state-created-danger theory is an exception to the general rule that " a state's failure to protect an individual against **private violence** simply does not constitute a violation of the Due Process Clause.") (internal quotations omitted) (emphasis added).

Like its sister circuits, the Fifth Circuit recognizes the state-created-danger theory of liability redresses a state actor's failure "to protect an individual from injuries inflicted by a third party if the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to [an] individual's injury" only. *See McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002).[3] Therefore, just like in other Circuits, a third-party crime is an essential element of a state-created-danger claim.

As an afterthought, Plaintiffs imply Trilogy committed a third-party crime against them. Plaintiffs' pleadings are wholly devoid of factual support for that implication. And, "claims and supporting factual allegations must be raised in a complaint; it is not enough to present supporting factual allegations in a response to a motion to dismiss." *Coleman v. Bunch*, Civ. Action No. 1:17-cv-186-HSO-JCG, 2018 U.S. Dist. LEXIS 81620, *6-*7 (S.D. Miss. Apr. 18, 2018) (citing *Cevallos v. Silva*, 541 F. App'x 390, 393-94 (5th Cir. 2013)); *Davis v. Hinton*, Civ. Action No. 1:15-cv-358-JCG, 2017 U.S. Dist. LEXIS 194246, *10 (S.D. Miss. Nov. 27, 2017); *see also Kitchens Bros. Mfg. Co. v. First Tenn. Bank N.A.*, Case No. 13-01710-NPO, 2016 Bankr. LEXIS 2488, *52 (S.D. Miss. Bankr. July 5, 2016) (holding that the new factual allegations in a response to a motion to dismiss are not properly before the Court when ruling on a motion to dismiss); *R.S. v. Starkville Sch. Dist.*, Civ. Action No. 1:12-CV-88-SA-DAS, 2013

---

[3] Some Circuits read the language of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), to impose a duty on state actors to protect individuals from injuries inflicted *by a third party* if the state actor played an affirmative role in creating or exacerbating the dangerous situation that led to the individual's injury.

U.S. Dist. LEXIS 134264, *14 (N.D. Miss. Sept. 19, 2013) (refusing to consider additional facts in a response memorandum that do not appeal in the complaint in ruling on a motion for judgment on the pleadings). The Court should not consider factual assertions raised in Plaintiffs' response. *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, Civ. No. 1:06CV433-HSO-RHW, 2015 U.S. Dist. LEXIS 197006, *37-38 (S.D. Miss. Aug. 6, 2015) (citing *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)).

      B.      <u>A known victim is a requirement of a state-created-danger theory.</u>

Next, Plaintiffs misrepresent the City's briefing as to the known-victim requirement of a state-created-danger theory. Plaintiffs claim the City relies on an unpublished opinion to support its contention that the state-created-danger claim does not exist without a known victim. Spoiler alert: the City does not. Instead, the City states:

> The state-created-danger theory "is inapposite without a known victim." *Doe*, 675 F.3d at 865. A plaintiff must "demonstrate the existence of an immediate danger facing a known victim." Id. at 866 (quoting *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999)). Identifying a known victim requires more than singling out a segment of the general public at large that may be affected by state action; the test articulated by the Fifth Circuit requires plaintiffs to plead the state actor was aware of an immediate danger to a specific and identifiable individual. See *id.* at 865; *see also Dixon*, 499 F. App'x at 368 (finding potential harm to students in general is inadequate to satisfy the known-victim requirement); *Doe*, 675 F.3d at 865-66 (same).

The City's Mem. [Dkt. 75] at 9-10.[4] (relying primarily on a reported case Plaintiffs cite in their response); *see also Cancino v. Cameron Cnty.*, 794 F. App'x 414, 417 (5th Cir. 2019) ("It is not enough for the Plaintiffs to allege that the Defendants knew of a risk to a class of people that included the Plaintiffs, namely people whose 'geographical proximity…put them in a zone of

---

[4] All references are to the City's Memorandum filed in *P.R., et al. v. The City of Jackson, et al.*, No. 3:21-cv-667.

danger.'"); *Rios v. City of Del Rio*, 444 F.3d 417, 424 n.7 (5th Cir. 2006) ("[L]iability exists only if the state actor is aware of an immediate danger facing a known victim and does not extend to all foreseeable victims.") (internal quotations and emphasis omitted).

Plaintiffs next baldly misrepresent the impact of Fifth Circuit precedent, holding a known victim is an element of a state-created-danger claim. Plaintiffs proclaim that requirement "allow[s] government officials to escape constitutional liability in the most heinous cases, where they knowingly injure entire communities." Pls. Resp. [Dkt. 114] at 70. That proclamation is patently false. The requirement precludes plaintiffs from asserting a limited exception to the general rule "a state's failure to protect an individual against **private violence** simply does not constitute a violation of the Due Process Clause"; it does not forestall all constitutional claims. The Court should not be swayed by Plaintiffs' histrionics.

### III. Plaintiffs did not give proper pre-suit notice of their negligence claim, which should be dismissed.

Plaintiffs concede they initiated *J.W.*, 3:21-CV-663, and *P.R., et al.*, 3:21-CV-667, asserting a negligence claim governed by the Mississippi Tort Claims Act (MTCA), without giving the requisite 90-day notice. Pl. Resp. [Dkt. 114] at 82. Inexplicably, however, Plaintiffs do not agree to voluntarily dismiss the claim. Instead, Plaintiffs argue that consolidation of the three cases mooted the issue. This argument is without merit for two reasons.

First, Plaintiffs' current position on the impact of consolidation on the City's defenses is wholly inconsistent with an earlier position, and, therefore, barred by the doctrine of judicial estoppel. *See Green Tree Servicing, LLC v. Clayton*, 689 Fed. Appx. 363, (5th Cir. 2017) (unpublished) ("Judicial estoppel is an equitable common law doctrine that prevents a party from assuming inconsistent positions in litigation.") (citing *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)) (internal citations omitted). Judicial estoppel "protect[s] the

13

integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* That is exactly what Plaintiffs attempt to do here.

In support of their motion to consolidate – and in response to other named defendants' argument that consolidation "moots their initial responsive pleadings", Plaintiffs acknowledge they have conferred with the City and "agree that no argument or defense should be waived by any party upon consolidation." Rebuttal Mem. [Dkt. 99] in *P.R., et al.*, No. 3:21-cv-667, at 4-5. Now, in opposition to the City's dispositive motion, Plaintiffs make a complete 180, arguing consolidation moots or waives one of the City's defenses. Plaintiff cannot take that inconsistent position now simply because their interests have changed from consolidating the cases to defeating one of the City's dispositive-motion arguments. *See Cox v. Richards*, No. 3:16-cv-668-HTW-LRA, 2017 U.S. Dist. LEXIS 218429, *7 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interest have changed, assume a contrary position.") (cleaned up) (citing *N.H. v. Me.*, 532 U.S. 742, 749 (2001)). And the Court should reject Plaintiffs' argument accordingly.

More importantly, Plaintiffs' argument is unsupported by, and irreconcilable with, Mississippi law. Strict application of the MTCA's notice provision is not controversial. *See generally Jones v. Miss. Inst. of Higher Learning*, 264 So. 3d 9, 27 (Miss. Ct. App. 2018) ("Strict compliance with statutory notice is required, regardless of why the plaintiff failed to provide notice.") Both the Northern and Southern Districts of Mississippi have enforced the strict-compliance standard. *Pickett v. Panola Cnty.*, No. 3:13-cv-95-DMB-SAA, 2015 U.S. Dist. LEXIS 11080, *18-*19 (N.D. Miss. Jan. 30, 2015).

Applying that standard here, because Plaintiffs failed to give the required notice of their negligence claim, the claim must be dismissed. And courts have been clear that no procedural

14

tactic may be used to cure the defect, including consolidation. *See generally Esco v. Madison Cnty.*, No. 2020-CA-01013-COA, 2021 Miss. App. LEXIS 472, *16 (Miss. Ct. App. Nov. 9, 2021) (finding that an amended complaint cannot cure a party's fundamental failure to provide required pre-suit notice); *Bunton v. King*, 995 So. 2d 694, 696 (Miss. 2008) (finding that the argument "an amended complaint cured the ninety-day-notice problem is without merit"); *see also Pickett v. Panola Cnty.*, No. 3:13-cv-95-DMB-SAA, 2015 U.S. Dist. LEXIS 11080, *18-*19 (rejecting argument that filing a supplemental complaint after the ninety-day-notice period expired cured the procedural defect of not filing pre-suit notice). The fact Plaintiffs may "refile" the negligence claim has no bearing on the Court's determination. *Jones*, 264 So. 3d at 27 (finding that a claim subject to the MTCA's notice provision "should be dismissed without prejudice to [the] ability to refile the claim after [compliance] with the MTCA's pre-suit notice requirements.").

## CONCLUSION

For the foregoing reasons, the City is entitled to dismissal of Plaintiffs' claims against it in *J.W.*, No. 3:21-cv-663, and *P.R., et al.*, No. 3:21-cv-667. The City is likewise entitled to dismissal of Counts I and II in *C.A., et al.*, No. 3:22-cv–171.

RESPECTFULLY SUBMITTED, this the 26th day of September, 2022.

*/s/ Clarence Webster, III*
CLARENCE WEBSTER, III

Clarence Webster, III (MSB #102111)
Kaytie M. Pickett (MSB #103202)
Adam Stone (MSB #10412)
JONES WALKER LLP
190 E. Capitol Street, Suite 800
Jackson, MS 39201
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
*Counsel for the City of Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

*/s/ Clarence Webster, III*
CLARENCE WEBSTER, III