IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **J.W.** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:21-cv-663-CWR-LGI** |
| **THE CITY OF JACKSON, et al.** | **DEFENDANTS** |
| **P.R., et al.** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:21-cv-667-CWR-LGI** |
| **THE CITY OF JACKSON, et al.** | **DEFENDANTS** |
| **C.A., et al.** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 3:22-cv-171-CWR-LGI** |
| **THE CITY OF JACKSON, et al.** | **DEFENDANTS** |

**MAYOR CHOKWE A. LUMUMBA AND ROBERT
MILLER'S REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR QUALIFIED IMMUNITY AND TO DISMISS</u>**

Plaintiffs' meretricious efforts to malign Mayor Lumumba and Miller notwithstanding, Plaintiffs cannot ignore a fundamental fact: Jackson's water system has not exceeded actionable lead levels since Mayor Lumumba assumed office in 2017.[1]  Any inference otherwise is unreasonable; Plaintiffs' own pleadings and exhibits demonstrate that. *See, e.g.*, Notice, attached to 2nd Am. Compl. [Doc. 41] as Exhibit 7, at 3.[2]

Plaintiffs' response to Mayor Lumumba and Miller's dispositive-motion arguments are wholly unavailing.  For the reasons set forth in the City of Jackson's Reply Memorandum, which

---

[1] Plaintiffs' alleged injuries are from exposure to lead only.

[2] All references are to the Second Amended Complaint filed *P.R., et al. v. The City of Jackson, et al.*, No. 3:21-cv-667.

1

are incorporated herein, Plaintiffs do not refute two pertinent points that are fatal to their constitutional claims: 1) the Constitution does not guarantee a right to safe drinking water; and 2) the Fifth Circuit has not recognized a state-created-danger theory of liability, and Plaintiffs fail to plead essential elements of that theory under the standard the Fifth Circuit has articulated.

Regardless, Mayor Lumumba and Miller are entitled to qualified immunity, because their bodily-integrity claim is not based upon a right that was clearly established during the time period relevant to Plaintiffs' pleadings. Plaintiffs cite *no* case holding that the consumption of lead in the drinking water violated a right to bodily integrity other than one case Plaintiffs acknowledge was decided *after* the events giving rise to their asserted claims. Mayor Lumumba and Miller are also immune from liability for Plaintiffs' asserted claims, because Plaintiffs fail to demonstrate Mayor Lumumba and Miller's actions were deliberately indifferent.

Plaintiffs concede they did not give the required pre-suit notice of their negligence claim, which is subject to the strictures of the Mississippi Tort Claims Act, in *J.W. v. The City of Jackson, et al.*, No. 3:21-cv-663, and *P.R., et al. v. The City of Jackson, et al.*, No. 3:21-cv-667. Nevertheless, they attempt – in vain – to preserve that claim by making unsupported legal arguments that fly in the face of Mississippi law. Nor do Plaintiffs dispute that government officials, like Mayor Lumumba and Miller, acting within the course and scope of employment cannot be held individually liable under the MTCA.

Mayor Lumumba and Miller should be dismissed from this civil action.

## ARGUMENT

### I. Mayor Lumumba and Miller are entitled to qualified immunity.

Plaintiffs contend that it is "important to resolve" the first prong of qualified immunity first, and they cite Judge Willlett's dissent to support this proposition. *See* Pls.' Resp. [Dkt. 114]

at 73[3] (citing *Cole v. Carson*, 935 F.3d 444, 472 (5th Cir. 2019) (Willett, J., dissenting). Judge Willett has made clear this conviction. *See, e.g., Mayfield v. Currie*, 976 F.3d 482, 489 (5th Cir. 2020) (Willett, J., concurring). Nonetheless, the Supreme Court has not adopted his position, nor has the Fifth Circuit. The law remains that this Court may conserve scarce judicial resources by addressing the simpler prong first. *See Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009) ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

Here, whether Plaintiffs have met their burden of demonstrating that the law is "clearly established" is unquestionably the simpler prong. Plaintiffs concede that they cannot meet the standard of demonstrating "controlling authority" or "a robust consensus of cases of persuasive authority" to show the law was "clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). They admit that "the Fifth Circuit has not yet been presented with a case on all fours with this one." Pls.' Resp. [Dkt. 114] at 78. Plaintiffs not only fail to point to a case "on all fours"; they fail to claim any Fifth Circuit case is even analogous.

Recognizing that they cannot prevail under the governing standard, Plaintiffs argue instead that this standard does not apply. They contend that the level of required specificity is lower for due process claims, or that this case presents one of the "'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021) (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 208 L.Ed. 164 (2020) (per curiam)). Neither argument is supported by the law of this Circuit, and neither meets Plaintiffs' burden of demonstrating the inapplicability of the qualified immunity defense.

---

[3] All references are to the Response filed *P.R., et al. v. The City of Jackson, et al.*, No. 3:21-cv-667.

  A. <u>The level required specificity for "clearly established law" is not lower for Due Process claims.</u>

  The level of specificity required for the second prong of qualified immunity does not change based on the type of constitutional violation alleged. It is true that courts have observed the importance of specificity in the Fourth Amendment context. But Plaintiffs cite *no* case in which the Fifth Circuit or the Supreme Court has held that there is no obligation to identify factually analogous controlling authority in arguing against qualified immunity for other constitutional claims.

  Plaintiffs' reliance on a dissent reveals the weakness of their argument. The majority opinion in *Cope v. Cogdill*, holds the opposite of what Plaintiffs ask this Court to rule. 3 F.4th 198 (5th Cir. 2022), *cert. denied* 142 S. Ct. 2573 (2022). *Cope* is a Fourteenth Amendment case, not a Fourth Amendment case. It does not involve "split-second decisions of a police officer," Pls.' Resp. [Dkt. 114] at 75, and yet it held:

> "[T]he plaintiff must 'identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and . . . explain[] why the case clearly proscribed the conduct of that individual officer.'" *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (concluding the defendants were entitled to qualified immunity because the plaintiffs failed to identify an analogous case). While an exact case on point is not required, the confines of the officers' violation must be "beyond debate." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (internal quotation marks and citation omitted), *cert. denied*, 141 S. Ct. 1379, 209 L. Ed. 2d 123 (2021) (mem.). **Broad general propositions are not enough to overcome qualified immunity.** *Id.*

*Id.* at 205 (emphasis added). In *Cope*, jailers were warned that the deceased pretrial detainee was suicidal, but they left him with a telephone cord, which he used to hang himself. *Id.* at 203-204. When one jailer realized the detainee had done so, the jailer waited to go into the cell to unwrap the telephone cord until a backup jailer arrived, because prison policy was for two jailers to be

4

present when entering a cell. *Id.* In the meantime, the detainee died with the jailer watching him, doing nothing.

His surviving family sued, claiming the jailers were deliberately indifferent to the risk of suicide. *Id.* at 204. The district court denied qualified immunity; on appeal, the Fifth Circuit reversed in a published opinion. The Fifth Circuit found that it was *not* clearly established that following prison policy would constitute deliberate indifference, and it was *not* clearly established that allowing the detainee a phone cord would, either—despite well-established law finding deliberate indifference in allowing a suicidal inmate access to bedclothes. *Id.* at 208, 211. The Supreme Court denied Cope's petition for writ of certiorari.

Plaintiffs do not address *Cope*, other than to cite its dissent. Instead, they cite a 1987 Supreme Court case, *Anderson v. Creighton,* 483 U.S. 635, 639 (1987), to argue for a lower standard. But Plaintiffs are inconsistent: they claim the standard is *higher* for Fourth Amendment violations, yet *Anderson* is a Fourth Amendment case. The case law has developed much since 1987. The Supreme Court has since made plain that the clearly established right **cannot** be defined "at too high a level of generality." *City of Tahlequah v. Bond,* 142 S. Ct. 9, 11 (2021).

Plaintiffs define the right at issue as the right to bodily integrity. This is the highest level of generality possible. They cite *no* case holding that the consumption of lead in the drinking water violated a right to bodily integrity—other than *Guertin*, and they acknowledge that *Guertin* was decided *after* the relevant allegations of their Second Amended Complaint. Indeed, even the *Guertin* panel disagreed whether the plaintiffs there stated a constitutional claim. When three appellate judges cannot agree whether consumption of lead in the drinking water violates a

5

constitutional right, then Mayor Lumumba and Miller's actions here are not "beyond debate." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020).

      B.    <u>The alleged constitutional violations are not so obvious to present an extreme circumstance.</u>

Given Plaintiffs' admitted inability to overcome the high bar of identifying a factually analogous, controlling case, Plaintiffs instead insist that the "obviousness" exception applies under *Hope v. Pelzer,* 536 U.S. 730, 741 (2002), and they cite two cases in which the Supreme Court has reversed the Fifth Circuit for not applying this standard. *See Taylor v. Riojas*, 141 S. Ct. 52 (2020), *McCoy v. Alamu*, 141 S. Ct. 1364 (2021).

Again, Plaintiffs fail to address the *Cope* majority opinion. In *Cope*, the Fifth Circuit acknowledged the Supreme Court's recent reversal in *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam), but held it only reinforced the narrowness of the *Hope* exception: "It might seem that things changed with the recent opinion in *Taylor v. Riojas*. But, instead, that decision emphasizes the high standard… Accordingly, under *Taylor*, plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" 3 F.4th at 206 (internal quotation marks and citation omitted). The Fifth Circuit went on to find that a jailer doing nothing while watching a man kill himself was not so obvious as to satisfy the clearly established prong. *Id.* at 211.

Plaintiffs' citing *Ramirez v. Guadarrama*, 2 F.4th 506, 517 (5th Cir. 2021) (Willett, D., dissenting), does not further their argument that the Fifth Circuit has relaxed its approach to the second qualified immunity prong. *Ramirez* is a rare published opinion on the denial of en banc review. The *Ramirez* panel opinion granted qualified immunity on an unreasonable force 4th Amendment claim where officers used tasers on a man threatening to burn down his house with his family in it; use of the tasers set the man on fire, and he died. In *Ramirez*, Judges Smith,

6

Graves, Higginson, and Willett voted to grant en banc review; the thirteen other judges of the Fifth Circuit voted against. Unusually, this lead to concurring and dissenting opinions to the denial of en banc, with Judges Jolly, Ho, Oldham, and Englehardt writing concurring opinions in favor of the grant of qualified immunity, and Judges Willett, Graves, and Higginson dissenting. Judge Jolly wrote of Judge Willett's opinion: "the dissenting opinion emotes; it does not reason."

A reasoned analysis of the cases finding an "obvious" constitutional violation demonstrates Plaintiffs cannot rely upon this narrow exception here. The Court is familiar with the gross atrocities detailed in *Taylor v. Riojas*; it is an obvious Eighth Amendment violation for government officials to force an inmate to sleep naked in raw sewage. 141 S. Ct. 52 (2020). In *Villarreal v. City of Laredo*, 44 F.4th 363 (5th Cir. 2022), a divided panel of the Fifth Circuit found it an obvious First Amendment violation to arrest a reporter for asking public officials a question. And in *Harris v. Clay Cty.*, No. 21-60456, 2022 U.S. App. LEXIS 23749 (5th Cir. Aug. 24, 2022), the Court found it obvious that jailers had violated the well-established "commit or release" rule when they held the detainee for six years without trial and lied about the status of commitment proceedings.

There is nothing comparably obvious about this case. Plaintiffs claim that lead in the drinking water is obviously unconstitutional. But the presence of lead in the drinking water is not even an obvious statutory violation. Rather, the EPA sets minimum lead levels allowed under the Safe Drinking Water Act through the Lead and Copper Rule—<u>and those levels are *not* zero</u>. Plaintiffs' own pleadings demonstrate the City's water system has never exceeded those levels since Mayor Lumumba assumed office. Unlike *Harris*, there is no well-established constitutional rule proscribing Mayor Lumumba and Miller's actions here. There are only federal regulations, and those regulations do not give rise to a constitutional claim.

7

Plaintiffs argue that the City has violated EPA regulations and orders, and this should weigh in favor of a finding of obviousness. They seek to distinguish *Gagne v. Galveston*, in which the Fifth Circuit held, "'officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.'" 805 F.2d 558 (5th Cir. 1986) (quoting *Davis v. Scherer*, 468 U.S. 183 (1984)). The Fifth Circuit relied upon *Davis v. Scherer*, which, in a footnote, explained the relationship between statutory violations and qualified immunity:

> In *Harlow*, the Court acknowledged that officials may lose their immunity by violating "clearly established statutory . . . rights." 457 U.S., at 818. This is the case where the plaintiff seeks to recover damages for violation of those statutory rights, as in *Harlow* itself, see *id*., at 820, n. 36, and as in many § 1983 suits, see, *e. g., Maine* v. *Thiboutot*, 448 U.S. 1 (1980) (holding that § 1983 creates cause of action against state officials for violating federal statutes). For the reasons that we discuss, officials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some *other* statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages. And if a statute or regulation does give rise to a cause of action for damages, clear violation of the statute or regulation forfeits immunity only with respect to damages caused by that violation. In the present case, as we have noted, there is no claim that the state regulation itself or the laws that authorized its promulgation create a cause of action for damages or provide the basis for an action brought under § 1983.

468 U.S. at 194 n.12.

In *Davis*, the plaintiff was a police officer who was terminated for working two jobs. *Id.* at 186. The officer was terminated without a formal or prompt hearing, and he sued for violation of his due process rights. *Id.* at 187. State law required a complete investigation and an opportunity to respond in writing. *Id.* at 188. The trial court found that the supervising officer's

8

failure to follow state law warranted denial of qualified immunity. The Supreme Court reversed and wholly rejected the argument that violation of a statute is relevant to whether qualified immunity for violation of a constitutional right should be granted.

Here, Plaintiffs have not brought a § 1983 action for violation of the SWDA, nor have they brought a private right of action directly under the SWDA. This law and the EPA orders enforcing it have no bearing on whether Plaintiffs have met their burden of demonstrating violation of a clearly established constitutional right. Unlike in *Hope*, where a DOJ memorandum advised on the unconstitutionality of the practices at issue, the SWDA and the EPA's regulations say nothing about the *constitutionality* of switching water sources, or treating water with soda ash instead of lime. *Davis* dictates the violation of a statute does not make a constitutional violation obvious.

Without any analogous case law, Plaintiffs are left relying solely on the reasoning of *Guertin*. *Guertin*'s holding is inapplicable here. In *Guertin*, the Sixth Circuit held that certain individual defendants were not entitled to qualified immunity due to the specific allegations against them revealing their respective roles in "creating, sustaining and covering up the Flint Water Crisis…." *In re Flint Water Cases, Waide* v. *Early, et al,* 960 F.3d 303, 323 (6th Cir. 2020). The factual allegations under Plaintiffs' claims against Mayor Lumumba and Miller are wholly distinguishable. Importantly, in concluding that certain defendants were not entitled to qualified immunity, *Guertin* focused heavily on each defendants' role as an "instrumental in creating the crisis." 912 F.3d at 926. Specifically, the *Guertin* Court found that the individuals to whom qualified immunity was not afforded "were among the chief architects of Flint's decision to switch water sources and then use a plant they knew was not ready to safely process the water,

especially in light of the Flint River's known environmental issues and the problems associated with lead exposure." *Id*.

That is clearly not the case here. Neither Mayor Lumumba nor Miller were City officials during the time Jackson's water system exceeded actionable lead levels. And, as Plaintiffs have already shown, at no time during Mayor Lumumba's tenure were any actions taken that caused the lead in Jackson's water system to exceed statutory minimums.

## II. Neither Mayor Lumumba nor Miller engaged in conscience-shocking conduct.

Despite Plaintiffs' Herculean efforts to distort Mayor Lumumba's and Miller's actions to comport with those of the officials in Flint, those efforts fall flat. Plaintiffs do not allege Mayor Lumumba or Miller created issues regarding lead contamination in Jackson water system, again, a critical factor upon which the *Guertin* Court relied. They also do not allege – because, again, they cannot – Mayor Lumumba or Miller were deliberately indifferent in that they took any action that they knew would create a significant risk of death. *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194 (5th Cir. 2015) ([D]eliberate indifference entails "conduct that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death.") (citing *Salazar v. Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)) (citations and internal quotations omitted).

Plaintiffs rely heavily on the allegations Mayor Lumumba took no action to adequately staff the treatment plants to demonstrate conscience-shocking conduct, which does nothing to establish a constitutional violation. There are no allegations lead levels exceeded actionable levels and Mayor Lumumba knew his actions, or inaction, would prolong or exacerbate that issue. Lead levels have been below permissible levels during the entirety of Mayor Lumumba's tenure.

Plaintiff also rely on alleged misrepresentations Mayor Lumumba and Miller made. As an initial matter, while Plaintiffs quibble with the substance of Mayor Lumumba's and Miller's statements, Plaintiffs do not show the statements were false. To summarize the statements, both Mayor Lumumba and Miller informed the public – on more than one occasion – that the City failed process standards for maintaining the proper pH within our system. While notifying the public of those technical violations, they were clear the technical violations did not present an "emergency situation." And there was no emergency vis-à-vis lead, because the lead levels in Jackson's water system were not above statutory minimums.

Nevertheless, Mayor Lumumba and Miller were equally clear Jackson water users should take precautions, including (1) using filtered or bottled water for pregnant women, children 5 years old and younger, and for making formula; (2) running the water for one to two minutes in the morning before using it for the first time; (3) cleaning faucet aerators; (4) making sure children have adequate lead testing done; and (5) not drinking hot water from the tap. *See* Marie Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, JACKSON FREE PRESS (July 19, 2018), identified in 2nd Am. Compl. [Doc. 41] at 82 n.59. Plaintiffs' response completely ignores those precautions.

In their response, but not their pleadings, Plaintiffs also question Mayor Lumumba and Miller's continued reliance on Trilogy's recommendations. Again, that conduct was not deliberately indifferent as continued reliance on Trilogy's recommendations did not cause lead levels in Jackson's water system to rise beyond permissible levels during Mayor Lumumba's tenure.

The circumstances here in Jackson are not akin to Flint's. Mayor Lumumba and Miller did not architect circumstances that caused lead to contaminate Jackson's water. They did not

alter, manipulate or lie about water-testing results.  They did not ignore warnings that their actions would cause lead levels in Jackson's water to exceed permissible levels.  Try as they might, Plaintiffs have not, and cannot, plead Mayor Lumumba and Miller engaged in conscience-shocking, deliberately indifferent conduct.  Therefore, Plaintiffs cannot meet their hefty burden of overcoming Mayor Lumumba and Miller's qualified immunity defense.

### III.     Plaintiffs did not give proper pre-suit notice of their negligence claim, which should be dismissed.

Plaintiffs concede they initiated *J.W.*, 3:21-CV-663, and *P.R., et al.*, 3:21-CV-667, asserting a negligence claim governed by the Mississippi Tort Claims Act (MTCA), without giving the requisite 90-day notice.  Pl. Resp. [Dkt. 114] at 82.  Inexplicably, however, Plaintiffs do not agree to voluntarily dismiss the claim.  Instead, Plaintiffs argue that consolidation of the three cases mooted the issue.  That argument lacks merit for two reasons.

First, Plaintiffs' current position on the impact of consolidation on Mayor Lumumba and Miller's defenses is wholly inconsistent with an earlier position, and, therefore, barred by the doctrine of judicial estoppel.  *See Green Tree Servicing, LLC v. Clayton*, 689 Fed. Appx. 363, (5th Cir. 2017) (unpublished) ("Judicial estoppel is an equitable common law doctrine that prevents a party from assuming inconsistent positions in litigation.") (citing *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)) (internal citations omitted).  Judicial estoppel "protect[s] the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest."  *Id.*  That is exactly what Plaintiffs attempt to do here.

In support of their motion to consolidate – and in response to other named defendants' argument that consolidation "moots their initial responsive pleadings", Plaintiffs acknowledge they have conferred with Mayor Lumumba and Miller and "agree that no argument or defense

12

should be waived by any party upon consolidation." Rebuttal Mem. [Dkt. 99] in *P.R., et al.*, No. 3:21-cv-667, at 4-5. Now, in opposition to Mayor Lumumba and Miller's dispositive motions, Plaintiffs make a complete 180, arguing consolidation moots or waives one of Mayor Lumumba and Miller's defenses. Plaintiff cannot take that inconsistent position now simply because their interests have changed from consolidating the cases to defeating one of Mayor Lumumba and Miller's dispositive-motion arguments. *See Cox v. Richards*, No. 3:16-cv-668-HTW-LRA, 2017 U.S. Dist. LEXIS 218429, *7 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interest have changed, assume a contrary position.") (cleaned up) (citing *N.H. v. Me.*, 532 U.S. 742, 749 (2001)). And the Court should reject Plaintiffs' argument accordingly.

More importantly, Plaintiffs' argument is unsupported by, and irreconcilable with, Mississippi law. Strict application of the MTCA's notice provision is not controversial. *See generally Jones v. Miss. Inst. of Higher Learning*, 264 So. 3d 9, 27 (Miss. Ct. App. 2018) ("Strict compliance with statutory notice is required, regardless of why the plaintiff failed to provide notice.") Both the Northern and Southern Districts of Mississippi have enforced the strict-compliance standard. *Pickett v. Panola Cnty.*, No. 3:13-cv-95-DMB-SAA, 2015 U.S. Dist. LEXIS 11080, *18-*19 (N.D. Miss. Jan. 30, 2015).

Applying that standard here, because Plaintiffs failed to give the required notice of their negligence claim, the claim must be dismissed. And no procedural tactic may be used to cure the defect, including consolidation. *See generally Esco v. Madison Cnty.*, No. 2020-CA-01013-COA, 2021 Miss. App. LEXIS 472, *16 (Miss. Ct. App. Nov. 9, 2021) (finding that an amended complaint cannot cure a party's fundamental failure to provide required pre-suit notice); *Bunton v. King*, 995 So. 2d 694, 696 (Miss. 2008) (finding that the argument "an amended complaint

cured the ninety-day-notice problem is without merit"); *see also Pickett v. Panola Cnty.*, No. 3:13-cv-95-DMB-SAA, 2015 U.S. Dist. LEXIS 11080, *18-*19 (rejecting argument that filing a supplemental complaint after the ninety-day notice period expired cured the procedural defect of not filing pre-suit notice).

The fact Plaintiffs may "refile" the negligence claim has no bearing on the Court's determination. *Jones*, 264 So. 3d at 27 (finding that a claim subject to the MTCA's notice provision "should be dismissed without prejudice to [the] ability to refile the claim after [compliance] with the MTCA's pre-suit notice requirements.").

### IV. Plaintiffs have not stated a negligence claim against Mayor Lumumba and Miller in their individual capacity.

As shown above, Plaintiffs may not use their response to revise their pleadings. *See Coleman*, 2018 U.S. Dist. LEXIS 81620, *6-*7; *Davis v. Hinton*, 2017 U.S. Dist. LEXIS 194246, *10; *see also Kitchens Bros. Mfg. Co. v. First Tenn. Bank N.A.*, 2016 Bankr. LEXIS 2488, *52; *R.S.*, 2013 U.S. Dist. LEXIS 134264, *14. Plaintiffs plead Mayor Lumumba and Miller "acted in the course and scope of their employment" only vis-à-vis their negligence claim. 2nd Am. Compl. [Doc. 41] at 111 (¶417). The MTCA is clear: "[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. MISS. CODE § 11-46-7(2) (Rev. 2012). Plaintiffs make no allegations otherwise. And the Court should not read into Plaintiffs' pleadings factual assertions that were raised for the first time in Plaintiffs' response. *Rigsby*, 2015 U.S. Dist. LEXIS 197006, *37-38.

Therefore, Plaintiffs' reliance on *Ellis v. Lowndes County* is unavailing. *See* Pls.' Resp. [Dkt. 114] at 84-85 (noting the *Ellis* plaintiffs pleaded the defendant "acted both within and outside the course and scope of his duties."). Further, Plaintiffs do not even attempt to argue the allegations in their complaint substantiate a claim Mayor Lumumba and Miller acted outside the

14

course and scope of their duties. Plaintiffs' negligence claim against Mayor Lumumba and Miller individually should be dismissed.

## CONCLUSION

For the foregoing reasons, Mayor Lumumba and Miller are entitled to dismissal.

RESPECTFULLY SUBMITTED, this the 26th day of September, 2022.

*/s/ John F. Hawkins*
JOHN F. HAWKINS

John F. Hawkins, Esquire (MSB #9556)
LT Allen, Esquire (MSB #106383)
HAWKINS LAW, P.C.
226 North President Street (39201)
Post Office Box 24627
Jackson, MS 39225-4627
Telephone: (601) 969-9692
Facsimile: (601) 914-3580
john@hgattorneys.com
ltallen@hgattorneys.com
*Counsel for Mayor Chokwe A.*
*Lumumba and Robert Miller*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

*/s/ John F. Hawkins*
JOHN F. HAWKINS
