1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
2                        NORTHERN DIVISION

3


4    J.W., A MINOR, BY AND THROUGH AMANDA WILLIAMS
     AS GUARDIAN AND NEXT FRIEND, ET AL.          PLAINTIFFS
5
     VERSUS                CIVIL ACTION NOS. 3:21-cv-00663-CWR-LGI
6                                             3:22-cv-00171-CWR-LGI
                             Related Cases: 3:23-cv-00243-CWR-LGI
7                                             3:21-cv-00667-CWR-LGI
                                              3:23-cv-00246-CWR-LGI
8                                             3:22-cv-00171-CWR-LGI
                                              3:23-cv-00250-CWR-LGI
9                                             3:23-cv-00478-CWR-LGI

10   THE CITY OF JACKSON, MISSISSIPPI, ET AL.       DEFENDANTS

11

12                      STATUS CONFERENCE
            BEFORE THE HONORABLE CARLTON W. REEVES,
13            UNITED STATES DISTRICT COURT JUDGE,
                      AUGUST 16, 2023,
14                 JACKSON, MISSISSIPPI

15

16

17               (APPEARANCES NOTED HEREIN.)

18

19

20

21

22   REPORTED BY:

23       CANDICE S. CRANE, RPR, RCR, CCR #1781
         OFFICIAL COURT REPORTER
         501 E. Court Street, Suite 2.500
24       Jackson, Mississippi  39201
         Telephone:  (601)608-4187
25       E-mail:  Candice_Crane@mssd.uscourts.gov

```
 1   A P P E A R A N C E S:

 2   FOR THE PLAINTIFFS:    COREY M. STERN, ESQ.
                            MELANIE P. DALY, ESQ.
 3                          ROGEN K. CHHABRA, ESQ.
                            DARRYL M. GIBBS, ESQ.
 4
     FOR DEFENDANT CITY OF JACKSON:
 5                          CATORIA PARKER MARTIN, ESQ.
                            CLARENCE WEBSTER, III, ESQ.
 6                          ADAM STONE, ESQ.
                            KAYTIE M. PICKETT, ESQ.
 7                          TERRELL S. WILLIAMSON, ESQ.

 8   FOR DEFENDANT MAYOR CHOKWE A. LUMUMBA, JR.,
     AND ROBERT MILLER:    JOHN F. HAWKINS, ESQ.
 9
     FOR DEFENDANTS TONY YARBER, KISHIA POWELL,
10   AND JARRIOT SMASH:    CHAUNCY GRAHAM, ESQ.

11   FOR DEFENDANTS MSDH AND JIM CRAIG:
                            GERALD L. KUCIA, ESQ.
12                          MEADE W. MITCHELL, ESQ.
                            ORLANDO R. RICHMOND, SR.
13
     FOR DEFENDANT TRILOGY ENGINEERING SERVICES LLC:
14                          DAVIDE MACELLONI, ESQ.
                            D. JASON CHILDRESS, ESQ.
15
     ALSO PRESENT:          ARTHUR JOHNSTON, CLERK OF COURT
16                          PORFI STOKES, CHIEF DEPUTY CLERK

17

18

19

20

21

22

23

24

25
```

1

## TABLE OF CONTENTS

2   Style and appearances....................................1-2

3   Court Reporter's Certificate........................... 75

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        PROCEEDINGS VIA VIDEOCONFERENCE, AUGUST 16, 2023

 2

 3        THE COURT:  Good afternoon.  This is JW versus City

 4   of Jackson, et al., 3:21-CV-663.  I take it nobody wanted

 5   to come to court today.  I know when we do these Zoom

 6   calls, it's for the benefit primarily of those who are out

 7   of state, but nobody wanted to be here with me today.  The

 8   last time I did it, everybody came here.  So it's no

 9   problem.  Can you hear me?

10        MS. SUMMERS:  It's not on.

11        THE COURT:  Okay.  Because I didn't get any

12   reaction.  All right.  All right.  Ladies and gentlemen,

13   how y'all doing?  Still can't hear me.

14        Can you hear me?  Wave your hand if you can hear me.

15   Nope.

16         (An off-the-record discussion was held.)

17        THE COURT:  Testing, testing.  If you can hear me,

18   raise your hand.  Okay.  Okay.  All right.  Thank you all.

19   I've been moving my mouth saying ugly things about y'all,

20   some ugly things about me, and nobody responded, so I knew

21   you couldn't hear me.

22        Good afternoon.  This is JW versus City of Jackson,

23   et al., 3:21-CV-663, consolidated with several other cases.

24   Thank you all for making yourselves available today.  I was

25   surprised that nobody decided -- nobody decided to come to
```

1    court today.  When I do these Zoom calls, you're certainly

2    permitted to come.  I don't know -- it's -- primarily I

3    wanted to make sure that those persons who are out of state

4    or if it would be a significant burden for anyone to chime

5    in through Zoom, but I was kind of surprised that I'm the

6    only one here today.  But that's fine.

7         But I do have with me in the courtroom the clerk of

8    the court, Arthur Johnston, because we're going to be

9    talking about some other things with respect to these

10   cases, and other staff of the clerk's office here as we

11   sort of flesh out and talk about the issues involving these

12   cases, and I'm going to ask -- and I don't hear any

13   feedback at all on anybody's end, but if you're not

14   speaking, mute your microphones so that we won't encounter

15   any feedback.

16        So we're here primarily to talk about --

17        MS. SUMMERS:  Do you want to take a roll call?

18        THE COURT:  Oh, okay.  Do -- oh, I'm sorry.  Let me

19   do a roll call.  I'm not sure if that's been done.

20        With respect to the plaintiffs, tell me who's on the

21   line for the plaintiff so I can see you and hear you.

22        MR. STERN:  Your Honor, good afternoon.  Corey

23   Stern, Melanie Daly, Rogen Chhabra, and Darryl Gibbs for

24   the plaintiffs.

25        THE COURT:  Okay.  Thank you, Mr. Stern.

```
 1              MR. STERN:  Thank you.
 2              THE COURT:  And who is on for the City of Jackson?
 3              Oh, we have a court reporter here, so please make
 4    sure you're speaking slowly enough for me to keep up with
 5    you in particular but the court reporter as well.
 6              MR. WEBSTER:  Clarence Webster, Your Honor.  We have
 7    Tori Martin, Kaytie Pickett, and Adam Stone on.
 8              THE COURT:  Okay.  Tori Martin, Kaytie Pickett, and
 9    Adam Stone.  Any other --
10              MR. WEBSTER:  Oh, and I apologize.  And also Terry
11    Williamson, Your Honor.
12              THE COURT:  And Terry Williamson from the City of
13    Jackson.  Okay.
14              And who do we have for the State of Mississippi?
15    The Department of Health, I guess it is.
16              MR. MITCHELL:  Your Honor, this is Meade Mitchell.
17    I've got Rod Richmond and Gerald Kucia here.
18              THE COURT:  Okay.  And finally -- oh, I'm sorry.
19              MR. HAWKINS:  Pardon me, Your Honor.  This is John
20    Hawkins.  I'm also here for the city defendants.
21              THE COURT:  Okay.  Thank you, Mr. Hawkins.
22              MR. HAWKINS:  Thank you.
23              THE COURT:  And then I think the final defendant is
24    Trilogy?
25              MR. MACELLONI:  Good afternoon, Your Honor.  Davide
```

1    Macelloni and Jason Childress on behalf of Trilogy.

2         THE COURT:  And, Mr. Macelloni, make sure -- I

3    assume you've entered an appearance, but spell your name

4    for the record.

5         MR. MACELLONI:  Yes.  M-a-c-e-l-l-o-n-i.

6         THE COURT:  Okay.  Thank you so much.

7         All right.  Anyone else on the call who hasn't been

8    identified yet?

9         MR. GRAHAM:  Yes, sir, Chauncy Graham.  I'm sitting

10   in for The Cochran Firm on behalf of Mr. Terris Harris.  I

11   haven't entered an appearance yet, but I will be getting a

12   *pro hac* into the matter.  I'm just sitting in for

13   Mr. Harris right now.

14        THE COURT:  Mr. Harris was representing the mayor in

15   his individual capacity; is that correct?  Or was or is?

16        MR. GRAHAM:  Sir, I'm not sure.

17        MS. MARTIN:  Tori Martin, the city attorney for the

18   City of Jackson.

19        Terris Harris is actually representing Tony Yarber

20   and Kishia Powell.

21        THE COURT:  Okay.  Okay.  Thank you.

22        Okay.  Well, I wanted to -- I realize this case has

23   been filed some time ago, and the Court issued a ruling on

24   its first round of dispositive motions, and since the

25   issuance of that ruling, I think there may have been a

1    couple of other -- at least one other set of filings of

2    cases, I think.  And one of the things we wanted to talk

3    about and I've given the parties an opportunity to do was

4    possibly some proposed consolidation order where we could

5    get these cases in a posture to start moving along, and so

6    I wanted to talk with you about that.  I gave you all the

7    opportunity to sort of flesh it out and see where you could

8    reach agreement, and I think I heard back from you back in

9    May.  I don't think I've heard anything since then, but the

10   parties back in May sent me correspondence telling me about

11   their efforts.

12        Has anything changed since then?  And I'll let

13   Mr. Stern speak for the plaintiffs and I'll let Mr. Webster

14   speak for the City of Jackson unless your clients tell you

15   otherwise.  And I'll let Mr. Mitchell speak for the State

16   of Mississippi.  And obviously I just want to make sure I'm

17   hearing from one person at a time in that regard.  And,

18   Mr. Webster, Mr. Mitchell, or Mr. Stern, you can, you know,

19   pass off your opportunity to be heard to one of your

20   co-counsel.  I'm not in any way trying to freeze anyone

21   out.  And whoever needs to speak on behalf of Trilogy will

22   be able to do so, and so forth and so on.  I just don't

23   need more than one lawyer speaking for a defendant at

24   any -- for a party at any particular time, that's all.

25   Okay?

1       So have there been any other -- since the May letter

2   that I received from the parties outlining their

3   differences, your differences, has there been any -- are

4   there any updates?

5       MR. STERN:  Your Honor, Corey Stern for the

6   plaintiffs.

7       Nothing has changed from our perspective since the

8   submissions were addressed and sent to Your Honor, I think

9   on May 9th or May 10th of 2023.

10      THE COURT:  Okay.  Well, then, this is how we'll

11  start, then.  I want to hear from the respective parties

12  why you believe the order ought to be the way in which you

13  say it ought to be.  But now I have the clerk of court

14  here, and some people -- because I've been thinking about

15  some -- this consolidation issue as well, and I know we've

16  been talking about the word "consolidation."  That is

17  because I'm under the impression that the plaintiff has not

18  filed all the -- has not -- there's a potential that the

19  plaintiff might have even more plaintiffs.

20      Is that correct Mr. Stern?

21      MR. STERN:  Your Honor, I'm having a little bit of a

22  difficult time hearing you, but I think what you asked me

23  was whether the plaintiffs have filed the totality of

24  claims on behalf of our clients or are there more to come.

25  And if that is the question, we have filed the majority of

1    claimants' cases that we currently have, but we continue to

2    be retained on cases, you know, every week, and so I do

3    anticipate the filing of additional claims, although I

4    think the majority of the claims at this point have in fact

5    been filed.

6         I think that the state defendants and the city

7    defendants are likely on notice, however, of whichever

8    claimants have not yet been filed to the extent that for

9    each of those claimants we have been serving notices

10   pursuant to the Mississippi Tort Claims Act and then we're

11   waiting the requisite time under the statute before

12   actually filing the cases, you know, obviously with the

13   hope that they respond to the -- to the claims and perhaps

14   seek to address those claims by way of the notice rather

15   than by way of the litigation.  But thus far, none of those

16   notices have been responded to, so we've been filing after

17   the requisite time period has expired.

18        THE COURT:  With respect to that issue with respect

19   to the state tort claims process, does -- that process

20   does -- and I'm speaking to the state defendants now and

21   the municipal defendants, because obviously there would

22   have to be a state tort claims notice to the extent you're

23   filing with any of these governmental entities.  Doesn't

24   the MTCA allow -- I know the purpose is -- is for the

25   governmental unit to have an opportunity to investigate and

1    do whatever it needs to be done to evaluate the claim.

2          Now, I can't imagine the City of Jackson or the

3    State of Mississippi when they received any one of these

4    claims intends to pay the claim.  I can't imagine that.

5    But if I'm wrong, I'm wrong.

6          So -- and I know you have a full 90 days or so in

7    which to do your evaluation, but to move these cases along

8    so that we'll know exactly how many people we have at any

9    given time, does it -- I can stand to be corrected, so I

10   don't know everything.  I'm not trying to suggest that at

11   all.  But if the State or the City of Jackson's going to

12   deny the claim, why not deny it as soon as it is received?

13   Is there a reason why?

14         I mean, because, of course, I think we want to make

15   sure that these cases move along, and that would help move

16   it along, I think, at least by 90 days; right?

17         Is it -- is there -- I mean, do the governmental

18   units think that they might be waiving something or being

19   accused of having not evaluated a claim properly if it's

20   denied, say, you know, within a week or ten days after

21   having received it?  I'm just trying to think about how we

22   can move the case along from that perspective.

23         Is that a possibility from the -- I don't know if

24   the governmental units have been thinking about that or

25   even have thought about it.

1        Mr. Webster.

2        MR. WEBSTER:  Yes, sir, Your Honor.  And I apologize

3    for interrupting.

4        We have not had those conversations.  That is an

5    issue that we can raise with the city, but at this point I

6    don't think I can intelligently speak on that without first

7    talking to the client.

8        THE COURT:  Okay.  And what about the state

9    defendants, Mr. Mitchell?

10       MR. MITCHELL:  Same, Your Honor.  We really just

11   haven't given any consideration or thought to shortening

12   the 90-day period, but we can certainly talk to the State

13   about it.

14       THE COURT:  So do we know, Mr. Stern, the number of

15   tort claims notices you have outstanding for which you have

16   not -- you know, how many out there that are outstanding

17   that you've served on to the state defendants?  Not the

18   ones that's in your office right now.

19       MR. STERN:  Your Honor, if you can give me a couple

20   of minutes while we're on this call, I can get you the

21   exact number, but I believe it's less than 150.

22       THE COURT:  Okay.  So -- okay.  So I guess I should

23   tell you why the clerk of the court is here, because this

24   is going to help frame how we look at this case.  We've

25   been talking about consolidation and how consolidation

1   might work.  The clerk and I have been talking about, yes,

2   consolidation for the cases might work, but I am thinking

3   about the possibility of severing the cases in a sense that

4   each might have a separate sort of -- severing the cases.

5   Instead of having one case with 2400 plaintiffs, possibly

6   having 2400 cases.

7        Now, in order to do that, though, it is my hope that

8   I won't overburden the staff here at the clerk's office,

9   but I also don't want to overburden the lawyers, and we've

10  been trying to think about ways in which on your side of

11  the ECF stuff you wouldn't overburden you or your staff

12  with making sure that if the cases are ultimately severed

13  and how rulings might affect those cases and all that kind

14  of stuff and any filings in any individual case being

15  applicable to the other cases, how -- you know, we don't

16  want you to use 2400 man-hours a day of filing in -- or I

17  guess globally 2400 hours in a period of time, you know,

18  filing documents, doing stuff that sort of overburdens your

19  office.

20       So as you talk about how you envision and the

21  differences that you have between it -- because I know

22  there's some objection from some of the defendants to what

23  a short-form complaint might look like, what may be a short

24  form answer, why have it, whether the -- and I think one of

25  the big issues that the plaintiff has and that the parties

 1   have is a disagreement with respect to whether or not any

 2   new defenses might be raised in later cases that might not

 3   apply on this day.

 4          So I want to hear from you all today about the --

 5   you know, what is it about the disagreements that you

 6   cannot come to an agreement on, but also now knowing that

 7   I'm thinking about severing these cases -- because, you

 8   know, obviously I've seen the parties or at least somebody

 9   place out there the notion of a bellwether trial, and

10   obviously I think that that is going to have to be the case

11   that there be some sort of trial of a representative group,

12   a small group possibly or whatever.  I just say a

13   bellwether because the first trial might dictate how any

14   other trial might proceed, so I'm calling it bellwether in

15   that sense.

16          I'm not necessarily suggesting that the bellwether

17   trial -- well, obviously it will let the parties know what

18   this community thinks about these claims and all of that

19   kind of stuff, and so we want to make sure -- obviously

20   these cases cannot be tried all at once.  That's number

21   one.

22          Number two, how do we find a representative sample

23   of cases to try, and when can that trial necessarily occur,

24   and how long might it take, and how might that look like?

25   That is on down the road.  We need to get discovery going

1    on right now and how that discovery might apply to each

2    case or individual cases or whatever.

3         So for purposes of today, I want you all to argue

4    the benefits of your views on what the consolidation order

5    should look like.  But -- and I know you didn't hear for

6    the first time just today, basically, this notion of

7    severing, but I do want you to think about the severance

8    issue as you talk about your view of what the consolidation

9    order ought to be.

10        So starting with you, Mr. Stern.

11        MR. STERN:  Thank you, Judge.

12        Obviously we believe that consolidation for purposes

13   of discovery is the only way to prosecute these cases.  If

14   on the one hand every claimant has their own case but on

15   the other hand all the claimants together are going to be

16   required to take the same deposition of the governor, to

17   take the same deposition of the head of the Department of

18   Health, to take the same deposition of the engineering

19   defendants and the folks that were on the ground in Jackson

20   during the period of time when the decisions were made,

21   that would be not just inefficient but it would be an undue

22   burden on deponents, on witnesses, on the defendants, and

23   frankly on the Court and the officers of the court who

24   would be performing and undertaking those procedures.

25        So the facts as alleged in the complaint are the

1    same, essentially, for all of the children who are the

2    plaintiffs in these various cases, so we do believe that

3    consolidation is appropriate.  I still don't fully grasp or

4    even somewhat grasp why the defendants are insisting upon

5    having individual case numbers for every plaintiff other

6    than to take 2400 depositions or undertake 2400 -- I'm

7    using 2400 because that's the number Your Honor used, but

8    let's imagine it's 2400 kids and 2400 plaintiffs.  It's not

9    efficient to begin the process of undertaking affirmative

10   discovery on 2400 children and their families.  That would

11   take at least a decade, I think, and that's if we worked on

12   nothing but this case every day between now and ten years

13   from now.  And so I don't think we can have it both ways.

14        If there's going to be individual cases for each of

15   these kids and the defendants are going to undertake to

16   depose everyone's mom, everyone's doctor, they're going to

17   do home inspections of every one of these children, I

18   honestly don't know how they can afford it.  It's odd to me

19   that the city is proposing that, because in -- what I know

20   about the city, I don't believe there's insurance in this

21   case.  And all I've heard about is from various folks how

22   this is a fool's errand in terms of going after the city,

23   because at the end of the day, the city has no money.

24        So if the city, separate from the State, is willing

25   to undertake discovery as to 2400 individual children, then

```
 1    I'm not sure that the city is in the financial straits that
 2    has been reported in the media or that has been told to me
 3    even by counsel in this case.
 4         If we were to undertake a bellwether process, it is
 5    possible to select a random number of the 2400 and conduct
 6    discovery on them.  Not 100 kids that I pick or 100 kids
 7    that Mr. Mitchell picks or Mr. Webster picks or anybody
 8    picks because we like them or we don't like them, but it
 9    makes more sense, and in mass torts like this, the prudent
10    thing that's typically done is to undertake some discovery
11    for the defendants of plaintiffs on a random set with an
12    eye toward a bellwether trial with the hope that if you
13    pick enough, that it will be representative of the whole.
14         So, yes, we think everything should be consolidated
15    for the purposes of discovery.  No, we do not think that
16    while one deposition is taking place every couple of weeks
17    of government employees and private actors, at the same
18    time depositions are taking place every single day of every
19    single child and their parents, that would be extremely
20    inefficient.
21         And the reason why it, I believe, still is wise for
22    the Court to enlist the assistance of a special master,
23    whether it's one of the individuals that the defendants
24    proposed of the nine that they proposed or one of the two
25    that we proposed or a combination of both or someone or
```

1   someones that Your Honor has considered, you know, that

2   none of us have.  That person would hopefully have some

3   experience in dealing with cases that involve numbers like

4   these or greater and can, without a level of advocacy which

5   I have for my clients and which Mr. Mitchell has for his

6   and which Mr. Webster has for his but, rather, with an eye

7   toward impartiality and efficiency for the Court and for

8   the court staff, including your clerk who's there, can help

9   create a structure that's both meaningful in finding

10  information and discovering information, meaningful in

11  pushing these cases swiftly toward a resolution, be it

12  trial or otherwise, and at the same time utilize the

13  experience that they have in creating a system that doesn't

14  disadvantage anybody, but at the same time, creates

15  efficiencies for everybody.

16       I still don't know, like, if there's a case number

17  for every child, what does that mean?  I mean, does that

18  mean that at that point in time discovery gets propounded

19  on every single child?  Because that's -- that would be the

20  first time I've experienced that in a -- in a case this

21  size.

22       There's other ways to get information to the

23  defendants besides undertaking discovery in 2400 cases.

24  There's plaintiff fact sheets that can be submitted.  Those

25  can be negotiated amongst the parties.  Those can be tiered

1    in phases, so that they receive them not all at once,

2    because they wouldn't be able to do anything with 2400 fact

3    sheets at one time, but maybe 100 at a time every few

4    months or 50 at a time every few months.

5         And, again, this is why I think it would be helpful

6    to have an impartial, unbiased nonadvocate to talk more

7    about efficiencies than someone in my shoes who obviously

8    has reasons why I want things a certain way or Mr. Mitchell

9    or Mr. Webster who have reasons why they want things a

10   certain way.

11        THE COURT:  You mentioned, Mr. Stern -- I mean, just

12   because cases have numbers doesn't mean that -- I mean,

13   through some order that this court can do, I mean, the

14   Court can fashion some sort of thing -- it doesn't matter

15   how many plaintiffs there are.  I mean, the Court could

16   prescribe that discovery only advances in a certain number

17   of cases, I mean.

18        I'll hear from the defendants, but the defendants,

19   like you, you have a right to seek discovery from the state

20   actors and the city actors and all that.  I'm pretty sure

21   I'm going to hear from the other side, Judge, we need to be

22   discovering -- taking discovery from the various

23   plaintiffs.  Now, how might that discovery look and what

24   all it will be, I don't think that -- well, don't let me

25   speak for the defendants.  Let me hear from you.

1        I don't think -- I certainly hope the defendants did

2   not envision propounding interrogatories to 2400 people as

3   soon as this court decides how this case is going to

4   proceed.  I don't know.  Maybe you did.  But I'll hear from

5   whenever defendant wants to go next.

6        MR. MITCHELL:  Your Honor, this is Meade Mitchell.

7        And we do certainly agree that consolidation for the

8   purposes of pretrial motion practice and discovery is the

9   right way to go.  For a lot of reasons that Mr. Stern just

10  said, we do think that it is incredibly important that we

11  have either -- either you call it severance or you call it

12  assigning numbers to each individual plaintiff.  We think

13  that's -- you know, this is the beginning of this case.

14       This case is probably as -- the people here in my

15  office said if this were an MDL, it would be the 15th

16  largest MDL in the country, and the case is probably going

17  to have to proceed as most MDLs proceed, and in most MDLs

18  that we've been involved in, the plaintiffs are assigned

19  individual numbers, and that's because over the course of

20  time there will be filings that relate only to individual

21  plaintiffs and they will not relate to all plaintiffs, and

22  that way, instead of everything being filed in one master

23  docket with massive confusion, if it relates to only an

24  individual plaintiff, it will be filed there.  If it

25  relates to the plaintiff and the overall case, it will be

1    filed in the master docket as well as in the individual

2    docket, and we think that it's incredibly important for the

3    Court to be able to keep up with how these cases are moving

4    forward and for us to be able to keep up with what is

5    happening for each individual plaintiff as it goes forward.

6         As it pertains to what -- at least what Meade

7    Mitchell and the department think should be the next steps,

8    no, we don't anticipate that we would file discovery as to

9    2200 plaintiffs, but what we do think is that there would

10   be a need for certain *Lone Pine* information, and *Lone Pine*

11   is a decision that requires all plaintiffs to come forward

12   with certain basic information to show that they have

13   standing to be in this court, proof of injury, proof of

14   exposure.  We believe that is critical.

15        I mentioned that when I argued the motion, Your

16   Honor, on the MTCA issues, that that was not an MTCA notice

17   and I thought it should be, because I think that if these

18   children do not have a cognizable injury that has been

19   diagnosed by a doctor, cognizable exposure, that their

20   claims aren't ripe pursuant to Article III, and that's

21   something that we would want, and that would be those fact

22   sheets or the -- you call them -- I would call them a *Lone*

23   *Pine* order sheet would be filed in each of the cases.

24        What we would think that would happen next is for

25   those plaintiffs that survive, that they have the standing

1    information, that we would negotiate some sort of a fact

2    sheet with the plaintiffs and the fact sheet would be

3    provided.  And then after the fact sheets, the parties

4    would select -- the defense would have a selection and the

5    plaintiff would have a selection and we come up with a

6    bellwether group for full case development, much smaller.

7    Much smaller.  Not the full component of the cases.

8         That's the way I've seen it done in MDL cases.  It's

9    reasonable.  It would require the plaintiff to come forward

10   with the basic information showing that their clients have

11   a right to be in front of this court, and then it would

12   give us -- for those that survive, it would give us the

13   base information that we would need to be able to select a

14   bellwether group.

15        And as for the order that we --

16        THE COURT:  Let me interrupt you right there,

17   Mr. Mitchell.

18        MR. MITCHELL:  Absolutely.

19        THE COURT:  Let me ask this question:  I assume the

20   governmental entities are not getting this information on

21   the tort claims notice, because if you're not getting it

22   from a tort claims notice perspective, that's a reason for

23   denial, I presume.  So I assume you're not getting this at

24   this stage of the game?

25        MR. MITCHELL:  All we get is their addresses at this

1    stage of the game in the tort claims notices.  Yeah.

2          THE COURT:  Okay.

3          MR. MITCHELL:  Did I answer your question, Your

4    Honor?

5          THE COURT:  Well, I guess -- I mean, yeah.  I mean,

6    you're not getting -- you're not getting any level of any

7    indication of injury or anything else other than names and

8    addresses?

9          MR. MITCHELL:  No.  Well, that's -- I should be more

10   clear, because I'm sure Mr. Stern will say it.  In each one

11   of the MTCA notices, the plaintiffs have the same statement

12   about each plaintiff that says they suffered one of the

13   following injuries.  It's a statement in each letter.

14   Every single one of them has exactly the same statement.

15   But that's not what we're looking for in *Lone Pine*.  We'd

16   be looking for an expert affidavit showing that they have

17   cognizable injury.  You know, a boilerplate statement does

18   not satisfy a *Lone Pine* criteria for showing injury and

19   standing to pursue a lawsuit.

20         MR. STERN:  I --

21         THE COURT:  Before you get there, then I guess this

22   sort of goes back to one of the earlier questions that I

23   asked:  If you're getting the same sort of notice for each

24   of the plaintiffs, why do the governmental entities need

25   90 days to reject it?  I just put that out there.

1     MR. MITCHELL:  Your Honor, you raise a very good

2  question.  You raise a very good question.  It's just one I

3  haven't given any thought to.  We were just -- you know,

4  the government's position has always been they were going

5  to -- we're going to require compliance with the MTCA

6  90-day notice rule, and I've never given any real

7  consideration of -- of an outright denial in advance of

8  that.  You raise a good question, though, and I will take

9  it back to my client.

10     THE COURT:  Okay.  I know Mr. Stern wanted to

11  respond, but I'm going to move on to the city to -- counsel

12  for the city to the extent --

13     MR. HAWKINS:  Thank you.

14     THE COURT:  Mr. Mitchell, were you through?  I'm

15  sorry.  Were you through, Mr. Mitchell?

16     MR. MITCHELL:  Yes, Your Honor.  And I wanted to say

17  this.  You know, I -- Mr. Stern and I kind of -- we knew we

18  were going to have disagreements on what the discovery

19  should look like, you know, after we get past this early

20  stage, and one of the things that we had talked about as we

21  put together this -- so as not to overwhelm the Court is

22  that we had proposed and I think we kind of agreed that we

23  were going to try and see if there was anything that we

24  could work on in good faith together moving forward.  We

25  haven't had that opportunity, so I'm throwing a lot of this

1    information Mr. Stern -- he knew we were going to have

2    disagreements, but I'm throwing a lot of information at him

3    cold, and I just want you to know that.

4         THE COURT:  Well, let me follow up, then, and just

5    ask this one question:  You indicated agreed fact sheets at

6    some -- I think you've given one opportunity to put it

7    forth, I think is what I heard, and then come back with

8    even, what is it, second fact sheets?  I'm just trying to

9    figure out why can't we get an agreement on what a fact

10   sheet might look like on the very front end?

11        MR. MITCHELL:  You could.  You know, fact sheets

12   are -- that I've seen, and certainly the ones that I've

13   seen in Flint and I've seen in other cases, are really

14   pretty detailed.  You know, you'd have authorizations and

15   medical records and a lot of other things that would be

16   attached to a fact sheet.  That's a lot of work.  You would

17   stage it out.  It takes time.

18        But the *Lone Pine* stuff that I was talking about

19   would be far more detailed.  It would be a very narrow

20   subset of, you know, a doctor diagnosing injuries.  It's a

21   much more narrow set of material that you would put forward

22   to show that they have standing to be here.  And then if

23   they didn't survive, if they don't have that information,

24   they wouldn't have to provide further supplemental detailed

25   fact sheets.  That was why I was -- you know, that's why I

1    had said that, Your Honor.

2         THE COURT:  Okay.  And, again, I'm just following up

3    with some of the words you used.  Standing to be in court,

4    couldn't that matter be taken up after the fact sheets are

5    presented or -- it sounds like you're saying if -- well,

6    obviously if you don't have those fact sheets, you don't

7    have standing, but I think you're also saying you don't

8    have standing without any of the fact sheets, if you see

9    what I'm saying.

10         MR. MITCHELL:  Well, yes, Your Honor I do.  And the

11   answer to your question is you could have a very, very

12   detailed fact sheet that all the plaintiffs could have to

13   submit, and you could just do it in one step, or you could

14   do it in two.  The information that the *Lone Pine* decision

15   that's been adopted by the Fifth Circuit put forward --

16   requires a lesser level of information than is in a

17   traditional fact sheet, and so at least as I was thinking

18   through the process, we would ask for the lesser level of

19   information first through the motion for a *Lone Pine* order

20   from the Court, which would be injury, diagnosing

21   information, exposure information, and testing information.

22         And then if they satisfy their standing criteria,

23   they wouldn't have to provide that again.  They would

24   provide a more -- a greater -- greater detail on who all

25   their doctors were and providing the authorizations for the

  1  discovery of medical records, and then we'd stop.  Then

  2  we'd pause, and then we would try to pick a bellwether

  3  group of all that were left to do full case workup on.

  4       Did I explain that well enough, Your Honor --

  5       THE COURT:  Yes.

  6       MR. MITCHELL:  -- or am I still leaving something

  7  out?

  8       THE COURT:  No, no.  You did.  I was just thinking

  9  about the sort of standing argument that a defendant always

 10  has:  At any point in the case, the Court can determine

 11  whether or not those persons actually have standing to be

 12  in court --

 13       MR. MITCHELL:  This -- when I talk --

 14       THE COURT:  Yes.

 15       MR. MITCHELL:  Your Honor, I'm sorry.  I

 16  interrupted.

 17       When I talk about this *Lone Pine* information, kind

 18  of the key case on this is a case called *Lore versus Lone*

 19  *Pine* out of New Jersey, and it was adopted by the Fifth

 20  Circuit in *Acuna versus Brown & Root, Inc.*, and it

 21  requires --

 22       THE COURT:  Give me the *Acuna* cite.  I'm familiar

 23  with it.  Give me the cite.

 24       MR. MITCHELL:  *Acuna versus* -- I'm sorry.  *Acuna*

 25  *versus Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000),

1    and in that case, the judge entered a *Lone Pine* order that

2    said that the plaintiffs had to submit affidavits listing

3    the injuries that the plaintiffs' expert will opine --

4         THE COURT:  Wait, wait, wait, hold on.  Remember,

5    we -- remember, we have a court reporter present.

6         MR. MITCHELL:  I've got a court reporter here.  I'm

7    going to -- I feel like I'm pushing too far with

8    information I haven't discussed with Mr. Stern, but this

9    is -- this is -- you've asked about it, and this is what

10   we're interested in.  And this has also been adopted by --

11   in our state multiple times.  Judge Parker in *Abner versus*

12   *Hercules*, which is -- and *Ashford versus Hercules*, two

13   decisions by Judge Parker employed this *Lone Pine* analysis,

14   so I think --

15        THE COURT:  Give me the cite in the *Hercules* cases.

16   Is that the FLSA case?

17        MR. MITCHELL:  It's -- it involved Hercules, and its

18   cite 2014 Westlaw 5817542, and that's a 2014 case.  And

19   then there is -- the second *Hercules* case by Judge Parker

20   is 2015 Westlaw 6118387.

21        And I think there are others, Judge, in which this

22   *Lone Pine* analysis has been applied.  And basically it just

23   says to show Article III standing, you know, to bring their

24   suits, that the plaintiffs had to submit affidavits listing

25   the injuries that the plaintiffs' expert claimed were

1  caused by the exposure, specifying the materials that

2  caused the injury, describing the times and circumstances

3  of the exposure.  It's basic information that shows they

4  have a right to be in court.  It's less detailed than what

5  I would traditionally envision a plaintiff fact sheet to

6  be.  It's base information that says they have a right to

7  be here.

8         THE COURT:  Okay.  Thank you, Mr. Mitchell.

9         MR. MITCHELL:  You're welcome, Your Honor.

10         THE COURT:  Mr. Webster?

11         MR. WEBSTER:  Yeah.  And, Judge, I'd echo and

12  co-sign what Meade said.  I would point out that in that

13  *Acuna* case, they were dealing with over 1600 (AUDIO GAP) --

14         THE COURT:  Make sure you're staying close --

15  Mr. Webster, make sure you're staying close to your

16  microphone.  You're fading out.

17         MR. WEBSTER:  Yes, sir.  I hope you can hear me

18  better now.  The one thing I would add to what Mr. Mitchell

19  said was that in that *Acuna* case, there were over 1600

20  plaintiffs, and the Court required the affidavit setting

21  forth -- specifying the injury or illness that was caused

22  by the exposure, the dates of exposure, the means of

23  exposure, and the scientific and medical basis for expert

24  opinion.

25         Mr. Stern made a lot of representations about what

```
1   the city wants, and the city has had no conversations with
2   Mr. Stern as to what it wants with regards to these
3   individual case numbers.  But it is something much more
4   consistent with what Mr. Mitchell set forth, which is in
5   litigation like this, which is novel litigation -- there
6   are no verdicts or judgments in a case like this, and the
7   science is disputed -- plaintiffs must provide some basic
8   information across the board, all of them, to show that
9   they have a case.  And that's their requirement under
10  Rule 11, and the Fifth Circuit has adopted that in *Acuna*,
11  and it's been adopted in the state of Mississippi.  This is
12  not a controversial request.
13       Once all that information has been presented, then,
14  yes, it may be time to move on and discuss a bellwether
15  process.
16       The one last thing I'll say is -- is that this Court
17  encouraged the parties to engage in settlement discussions,
18  and it is grossly inappropriate for plaintiff to then use
19  things that were discussed in that -- in those settlement
20  discussions to then dictate how this case should proceed
21  should those settlement discussions prove unfruitful.  I do
22  not think that is appropriate.
23       And not to rehash anything, but I do believe that
24  the cases do need -- we do believe that the cases do need
25  individual case numbers and this basic information before
```

1   we can move forward to further discovery with a bellwether

2   process.

3        THE COURT:  Okay.  Mr. Childress, you want to weigh

4   in?  I'm sorry.  Mr. Macelloni.  I'm sorry.

5        MR. MACELLONI:  I have no issues with Mr. Childress

6   speaking on behalf of Trilogy, but I'll keep it brief.

7        Trilogy agrees with both counsel for the State and

8   the City of Jackson in what they have proposed.

9        THE COURT:  Okay.

10        MR. STERN:  May I respond, Your Honor?

11        THE COURT:  Yes.  Yes.  I was thinking if I had any

12   other questions from the defendants right then, but, yeah,

13   you can go ahead and respond, Mr. Stern.

14        MR. STERN:  First of all, I have no idea what

15   Mr. Webster is talking about.  I have no clue what he's

16   talking about about appropriateness or inappropriateness of

17   settlement discussions.  The idea that the city has no -- I

18   had about 30 seconds' worth of settlement discussions with

19   Mr. Hawkins, and there was no discussion -- there was no

20   actual discussion of settling anything.

21        I didn't learn from Mr. Hawkins during a

22   conversation that the city was broke.  I learned it from my

23   own research.  I learned it from listening to city council

24   meetings.  I learned it from reading all of the public

25   information, and if somebody wants to dispute the fact that

1    it's public that the City of Jackson has no insurance and

2    has no money, I will stand corrected, and I'd be very

3    grateful to find out that they have more than anybody

4    thinks.  So I have honest to God no idea what Mr. Webster

5    is talking about.

6         Mr. Mitchell, in all of our conversations we've ever

7    had, has never even uttered the word *"Lone Pine* order,"

8    never once, but what I've heard him say today is that we

9    essentially shouldn't do discovery until plaintiffs show

10   that they can survive, until plaintiffs show that they have

11   a right to be in front of this court, and that asking them

12   to get medical affidavits, which means evaluations, expert

13   testimony, that is a lesser burden than what's generally

14   used as a fact sheet in MDLs.

15        So he said that he's doing us a favor by only

16   requiring 2400 kids to go get evaluated by experts, to have

17   those experts present affidavits to the Court so that we

18   can prove that they survive and have a right to be here.

19   A, I don't know why we had six hours of argument and about

20   four months of briefing when it came to the motions to

21   dismiss if even after Your Honor's order our clients still

22   have not survived and have not shown that they have a right

23   to be here.

24        The underestimation in statements about the

25   Mississippi Tort Claims Act notices flies in the face of

1    Your Honor's own review of those documents during that six-

2    or seven-hour hearing we had, at which point you said

3    something to the effect of in my own private practice, I

4    have not seen any of these that are so detailed.

5         It's not my fault or my clients' fault that the

6    conduct of these defendants is so uniform that it has

7    affected so many individuals that the claims themselves

8    appear to mirror one another.  But in terms of the

9    specificity required under the law to have standing and to

10   have a right to be in front of this court, Your Honor's

11   ruled on that.  It's an 80-something-page order, and it was

12   well written, and we lost some and we won some, and they

13   lost some and they won some.

14        I would submit to you that in most instances when

15   most *Lone Pine* orders are issued, it's after a settlement

16   has been put in place and you want to make sure that folks

17   actually qualify; and the idea of causing our plaintiffs

18   subsequent to a motion to dismiss to now have to prove they

19   have to survive or to prove that they have standing to be

20   in front of this court flies in the face of the activity

21   and the exercise that we undertook, Your Honor included,

22   for about nine months, and so I don't understand it.

23        But what I'm hearing is we should put the liability

24   of this case on ice.  I think what Mr. Mitchell and what

25   Mr. Webster are saying is we should not do anything in this

 1    case until we get an affidavit from every child's

 2    pediatrician, neuropsychologist, and economist to inform

 3    them that, A, they've been injured; B, what the cause of

 4    that injury; and, C, what their damages are, and then and

 5    only then will this court decide if our clients have

 6    standing.

 7          And if that's the case, I would submit to you that's

 8    never been done before in a case like this.  And I would

 9    also submit to you that everyone has wasted everyone's time

10    by ways of motions to dismiss if all they're trying to do

11    now is get a second bite at the apple, just under a

12    different theory.  Yes, we could have liability because

13    Your Honor says the law said so, but, no, we can't have

14    liability because we didn't get 2400 affidavits, one each

15    from three different doctors, to prove --

16          THE COURT:  Slow down -- wait, wait.  Mr. Stern,

17    slow down.  Slow down, Mr. Stern.  I know you're excited.

18          MR. STERN:  The biggest beneficiaries of this

19    exercise that Mr. Mitchell proposes are the lawyers for the

20    defendants, the hours they will bill, and the doctors who

21    will be paid hundreds of thousands of dollars on the front

22    end to evaluate children prior to Mr. Mitchell and

23    Mr. Webster ultimately filing summary judgment motions on

24    liability under the same theories that they presented Your

25    Honor on their motions to dismiss but after discovery may

1  be taken if our clients can survive and prove they have a

2  right to be in court.

3       If Your Honor is even considering the *Lone Pine*

4  order, we would beg for the opportunity to brief it, to

5  evaluate the cases that Mr. Mitchell has cited for the

6  first time.  We've had since May 10th, 2023, so almost four

7  months -- or three months at this point in time for someone

8  to suggest to me that this was the road that they intended

9  to take with Your Honor.

10       We have every opportunity -- we should have every

11  opportunity to oppose this in a more meaningful way, citing

12  the cases that are not in line with those that they cited,

13  and testing the veracity of what has been proposed those

14  cases stand for.

15       THE COURT:  What I'm trying to get to is a path to

16  go forward and how does that path look with respect to the

17  current cases that I have as well as the future cases that

18  I will get, because, again, you say there are probably less

19  than 150 that are before the governmental entities on tort

20  claims notices.  I assume you have an equal or less number

21  in your office still, and you're signing up people every

22  day, or --

23       MR. STERN:  So I have an answer for you on that.  We

24  currently have 80 cases that have not been filed, and we

25  have not yet sent notices of claims under the Mississippi

1  Tort Claims Act for those 80 cases.  Other than the 80,

2  every case we have has now been filed before Your Honor.

3          THE COURT:  Oh, including the ones -- the MTCA cases

4  that currently exist before the --

5          MR. STERN:  There are no more pending -- there are

6  no more claims that have been presented to the city or the

7  State that are pending a 90-day assessment and resolution.

8  We know that there's no assessment and there's no

9  conversations.  It's just a waiting game once we send them,

10  but there are none that are in that posture.

11          THE COURT:  Okay.  So what do we know at this point

12  in time?  What is the current number of plaintiffs that are

13  in federal court right now?

14          MR. STERN:  Give me one more second.  I have it.

15          MR. MITCHELL:  Your Honor, I believe it's -- with

16  the last filing, it's approximately 2,140.

17          MR. STERN:  I'm looking at an Excel spreadsheet.

18  It's just not as easy for me to --

19          THE COURT:  Give or take 100 or so, Mr. Stern, you

20  believe that's the number?

21          MR. STERN:  I have a slightly different number, but

22  it's in the ballpark.

23          THE COURT:  Okay.

24          MR. STERN:  Ours are over 2200, but I think it's

25  inclusive of the 80 we have not yet sent notices for, so

1    Mr. Mitchell is probably correct.

2          THE COURT:  Okay.

3          MR. STERN:  But I feel like maybe my emotion got the

4    best of me.  I want to be very clear for what I'm hearing

5    Mr. Mitchell say so that he can confirm for the Court that

6    I'm not misstating this.

7          In order to prove exposure, injury, and some level

8    of damages in every lead poisoning case that I have ever

9    handled, whether it's a case for one child in The Bronx,

10   New York, or for 5,000 children in Flint, Michigan, we need

11   an expert neuropsychologist or pediatric neurologist to

12   spend about four to five hours with the child to do a

13   full-out assessment.

14         We then need a pediatrician who specializes in

15   causation to do his or her own evaluation of the child, as

16   well an evaluation and an assessment of the conditions in a

17   child's life to be able to give an expert opinion about

18   those neuropsychological developmental issues being caused

19   by lead.

20         And then we need to hire an economist to do a

21   valuation of that child's lost earnings in addition to

22   getting testimony from family members and schoolteachers

23   and aunties and uncles to make a determination about

24   noneconomic damages.

25         Those are the things that I think Mr. Mitchell and

1    Mr. Webster and all of their colleagues believe we need to

2    show, that we are required to show this court at this

3    stage, for them to first determine if any of those folks

4    survive and have the right to be in front of this court.

5    And it's so common and so normal that they actually have to

6    file a motion to ask you to enter an order that doesn't

7    exist automatically under the law to make it so, and all of

8    those things are less invasive, easier, and simpler than a

9    plaintiff's fact sheet.

10        I just want to make sure and confirm that those --

11   me putting it in my words is the same thing that they're

12   saying we need to show this court if they file a motion and

13   Your Honor enters an order approving it.

14        MR. WEBSTER:  This is Clarence Webster.

15        I think what we're asking the Court to do is enter

16   an order consistent with what the Fifth Circuit has already

17   done in the *Acuna* case, and, you know, we've not had any

18   discussions with Mr. Stern on that.  Maybe this isn't the

19   appropriate time to have this back-and-forth with Mr. Stern

20   on these issues, but what we're proposing is what has been

21   adopted by the Fifth Circuit, which is where we're sitting

22   right now.

23        THE COURT:  Well --

24        MR. MITCHELL:  Your Honor --

25        THE COURT:  Go ahead, Mr. Mitchell.  No, no.  Go

1    ahead, Mr. Mitchell.

2        MR. MITCHELL:  Not everything that Mr. Stern

3    mentioned would be required.  You know, you don't have to

4    have economic reports and all these family member

5    interviews to show standing under the *Acuna* case.

6        And I will say this.  Mr. Stern said I'd want an

7    opportunity to brief it.  I fully expect that he would be

8    given an opportunity to brief it, Your Honor.

9        In fact, you know, you raised these issues, and it

10   brought it up for the first time under the proposed case

11   management order that Mr. Stern, Mr. Webster, and

12   Mr. Macelloni and I submitted.  This was the next step in

13   the discussions.  We haven't had any discussions on these

14   points yet.  We were going to, and I knew we were going to

15   disagree, but I would fully anticipate that Mr. Stern would

16   be allowed the opportunity to brief it, but, no, we're

17   asking for what the *Acuna* case says, which is diagnosis of

18   injury.  And if they don't have diagnosis of injury, Your

19   Honor, they shouldn't be allowed to sue, period.

20       THE COURT:  Okay.  Well, that sort of begs the

21   question of why I'm here, because I assume no matter what

22   road we go down with fact sheets or detail sheets or

23   whatever we have, there will be some plaintiffs to survive.

24   There are going to be.  What number of plaintiffs, I don't

25   know.  But assuming 25 percent of them survive, that's a

1    fourth of 2,000.  That's 500 still.  We still need to find

2    out, figure out how those 500 cases will proceed in a

3    consolidated fashion, or the thing that I wanted to bring

4    to your attention on is maybe severing, having some sort of

5    severance order.  But I -- and I wanted to raise that issue

6    with you because I've heard from you, and I understand the

7    implications and making sure that everybody rights are

8    preserved as to any individual -- you know, some pleadings

9    or motions might only apply to a particular person or a

10   particular entity and how that might be done.

11        But still, at the end of the day, what's going to

12   benefit the Court and the parties is to make sure that

13   there's some discovery, that discovery begins, and -- you

14   know, because you all have not been before a magistrate

15   judge.  We've not gotten a -- I did ask you to start

16   thinking about the possibility of a special master.  That's

17   something that is still on the table.

18        If this were a regular case, obviously a special

19   master is not even in the equation, but I don't want to

20   overburden any of our magistrate judges with any one case

21   that will prevent that person, he or she, from being able

22   to do all the work that they are asked to do around here.

23        So I guess no matter how we move forward, we know

24   that there are going to be some cases left.  I guess I want

25   to go to the abstract world and say:  Assuming there are

1   cases that are left, how do we consolidate, unpack them,

2   how do we sever them?  How do we move forward with

3   discovery?  And that's what I kind of want to move to next.

4   How do we move forward?

5       Are the plaintiffs saying -- are the defendants

6   saying that the fact sheets must be so detailed before a

7   person even has a right to even be in court that any injury

8   that they would have is speculative at this point, for

9   example, and we should not have to go through discovery to

10  see what they have or to learn what they have; they should

11  have to give that on the front end?  So I need you all to

12  help me get to the point of discovery.  Assuming that we

13  have 500 cases left, how do we move those 500 cases?

14      I see the fundamental disagreement that the parties

15  have in their versions of a consolidation order, and I'm

16  not glossing over that at all, but we have to find a way

17  for the parties to be able to move these cases, and we have

18  to figure out how we could either do it in a consolidated

19  fashion or in a severed fashion so that -- and, again, you

20  know, I'm sympathetic.  I know you all are sympathetic to

21  the Court and not overburdening the Court.  The Court is

22  also sympathetic to you all.  I don't want you to have to

23  go out and have staff to plug in stuff on every pleading

24  that is filed.  I don't know.  We need to talk about that.

25      So how do the parties envision discovery being the

1    next step?

2         MR. STERN:  Your Honor, first and foremost, I

3    will -- you will -- there will be 2142 plaintiffs that

4    survive since survival is now what's being discussed in

5    terms of their claims, despite having survived multiple

6    motions to dismiss.  There's not going to be 500.  There's

7    not going to be 700.  There will be 2,142, which is the

8    number that as of today has been filed, and they will all

9    survive regardless of what the Court initiates, puts in

10   place, and requires of us.

11        Number two, there should be no delay in beginning

12   discovery at this point in time.  The cases were filed well

13   over a year ago.  We survived extensive motion practice on

14   legal theories.  We have an obligation to our clients to

15   prove the liability in this case in the same ways that

16   Mr. Mitchell and Mr. Webster describe their -- their

17   obligations to their clients to prove that our clients have

18   a right to be in front of the Court.

19        So we would ask that the discovery begin

20   immediately, that we be able to propound interrogatories,

21   requests to produce, as well as requests to admit.  We've

22   gone back and forth on electronic storage information

23   protocols, which, as Mr. Mitchell probably knows based on

24   his extensive practice in this area, is commonplace, and we

25   see no reason to delay that at this point in time.

1          There's a reason why we can't do it before a motion

2     to dismiss, because at that point in time Your Honor may

3     have found our clients do not survive and do not have a

4     right to be in front of the Court, but at this stage Your

5     Honor has determined they have survived and that they do

6     have a right to be in front of the Court, and I see no

7     reason to delay discovery.

8          That said, that discovery should be consolidated for

9     purposes of liability, because it would not be okay under

10    any scenario for witnesses to be deposed more than once who

11    will provide the same information in case one as they would

12    in case five as they would in case --

13         THE COURT:  Slow down.  Slow down, Mr. Stern.

14         MR. STERN:  So, for instance, if in fact there's a

15    notice of deposition on the governor of the state of

16    Mississippi, and there may be motions to quash the subpoena

17    because he's so busy, or perhaps the mayor is deposed or a

18    subpoena is issued or a notice of deposition is issued and

19    Mr. Mitchell raises a motion to quash because the mayor is

20    so busy.  Assuming that we get to depose somebody on behalf

21    of one plaintiff, we should be deposing that person on

22    behalf of all of the plaintiffs.  I think every counsel for

23    every defendant will agree on that.

24         What they won't agree with and what's at the heart

25    of this, I am imagining based on Mr. Mitchell's proposal

```
 1   earlier is that they do not believe we should begin
 2   undertaking that discovery until they have gotten -- and
 3   I'll throw out the part about the aunties and the grandmas
 4   and the moms and the teachers.  Maybe we don't need to show
 5   them what their noneconomic damages are, but I didn't hear
 6   Mr. Mitchell say we don't need to have a neuropsych
 7   evaluation.  I didn't hear Mr. Mitchell say that we didn't
 8   have to have a pediatric evaluation.  I didn't hear
 9   Mr. Mitchell say that we didn't have to have an economic
10   evaluation.
11       And what you're going to hear from them, I am
12   betting, is no discovery on liability should take place
13   until whatever process Your Honor institutes; Lone Pine
14   order, fact sheets, bellwether fact sheets, whatever the
15   decision is that's made, nothing happens until we know who
16   survives and has a right to be in front of the Court.
17       THE COURT:  Well, let me ask you this:  What
18   prediscovery disclosures has the plaintiff made?  Because
19   I'm --
20       MR. STERN:  We haven't undertaken --
21       THE COURT:  Because you still have to do
22   prediscovery disclosures; right?
23       MR. STERN:  We do, but we've been waiting on either
24   the magistrate or Your Honor to, I think, authorize us to
25   do that.
```

1          THE COURT:  I'm just saying are you prepared to do

2     your prediscovery disclosures?  Because I assume the

3     prediscovery disclosures will add some information to these

4     cases.

5          MR. STERN:  Sure.

6          THE COURT:  And are you ready to do prediscovery

7     disclosures --

8          MR. STERN:  Yes.

9          THE COURT:  Hold on.  -- for the 2142 people who you

10    represent?

11         MR. STERN:  Yes.  Yes.

12         THE COURT:  And after those disclosures are made, I

13    know you're not certainly ready to defend 2142 depositions

14    or sets of interrogatories for each of the plaintiffs.  So,

15    again, what I'm trying to get to is a manageable set of

16    cases but also trying to track the information that's

17    required in each of these cases.  And, you know -- and I

18    guess it's partly my fault because I'm just now having this

19    sort of hearing, but you all appear to be at an impasse

20    with respect to how you envision any of this case going

21    forward.

22         MR. STERN:  It's an impasse the size of any of the

23    oceans, and it's the first that it's ever been -- it's the

24    first I've ever heard of this proposal.

25         THE COURT:  Well, again --

1          MR. MITCHELL:  Your Honor --

2          THE COURT:  Go, Mr. Mitchell.

3          MR. MITCHELL:  No, Your Honor.  I interrupted you.

4    I apologize.

5          THE COURT:  No, no.  No, no.  Go ahead.  Go ahead.

6          MR. MITCHELL:  So we -- when we submitted the

7    exemplar CMO to you, we didn't -- we didn't get to these

8    issues, Your Honor.  We were trying to kind of work through

9    how we were going to consolidate the cases, how we were

10   going to have a master complaint and a master answer, and

11   how that process was going to work so that we could put a

12   structure to the case.  And then we specifically said in

13   the case management order that -- the way it was drafted is

14   that we would get together and then we would talk about the

15   issues that we're beginning to talk about now and that if

16   we agreed, we would agree, and if we didn't, we would

17   submit our own position statements or potentially briefs.

18         So Mr. Stern is right in that we haven't had an

19   opportunity to go through these issues yet, because in fact

20   the way we structured the CMO is that was supposed to be

21   the next step.  And so we're talking about a lot of things

22   that we have not discussed amongst -- with the plaintiffs'

23   counsel, so he's right.

24         But the case management order that is there,

25   standing apart from the discovery issues that are to come,

1    still is something that is kind of a prerequisite.  It's

2    the consolidation of these cases.  It's the master

3    complaint process.  So if Mr. Stern needs to add additional

4    people later on, they will be -- they can be added through

5    a short-form complaint.  It's the adoption of your order

6    that you've already entered to the cases that are all being

7    consolidated together.

8        We weren't that far apart on those issues.  The

9    biggest disputes that I saw was the plaintiffs did not

10   desire for there to be individual case numbers.  We do.

11   And the plaintiffs didn't think that we should be allowed

12   to continue to reserve our right to raise new defenses that

13   weren't in the motion to dismiss.  We disagree with that.

14   We're not going to waive any rights to raise any defense

15   that we deem appropriate going forward.  That doesn't mean

16   we're going to relitigate the issues you've already

17   decided, Your Honor.  We want you to adopt that, but we're

18   not going to waive anything.

19       Those were the only two big issues with that order

20   that we submitted to you that were out there.  And then we

21   were supposed to discuss all of these issues that we're

22   kind of going over on the phone now, how discovery's going

23   to go forward, and we knew there was going to be -- I knew

24   there was going to be disagreement, substantial.

25       But I think we can work -- still can work through

```
1    those, but we're not going to agree.  I just think we're
2    going to have to submit those in the form of some sort of
3    motion for the courts, so that they're going to be able to
4    decide.
5         THE COURT:  Mr. Stern, what's your major objection
6    to having each plaintiff with an individual number?  What's
7    your -- 1, 2, 3, what's your major objection to each having
8    an individual number?
9         MR. STERN:  It's not that I have an objection to
10   each of them being identified individually.  It's that the
11   way it was described to me is that each one of them would
12   have their own case docket number, they would have their
13   own ECF number.  That means that every one of them has
14   the -- if that's not burdensome on the Court and on the
15   parties in terms of keeping up with that, I don't know what
16   burdensome means.  I mean, why not just have an Excel
17   spreadsheet that assigns them a number 1 through 2142 and
18   keep track of them that way and attach it as a master
19   exhibit to the consolidated case and that it can continue
20   to be updated as new cases are filed to the extent that
21   there's any new plaintiffs?  But the idea of entering a new
22   docket number, a new case number on the docket in your
23   court for every single plaintiff seems like it's a poor use
24   of time, resources, and I don't really understand what the
25   purpose of it is.
```

1          THE COURT:  Okay.

2          MR. STERN:  If the purpose is for them to file

3    motions to dismiss in each and every one of those

4    2142 cases, then obviously I'm opposed to that.  Obviously.

5          But what I'm hearing now is that that's what's going

6    to be efforted on the side of the defendants at this point.

7    They were unable to convince Your Honor under the law

8    that on a liability evaluation that they can get out of

9    this case on a motion to dismiss.  But now they want --

10   before anything happens on liability, even though we've

11   already won that fight on some level, before we get to

12   liability, they want another chance to dismiss as many of

13   these cases as they can, because they're going to propose

14   an order to you requiring you to require us to do more than

15   what the law requires of us at this stage.

16         THE COURT:  Assuming the Court --

17         MR. STERN:  That's what I'm --

18         THE COURT:  Wait, wait, wait, Mr. Stern.  Assuming

19   the Court does not do that --

20         MR. STERN:  Yes.

21         THE COURT:  -- assuming the Court agrees that the

22   motion to dismiss phase is gone and now we're looking to

23   trying to get to a summary judgment phase, just because

24   each individual has a new number does not add any things on

25   the meat to the bones for a summary judgment motion.  You

1    would agree; right?

2         MR. STERN:  Then I have no issue with it, but I

3    think it can be more efficient than by each one having

4    their own case.  I think that having -- I don't know how

5    many cases are currently pending in your district, but

6    adding 2,142 more for a limited purpose can easily be

7    accomplished in a more limited way, and it could be done

8    through an Excel spreadsheet.  It could be done through a

9    Google spreadsheet that's shared amongst the parties that

10   the Court has access to.  It doesn't have to be a new --

11   and I'm guessing that the clerk of court probably would

12   agree with that.  I mean, imagine -- I don't know what kind

13   of --

14        THE COURT:  You're about to hear from the clerk of

15   court.

16        MR. STERN:  Okay.

17        THE COURT:  And I don't think -- I'm not sure his

18   views are aligned directly, because we've been looking at

19   this from an operational point of view on our side

20   of the -- on this side of the ECF computer system or

21   whatever.  And, of course, we've been thinking about --

22   because we're former lawyers, we've been thinking about

23   what it looks like on the attorneys' side as well.  So I

24   have Mr. Johnston here.

25        Mr. Johnston, you ready to come to the podium to

1    help us out just a little bit to talk at least about that

2    particular issue?

3        MR. JOHNSTON:  Little rusty, Your Honor.

4        THE COURT:  I was about to say, remember, he hasn't

5    practiced -- he hasn't come to the podium as a lawyer in a

6    while, and he's never appeared before me.  He doesn't know

7    what to expect; right, Ms. Pickett?  He doesn't know what

8    to expect.

9        MR. JOHNSTON:  I've been to the podium, Your Honor,

10    but it's usually to fix something that's gone wrong here.

11        THE COURT:  Can everyone hear him?  Yes?  Okay.

12        Mr. Johnston, I know we've been talking about how we

13    may be able to manage these cases, at least if they're

14    severed, but severing also -- we need to make sure that if

15    they're severed, that it does not affect whatever rights

16    any of the parties have in this litigation:  the rights of

17    the defendants, the rights of the plaintiffs.  And I want

18    you to just share with them what we've been sort of trying

19    to figure out how this can work if it is severed.

20        MR. JOHNSTON:  Your Honor, we have discussed that

21    and, you know, certainly if we sever out 2142 cases, that's

22    going to take a little time, going to take a little effort

23    on the part of the clerk's office, but it's nothing that we

24    can't handle.  It would take a number of days to do it.

25        But our idea is largely -- again, speaking just from

```
 1   a technical standpoint of clerk office operation, it's
 2   largely like the paragraph D of the proposed case
 3   management order articulates.  We would create a master
 4   case file.  We would probably create a new master case file
 5   with a new case number and then give the plaintiffs cases
 6   each in series after that number and copy whatever case
 7   your order provided for to be -- the pleadings to be copied
 8   into a master file; and then in each individual case, I
 9   presume we would open those cases with an order ordering
10   the cases to be severed.  Maybe the primary complaint or
11   initial complaint; am I right?
12        And -- but then with direction in your order,
13   everything would be filed in the master case going forward,
14   unless a matter pertained to one individual plaintiff or
15   several individual plaintiffs, then those could be filed in
16   those individual cause numbers.  But it is achievable with
17   a little effort.
18        THE COURT:  And if we were -- I guess short of that,
19   I mean, if we don't do that, then if they're unsevered or
20   they're not redesignated in the way that we think -- or the
21   way that we envision it, then we will have these five cases
22   that we currently have that have been consolidated and
23   every pleading that is filed will be filed in one of
24   five -- in this one case, because it's been -- these
25   five --
```

1          MR. JOHNSTON:  Consolidated.

2          THE COURT:  They've already been consolidated, I

3     think.

4          MR. JOHNSTON:  And I think there are two others that

5     have come in.

6          THE COURT:  Okay.  That's right.  Two others have

7     come in, and we suspect that they will be consolidated at

8     some point because they've come in, as well as the 80 cases

9     that are out there that we've heard about today.  When that

10    lawsuit is filed, then we'll be operating from one huge

11    file, I guess.

12         MR. JOHNSTON:  That is correct.  Our internal

13    discussions have centered around the idea that pretty much

14    everything would be filed in that master case number so

15    that you would avoid the kind of things that Mr. Stern was

16    talking about.  And within that case, you know, we would

17    need to -- you could even file one pleading that pertained

18    to 20 of the individual cases but not all and file that

19    only in the master case, but we would have to have a

20    notation on that complaint or that pleading that reflected

21    the case numbers.  And, again, we'd try to keep them in

22    series as much as we can, but for purposes of appeal, we

23    would need to be able to know, okay, we need to go flag

24    this motion from the master case if Ms. Williams's case is

25    taken up on appeal so that it pulls in for the appeal

1    record when it goes up.

2        So either could be accommodated, Judge.  You could

3    either file separately in individual cases or you could

4    file a pleading in the master case and designate what cases

5    those would relate to.  Am I right?

6        MS. STOKES:  Correct.

7        THE COURT:  And he's talking to the deputy clerks

8    when he says "am I right?"  He's not talking to me, because

9    I don't know.  Okay?

10        MR. JOHNSTON:  And I don't either sometimes, Your

11    Honor, as you know, so that's why I have those here who do.

12        THE COURT:  Right.  For ease and efficiency purposes

13    for this court and for the -- you know, again, I don't want

14    the parties to feel like they're burdened.

15        And we have Mr. Weathersby here, who is our computer

16    sort of person on this ECF stuff.  ECF was very, very new

17    right before I came over here, so I didn't get a chance to

18    be proficient in it, but on the lawyers' side of things in

19    making sure that pleadings are applicable to whatever, I

20    mean, how does that affect -- because I would not want the

21    attorneys' time and their offices' time to be overburdened.

22        We're about to spend -- if we sever these matters,

23    we're about to spend a significant amount of time on the

24    front end with our people here to get everything plugged

25    in, but how does that affect what might -- what the

1    attorneys might have to be doing on their side with respect

2    to entering documents, pleadings, order -- well, motions

3    and other things?

4        MR. JOHNSTON:  Well, again, Your Honor, ideally and

5    preferably, from the clerk's office standpoint, all of

6    that, even if they only pertained to a certain group of the

7    individual cases, it would be preferable that that be filed

8    and taken care of in the master case number.  But we

9    certainly could file -- have the attorneys file and the

10   clerk's office staff when there's an order file in the

11   individual cases.

12       There is a docketing function that MDL courts, I

13   believe, and other courts have used that we have not

14   activated in our court.  It's called collect case numbers

15   multi, and we could turn that function on for the lawyers

16   if they wanted to file, you know, say, the same motion in

17   20 cases or 200 cases.  We could enable that and probably

18   assist with that.

19       Unfortunately, because of some things that are going

20   on nationwide, we haven't been able to actually test that

21   function in our court.  Because of some server changeover

22   that's happening nationwide, we don't have a test database

23   at the moment, but that functionality is out there, so we

24   think that would help the attorneys not have to file the

25   same pleading 500 times.  That or simply filing those, even

1    though they only pertain to certain of the plaintiffs,

2    still in the master case, just in the document, the

3    pleading that's filed, designate what case numbers they

4    would pertain to, that particular filing would pertain to,

5    and then we can make a reference to each of those other

6    cases on the docket sheet.

7        Did I answer your question?

8        THE COURT:  I think -- yeah, yeah, you did.  Well,

9    let me -- I know this is the parties' first time hearing

10   any of that.

11       Does anyone have any particular question as we

12   consider -- as we think about -- again, my whole purpose is

13   to think about how we can get to the point to start to

14   jump-start these cases.  And, again, you know, it may be

15   putting the cart before the horse because, as I said --

16   well, you do have to get a sort of order in place, and that

17   hasn't been done.  And then we still have not discussed as

18   a group the potential of a special master and what role --

19       MR. STERN:  I have --

20       THE COURT:  -- if any, that person might play.

21       MR. STERN:  I have a question.

22       MR. JOHNSTON:  And let me add, Your Honor, that on

23   the -- if a special master is appointed, I think it makes

24   it easier to manage from the clerk's office perspective,

25   because I'm not so concerned about magistrate judge numbers

1    and dispositions.

2         THE COURT:  Okay.  Mr. Stern?

3         MR. STERN:  May I ask one question?  So if there's a

4    mechanism for and a need for filing one motion that by

5    hitting a button will file that same motion in 500

6    individual cases, why do we need 500 individual cases if

7    it's the same motion that applies to everybody?

8         I'm still not understanding what the need for 2142

9    individual case numbers is if we're going to be filing one

10   motion for everyone and then utilizing potentially new

11   technology to just file the same motion in 2100 cases.

12        MR. JOHNSTON:  Now, that's not the way I understand

13   it.  If the motion would apply to all the cases, it would

14   just be filed in the master case.  But if it's a motion

15   that only applies to a certain number of plaintiffs, that's

16   a different matter, and I'm not here to debate the

17   rationale for it.  I'm just telling you about the mechanics

18   of it, that it can be done.  I don't -- I'm not -- I don't

19   have a dog in the hunt.

20        MR. STERN:  I understand.  I understand.  Okay.

21   Thanks.

22        THE COURT:  Again, I know you all have not been

23   given the opportunity to think about that as a possibility,

24   and you might have more questions --

25        MR. MITCHELL:  Your Honor --

1          THE COURT:  -- as you think about it.

2          But Mr. Mitchell?

3          MR. MITCHELL:  Your Honor, what Mr. Jernigan *[sic]*

4    was talking about is -- is consistent with how a lot of the

5    MDL courts run their docket.  I heard of what he's talking

6    about where if you have to file a motion, and it ultimately

7    applies to 20 plaintiffs, you can spread-file it, they call

8    it, in those 20 plaintiffs.  That's kind of common in the

9    MDL world, and it works.

10          But I am more than happy to come and meet with a

11   representative from the plaintiffs' office and with

12   Mr. Webster and a representative from Trilogy with Mr. --

13   with the clerk and sit down and go through this, so that

14   there aren't any issues of confusion.  Because I do think

15   we will have a more organized filing system and a more

16   organized docket if we do have separate places to file

17   individual information on individual plaintiffs.

18          THE COURT:  Let me ask the parties this.  It sounded

19   like one of the concerns is -- is that someone might be

20   losing their right to -- or would be giving up something if

21   a case has a number and there's no activity in that

22   particular case.  Say, you know, it's 2142 and the parties

23   start working diligently on the first 100.  How might that

24   affect the next 2,000?  Or because there is no activity

25   going on in the next 2,000, is anybody harmed in any way?

1      You know, I'm not suggesting a stay as to the rest

2 of them, but certainly I don't think there's going to be

3 activity in -- well, I don't know.  Maybe I need to hear

4 from the parties.

5      Do the parties believe that there ought to be

6 activity in all 2142 cases at the same time, or do you

7 think you ought to work on some in stages, or had you

8 thought about that?

9      MR. STERN:  What I heard -- what I'm hearing from

10 the defendants, and, again, no one -- they have yet to

11 dispute that this is what they're saying, is that they want

12 to test the mettle of every plaintiff in each of these

13 individual cases before we do anything else in this case to

14 see who survives.  So if I'm wrong about that, I would very

15 much appreciate it if one of the lawyers for the defendants

16 would say that I'm wrong, that that's not what the strategy

17 is or the theory is.

18      But if that is the theory, then I do expect that

19 there will be filings in every one of these cases, because

20 I'm hearing that they don't believe what's being pled in

21 the notice of claims, even though Your Honor reviewed that

22 on the motion to dismiss, and they want us -- despite how

23 minimalist they're describing it, they want us to do a lot

24 of things to first prove to them under an order that

25 they're going to ask you to enter that our clients actually

 1   survive, and the only way to do that is through these

 2   individual cases.

 3        So I think the purpose of this is to be able to file

 4   whatever they want to file in each and every one of those

 5   cases.  Otherwise, I don't know what the purpose is.  And I

 6   could be wrong, but I wish someone would tell me I'm wrong.

 7        THE COURT:  No.  The purpose is for the benefit of

 8   this court trying to keep track of the number of cases that

 9   are filed in this district, that are disposed of.

10        One of the things that I don't want to do -- and,

11   again, the special master idea came up with me because the

12   burden, for example, that a magistrate judge -- because

13   this case is assigned to one magistrate judge right now,

14   and they will remain with one magistrate judge.  It will

15   remain with one district judge.  That the cases -- at the

16   end of the day, the magistrate judges have to work for, at

17   most, four or five other district judges.  I guess

18   sometimes you work for all nine of us or ten of us, but

19   generally they're assigned to judges, and I don't -- and

20   one reason I decided to think about utilizing a special

21   master is to take off that burden on the magistrate judge

22   for one thing.

23        And then, you know, obviously this case will never

24   be disposed of until all 2142 cases are disposed of; right?

25   If it proceeds in a fashion where it is in one block.

1   Despite the fact that a magistrate judge might have worked

2   on 100 of these cases or a district judge might have worked

3   on 100 of these cases and closed 100 of them within a

4   24-month period, it doesn't matter.  It doesn't show up as

5   having resolved or disposed of any case until all the cases

6   are gone if they all are tethered together under one

7   number.  So we're thinking about things like that.

8        The other thing that I thought about today, and,

9   again, I'm throwing things at you all just like you all are

10  throwing things at each other.  The other thing that I

11  thought about, you know, since we do have 2142 Jackson

12  citizens, Hinds County citizens, Jack- -- I guess Hinds

13  County, because Jackson's water system is operated

14  throughout the county, I think, even people outside of the

15  municipal area.

16       I have not gone through all 2,142 people.  It may be

17  that I may be related to some of them.  I may know some of

18  them.  I may feel like I can't sit in judgment of their

19  particular case.  You all may find that I can't sit.  You

20  know, so we have to think about all of those things.

21       If it turns out in this 2142 cases it is somebody

22  who I have a familial relationship or some other

23  relationship, does that mean that this Court recuses from

24  the entire case or from that specific plaintiff?  I don't

25  know.  But, again, having them all segregated in some way,

```
 1    it seems to me, makes even that a little bit easier to sort
 2    of detect, and I just thought about that this morning.
 3    So --
 4          MR. STERN:  Your Honor, if I could modify what I've
 5    said, if the purpose of this is for the efficiency of the
 6    clerk's office, if it's for purposes of efficiency for the
 7    Court's docket so that the assignment of magistrates and
 8    the easiness in which to identify who all these individuals
 9    are for the reasons that you just stated or for other
10    reasons, I never want to be inefficient for the Court.  I
11    clerked for a judge 21 years ago.  I know what a pain in
12    the neck it is to deal with one case, let alone 2400 cases,
13    2100 --
14          THE COURT:  You know what's kind of a pain in the
15    neck?  To deal with a lot of lawyers?  I'm just teasing.
16    I'm just teasing.
17          MR. STERN:  But what I don't -- what I'm not in
18    favor of is creating an environment under the guise of
19    efficiency so that the defendants can file new motions to
20    dismiss after having lost, essentially, on the motions to
21    dismiss that were already filed and postponing liability
22    discovery while they do that so a determination can be made
23    for the second time if our clients' claims survive and if
24    they have a right to be here.
25          THE COURT:  Okay.  The parties --
```

```
 1          MR. MITCHELL:  Your Honor --

 2          THE COURT:  Hold on.  Hold on.  Hold on.  In the --

 3   I think the parties at least agree, do you not, that there

 4   ought to be some minimal fact sheet at some point today,

 5   right now.

 6          MR. STERN:  Some what?  I'm sorry.

 7          THE COURT:  Some minimal fact sheet at this point,

 8   even today, and that the fact sheet at least gets people

 9   beyond -- gets parties beyond the motion to dismiss; right?

10          Haven't you all agreed that there ought to be some

11   fact sheets but maybe you have not agreed with -- agreed to

12   the detail of the fact sheets?

13          MR. STERN:  I think we've said there should be fact

14   sheets, but the fact sheets for us are the -- the purpose

15   of a fact sheet is to form the basis of a bellwether system

16   and how to choose bellwether cases and how to provide

17   identifying information for the defendants.  The way the

18   defendants apparently view the fact sheets is:  How can we

19   determine if these plaintiffs survive enough to have

20   standing to be here?

21          And so we can agree that -- you know, that I'll eat

22   a potato and Mr. Mitchell will eat a potato, but if I'm

23   eating a potato for sustenance and he's eating a potato to

24   choke, the purpose behind the potato may change whether we

25   all agree that that's what we're going to eat.  And so,
```

1  yes, we thi fact sheets are important so they can have more

2  information about our clients, not so that they can file

3  motions to dismiss in 2142 cases but so that it can help

4  form discovery, so that it can help choose bellwether

5  cases.  So it's not as easy as we've all agreed to that,

6  because I am surprised -- again, I'm not blaming anybody,

7  but I thought we were going to be in a different place

8  today and that the disagreement we were going to have was a

9  different disagreement.  I had no idea that this is what

10  Mr. Mitchell intended and what Mr. Webster intended.

11       THE COURT:  Mr. Hawkins, did you want to say

12  something?

13       MR. HAWKINS:  Your Honor, I was just going to say

14  that what I heard the Court say earlier was that you were

15  asking us to assume that the motion to dismiss phase is

16  over with and we're talking about now how to efficiently

17  manage the docket in this litigation, and that's what I

18  heard the Court say.  And so rehashing this -- you know,

19  whether or not Your Honor wants to hear -- or wants

20  briefing on the *Lone Pine* issue or not, I don't know if

21  that's been determined, but that's another subject, I

22  guess, but -- but Your Honor asked us to assume the motion

23  to dismiss phase is over with for purposes of this

24  conversation, at least, and that we're moving into the

25  discovery phase and we're talking now about how to do that

1    efficiently.  And so we all share the same objective, which

2    is to not overburden the Court or ourselves in trying to

3    get that done in an orderly fashion.

4         So I know the City's willing to do that.  The

5    State's willing to do that.  There may be disagreements

6    over exactly the wording of the fact sheets, whether or not

7    the fact sheets can be used for this purpose or that

8    purpose, but we agree we need fact sheets.

9         And so I would suggest -- and along the lines of

10   overburdening everybody, to echo something earlier,

11   Mr. Stern referenced me and us having a 30-second

12   conversation, and, Judge, I think you can take judicial

13   notice that neither of us, Mr. Stern or I, has either had a

14   30-second conversation or less with anybody, much less each

15   other.  We've talked a couple of different times in this

16   case, and that was for the purpose of broaching the subject

17   of settlement, and while this insurance question was

18   discussed during that, as I think it should be in any

19   meaningful settlement discussion, I don't want to get into

20   the details of that, but I do want the Court to hear that

21   we've done what you asked us to do, which was at least

22   broach that subject.  We're all here talking about a ton of

23   work that's got to be done by untold numbers of people in a

24   litigation that may last for years.  We're talking about

25   how difficult it is logistically, and so I think it's

1   appropriate for us to have had that conversation early, and

2   I don't think Mr. Stern disagrees with that, but I want the

3   Court to hear that the city defendants made an effort.

4        THE COURT:  Okay.  Thank you, Mr. Hawkins.  Not only

5   have that conversation early, have that conversation often,

6   at every phase of the litigation, is what I tell every

7   party who comes before me in every case, criminal and

8   civil, at every opportunity, even at the close -- even

9   after we get off this call.  There have been new

10  developments, and parties need to always reevaluate where

11  they are any given day in this case.

12       I'm going to -- we're going to take about a

13  15-minute break.  The court reporter has been going longer

14  than we have because she's been not having to pause while

15  we paused.  Let's take a 15-minute break, and then I'll

16  come back and we'll close the loop on this discussion and

17  think about what our next steps are.

18       So we'll be in recess for 15 minutes.

19              (A brief recess was taken.)

20       THE COURT:  I apologize.  Is everyone back?  Can you

21  hear me?

22       MR. MITCHELL:  Yes, Your Honor.

23       THE COURT:  Okay.  Thank you.

24       We've been discussing sort of logistics here on this

25  end, again, trying to map out a process so that the cases

1  can start -- so that the case/cases can start moving, and I

2  guess the first step will be to sort of make sure we -- I

3  do what I need to do on this end for court purposes and get

4  some sort of order entered.  That's the first thing.

5       Taking from what the parties have presented to each

6  other, I still encourage you all to talk, and hopefully we

7  can agree on what a particular order might look like.

8            MR. STERN:  Judge, I'm sorry.  I can't hear you.

9            THE COURT:  Okay.  Now can you hear me?  Now can you

10  hear me?

11            MR. STERN:  Yes, Your Honor.

12            THE COURT:  Okay.  You know, it's incumbent upon me

13  first to try to -- I'm trying to get these cases moving in

14  some way.  Case, as I said earlier case/cases, whatever

15  form that they are ultimately going to be in.  So the first

16  thing I should do is try to get an order entered on what

17  this might look like, what this is, taking from what the

18  parties have already provided to me.  And it may call for

19  us having a second hearing or a second status conference to

20  make sure all the loose ends are tied up for us, because I

21  want as much input from the lawyers as I can get, I mean,

22  because I want all of us to be comfortable with the

23  process.  That's number one.

24       Then after an order is entered, obviously the

25  parties will get before the magistrate judge to sort of

1    start the process.  But, of course, I did ask the parties

2    to submit to me names of special masters and all.  I do

3    intend -- because of the nature of this case, the number of

4    claims, the number of plaintiffs, I cannot see going

5    forward without a special master, frankly.  And -- you

6    know, and then that person will need to know what our

7    process is and become familiar with that process, and we'll

8    deal with that.

9         I'm going to give myself about 30 days or so to

10   enter an order.  Now, I did hear Mr. Mitchell suggest or at

11   least say, look, Judge, if there is some confusion on our

12   end or if we need to sit down with representatives from the

13   clerk's office, designees from the parties -- Mr. Stern,

14   I'm not suggesting that you make a trip down to Jackson

15   unless you're already here signing up more plaintiffs.  I'm

16   not suggesting that you have to come in.

17        But if the parties believe that they need to come in

18   and sit down with members of the clerk's team, coordinate

19   your schedules and do so.  Contact Mr. Johnston or either

20   Porfi Stokes, who's our senior case management -- our

21   deputy clerk.  She's on the Coast, but her information is

22   on the website.  Contact -- if the parties agree that you

23   need to come in, please do so, because, again, it's

24   incumbent for us to do -- what I believe to do this right

25   on the front end no matter which direction the Court goes.

1          But I will tell you I'm inclined to sever these

2    cases in some way to have sufficient separateness for

3    identification purposes only.  I hear you, Mr. Stern, and I

4    hear the other parties.  I don't see separate numbers as a

5    license for persons to explode in 2142 different types of

6    discovery and all of that moving all at the same time.

7          Whether we identify cases on the front end as to

8    those which might be subject to some sort of discovery or

9    we do it after fact sheets are done, I need the parties to

10   help me to be thinking about that, because I want this to

11   be manageable.  I want it to be controllable, and I want it

12   to be efficient and not overburdensome and not expensive

13   for anybody.

14         So I'm thinking -- you know, so if there's language

15   in an order that everybody can agree to that caps the

16   number of cases, identify the number of cases, or identify

17   the particular cases, what type of discovery might go

18   forward, whether it's written in all of them or a portion

19   of them and depositions of some or all, I want us to be

20   thinking about that to try to get it -- again, to not be

21   overly burdensome, to be efficient, be inexpensive, and to

22   be manageable and all of those things, because at the end

23   of the day, when the cases are ready for trial, I still

24   don't see us trying -- having a trial here in this court

25   for more than eight or ten people.

1    Mr. Stern, how many -- I don't know how many y'all
2    tried in Flint that took eight or nine months to do in that
3    case.  Was -- but what number was it?  Do you recall,
4    Mr. Stern?
5    MR. STERN:  It was four children, and it was
6    about -- with jury deliberations, it was seven months.
7    THE COURT:  Right.  So I don't see us trying --
8    having a trial -- again, I said eight, ten, or 12.  You
9    know, I just don't see us being able to have a trial of
10   more than a few people at one time anyway, and so -- but we
11   do need to move this case to get to what is the appropriate
12   number for a trial, at least.
13   MR. STERN:  Your Honor, just so you know, next trial
14   for the bellwether -- the next bellwether trial will be
15   eight children -- or actually seven children of our
16   clients.  And unlike the first trial, in the second trial,
17   there will be time limits placed on the parties.  And so
18   not only was that first trial a bellwether for the
19   litigation, but it was certainly a bellwether for the
20   parties in terms of what worked and what didn't work.  So I
21   think there will be more evidence of what may or may not
22   work prior to this case -- any of these cases or five of
23   these cases ever getting to trial, because that next trial
24   will be next year.
25   THE COURT:  2024.  What month does it start?  Do you

1  know?

2       MR. STERN:  It's a little debate -- as of now, it's

3  for February.  But there's an issues class trial that's

4  supposed to take place in February, and if the February

5  trial does not happen, ours very well might move up sooner.

6       THE COURT:  Okay.  All right.

7       MR. STERN:  We're preparing for it as if it's going

8  in February, but it could be October.

9       THE COURT:  Okay.  Yeah.  So, again, I'm going to

10  take what you all have prepared -- or submitted to me back

11  in May, and I hope to fashion out an order -- I'm giving

12  myself another 30 days to sort of do that, and I'm asking

13  you all if you wanted to -- if you want to talk to the

14  clerk's office about -- as a group about what this

15  severance sort of thing that the Court is imagining -- I'm

16  telling you I am thinking about individual numbers; I'll be

17  clearly up front about that.

18       Please contact Mr. Johnston or Ms. Stokes to see

19  about an agreeable time where a representative from -- or

20  for whoever wants to come can sit down and meet with the

21  clerk's office to allay any concerns that one might have on

22  how this might work with this court or with you all.

23       And, again, the special master thing is on the table

24  for me to consider next, and then we will go from there I

25  think.  I know the parties have a real interest in trying

1  to move this case along, and I want to assist you in doing

2  that.

3          Is there anything else we need to take up at this

4  time?

5          MR. MITCHELL:  Your Honor, this is Meade Mitchell.

6          I had just a point of clarification.  So the issues

7  that we presented to the Court in our letters in May did

8  not delve into what you have heard are pretty serious

9  issues of dispute about how the discovery should proceed.

10 They were how the case should be severed, how the master

11 complaint should work.  And what I want to be sure of is

12 that you haven't received any sort of position papers from

13 Mr. Stern or from Mr. Webster or from me on how that would

14 work or anything about *Lone Pine*.

15         I wanted to make sure that you did not want that at

16 this point, that you were going to be addressing the issues

17 that were on the table in that case management order.

18 Because if you do, we can obviously submit it, but I wanted

19 to be sure you did not want that right now.

20         THE COURT:  No, I don't think I need that right now.

21 I think what I want to do is deal with what's before me,

22 how fact sheets might look, and all of that.

23         If it becomes necessary for me in fashioning out

24 what I'm going to do to open up these cases after they've

25 been consolidated, I'll let you know.

1          MR. MITCHELL:  Thank you, Your Honor.  And one other

2    question.  We have all submitted names of special masters

3    for your consideration.  None of us have submitted anything

4    to the Court about who we might have a problem with.  I

5    don't know that Mr. Stern may have a problem with some of

6    ours, and we may have a problem with some of his.  I don't

7    know whether you want us to submit any sort of information

8    on that to you or whether you would just like us to wait

9    until you've had a chance to digest that issue more.

10          THE COURT:  We could wait.  We could wait.  We may

11    have a separate sort of hearing, if you will, on the -- on

12    who this Court might appoint special master.

13          Is there anything else?  Anything else anyone else

14    wishes to take up or say?

15          All right.  Counsel, thank you so --

16          MR. STERN:  Your Honor?

17          THE COURT:  Oh.

18          MR. STERN:  Oh, sorry.

19          THE COURT:  Mr. Stern, go ahead.

20          MR. STERN:  In certain instances when it comes to a

21    special master, what I've seen courts do is provide a

22    notice to the parties of the Court's intent to appoint a

23    special master and has asked the parties for either a

24    position -- to take a position on the appointment in

25    advance of it actually being made.  Obviously there's a

1  bunch of ways that can be done, but that's one way that

2  doesn't require us to make affirmative statements or have

3  us just filing a bunch of things on the record about

4  individuals who's made this parts of their careers but at

5  the same time indicates where Your Honor is headed but

6  gives us the opportunity to weigh in on somebody

7  specifically.

8         THE COURT:  I'll give you that opportunity.

9         MR. STERN:  Okay.  Thank you, Judge.

10        MR. MITCHELL:  Thank you, Your Honor.

11        THE COURT:  Anything else?

12        Counsel, thank you so much for making yourselves

13  available for this call, and I appreciate your willingness

14  to work with the Court on this.  This is all that the Court

15  has for today.

16        The Court is now adjourned.

17  ************************************************************

18

19

20

21

22

23

24

25

**CERTIFICATE OF COURT REPORTER**

I, Candice S. Crane, Official Court Reporter for the United States District Court for the Southern District of Mississippi, do hereby certify that the above and foregoing pages contain a full, true, and correct transcript of the proceedings had in the forenamed case at the time and place indicated, which proceedings were stenographically recorded by me to the best of my skill and ability.

I further certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

THIS, the 13th day of September, 2023.

/s/ Candice S. Crane, RPR, RCR, CCR

Candice S. Crane, RPR, RCR, CCR #1781
Official Court Reporter
United States District Court
Candice_Crane@mssd.uscourts.gov