c. Until such time as the monitoring equipment has been repaired and/or replaced and properly maintained, Respondent shall conduct monitoring by collecting grab samples every four hours in lieu of the continuous monitoring. For any instance where grab sampling is conducted in lieu of the required continuous monitoring, Respondent shall identify this deviation in the weekly MORs provided in accordance with Paragraph 43(43.a) of this Order.

37. <u>CFE Turbidity Exceedance Events</u>.

    a. In the event of CFE turbidity measurements exceeding 1.0 NTU, Respondent shall implement the following:

        i. Comply with all requirements of NPDWRs, including 40 C.F.R. §§ 141.170 – 141.175.

        ii. Notify the EPA and MSDH within 24 hours. If cause of the exceedance is known, include this information with notice. However, do not hold or delay the notification in instances where the cause of the exceedance is not known.

        iii. Consult with MSDH on the exceedance and the appropriate BWN.

        iv. Respondent shall issue a Tier 1 public notice as required by 40 C.F.R. § 141.202.

        v. Within 24 hours after the CFE turbidity is less than 0.3 NTU, Respondent shall collect consecutive daily (one sample per calendar day) special purpose samples (bacteriological and microbial) (defined in 40 C.F.R. § 141.21(a)(6)) from the entry point to the distribution system of the treatment plant that had the turbidity exceedance, as well as any other distribution sampling location deemed necessary as identified by MSDH. Respondent shall ensure that each sample is analyzed for total coliform, *E. coli* (if sample is total coliform positive), and chlorine residual.

        vi. Provide the EPA with chlorine residual results as measured at the entry point to the System and in the System's distribution for 10 calendar days preceding and following the event.

    b. In the event of CFE turbidity measurements exceeding 2.0 NTU, Respondent shall implement the following:

        i. Comply with all requirements of NPDWRs, including 40 C.F.R. §§ 141.170 – 141.175.

        ii. Immediately issue an appropriate BWN, provide notice and consult with MSDH within 24 hours, and provide notice to the EPA within 24 hours.

        iii. Respondent shall issue a Tier 1 public notice as required by 40 C.F.R. § 141.202.

        iv. Within 24 hours after the CFE turbidity is less than 0.3 NTU, the System shall collect consecutive daily (one sample per calendar day) special purpose samples (bacteriological and microbial) (defined in 40 C.F.R. § 141.21(a)(6)) from the entry point to the distribution system of the treatment plant that had the turbidity

exceedance as well as any other distribution sampling location deemed necessary, as identified by MSDH. Respondent shall ensure that each sample is analyzed for total coliform, *E. coli* (if sample is total coliform positive), and chlorine residual.

v. Provide the EPA with chlorine residual results as measured at the entry point to the System and in the System's distribution for 10 calendar days preceding and following the event.

vi. Respondent shall provide the EPA and MSDH a self-assessment evaluation of CFE and IFE to include: (1) assessment of filter performance: (2) development of a filter profile; (3) identification and prioritization of factors limiting filter performance; and (4) corrective action plan to address the issue.

38. Low Pressure/Loss of Pressure Events. In the future event that Respondent experiences breaks in water lines or other low pressure or loss of pressure events likely to cause contamination in the System's distribution system, Respondent will take the following actions:

   a. Respondent shall consult with MSDH within 24 hours to determine if a BWN is required and provide notification to the EPA within 24 hours.

   b. Respondent shall issue a Tier 1 public notice as required by 40 C.F.R. § 141.202.

   c. Respondent shall immediately repair the line break or cause of the low pressure/loss of pressure. When satisfied that system pressure will be maintained and there is adequate chlorine residual, Respondent shall begin sampling from the affected area as described below. MSDH typically recommends a free chlorine residual of 0.5 mg/l at the ends of your distribution system.

   d. Within 24 hours after making repair(s) to the water line(s) as required above, Respondent shall begin collecting special purpose samples (bacteriological and microbial) (defined in 40 C.F.R. § 141.21(a)(6)) from the System's distribution system. The chart, in Attachment I to this Order, lists the number of samples required based on the number of customers affected. If the entire system is placed on BWN, samples should be collected from sites representing the entire water system. Respondent shall ensure that each sample is analyzed for total coliform, *E.coli* (if the sample is total coliform positive), and chlorine residual. Respondent shall continue sampling until results from two consecutive rounds are total coliform negative.

39. Alternative Water Source Plan Development and Implementation.

   a. Within 14 days of the Effective Date of this Order, Respondent shall develop, and submit to the EPA for review and approval, an Alternative Water Source Plan ("AWSP"). In the AWSP, Respondent shall detail how and where it will provide at least one gallon of potable water per day, per person to every person served by the System. This allotment of alternative water must be made available at no cost to every person served by the System, as needed for drinking, cooking, maintaining oral hygiene, and dish washing. The AWSP will also outline how Respondent will inform every person served by the System of when and how an alternative water source is made available. As part of its AWSP, Respondent may opt to provide an alternate water supply that is: (1) provided by a licensed water distributor; (2) purchased bottle water; or (3) provided by another public water system that meets the requirements of

the NPDWRs. *Note*: If the AWSP trigger is localized to a specific portion of the distribution system and the entire system is not impacted, Respondent may opt to only serve alternative water to the portion of the population impacted. In order to consider this approach, the AWSP must include a detailed map of the System.

b. The alternative source of water provided shall meet all applicable SDWA requirements at 40 C.F.R. §141. If bottled water will be used by Respondent as an alternative water in accordance with this Order, Respondent must ensure that the bottled water is certified by the International Bottled Water Association or National Sanitation Foundation International.

c. AWSP Implementation Triggers.

   i. If, based upon Respondent's Revised Total Coliform Rule ("RTCR") sampling data collected in accordance with 40 C.F.R. § 141.857 and as outlined in Paragraph 41 below, the PWS exceeds 5.0% total coliform-positive samples in any monthly period during the term of this Order, Respondent shall comply with the "Level 1" assessment requirements of the RTCR at 40 C.F.R. § 141.859(b). In addition, Respondent shall begin implementation of the AWSP within 24 hours of receiving such sampling results. Respondent shall continue implementing the AWSP until the EPA provides written notification to Respondent that AWSP implementation is no longer required; or

   ii. Within 24 hours of Respondent's collection of daily special purpose samples required under Paragraphs 37 and 38 above, Respondent shall begin implementation of the AWSP. Respondent shall continue implementing the AWSP until all daily special purpose sample results are total coliform negative. *Note*: The AWSP may consider, in certain situations, that only a portion of the population is impacted by the triggering event and therefore alternative water only needs to be provided to those impacted. See requirements under Paragraph 39(a) above.

## Notifications and Reporting

40. Within 72 hours of the Effective Date of this Order, Respondent shall provide the February 2020 MORs, including the IFE data for all conventional filters at both the O.B. Curtis and J.H. Fewell WTPs during this timeframe.

41. Sample Siting Plan.

    a. Within one week of the Effective Date of this Order, Respondent shall review its current Sample Siting Plan developed pursuant to 40 C.F.R. § 141.853, to ensure consistency with the RTCR, at 40 C.F.R. Part 141, subpart Y, and simultaneously provide a copy of the current Sample Siting Plan to the EPA for the EPA's concurrent review.

    b. If the current Sample Siting Plan does not include a minimum of 120 sampling locations per month as required under 40 C.F.R. § 141.857(b), Respondent shall update the Sample Siting Plan to achieve the required minimum monitoring frequency for the monthly monitoring period after the Effective Date of this Order.

9

    c. Within 10 business days of the Effective Date of this Order, Respondent shall provide to the EPA, RTCR sampling data for the months of January 2020 and February 2020. If the Respondent has not yet conducted the March 2020 sampling, this sampling shall be conducted within one week of the Effective Date of this Order and the results submitted within 10 days of receipt of the sampling analysis. If the March 2020 sampling has been completed prior to the Effective Date of this Order, Respondent shall submit these results along with the January 2020 and February 2020 results. All RTCR sampling data shall include the chlorine residual data for the RTCR locations.

    d. The Respondent shall continue to submit the RTCR sampling data to the EPA until directed otherwise. This data shall include all chlorine residual data for all RTCR sampling locations.

42. Respondent must notify the EPA within 24 hours after learning of a violation of this Order or any NPDWRs, or of a situation with the potential to have serious adverse effects on human health as a result of short-term exposure to contaminants.

43. <u>Establishing Regular Contact with the EPA</u>.

    a. Immediately upon the Effective Date of this Order and until further notice by the EPA, Respondent shall submit MOR information weekly as follows:

        i. Reports must run from Sunday to Saturday each week;

        ii. Weekly reports must be submitted to the EPA and MSDH by Tuesday of the following week (e.g., for the monitoring timeframe of Sunday, March 29 through Saturday, April 4, the report must be submitted by Tuesday, April 7).

        iii. IFE data must be submitted with each weekly MOR until further notice.

        iv. If at any time, the Respondent is notified, by the EPA or MSDH that a revision to the MOR is required, the Respondent shall implement the revision on the following report required unless the EPA or MSDH provides a specific alternate timeline for implementation.

    b. Within five business days of the Effective Date of this Order, Respondent shall begin submitting weekly updates to the EPA on Respondent's progress complying with this Order. Respondent shall submit subsequent weekly reports on Tuesday of each subsequent week. Each weekly update shall identify and describe all actions taken in the previous week to meet the requirements of this Order.

    c. Within seven business days of the Effective Date of this Order, Respondent shall contact the EPA to set up a mutually agreeable meeting schedule. The purpose of the meetings to be scheduled pursuant to this paragraph are to accomplish the following goals:

        i. Provide an opportunity for the Respondent and the EPA to clarify requirements and timelines,

        ii. Provide an opportunity for Respondent to report to the EPA any issues, concerns, or problems it faces in complying with the terms of this Order, and

      iii. Provide an opportunity for Respondent and the EPA to maintain an open channel of communication wherein new information can be shared.

  d. Respondent shall prepare an outline of all the requirements in this Order, how Respondent plans to meet all the requirements of this Order, and submit to the EPA in writing at least 48 hours in advance of the first agreed-upon meeting required under Paragraph 43(c) above. If this falls on a weekend, Respondent shall provide the outline on the last workday before the meeting.

44. Respondent shall send all reports, notifications, documentation and submittals required by this Order in writing or via e-mail to:

> U.S. EPA, Region 4
> Enforcement and Compliance Assurance Division
> Attn: Amanda Driskell
> U.S. Environmental Protection Agency
> 61 Forsyth Street
> Atlanta, GA 30303
> Email: driskell.amanda@epa.gov

45. All reports, notifications, documentation, and submissions required by this Order must be signed by a duly authorized representative of Respondent and must include the following statement:

> "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## IV.    PARTIES BOUND

46. The provisions of this Order shall apply to and be binding upon Respondent, its officers, employees, agents, successors, and assigns.

## V.    GENERAL PROVISIONS

47. This Order constitutes final agency action. Under Section 1448(a) of the SDWA, 42 U.S.C. § 300j-7(a), Respondent may seek federal judicial review.

48. The EPA may modify this Order to ensure protection of human health. The EPA will communicate any modification(s) to Respondent in writing and the modification(s) shall be incorporated into this Order.

49. Compliance with the terms and conditions of this Order shall not in any way be construed to relieve Respondent from its obligations to comply with all provisions of federal, state, or local law, nor shall it be construed to be a determination of any issue related to any federal, state or local permit.

Compliance with this Order shall not be a defense to any actions subsequently commenced for any violation of federal laws and regulations administered by the EPA, and it is the responsibility of Respondent to comply with such laws and regulations.

50. Pursuant to SDWA Section 1431(b), 42 U.S.C. § 300i(b), in the event Respondent violates, fails or refuses to comply with any of the terms or provisions of this Order, the EPA may commence a civil action in U.S. District Court to require compliance with this Order and to assess a civil penalty of up to $24,386 per day of violation under the SDWA, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, amended by the Debt Collection Improvement Act of 1996, and the subsequent Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. § 19.

51. The EPA reserves all rights against Respondent and all other persons to take any further civil, criminal, or administrative enforcement action pursuant to any available legal authority, and to exercise its information gathering and inspection authorities. Nothing in this Order shall preclude the EPA from taking any additional enforcement actions, including modification of this Order or issuance of additional Orders, and/or additional actions as the EPA may deem necessary, and/or from requiring Respondent in the future to perform additional activities pursuant to the SDWA or any other applicable law.

## VI.    EFFECTIVE DATE

52. Under SDWA Section 1431, 42 U.S.C. § 300i, this Order shall be effective immediately upon Respondent's receipt of this Order. If modifications are made by the EPA to this Order, such modifications will be effective on the date received by Respondent. This Order shall remain in effect until the provisions identified in the Order have been met in accordance with the EPA's written approval.

## VII.    TERMINATION

53. The provisions of this Order shall be deemed satisfied upon Respondent's receipt of written notice from the EPA that Respondent has demonstrated, to the satisfaction of the EPA, that the terms of this Order have been satisfactorily completed.

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

_Carol L. Kemker_        3/27/2020

Carol L. Kemker, Director        Date

Enforcement and Compliance Assurance Division
Region 4

13

## ATTACHMENT I

## Sampling Requirements

| # of Connections Affected | # of Samples Required | # of Connections Affected | # of Samples Required |
|---|---|---|---|
| 1 – 100 | 2 | 4,301 – 5,700 | 18 |
| 101 – 300 | 3 | 5,701 – 8,300 | 20 |
| 301 – 500 | 4 | 8.301 – 11,000 | 30 |
| 501 – 700 | 5 | 11,001 – 13,000 | 40 |
| 701 – 900 | 6 | 13,001 – 16,000 | 50 |
| 901 – 1,100 | 7 | 16,001 – 19,000 | 60 |
| 1,101 – 1,300 | 8 | 19,001 – 23,000 | 70 |
| 1,301 – 1,600 | 9 | 23,001 – 27,000 | 80 |
| 1,601 – 2,200 | 10 | 27,001 – 32,000 | 90 |
| 2,201 – 2,500 | 11 | 32,001 – 43,000 | 100 |
| 2,501 – 2,800 | 12 | 43,001 – 73,000 | 120 |
| 2,801 – 4,300 | 15 | 73,001 – 107,000 | 150 |

Note: Equivalent connections (and population served) will be considered when determining the number of samples which must be collected for a system with a large ratio of population to connections.

Mailing Addresses for the CCs:
Mr. Robert K. Miller, Director
City of Jackson Department of Public Works
200 South President Street
Jackson, Mississippi  39205-0017

William Moody, MSDH
Bureau of Public Water Supply
P.O. Box 1700
2423 North State Street
Jackson, MS 39215-1700

15