# EXHIBIT 10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

APR 1 1 1997

CLERK, U.S. ... ...RT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

CRECENSIO ACUNA, et al.,          *
                                  *
          Plaintiffs,             *
                                  *
     v.                           *     CIVIL NO. SA-96-CA-543
                                  *
BROWN & ROOT, et al.,             *
                                  *
          Defendants.             *

## O R D E R

In an Order dated January 29, 1997, the Court granted a motion to extend the scheduling order deadlines and directed the parties to file a joint advisory containing proposed scheduling order deadlines.    The Court sought input from counsel as to the scheduling order deadlines because this is a mass-tort case involving over 800 plaintiffs.  Plaintiff suggested that the Court use a scheduling order that is used for "normal" cases, whereas the defendant requested that the Court impose what is certainly an atypical scheduling order.  The defendants' proposed scheduling order, *Joint Advisory Report*, Exh. B, establishes an early deadline for plaintiffs to establish a prima facie case of causation using expert reports before defendants would be subjected to the expense of discovery.  As this type of scheduling order has been used in other mass-tort cases, the Court view its use appropriate in this case.

54

## <u>Discussion</u>

The Court directed the parties to provide the Court with briefs as to the merits of using the defendants' proposed scheduling order. The plaintiffs contend that it would work a great injustice on them to be required to produce expert reports to establish a prima facie case of causation for personal injury and property damage claims without the benefit of disclosure and discovery. Plaintiffs contend that: (1) the defendants' suggested scheduling order does not comport with the standard adopted by the Fifth Circuit for handling mass-tort cases; and (2) a better alternative would be for the Court to exercise its discretion to conduct discovery as to a certain number of plaintiffs and proceed to trial with such finite number of plaintiffs.

Plaintiffs cite to only one case, *In re Fibreboard Corp.* (*"Fibreboard"*), to support their position. 893 F.2d 706 (5th Cir. 1990). In *Fibreboard*, the Fifth Circuit issued a writ of mandamus to vacate a pretrial order that consolidated 3,031 asbestos cases for trial in the Eastern District of Texas. The pretrial order at issue separated the case into three phases: (1) Phase I would be the trial of common defenses and punitive damages; (2) In Phase II, before the same jury, certain cases would be fully tried and the

2

jury would decide the total, or "omnibus" liability to the class[1]; and (3) in Phase III, any awarded damages would be distributed to the members of the class. *Fibreboard*, 893 F.2d at 707. The defendants in *Fibreboard* argued that the disputed pretrial order deprived them of their right to "one-to-one adversarial engagement" protected under the Constitution. The *Fibreboard* Court agreed with the defendants and held that the disputed pretrial order would violate federal and state law.

It is apparent that *Fibreboard* does not support the plaintiffs' argument for a "representative trial" because the holding provides a reaffirmation of the right to one-to-one adversarial process. Plaintiffs' suggestion that the Court allow discovery as to a certain number of plaintiffs and proceed to trial with that finite number of plaintiffs is simply not allowed under *Fibreboard*. The plaintiffs' claim of denial of due process as a result of not being able to conduct discovery before making a prima facie case using expert reports does have a measure of support in *Fibreboard*:

> Trials can vary greatly in their procedures, such as numbers of jurors, the method of jury instruction, and a large number of other ways. There is a point, however, where cumulative changes in procedure work a change in the very character of a trial. Significantly, changes in "procedure" involving the mode of proof may alter the liability of the defendants in fundamental ways. We do

---

[1]Under the disputed pretrial order, a representative group of cases would number 41, but only eleven cases would actually be fully tried. Although the parties could offer any evidence about the other thirty "illustrative plaintiffs" in the group of 41, the results of the trial would still require extrapolation to the 2,990 remaining plaintiffs. *Fibreboard*, 893 F.2d at 711 & n.5.

> not suggest that procedure becomes substance whenever
> outcomes are changed. Rather, we suggest that changes in
> substantive duty can come dressed as a change in
> procedure.

*Fibreboard*, 893 F.2d at 711.  Although the Court is mindful that a

procedural change could create a substantive change in duty, it

appears that the particularities of mass-tort cases require a

balance of the respective burdens placed on the parties.  The

*Fibreboard* Court indicated in its directive to the district court

that such a balance is necessary:

> We encourage the district court to continue its
> imaginative and innovative efforts to confront these
> cases.  We also caution that defendants are obligated to
> cooperate in the common enterprise of obtaining a fair
> trial.

*Fibreboard*, 893 F.2d at 712.  Upon consideration of the burdens

placed on the respective parties, the Court believes that use of

the defendants' proposed scheduling order would be fair.

In assessing the fairness of using the defendants' proposed

scheduling order, the Court is guided by the decisions of other

courts that have struggled with a similar issue in mass-tort cases.

In *Renaud v. Martin Marietta Corp.*, the court required the plaintiffs to

present their prima facie case of causation at an evidentiary

summary judgment hearing.  749 F.Supp. 1545, 1548 (D.Colo.1990),

*aff'd*, 972 F.2d 304 (10th Cir.1992).  Similar to the requirement of

the defendants' proposed scheduling order in this case, the

plaintiffs in *Renaud* were required to show that they were exposed

to contaminants at levels sufficient to cause the injuries they

alleged. The *Renaud* Court granted summary judgment because the plaintiffs' evidence was insufficient to meet their prima facie burden. *Id*. at 1555. The holding in *Renaud* favors the use of the defendants' proposed scheduling order in this case.

In several Texas mass-tort cases, courts have required a preliminary showing of causation by plaintiffs before allowing the case to proceed. Defendants have provided copies of orders issued in those cases. *Def. Brief*, Exh. 2-7. Each one of the orders in the Texas cases requires that the plaintiffs establish a prima facie case of causation as a preliminary hurdle in such cases. Notably, in two of the orders, discovery was stayed, *Def. Brief*, Exh. 3,4, and in one order, the close of discovery was set for a date over nine months after the plaintiffs were required to establish a prima facie case of causation, *Def. Brief*, Exh. 2. These cases suggest that the use of the defendants' proposed scheduling order is fair.

The balancing of the parties' competing interests by various courts in mass-tort cases has resulted in the requirement of a prima facie showing of causation to justify the enormous expense involved in defending such a case. In *Able Supply Co. v. Moye*, the Texas Supreme Court granted a writ of mandamus and directed the trial court to grant the defendants' motion to compel, which would require the plaintiffs to identify the physician that linked their injuries to the defendants' products. 898 S.W.2d 766 (Tex.1995). The *Moye* Court concluded that "[r]equiring the plaintiffs to answer an interrogatory linking each plaintiff's injuries with a

5

particular product will simplify the case, streamline costs to both
plaintiffs and defendants, conserve judicial resources, and aid the
trial court in preparing a plan for trial of these cases." *Id*. at
898 S.W.2d at 771.  In a case citing *Moye*, the Supreme Court again
stressed the waste involved in handling a mass-tort case as if it
were a "typical" case:   "Unfortunately, in this era of complex
multi-party litigation, defendants must take a hard look at whether
they can afford to defend a case regardless of the merits." *CSR Ltd.
v. Link*, 925 S.W.2d 591, 598 (Tex.1996)(J.Gonzalez concurring).  The
*Link* case noted that, although the *Moye* case had been pending for
more than eight years, the plaintiffs were never required to
establish causation, yet many defendants felt compelled to settle
for millions of dollars to cut their losses. *Id*.  This Court shares
those concerns.

It is not simply the waste of resources that motivates the
Court to use the defendants' proposed scheduling order.  First,
information regarding the operations of the defendants in the
highly regulated industry of uranium mining is a matter of public
record.  Disclosures have ostensibly been made to federal and state
authorities by the defendants concerning the nature and amount of
uranium mining products or by-products that have been handled.  As
part of the regulatory process, numerous inspections have been made
of the mining operations.  Defendants have provided evidence of a
report conducted by the Texas Department of Health that summarizes
its findings in a 1991 surveillance of facilities in Texas that

have a potential for elevated radiation levels or the release of radioactive substances into the environment. *Def. Brief*, Exh. A. The amount and nature of the public information that is currently available to the plaintiffs largely undermines their claim of prejudice in not being able to conduct discovery prior to being required to show causation.

Also, the Court must assume that plaintiffs are already in possession of evidence to support their allegations of personal injuries and property damage. Fed. R. Civ. P. 11(b)(3) provides that the signature of the plaintiffs' attorney on the plaintiffs' complaint operates as a certification that the allegations in the complaint have factual support, unless there is a statement that the allegations are likely to have evidentiary support after a reasonable opportunity to conduct discovery. There is no such disclaimer in the plaintiffs' active complaint.

Plaintiffs assert prejudice in having to establish causation, but the defendants contend that the task of establishing causation is due to the plaintiffs' action in suing the entire uranium mining industry in Texas.[2] Defendants contend that, for the most part, they were not in business together and they were not involved together at any single site. They also contend that their activities took place at sites physically separated from each

_____

[2]Defendants contend that, with the exception of defendant Brown & Root, the defendants in this case had some involvement, directly or indirectly, with uranium mining, uranium milling, uranium tailings disposal, or operations related to those activities.

other, in at least three counties during different parts of the last 40 years.  The unfairness as to one defendant, Brown & Root, is highlighted by the absence of allegations that would indicate its involvement in any aspect of the uranium mining activities at issue.  This underscores the unfairness to the defendants in having to defend this case without the benefit of a prima facie showing of causation.

Notably absent from plaintiffs' brief is a proposed scheduling order that would not violate case law or would not seek to have this 800-plus plaintiff case be treated as any other case.  The cases previously discussed obviate the need to handle large, mass-tort cases differently.  The plaintiffs failure to suggest a viable option is suspect.  Therefore, the Court finds that the prejudice asserted by plaintiffs is largely undermined by the amount of information that is available from public sources and the plaintiffs themselves, and the balance of the respective burdens placed on the parties favors the use of the defendants' proposed scheduling order.

## SCHEDULING ORDER MODIFICATION

For the reasons described above, the Court's Order Concerning Consent Trials, Discovery, Pretrial Matters and Pretrial Order, signed July 10, 1996, (docket no. 15) is modified as follows.

1. On or before July 11, 1997, plaintiffs shall produce to defendants, for each individual plaintiff, an affidavit from a qualified expert that will:

A. With respect to each plaintiff's claim for personal

8

injuries:

>  (1) List all injuries, illnesses or conditions suffered by the plaintiff that, in the opinion of the expert, were caused by an alleged exposure to materials or substances from a facility or operation;
>
>  (2) Specify the material(s) or substance(s), that, in the opinion of the expert, caused each injury, illness or condition listed and identify the particular facility or operation alleged to be the source of the material(s) or substance(s);
>
>  (3) Describe, with specific dates, times, circumstances and incidents and exposure (i.e., ingestion, inhalation, dermal contact, etc.), how the plaintiff was exposed to the material(s) or substance(s) in question, how often, and in what dosages; and
>
>  (4) State the scientific and medical bases for the expert's opinions.

B. With respect to each plaintiff's claim for property loss:

>  (1) List all property that, in the opinion of the expert, was damaged by an alleged exposure to material(s) or substance(s) from a facility or operation;
>
>  (2) Regarding property alleged to be damaged, identify all real property by owner, street address, tax block and lot number, size and a description of improvements thereto;
>
>  (3) Identify the material(s) or substance(s) that, in the opinion of the expert, caused each alleged property damage and identify the particular facility or operation alleged to be the source of the material(s) or substance(s);
>
>  (4) For all property, report the amount of the alleged loss in value, the timing and degree of the alleged loss, the method of causation and the method of evaluation of such alleged loss in value.

2. <u>Status Conference</u>. On August 8, 1997, at 9:00 a.m., in United States Magistrate Courtroom B, 727 E. Durango Blvd, San

Antonio, Texas, there shall be a status conference at which all
pending issues or motions shall be addressed and the following
requirements and schedule may be reconsidered.

    3. <u>Initial Discovery Phase</u>.  After the status conference, the
following schedule shall apply:

> A. Defendants may depose plaintiffs' expert witnesses
> and a representative sampling of plaintiffs as chosen or
> selected by defendants.  The deadline for conducting such
> depositions is November 7, 1997.
>
> B. Defendants shall provide plaintiffs with expert
> reports in response to (1) deposition testimony of
> plaintiffs and plaintiffs' experts, and (2) plaintiffs'
> expert reports and affidavits provided to defendants in
> accordance with the provisions of paragraph 1, which
> required plaintiffs to provide defendants with expert
> reports.  Defendants shall provide these expert reports
> by December 8, 1997.
>
> C. Plaintiffs may depose defendants' expert witnesses and
> no more than two representatives of each defendant as
> chosen or selected by plaintiffs.  The deadline for
> conducting such depositions is January 9, 1998.

    4. <u>Mediation</u>.  The parties shall engage in a mediation on a
date and before a mediator to be selected by the parties from the
approved mediator list of the San Antonio Division of the Western
District of Texas.  If the parties are unable to agree on a
mediator by October 9, 1997, the Court will appoint one after
notice by the parties that they are unable to agree on a mediator.
On or before October 9, 1997, the parties shall file an advisory as
to the name of the mediator selected, or state that they have not
reached an agreement.  In any event, the mediation shall take place
on or before February 9, 1998.  Within 7 days after the mediation,
the parties shall file a joint advisory to inform the Court of the
date and outcome of the mediation.

10

5. <u>Completion of Pretrial Matters and Discovery</u>.  In the event mediation is unsuccessful, the parties may begin all other discovery steps as allowed by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas, as the parties deem appropriate.  The parties shall, however, comply with the following requirements and schedule:

> A. Within 30 days of mediation, the parties shall file all motions to amend of supplement pleadings or to join additional parties.

> B. Within 90 days of mediation, plaintiffs shall designate potential fact witnesses and provide written summaries of their expected testimony.

> C. Within 120 days of mediation, plaintiffs shall designate any additional expert witnesses (if any are expected to be used in addition to those identified in accordance with the provision of paragraph 1) and provide written expert reports from each.

> D. Within 150 days of mediation, defendants shall designate potential fact witnesses and provide written summaries of their expected testimony.

> E. Within 180 days of mediation, defendants shall designate any additional expert witness (if any are expected to be used in addition to those identified under paragraph 3) and provide written expert reports from each.

> F. Within 240 days of mediation, the parties shall complete all discovery.

> G. Within 270 days of mediation, all dispositive motions shall be filed.

> H. Within 300 days of mediation, the parties shall file a joint pretrial order in the form required by the Court.

6. <u>Trial</u>.  The case will be set by the Court for jury trial to begin on a date 30 days or later after the joint pretrial order is due to be filed.

7. <u>Other Pretrial Matters</u>.   The Court's Order Concerning Consent Trials, Discovery, Pretrial Matters and Pretrial Order, signed July 10, 1996, shall remain in force to the extent it remains unchanged by the provisions of this Order.

It is so **ORDERED**.

SIGNED this 11th day of April, 1997.

**JOHN W. PRIMOMO**
**United States Magistrate Judge**