# EXHIBIT 11

FILED

DEC 29 1997

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CRECENSIO ACUNA, et al., )
 )
    Plaintiff(s), )
 )
v. ) CIVIL ACTION NO.
 ) SA-96-CA-543
BROWN & ROOT, INC. and )
CHEVRON CORPORATION, )
 )
    Defendant(s). )

## ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER
## ENFORCING SCHEDULING ORDER

Before the Court is Plaintiffs' appeal from the Magistrate Judge's September 16, 1997 order enforcing the modified scheduled order entered on April 11, 1997. The underlying issue raised in this appeal is whether the Magistrate Judge properly entered a modified scheduling order which required Plaintiffs to make a preliminary showing as to causation for their injuries before full-scale discovery commences in this case. Plaintiffs argue that the Magistrate Judge abused his discretion by imposing this requirement. Defendants, on the other hand, contend that in a complex case such as this, a preliminary showing as to causation is entirely appropriate. For the reasons outlined below, the Court agrees and affirms the Magistrate Judge's ruling enforcing the modified scheduling order.

### I. Background.

Plaintiffs filed this lawsuit in Galveston County, Texas on or about April 26, 1996. Defendants timely removed it to federal court on May 24, 1996, premised on the Court's jurisdiction under the Price-Anderson Act, see 42 U.S.C. § 2210(n)(2). Although Plaintiffs

74

moved to remand the case to state court, arguing that the Price-Anderson Act did not apply, the Court denied that motion in its order of September 3, 1996.[1] Since that ruling, Plaintiffs have twice amended their complaint, without changing the substantive allegation of their claims.[2] The essential allegations now comprise two pages, in which Plaintiffs allege the following "facts":

> 12. This suit is necessary because of Defendants' uranium mining and/or milling activities, which were conducted improperly, unlawfully, negligently, recklessly, and with heedless and conscious disregard of the consequences of their actions.
>
> Such conduct was the proximate cause of considerable personal injury occurring to the Plaintiffs herein.
>
> 13. All of the aforementioned acts of Defendants were carried out without providing warning or advice to Plaintiffs, without providing appropriate protection to Plaintiffs, and/or with intentional and/or negligent misrepresentations concerning the hazards of their respective activities.
>
> 14. As a result of the foregoing, Plaintiffs have suffered and will continue to endure pain and suffering, mental anguish, physical injury, and/or impairment or death, disfigurement, increased risk of contracting debilitating or fatal diseases, lost wages, loss of wage earning capacity, loss of physical ability, and loss of consortium in the past, present, and future.
>
> 15. Defendants negligently, grossly negligently [sic], and maliciously failed to address, warn the Plaintiffs of, remedy, or otherwise mitigate the deleterious effects of such conduct, thereby causing further damages and/or exacerbating the damage already inflicted upon Plaintiffs, all as hereinbefore set

---

[1] In the instant appeal, Plaintiffs again urge the Court to conclude that the Price-Anderson Act does not apply and to remand the case to state court. Plaintiffs raise no new arguments in this regard; therefore, the Court declines to revisit this issue.

[2] The only change made in the First Amended Complaint was the addition of eight Defendants, a request for injunctive relief, and a few minor amendments. In the second amended complaint, 135 additional Plaintiffs were added for a current total of more than 1100.

2

out.

      16. All of the aforementioned acts of Defendants were carried out with intentional and/or negligent misrepresentations as to the hazards they created as a result of their respective activities.

      17. As a result of the foregoing, Plaintiffs have suffered and will continue to endure pain, suffering, mental anguish, physical injury, and/or impairment or death, disfigurement, increased risk of contracting debilitating or fatal diseases, lost wages, loss of wage earning capacity, loss of physical ability, loss of consortium, loss of enjoyment of life, real property damages and loss of value thereof, loss of profits, livestock and pets, and have incurred associated costs, in the past present and future.

Based on these statements, Plaintiffs allege state law tort claims for strict liability, negligence, gross negligence, negligence per se, *res ipsa loquitur*,³ nuisance and trespass.

On December 31, 1996, the Court referred this case to the Magistrate Judge for the disposition of all pretrial matters. Pending at that time was Plaintiffs' agreed motion to extend scheduling order deadlines, filed December 18, 1996. In that motion, Plaintiffs informed the Court that they and Defendant Brown & Root, Inc. were "working together to provide the Court an Agreed Amended Scheduling order," (Agreed Mot. at 1), but wanted to involve the newly-named Defendants in the process. Plaintiffs represented that they believed that an agreed order could be reached without the Court's intervention. On January 29, 1997, the Magistrate Judge granted that motion, ordering the parties to file a joint advisory containing proposed scheduling order deadlines by February 28, 1997 while staying the deadlines of the scheduling order then in effect.

---

      ³ By referencing this portion of the complaint, the Court makes no comment on whether a separate claim for *res ipsa loquitur* is cognizable. The doctrine of *res ipsa loquitur* is normally regarded as a rebuttable evidentiary presumption applicable to negligence claims, rather than a separate claim in itself.

3

Apparently, the parties were not able to reach a consensus as to scheduling order deadlines as they first thought. In their advisory filed February 28, 1997, the parties notified the Court that they were unable to agree on a discovery plan. Each submitted proposed scheduling orders. Plaintiffs' proposed order mirrored the Court's standard scheduling order form and merely extended the dates from the original order. Under that plan, discovery was to be completed at the end of March 1998, with trial the following May. Defendants, on the other hand, proposed a scheduling order that would require the Plaintiffs "to focus their claims at the earliest stage of this lawsuit." (Advisory at 4.) They requested inclusion of a "Lone Pine" provision,[4] in which Plaintiffs would be required to provide an affidavit from a qualified expert that specified:

> (1) each illness or condition that, in the opinion of the expert, is attributable to the plaintiff's exposure to substances emanating from identified facilities or operations at issue in this case; (2) when and how such exposure occurred (i.e., through the air, from consumption of water, etc.); (3) what substances each plaintiff was exposed to and the alleged source thereof; and (4) the basis for the expert's opinion.

(Id. at 5.) Under Defendants' view, this requirement was appropriate, in that "multi-plaintiff toxic tort cases should begin with an inquiry into each plaintiff's injuries and the existence of an expert's opinion causally linking those injuries to the alleged exposure." (Id. at 6.) Once Plaintiffs made this showing, then discovery could progress as to those defined claims, rather than "every conceivable theory Defendants believe a plaintiff might allege." (Id.) If one or more of the Plaintiffs failed at this basic task, however, then needless, time-consuming and

---

[4] So named after Lore v. Lone Pine Corp., No. L-033606-85 (N.J. Super. Ct. Nov. 11, 1986).

4

expensive discovery would avoided.

Given the special nature of this case, the Magistrate Judge permitted the parties to submit additional briefs as to whether entry of a specialized case management order would be appropriate. In their brief in support of such an order, Defendants argued that the Magistrate Judge had discretion to require Plaintiffs to make a preliminary showing of causation because (1) they had framed their claims in such a general manner that, without such a requirement, discovery would be "exponentially more complex," (Defs.' Br. Supp. Case Mgmt. Order at 2), (2) much of the information that Plaintiffs would require to make this showing was already publicly available, due to the State Department of Health's monitoring of the uranium mining industry,[5] (3) Plaintiffs' attorney should already have knowledge of the operative facts relating to his client's claims, otherwise his filing of the Second Amended Complaint would be in violation of Fed. R. Civ. P. 11, (4) Rules 16 and 26 of the Federal Rules grant the Magistrate Judge discretion to control discovery in this manner, and (5) the inclusion of a Lone Pine provision in scheduling orders in mass toxic-tort cases would be consistent with state law.

Plaintiffs, on the other hand, contended that entry of such an order would be fundamentally unfair and would violate the Fifth Circuit's ruling in In re Fibreboard Corp., 893 F.2d 706 (5th Cir. 1990). They suggested that the Court's standard form scheduling order be followed and that, if necessary, the Magistrate Judge could "exercise [his] discretion to conduct discovery as to a certain number of plaintiffs and proceed to trial with such finite

---

[5] Defendants included as an exhibit to their brief the Environmental Monitoring Annual Report for 1991 prepared by the Texas Department of Health Bureau of Radiation Control. Defendants contend that data for all sites of concern to Plaintiffs has been independently developed at state expense for the years 1987 through 1991. (Id. at 7.)

5

number of plaintiffs." (Pls.' Br. Opp'n Defs.' Proposed Sch. Order at 2.)

In his April 11, 1997 order, the Magistrate Judge rejected Plaintiffs' argument that Fibreboard either prevented entry of a Lone Pine provision or sanctioned the procedure they suggested. Consequently, he entered a modified scheduling order in substantial conformance with Defendants' proposal. In support of his ruling, the Magistrate Judge reasoned that:

> It is not simply the waste of resources that motivates the Court to use the defendants' proposed scheduling order. First, information regarding the operations of the defendants in the highly regulated industry of uranium mining is a matter of public record. Disclosures have ostensibly been made to federal and state authorities by the defendants concerning the nature and amount of uranium mining products or by-products that have been handled. . . . The amount and nature of the public information that is currently available to the plaintiffs largely undermines their claim of prejudice in not being able to conduct discovery prior to being required to show causation.
> Also, the Court must assume that plaintiffs are already in possession of evidence to support their allegations of personal injuries and property damage. Fed. R. Civ. P. 11(b)(3) provides that the signature of the plaintiff's attorney on the plaintiff's complaint operates as a certification that the allegations are likely to have evidentiary support after a reasonable opportunity to conduct discovery. There is no such disclaimer in the plaintiffs' active complaint

(Order at 6-7.) Plaintiffs moved for reconsideration, reiterating with little modification the same arguments contained in their brief. The Magistrate Judge denied that motion on June 23, 1997.

On August 5, 1997, Defendants moved to dismiss, or alternatively, to enforce the scheduling order. Defendants argued that, although Plaintiffs had provided 1,058 affidavits in intended compliance with the modified scheduling order, those affidavits were seriously deficient. All of the affidavits were made by the same expert, Dr. C.F. Smith, a physician licensed to practice in the state of Tennessee. While Dr. Smith attempted to provide the requisite information, Defendants argued that his "use of speculative and conclusory

6

statements . . . provides none of the information required by the Scheduling Order." (Mot. at 4.) According to them, Dr. Smith made no examination or diagnosis of any individual plaintiff. Rather, each of the affidavits, with no modification other than the particular plaintiff's name, fall within one of four forms: (1) deceased plaintiffs, (2) plaintiffs who may or may not have worked at one time in the uranium industry, (3) plaintiffs for whom no occupational or residence information is provided, and (4) minors or individuals who claim exposure as a minor. None of the affidavits specified the date of exposure or location of exposure within the large multi-county area contemplated by the complaint. No particular illness was ascribed to any plaintiff; instead, the affidavits recited a laundry list of conditions, one or more of which each plaintiff was alleged to suffer or would suffer in the future.

Based on the deficiencies outlined above, Defendants moved for an order striking all the affidavits and dismissing the case with prejudice for Plaintiffs' noncompliance with the scheduling order. Alternatively, Defendants requested the Magistrate Judge to order Plaintiffs to comply with the scheduling order by providing individualized information as to each plaintiff, stating a medical diagnosis, specifying when exposure occurred and each substance involved in the exposure, and identifying which of the Defendants were alleged to have caused the exposure. To the extent expert opinions were to be provided, Defendants moved that they be within the expert's area of expertise. Finally, Defendants requested that Plaintiffs' allegations relating to property damage be stricken unless further specificity was provided. Defendants argued that Plaintiffs should be ordered to make these disclosures within thirty days, "given the length of overall time this case has been on file and the four-month period since the Scheduling Order was signed." (Defs.' Mot. Dismiss at 10.)

7

Plaintiffs responded in opposition to the motion to dismiss, arguing that the affidavits provided by Dr. C.F. Smith "met both the letter and the intent" of the scheduling order, (Resp. at 3.), and that, if Defendants wanted more detail, they must obtain it through the normal discovery process. Specifically, they argued that "each affidavit clearly states the <u>particular</u> illnesses and conditions attributable to each plaintiff's exposure to the mining and milling operations; precisely as required by the Order," (<u>id.</u> at 4), and disclosed sufficient information as to the substances to which each plaintiff was exposed and the duration of that exposure. Under Plaintiffs' view, Defendants' objections to the generality of the affidavits were unfounded:

> Plaintiffs were never required to put on their <u>entire</u> case with every comprehensively detailed fact, statement, literature, symptoms piece of all expert opinions, or account for their whereabouts over forty years on each and every day, but were <u>only</u> required to meet a threshold test for the Court to see if a prima facie showing of cause of action could be made. In this, the plaintiffs have in every way complied. The defendants, in essence, now by the terms of their motion, seek a <u>dispositive</u> summary judgment dismissing the case, despite the clear evidence proffered by plaintiffs raising (at a minimum) questions of fact that would clearly preclude any summary judgment or order of dismissal.
> Finally, now that the threshold issues have been met, the Federal Rules of Civil Procedure provide for the parties obtaining additional discovery, which does not take the form of a party being required to pack all the hundreds of facts of the case into an affidavit, which was never the expressed intent of the Order.

(<u>Id.</u> at 5.) Defendants, in their reply, took issue with Plaintiffs' contention that the affidavits provided any "real" information, particularly as to dosage of exposure or illness caused by the exposure. They additionally questioned whether Dr. Smith reviewed any of the publicly available information in which the Texas Department of Health Bureau of Radiation Control conducted, among other things, sampling to determine the presence of radioactive materials in

8

milk, meat, water and homes in the area.

On September 16, 1997, the Magistrate Judge entered his ruling granting Defendants' motion at to the enforcement of the scheduling order. He described in detail the reasons for his conclusion that the affidavits did not "satisfy the requirements of the scheduling order because they are conclusory and speculative." (Order at 2.) He noted that Plaintiffs may have been misled into thinking that they were required to provide the affidavit of a single expert to satisfy each of the four requirements in the scheduling order. The Magistrate Judge explained that "[t]he scheduling order requires that, as to each plaintiff, each of the four requirements must be established by an affidavit from an expert. It does not require that only one affidavit can be submitted to satisfy all four requirements." (Id. at 3.) He noted that Dr. Smith's general statement that certain exposure was sufficient to cause "some or all" of a list of injuries for each plaintiff did not comply with the scheduling order. He then ordered Plaintiffs to "provide the specific injuries, illnesses or conditions suffered by each plaintiff [and] . . . the scientific and medical bases for each opinion," (id. at 3-4), advising that "[t]o state a battery of tests were performed is insufficient" unless Plaintiffs disclosed the type of test and particular result of that test, (id. at 4).

As to the second and third requirements of the scheduling order— that Plaintiffs specify the substance(s) to which each was exposed, the particular facility from which it emanated and the circumstances and dosage of the exposure–the Magistrate Judge characterized the affidavits as "meaningless" in this regard, since they merely listed each facility operated by each of the Defendants and omitted any information as to the plaintiff's date or place of employment or residence. He ordered Plaintiffs to specify the time period of exposure and to provide relevant

9

employment or residence information to allow "correlation of any geographic group or groupings of plaintiffs to certain facilities or operations," to enable the Court to "tell how each plaintiff was injured and what each defendant did to cause such injury." (Id. at 5.) It is from this order that Plaintiffs now appeal.

## II. Enforcement of the Scheduling Order.

The Court begins by examining the standards by which it reviews the Magistrate Judge's ruling. As provided in 28 U.S.C. § 636(b)(1), the Court may reconsider any nondispositive pretrial matter "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." Thus, if Defendants' motion is considered as one for enforcement of the scheduling order, a non-dispositive matter, the Magistrate Judge's ruling must be affirmed unless it is clearly erroneous or contrary to law. See Castillo v. Frank, 70 F.3d 382, 385 (5th Cir. 1995). On the other hand, if Defendants' motion is characterized as one for involuntary dismissal for failure to comply with the scheduling order, and therefore one of the motions excepted under § 636(b)(1)(A), the Court must make a de novo review. See Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 646 (5th Cir.), cert. denied, 513 U.S. 1016 (1994); Longmire v. Guste, 921 F.2d 620, 623 (5th Cir. 1991). Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. Finally, to the extent that the Magistrate Judge's ruling concerns a discovery issue, his ruling is reviewed for an abuse of discretion. See, e.g., RTC v. Sands, 151 F.R.D. 616, 620 (N.D. Tex. 1993). Recognizing that three possible standards for the Court's review may be applicable in this case, in an abundance of caution, the Court applies to most stringent standard, de novo review, unless otherwise noted.

10

In their objections to the Magistrate Judge's order, Plaintiffs argue that (1) requiring them to come forward with evidence of causation at this stage of the litigation violates the Fifth Circuit's ruling in In re Fibreboard, (2) the affidavits they submitted complied with the requirements of the modified scheduling order, and (3) the Magistrate Judge's September 16, 1997 order imposed additional, burdensome requirements on Plaintiffs that are inappropriate at this stage of the litigation. Not surprisingly, Defendants take issue with these contentions. They argue that the Magistrate Judge properly exercised his discretion in including a Lone Pine provision in the scheduling order and that he correctly ruled that the affidavits did not comply with that provision.[6]

The Court begins with the central question raised by this appeal: whether the Magistrate Judge erred in requiring Plaintiffs to make a preliminary showing as to causation before full-scale discovery is commenced in this case. While the use of Lone Pine provisions such as the one at issue here is not without its critics,[7] in appropriate situations they are a legitimate means by which the Court may supervise the progress of a case. First, such measures are consistent with Rule 16 of the Federal Rules of Civil Procedure, which grants the

---

[6] Defendants additionally contend that this appeal is merely an untimely attempt to challenge the Magistrate Judge's initial entry of the modified scheduling order. To the extent the September 16, 1997 evaluates Plaintiffs' compliance with that order, this is an appropriate appeal.

[7] See, e.g., Alan Kanner, How to Try a Toxic Tort Case--Plaintiff's Perspective, in Hazardous Wastes, Superfund and Toxic Substances, SB25 ALI-ABA 121, 131 (1996)(arguing that Lone Pine provisions allow Defendants to engage in self-critical analysis of their actions and withhold relevant evidence of liability); Carl Tobias, Environmental Litigation and Rule 11, 33 Wm. & Mary L. Rev. 429, 481 (Winter 1992)(noting that defense counsel who want to limit costs and "deflect attention from the substance of environmental disputes" will seek Lone Pine provisions to allow them to "evade responsibility for pollution.")

11

Court broad powers in the management of the litigation. For example, in conducting any pretrial conference, the Court is expressly authorized to "establish early and continuing control so that the case will not be protracted because of lack of management." Fed. R. Civ. P. 16(a)(2). To accomplish this end, the Court is directed to enter a scheduling order which limits the time to complete discovery and which may also include modifications on the dates for the parties' disclosures,[8] limitations on the extent of discovery permitted, and "any other matters appropriate in the circumstances." Id. 16(b)(4), (6). Finally, that rule authorizes the Court to "take appropriate action" as to "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses," "the use of [expert] testimony under Rule 702 of the Federal Rules of Evidence," "the control and scheduling of discovery, including orders affecting disclosures and discovery pursuant to Rule 26 and Rules 29 through 37,"[9] and "the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions,

---

[8] The Court is well aware that this District has opted out of the mandatory disclosure and presumptive discovery limits set forth in Rules 26, 30, 31, and 33 of the Federal Rules of Civil Procedure and that the provisions of the local rules instead govern. See W.D. Tex. R. CV-16(c). Nevertheless, the local rules do not preclude the Court from imposing such limitations in appropriate circumstances. See id. ("More specifically, Local Rules CV-16, CV-26, CV-30, CV-33, CV-36 . . . shall apply [regarding mandatory disclosure and presumptive discovery limits] to all civil proceedings unless otherwise ordered by the Court.")(emphasis added).

[9] In this regard, the Advisory Committee Notes to the Rule "emphasize that a major objective of pretrial conferences should be to consider appropriate controls on the extent and timing of discovery," advising that the Court should "specify the times and sequence for disclosure of written reports from experts . . . and perhaps direct changes in the types of experts from whom written reports are required." Fed. R. Civ. P. 16 advisory committee notes (1993 amendment).

12

or unusual proof problems." Id. 16(c)(1), (4), (6), (12).[10] Not surprisingly, both federal and state courts have increasingly employed such techniques in the management of large toxic-tort cases.[11]

Plaintiffs assert, with no elaboration, that Fifth Circuit authority prevents the trial court's exercise of its discretion in this manner, relying on In re Fibreboard Corporation, 893 F.2d 706 (5th Cir. 1990). Plaintiffs' argument, to the extent they make any, could not be

---

[10] The Manual for Complex Litigation endorses similar measures. For example, the Manual advises judges to insist that parties define claims and defenses with specific information, rather than summary statements, such as the defendant "'was negligent.'" See Manual for Complex Litigation (Third) § 21.33 (1995). The judge is advised to "inquire not only into the amount of damages claimed but also into the proposed proof and manner of computation, including evidence of causation, and the specific nature of other relief sought (data which may also be subject to mandatory prediscovery disclosure . . . .)." Id. (emphasis added); see also id. § 33.27 at 325-26 (noting that discovery into defendants conduct may be deferred pending development of plaintiff-specific information); id. at 327 (advising that extent of information available from public sources may limit the amount of discovery required on certain issues and advocating establishment of a schedule early in the litigation for disclosure of expert opinions).

[11] Federal cases include Renaud v. Martin Marietta Corp., 749 F. Supp. 1545 (D. Colo. 1990), aff'd, 979 F.2d 304, 308 (10th Cir. 1992); Cook v. Rockwell Int'l, 147 F.R.D.237, 240-41 (D. Colo. 1993)(ordering plaintiffs to "provide a specific statement of facts supporting each of the individual plaintiffs' claims, including the identification of each hazardous substance to which he or she was exposed, the amount of the exposure and any experts relied on to establish such exposure"). State court cases imposing Lone Pine provisions include In re Love Canal Actions, 145 Misc. 2d 1076, 547 N.Y.S.2d 174 (N.Y. Sup. Ct. 1989), aff'd, 161 A.D.2d 1169, 555 N.Y.S.2d 519 (N.Y. App. Div. 1990). In the State of Texas alone, see Abarca v. Westergren, No. 96-0911 (Tex. Nov. 15, 1996)(overruling plaintiffs' motion for leave to file petition for writ of mandamus seeking to vacate Lone Pine order); cf. Able Supply Co. v. Moye, 898 S.W.2d 766 (Tex. 1995)(granting petition for writ of mandamus directing 3,000 plaintiffs in mass products liability suit to answer interrogatory requesting medical evidence of injury and identification of product causing injury). Few cases, if any, have addressed the propriety of Lone Pine provisions in light of the 1993 amendments to the Federal Rules of Civil Procedure, which, in the Court's view, lends even greater support for the Court's authority to require Plaintiffs to make an initial showing of causation early in the case.

13

farther afield. In <u>Fibreboard</u>, the Fifth Circuit granted a petition for writ of mandamus to compel the district court to modify the procedure by which it intended to conduct <u>trial</u> in a class action against asbestos manufacturers. The trial court had proposed a trifurcated procedure. In Phase I, common defenses and punitive damages were to be tried. In Phase II, before the same jury, certain representative cases were to be tried, with the jury determining omnibus liability as to the class. Finally, in Phase III, damages were to awarded "utilizing various techniques." <u>Id.</u> at 707. Upon review of the procedure, the Fifth Circuit was left with "a profound disquiet" over Phase II of the procedure. Ultimately, it concluded that trial of representative plaintiffs' cases would infringe individual plaintiffs due process right of one-on-one confrontation, <u>see id</u> at 710-11, but also would work a modification of state substantive law, in violation of <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938), in that plaintiffs could establish the element of causation as a group and not <u>individually</u>, as required by state law, <u>see id.</u> at 711. In this way, the Fifth Circuit suggested, the change in procedure advocated by the federal court could work as a change in substance. <u>See id.</u>

The Court is confounded by Plaintiffs' citation to <u>Fibreboard</u> when, in the same breath, they propose that "a better alternative would be for the Court to exercise its discretion to conduct discovery as to a certain number of plaintiffs and proceed with [sic] to trial with such finite number of plaintiffs." (Pls.' Br. Opp'n Defs.' Proposed Sch. Order at 2.) Such a trial procedure mirrors that rejected in <u>Fibreboard</u>. Apart from this conundrum, <u>Fibreboard</u> was a class action that did not concern discovery limits, and even if it did, the provisions at issue here pass muster. Rather than lumping plaintiffs together for the purposes of establishing causation, as condemned in <u>Fibreboard</u>, the Lone Pine provision in the modified

14

scheduling order requires an <u>individualized</u> showing as to causation, something to date Plaintiffs have resisted. Consequently, the Court must reject Plaintiffs' anemic reliance on <u>Fibreboard</u>.

As alluded to earlier, other circumstances in this case convince the Court that the modified scheduling order was appropriately structured. First, a Lone Pine provision may not have been necessary had Plaintiffs made any effort to define their claims during the year that this case was pending before entry of the modified scheduling order. Despite amending their complaint twice, Plaintiffs have never identified the specific "conduct" or "acts" of any particular Defendant referenced in paragraphs 13 and 14 of their complaint, where that conduct took place, when it occurred, when or how any plaintiff was exposed to a toxic substance, which toxic substances were involved, and what injuries resulted from them. Plaintiffs seem to argue that they should be entitled to discovery before they are required to do this. Yet, as the Magistrate Judge articulated in his order, Rule 11 negates that contention. It provides that, by presenting a pleading for filing, an attorney represents that, to the best of his knowledge "formed after an inquiry reasonable under the circumstances," that "the allegations and other factual contentions have evidentiary support or, <u>if specifically so identified</u>, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Second, as the Magistrate Judge again noted, this is not a case in which Plaintiffs are hamstrung by the lack of information available as to their potential exposure to toxins. "Lone Pine" provisions are most often criticized for permitting Defendants to evade disclosure of potentially damaging evidence and allowing them to shift up-front discovery costs to the

15

Plaintiffs. See Tobias, supra, at 481. Here, as the Magistrate Judge observed, the uranium mining industry, unlike other industries subject to toxic-tort litigation, has been the subject of intense state scrutiny and monitoring. Information as to the results of that monitoring are publicly available; Defendants have submitted some of those reports as exhibits in this litigation. Therefore, to require Plaintiffs to now "step up to the plate" and tell Defendants specifically how they have been injured, by whom, and when that injury occurred does not place an onerous burden on them.[12]

Finally, the Court notes that Plaintiffs mischaracterize the Magistrate Judge's order enforcing the scheduling order in several respects. By arguing that "any singular affidavit for each plaintiff would have to include all of the five (5) separate requirements enumerated above, and would necessarily include facts, related to exposure levels, dosages and other facts, relied upon by the expert," (Pls.' Appeal at 4), they ignore the Magistrate Judge's explanation that more than one expert affidavit may be submitted to establish the elements required under the modified scheduling order. (See Order at 3)("[The scheduling order] does not require that only one affidavit can be submitted to satisfy all four requirements.") Likewise, they simply exaggerate what is required by contending that "[t]o quantify exposure in exact minutes,

---

[12] While it is conceivable that Plaintiffs might not at this point have access to information as to one or two of the requirements because of some circumstance unique to a particular plaintiff, they have never asserted this. Instead, they seek to evade all disclosure as to all plaintiffs. Moreover, neither the Magistrate Judge nor this Court was ever confronted with the argument that Plaintiffs have reviewed the publicly-available information on the uranium mining activities in the multi-county area, but, for whatever reason, that information is deficient and Plaintiffs should therefore be entitled to discovery. Compare Cook v. Rockwell, Int'l, 147 F.R.D. at 243-44 (granting plaintiffs additional time to prepare expert reports because publicly available surveys were incomplete or deficient and much information remained in Defendants' control.)

hours, or specific dates would be both unrealistic and insurmountable." (Pls.' Appeal at 6.) Plaintiffs were never ordered to quantify exposure in such minute terms. Given that Plaintiffs had never disclosed any specific employment or residence information from which Defendants could surmise which facility was at issue, much less how each plaintiff was exposed to a toxic substance, the scheduling order requires only basic information in this regard, information particularly within the Plaintiffs' domain.

In sum, the Court concludes that the Magistrate Judge committed no error of law or abuse of discretion requiring Plaintiffs to adhere to the modified scheduling order. Plaintiffs have no "entitlement" to a routine scheduling order. With more than 1,000 Plaintiffs in this case, the Magistrate Judge was entirely justified in considering how best to manage discovery. Inevitably, use of a Lone Pine provision shifts the initial costs of litigating this case from the Defendants, who would be otherwise be faced with extensive discovery to determine the nature of Plaintiffs' claims, to the Plaintiffs, who presumably should be aware of how they were injured, by whom, and when that injury occurred. In this sense, use of such a mechanism is consistent with the intent of the Federal Rules of Civil Procedure to "secure the just, speedy and inexpensive determination of every action," Fed. R. Civ. P. 1, as implemented through Rules 11 and 16.

Having concluded that the use of a Lone Pine provision is appropriate in this case, the Court next addresses Plaintiffs' contention that the Magistrate Judge erred in concluding that the affidavits they submitted did not comply with the modified scheduling order. The Magistrate Judge's reasoning is explained in detail in Section I of this order. The Court sees no benefit in merely reiterating that reasoning. The Court is in full accord with the

17

Magistrate Judge's assessment and agrees that the submission of 1058 affidavits, devoid of meaningful occupational or residence information, without disclosure of relevant time frame and signed by the same expert witness who merely provided a laundry list of illnesses, toxic substances and facilities which may apply to any given plaintiff does not suffice.

Finally, in a related argument, Plaintiffs maintain that the Magistrate Judge's order places onerous additional burdens on them in a time frame too short to permit reasonable compliance. That is true only if one accepts their argument that their initial submissions were sufficient; as explained above, they were not. The Magistrate Judge's order does nothing more than explain in clear and concise terms what Plaintiffs must do to meet their obligations under the modified scheduling order. Accordingly,

IT IS ORDERED THAT the Magistrate Judge's Order, dated September 16, 1997, is AFFIRMED.

SIGNED and ENTERED this 29 day of December, 1997.

ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

18