**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

|  |
|---|
| *IN RE JACKSON WATER CASES,* |

No. 3:23-cv-00614-CWR LGI
(Main Docket – All Plaintiffs)

Hon. Carlton W. Reeves,
U.S. District Judge

Hon. LaKeysha Greer Isaac,
U.S. Magistrate Judge

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR ENTRY OF A *LONE PINE* ORDER**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................. 1

LEGAL STANDARD ............................................................................. 1

ARGUMENT ...................................................................................... 2

  I. *ACUNA* DOES NOT MANDATE ISSUANCE OF A *LONE PINE* ORDER ........................................................................................... 2

    A. *Acuna* Is Factually And Legally Distinguishable From The Present Case ... 4

      i.   The Type of Injury Alleged and its Cause ........................................... 4

      ii.  Posture of Litigation: Notice .......................................................... 6

      iii. The Posture of the Litigation: Information Requested ....................... 8

      iv. Other Procedures Available which Can Serve the Case Management Needs Presented Here ................................................ 11

    B. Post-*Acuna* Cases Confirm That a *Lone Pine* Order is NOT Appropriate . 12

  II.  THE PROPOSED *LONE PINE* ORDER IMPERMISSIBLY FACILITATES AN END-RUN AROUND PROCEDURAL SAFEGUARDS MANDATED BY THE FEDERAL RULES OF CIVIL PROCEDURE .......................... 17

  III. THE BALANCE OF EQUITY AND EFFICIENCY MANDATE DENIAL OF DEFENDANTS' OPPRESSIVE REQUEST ..................................... 21

    A. Fairness: Defendants' Proposal is Immensely Prejudicial and Prohibitive .............................................................................. 21

      i.   The Proposed Process will permit Defendants to Shift Costs and Shield Information about Liability. .................................................. 21

      ii.  The Proposed Lone Pine Order will subject Plaintiffs to Unjust Causation and Appellate Standards ................................................ 25

    B. Efficiency: Defendants' Proposal is Unnecessary and Inefficient .............. 27

CONCLUSION ................................................................................... 29

CERTIFICATE OF SERVICE ................................................................. 31

# TABLE OF AUTHORITIES

## Cases

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ......................................................................................................21

*Rotella v. Wood*, 528 U.S. 549, 560 (2000)…………………………………..10

*Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000) ...........................passim

*Brittan Communs. Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899 (5th Cir. 2002)....26

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681 (5th Cir. 2017) ............1

*In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391 (5th Cir. 2010)...............12, 13, 14

*Ryan v. Phillips 66*, 838 F. App'x 832 (5th Cir. 2020) ...........................................18

*Steering Cmte. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) ...............12, 13

*Adinolfe*, 768 F.3d 1161, 1168 (11th Cir. 2014) ....................................................20

*Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 (S.D. Miss. Jan. 13, 2016) ...........................................................................passim

*Acuna v. Brown & Root, Inc.*, Docket No. 5:96-CV-00543 (W.D. Tex. 1997)..3, 5, 6

*Arnold v. BNSF Ry. Co., Civil Action* No. 3:18-CV-1931-L, 2019 U.S. Dist. LEXIS 58122 (N.D. Tex. Apr. 4, 2019)......................................................................16

*Ashford v. Hercules, Inc.*, No. 2:15cv27-KS-MTP, 2015 U.S. Dist. LEXIS 141011 (S.D. Miss. Oct. 16, 2015).......................................................................14, 15

*Clayton v. Denbury Onshore*, LLC, No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150 (S.D. Miss. Feb. 23, 2018) .........................................1, 12, 15, 16

*E-Z Line Pipe Support Co., LLC v. Piping Tech. & Prods.*, No. 3:20-cv-00176, 2021 U.S. Dist. LEXIS 83116 (S.D. Tex. Apr. 30, 2021)............................................16

*Joecano v. BNSF Ry. Co.*, No. 2:19-CV-117-BQ, 2019 U.S. Dist. LEXIS 243062 (N.D. Tex. Oct. 31, 2019)...................................................................................28

*Montgomery v. AI Prods.*, No. H-12-00497, 2012 U.S. Dist. LEXIS 196404 (S.D. Tex. Aug. 9, 2012) ............................................................................................16

*White v. Sherwin-Williams Co.*, No. 19-11580, 2020 U.S. Dist. LEXIS 93811 (E.D. La. May 29, 2020) ........................................................................................16

*Abrams v. Ciba Specialty Chems. Corp.*, No. 08-00068-WS-B, 2008 U.S. Dist. LEXIS 86487 (S.D. Ala. Oct. 23, 2008) .............................................................27

*Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2016 WL 4079531 (E.D. Tenn. July 29, 2016) ...................................................................20

*Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226-JD-MGG, 2017 WL 359852 (N.D. Ind. Jan. 25, 2017) .......................................................................................3

*In re Digitek Prod. Liab. Litig.,* 264 F.R.D. 249 (S.D. W. Va. 2010) ..........11, 27, 28

*Manning v. Arch Wood Prot., Inc.*, 40 F. Supp. 3d 861 (E.D. Ky. 2014).....................3

*Morgan v. Ford Motor Co.*, No. 06-1080 (JAP), 2007 WL 1456154 (D.N.J. May 17, 2007).........................................................................................20

*Cottle v. Superior Court*, 5 Cal. Rptr. 2s 882 (Ct. App. 1992) ................................26

**Rules**

42 U.S.C. § 1983 .......................................................................................................21

Fed.R.Civ.P. 11(b)(3)..............................................................................................8, 9

Fed.R.Civ.P. 12(b)(6)....................................................................................11, 17, 27

Rule 12(g)(2) .............................................................................................................17

Rule 12(h).................................................................................................................17

Fed. R. Civ. P. 16(f) ...................................................................................................25

**Other Authorities**

Anna Wolfe, *Lead still high in some recent Jackson water samples*, CLARION LEDGER, (Mar. 18, 2016), https://www.clarionledger.com/story/news/local/2016/03/18/lead-still-high-some-recent-jackson-water-samples/81936374/ .................................................19

Ben J. Scott, *Putting Horse Back in Front of the Cart—Lone Pine Orders in Multi-Plaintiffs Pharmaceutical Litigation* (April 1, 2009), https://protesolutio.com/2009/04/01/putting-the-horse-back-in-front-of-the-cart-lone-pine-orders-in-multi-plaintiff-pharmaceutical-litigation/ ............................4

Carl Tobias, *Environmental Litigation and Rule 11*, 33 WM. & MARY L. REV. 429, 481 (1992), https://scholarship.law.wm.edu/wmlr/vol33/iss2/4 .........................22

CDC, (October 20, 2023),https://www.cdc.gov/nceh/lead/overview.html..............19

Kate Galbraith & Matthew Teague, *High Levels of Lead Found in Mississippi Capital's Water Likened to Flint Crisis*, THE GUARDIAN (Mar. 17, 2016), https://www.theguardian.com/us-news/2016/mar/17/high-levels-lead-mississippi-water-flint-michigan.......................................................................19

Nora F. Engstrom & Amos Espeland, *Lone Pine Orders: A Critical Examination and Empirical Analysis*, 168 U. PA. L. REV. ONLINE 91, 104 (2020), https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=1228&context=penn_law_review_online ............................................................................4, 14, 22

Nora F. Engstrom, The Lessons of Lone Pine, 129 YALE L.J. 2, 45 (2019) https://www.yalelawjournal.org/article/the-lessons-of-lone-pine ................passim

## INTRODUCTION

Defendants' request for a *Lone Pine* order should be denied. Applicable jurisprudence does not support the implementation of such an extreme measure in this case. In fact, it runs contrary to putting such an order in place. Moreover, Defendants proposed *Lone Pine* order effectively circumvents and deprives Plaintiffs of important procedural safeguards afforded by the Federal Rules of Civil Procedure, and adds Constitutional insult to Constitutional injury, further oppressing an already disenfranchised community of minor Plaintiffs. For these reasons, set forth more fully below, the Court should deny Defendants' motion in its entirety.

## LEGAL STANDARD

"[N]o federal rule expressly authorizes *Lone Pine* orders[.]" *Clayton v. Denbury Onshore*, LLC, No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150, at *2 (S.D. Miss. Feb. 23, 2018). While some courts have interpreted Federal Rule of Civil Procedure 16 to permit consideration of such requests, this Court has recognized that such an order "is not appropriate in every case or suitable at every stage of litigation." *Id.* at *2–3. Further, this Court has cautioned that "*Lone Pine* orders 'should not be used (or become) the platforms for pseudo-summary judgment motions at a time when the case is not at issue and the parties have not engaged in reciprocal discovery.'" *Abner v. Hercules, Inc*., No. 2:14-CV-63-KS-MTP, 2016

U.S. Dist. LEXIS 179956, at *230 (S.D. Miss. Jan. 13, 2016) (citation omitted).[1]

Finally, this Court has instructed that in those rare instances when a *Lone Pine* order is entered, "[i]n crafting [the] order, a court should strive to strike a balance between efficiency and equity." *Id.* (internal quotation marks and citation omitted).

## **ARGUMENT**

### I. *ACUNA* DOES NOT MANDATE ISSUANCE OF A *LONE PINE* ORDER

Defendants' arguments in support of their extraordinary request are at best misplaced and at worst disingenuous. They claim this Court *must* issue a *Lone Pine* order based on two patently false premises: 1) such orders are "frequently used" (they are not); and 2) *Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000) mandates it (it does not). 3:23-cv-00614-CWR LGI ("Main Docket"), Doc. 155 ("MOL") at 10. These assertions are fallacious and Defendants' underlying logic in support is fatally flawed.

As an initial matter, while the Fifth Circuit in *Acuna* ("*Acuna* Court") approved the use of a *Lone Pine* order (twenty-three years ago), *Acuna* by no means

---

[1] The Fifth Circuit has "not endorsed an analytical framework for determining whether [*Lone Pine*] orders are appropriate in a given case." *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230–31. However, this Court (in *Abner*) and other federal courts have considered the following factors: (1) the posture of the litigation; (2) the case management needs presented; (3) external agency decisions that may bear on the case; (4) the availability of other procedures that have been specifically provided for by rule or statute; and (5) the type of injury alleged and its cause. *Id.* (citing cases).

established a bright line rule that such orders are *always* permissible or appropriate. Rather, the *Acuna* Court ruled that <u>one district court</u> did not abuse its discretion or commit clear error in issuing <u>one *Lone Pine* order</u>, in <u>one specific case</u>. *Acuna*, 200 F.3d at 338.

Similarly, Defendants' statement that such orders are "frequently used" is false. In reality, *Lone Pine* orders are ***dramatic*** and ***extraordinary*** procedures, which this Court has recognized "***may not be appropriate in every case***." *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230 (emphasis added); *Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226-JD-MGG, 2017 WL 359852, at*4, *6 (N.D. Ind. Jan. 25, 2017) (calling the entry of a *Lone Pine* order a "dramatic imposition" that "should be issued only in exceptional cases"); *Manning v. Arch Wood Prot., Inc*., 40 F. Supp. 3d 861, 868 (E.D. Ky. 2014) (denying entry of a L*one Pine* order as an "extraordinary procedure").[2] Indeed, even the Magistrate Judge that initially issued the *Lone Pine* order in *Acuna* noted that doing so was "***certainly [] atypical***." *Acuna v. Brown & Root, Inc.,* Docket No. 5:96-CV-00543 (W.D. Tex. 1997), Doc. 54 ("Acuna R&R"). Accordingly, Defendants' misleading attempts to

---

[2] Plaintiffs recognize that secondary sources and cases outside this circuit are persuasive, not binding. However, given the consequential nature of Defendants' request (and the lack of case law within the Fifth Circuit), it is fundamentally important (and helpful) for the Court to consider the rulings and studied observations of courts and commentators across the United States.

establish *Acuna* as an authority that supports the frequent and blanket use of *Lone Pine* orders in *all* mass tort cases should be rejected outright.[3]

## A. *Acuna* **Is Factually And Legally Distinguishable From The Present Case**

The Court should also reject Defendants' attempts to liken these Jackson Water Crisis cases to *Acuna. See* MOL at 15. The underlying circumstances here are clearly distinguishable from those in *Acuna* in several important and relevant ways.

### i. The Type of Injury Alleged and its Cause[4]

The type of injuries and issues of causation in *Acuna* were far more complex and unwieldy than what is present in this litigation. The *Acuna* plaintiffs sued for "a range of injuries occurring over a span of up to forty years." *Acuna*, 200 F.3d at 340. The number of possible defendants responsible for those injuries was more than thirty times the number of Defendants in this case, as plaintiffs sued "over one

---

[3] Secondary sources also suggest Defendants' contentions are baseless. *See* Nora F. Engstrom & Amos Espeland, *Lone Pine Orders: A Critical Examination and Empirical Analysis*, 168 U. PA. L. REV. ONLINE 91, 104 (2020), https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=1228&context=penn_law_review_online ("Further, from 2015 through 2019, it appears possible ***that the orders' popularity has flagged.***")(emphasis added); Ben J. Scott, *Putting Horse Back in Front of the Cart—Lone Pine Orders in Multi-Plaintiffs Pharmaceutical Litigation* (April 1, 2009), https://protesolutio.com/2009/04/01/putting-the-horse-back-in-front-of-the-cart-lone-pine-orders-in-multi-plaintiff-pharmaceutical-litigation/ ("such orders are ***not routine***")(emphasis added).

[4] The "type of injury alleged and its cause" is a factor considered by federal courts in determining whether to issue a *Lone Pine* order. *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230–31 (citing cases).

hundred defendants," *id.,* spanning across "the entire uranium mining industry in Texas[.]" The more than one hundred *Acuna* defendants were involved in a vast array of activities (mining, milling, tailing, disposal, and operations of uranium mining and processing). *Acuna* R&R at 7.[5] The possible pathways of exposure for the *Acuna* plaintiffs' were multiple and many, such as "radiation[,] or uranium dust[,] or tailings through contact with family members who worked in the mines[,] or through environmental factors such as wind and groundwater." *Acuna*, 200 F.3d at 338.

Here, Plaintiffs' claims are far more straightforward. Each of the three Defendants was directly involved with Jackson's public water source. Each was "deliberately indifferent to [Plaintiffs'] plight." Main Docket, Doc. 135 ("MTD OR.") at 3. And there is only one alleged injury — lead poisoning — with one alleged exposure pathway — the use of Jackson's public water source — for a mere fraction of the forty years of exposure that existed in *Acuna*. Thus, unlike the complexities inclusive of but not limited to injury and causation in *Acuna*, the circumstances here do not warrant the entry of a *Lone Pine* order.

---

[5] The *Acuna* Magistrate Judge considered the number of defendants and their potential involvement in determining to implement a *Lone Pine* order. *Acuna* R&R at 7.

### ii.    Posture of Litigation: Notice[6]

The *Acuna* Court ruled that the lower court did not abuse its discretion in issuing a *Lone Pine* order, because *those* plaintiffs' complaint did not put *those* defendants on "notice" of basic information related to their claims. *Acuna*, 200 F.3d at 340. That is simply not the case here. The circumstances in *Acuna* regarding notice could not be more incongruent to the notice these Defendants most certainly received.

The *Acuna* plaintiffs' pleadings failed to set forth fundamental information as to their alleged injuries and related causation. *Id.* (*Acuna* Court finding that: "Neither the defendants nor the court was on notice from plaintiffs' pleadings as to how many instances of which diseases were being claimed as injuries[,] or which facilities were alleged to have caused those injuries."). Indeed, as the District Court in *Acuna* noted, the "essential allegations" in the *Acuna* complaint were only comprised of two pages and contained very limited facts. *Acuna v. Brown & Root, Inc.*, Docket No. 5:96-CV-00543 (W.D. Tex. 1997), Doc. 74 ("*Acuna* DC OR") at 3.

Unlike in *Acuna,* here, Plaintiffs' Complaint clearly sets forth what disease each Plaintiff claims to have been caused by Defendants' conduct — lead poisoning — as well as the ways in which their lead poisoning presents and has manifested in

---

[6] "Posture of the litigation" is a factor considered by federal courts in determining whether to issue a *Lone Pine* order. *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230–31 (citing cases).

terms of cognitive damages. Main Docket, Doc. 51 ("Amended Compl.) at 76 (¶¶371–372). And unlike *Acuna,* here, Plaintiffs' Complaint clearly sets forth what facility and exposure pathway caused those injuries — the use of tap water from Jackson's public water system. *Id.* at 76 (¶373); *see also* MTD OR. at 3–12 (summarizing Plaintiffs' detailed allegations). Also, and unlike *Acuna,* here, Plaintiffs' Complaint contains **fifty-three pages** of detailed information as to how the acts of each Defendant contributed to the lead contamination; when it occurred; and how Plaintiffs were exposed to lead contaminated water. Amended Compl. at 21–74.

Additionally, here, City and State Defendants have the ***additional benefit*** of a pre-suit, Mississippi Tort Claims Act (MTCA) Notice ("Notice") for each Plaintiff.[7] Each Notice, like the Complaint, includes detailed information as to the time and place of each Plaintiff's injuries and each Plaintiff's damages resulting from his or her lead poisoning. *See* Main Docket, Doc. 154-3 ("Notice"). It is of no moment that Defendants continue to claim the allegations in the Notices are lacking, as this Court has **already ruled them** sufficient to place Defendants on notice of Plaintiffs' claims. MTD OR. at 51–55. Specifically, the Court ruled: "In this case, the Plaintiffs' notices of claim gave the available details about the nature and extent of the Plaintiffs'

---

[7] Plaintiffs have no objection to City and State Defendants sharing the Notices with the Trilogy defendants.

injuries, the time period in which those injuries occurred, the individuals who suffered those injuries (including their geographic location), and the amount of damages they suffered." *Id.* at 54.

Therefore, because Plaintiffs here have provided sufficient notice of their claims, a true application of *Acuna's* reasoning (that the *Acuna Lone Pine* order was warranted because Plaintiffs had not provided sufficient notice of their claims) requires the denial of Defendants' request for entry of a *Lone Pine order.*

### iii. Posture of Litigation: Information Requested

The *Acuna* Court also found that the lower court did not abuse its discretion in issuing a *Lone Pine* order, because the order "essentially required [] information[,] which plaintiffs should have had before filing their claims pursuant to Fed.R.Civ.P. 11(b)(3)." *Acuna*, 200 F.3d. at 340. This singular statement, which Defendants insist should serve as this Court's 'North Star,' is clearly about <u>specific information lacking in the *Acuna* plaintiffs' complaint,</u> <u>exclusive to their claims,</u> <u>regarding the more than one hundred defendants they sued</u>. To blanketly apply the statement to Plaintiffs' allegations here, and to posit that on its face the statement means that these Plaintiffs have not provided information, which "they should have had before filing," requires a complete disregard for Plaintiffs' claims as pled, as well as for the Court's holding that Plaintiffs' claims and Notices were sufficient to place Defendants on notice of same.

Moreover, Defendants, in their already skewed analysis of *Acuna*, also overlook a critical distinction: the information requested and ordered by way of the *Acuna Lone Pine* order was substantially less detailed than what Defendants seek here. The *Acuna* defendants sought "some information regarding the nature of … injuries[;] the circumstances under which [a plaintiff] could have been exposed to harmful substances[;] and the basis for believing that the named defendants were responsible for [plaintiff's] injuries." *Id.* Here, (as explained above) Plaintiffs have already provided exactly that information. Yet despite Plaintiffs here having pled exactly what the *Acuna* Court found those plaintiffs were lacking, and despite this Court already finding Plaintiffs' claims were sufficiently pled and noticed, these Defendants propose a *Lone Pine* order far more expansive than the *Acuna Lone Pine* order, and which would require Plaintiffs to present additional evidence typically reserved for trial, before discovery even begins.[8]

There is a marked difference between what the *Acuna* Court determined might be required under Rule 11, and what these Defendants insist Plaintiffs need to prove here and now. In other words, Defendants wrongly presume that because the *Acuna* Court ruled that information required under that *Lone Pine* order fell within the

---

[8] Amongst other things, Defendants seek expert affidavits regarding exposure, diagnosis, and causation as well as medical records. Main Docket, Doc. 154-1 ("Proposed *Lone Pine* Order").

scope of what Rule 11 requires, then <u>any</u> information, requested in <u>any</u> *Lone Pine* order (no matter how oppressive, overbearing, and untimely), automatically falls within that same scope.

This argument is as circular as it is ridiculous. If the Court were to accept and order what Defendants request here, Plaintiffs would be imposed with a more exacting burden than what Rule 11 actually requires.[9] Indeed, Rule 11(b)(3) specifically provides that Plaintiffs may certify that the factual contentions within the complaint "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Both the Advisory Committee and the Supreme Court have recognized that this latitude and flexibility is necessary in the context of filing a complaint. *See* Rule 16 advisory committee's notes to 1983 amendment ("[T]he Committee felt that flexibility and experience are the keys to efficient management of complex cases."); *Rotella v. Wood*, 528 U.S. 549, 560 (2000) (recognizing that Rule 11(b)(3) offers litigants "flexibility" by "allowing pleadings based on evidence reasonably anticipated after further investigation or discovery").

---

[9] *See* Nora F. Engstrom, The Lessons of Lone Pine, 129 YALE L.J. 2, 45 (2019) https://www.yalelawjournal.org/article/the-lessons-of-lone-pine, ("Rule 11 "stops short of requiring counsel to certify that, at the time of filing, any particular allegation has evidentiary support.").

Therefore, the *Acuna* Court's reasoning as to why the information sought through that *Lone Pine* order was harmless and within the scope of what should have been pled by those plaintiffs in the first place, is inapplicable to what these Defendants seek here, especially when comparing the supremely detailed allegations in these Plaintiffs' Complaint, and in their Notices of Claims, to what the *Acuna* plaintiffs provided the *Acuna* defendants.

### iv. Other Procedures are Available which Can Serve the Case Management Needs Presented Here[10]

Another important distinction between this case and *Acuna* is the availability of other procedures that can, have, and will serve the case management needs here. Unlike the *Acuna* defendants, ***who did not file a motion to dismiss*** under 12(b)(6) before the entry of the *Lone Pine* order,[11] these Defendants ***have already challenged the sufficiency*** of Plaintiffs' Amended Complaint[12] by way of 12(b)(6) motions, which were fully briefed, intensely argued without limitation, and ultimately decided. *See In re Digitek Prod. Liab. Litig.,* 264 F.R.D. 249, 258 (S.D. W. Va. 2010)

---

[10] The "the case management needs presented" and "the availability of other procedures" are also factors considered by courts in determining whether to issues a *Lone Pine* order. *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230–31 (citing cases).

[11] Review of the District Court docket in *Acuna* — Docket No. 5:96-CV-00543 (W.D. Tex. 1997) — reveals that the defendants did not file a motion to dismiss under 12(b)(6) before the entry of the *Lone Pine* order.

[12] This Amended Complaint has been adopted and incorporated as the main or "master complaint" for all actions. *See* Main Docket, Docs. 152, 152-1.

(rejecting *Lone Pine* order and ruling that the fact that the master complaint already "withstood scrutiny under Rule 12(b)(6) [] largely eliminated any concerns respecting pleading defects").

Additionally, as set forth more fully below in Section III(B) of this brief, unlike *Acuna*, the Court here has ***already implemented and considered*** several procedures designed to put this litigation on track for just, speedy, and efficient disposition. Main Docket, Doc. 146 (Case Management Order 1); *see also* Doc. 145 (Transcript of August 16, 2023 Conference) at 14, 26. And those measures have already proven effective and successful in addressing case management needs in similarly situated litigation such as the Flint Water Crisis cases. Therefore, unlike *Acuna*, here, a *Lone Pine* order is entirely unnecessary because other "available procedural devices, other than a *Lone Pine* order, would be effective in addressing the issues at hand." *Clayton*, No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150 at *4.

Accordingly, Defendants' only real argument — that *Acuna mandates* the application of a *Lone Pine* order here — should be rejected entirely, as a straightforward application of *Acuna* dictates denying Defendant's request.

### B. Post-*Acuna* Cases Confirm that a *Lone Pine* Order is NOT Appropriate

Defendants assert that: "Since *Acuna*, the Fifth Circuit has continued its approval of *Lone Pine* orders to manage complex cases." MOL at 15 (citing *Steering*

*Cmte. v. Exxon Mobil Corp*., 461 F.3d 598, 604 & n. 2 (5th Cir. 2006) and *In re Vioxx Prods. Liab. Litig*., 388 F. App'x 391, 398 (5th Cir. 2010)). The phrase "continued its approval" is massively misleading. The handful of cases cited by Defendants do not come close to supporting such a hyperbolic statement, and certainly do not confirm that a pre-discovery *Lone Pine* order at this "early stage[]" of litigation, MTD OR. at 3, would be appropriate here.

In *Steering,* the Fifth Circuit merely mentioned that a *Lone Pine* order had been entered in passing. It did not (as Defendants imply) employ an analysis as to whether it was appropriate for the lower court to issue such an order. 461 F.3d at 604 n.2. Even setting that aside, the *Steering Lone Pine* order was entered under <u>very</u> different circumstances than those here: <u>after</u> discovery and <u>after</u> summary judgment motions were decided. *See Steering*, 461 F.3d at 604 ("The district court also noted that the case has already been streamlined using other case management tools, including narrowing the claims and potential plaintiffs through summary judgment, and facilitating the disposition *of the remaining plaintiffs'* claims through issuance of a *Lone Pine* order.") (emphasis added).

As to *In Re Vioxx* ("*Vioxx*"), the underlying circumstances there could not be more opposite than those here. *Vioxx* was a multi-district and far more complicated litigation. More importantly, the *Vioxx Lone Pine* order was issued <u>at the end</u> of the litigation; <u>after</u> seven years of discovery*;* <u>after</u> several Bellwether trials*;* and <u>after</u> a

master settlement agreement had been reached. Moreover, the *Vioxx Lone Pine* order only applied to the plaintiffs who did not participate in a settlement. 388, F. App'x 391 at 393–394.[13] Thus, if anything, *Vioxx* suggests only that since *Acuna*, the Fifth Circuit has approved the use of *Lone Pine* orders in a limited, ***post-settlement*** context, but not in the pre-discovery posture that currently exists here.[14]

Defendants further cite to *Ashford v. Hercules, Inc*., No. 2:15cv27-KS-MTP, 2015 U.S. Dist. LEXIS 141011 (S.D. Miss. Oct. 16, 2015) and *Abner, Inc.*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *218. However, like *Vioxx,* those cases contemplate the entry of *Lone Pine* orders at a completely different procedural posture than that of the present Jackson Water Crisis cases.

---

[13] Importantly, the district court in *Vioxx* stated: "In the present case, a *Lone Pine* order may not have been appropriate at an earlier stage before any discovery had taken place . . . But this case is no longer in its embryonic stage. It has existed in state courts for over seven years and in this Court for over three years, and much discovery has taken place." *In re Vioxx Prods. Liab. Litig*., 557 F. Supp. 2d 741, 744 (E.D. La. 2008).

[14] Indeed, courts across the country agree with this sentiment. *See* Engstrom, *The Lessons of Lone Pine*, *supra*, at 35 (Courts "reserve the *Lone Pine* order's entry until the end of litigation, when discovery has concluded, the dust has settled, and the ink is dry, or nearly dry, on a global settlement."); Engstrom & Espeland, *Lone Pine Orders: A Critical Examination and Empirical Analysis*, 168 U. PA. L. REV. Online 91, *supra*, at 107 (Reporting data suggesting that roughly a quarter of all analyzed *Lone Pine* orders were issued in the "twilight stage of litigation" and that these orders were often entered "after the lead plaintiffs' attorneys had hammered out a tentative settlement agreement and were, often in concert with the defendant, trying to corral the remaining plaintiffs to opt in.").

In *Ashford* and *Abner,* Plaintiffs brought claims related to the migration of contaminants from a plant, formerly owned by defendant Hercules, Inc. But unlike the minor Plaintiffs here, the *Ashford* and *Abner* Plaintiffs had the benefit of discovery <u>prior to</u> the entry of a *Lone Pine* order. That discovery was "[e]xtensive," including many depositions; productions of documents dating back to 1923; and "the results of … ongoing testing/sampling … of the Hercules site or surrounding area." *Ashford*, No. 2:15cv27-KS-MTP, 2015 U.S. Dist. LEXIS 141011 at *2, 12.

More importantly, the fact that those plaintiffs previously had access to extensive discovery was the decisive principle that prompted this Court to approve the *Lone Pine* order in those cases. *See Ashford*, No. 2:15cv27-KS-MTP, 2015 U.S. Dist. LEXIS 141011 at *12 ("Plaintiffs will be promptly afforded access to the discovery conducted in *Blackard* and *City of Hattiesburg*. Thus, requiring Plaintiffs to provide the information required by this order is not a significant departure from the usual course of a civil action."); *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *219, *231 ("Plaintiffs have the benefit of all the discovery materials produced in the *Blackard* and *Hattiesburg* cases, and Defendant is under a continuing obligation to produce any new testing results to Plaintiffs' counsel.").

Additionally, Defendants omit reference to a relevant case from this Court: *Clayton, LLC,* No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150 at *2. In *Clayton*, this Court denied the use of a *Lone Pine* order, entered a different non-*Lone*

*Pine* case management order, and allowed discovery to proceed. *Id.* at *1. In so holding, the Court looked to the posture of the litigation, and found that a *Lone Pine* order was not justified because — like here — the "action [was] in the early stages of litigation, and … available procedural devices, other than a *Lone Pine* order, would be effective in addressing the issues at hand." *Id.* at *4–5.[15]

Accordingly, review of post-*Acuna* case law from this Court clearly supports that the entry of a *Lone Pine* order here — **at this early pre-discovery, pre-summary judgment, pre-settlement posture** — would be wholly inappropriate.[16]

---

[15] The court also reasoned that, like Plaintiffs here, the *Clayton* plaintiffs had "articulated the basic facts which support their claims against Defendant and alleged particular injuries." *Clayton,* No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150 at *3–4.

[16] Sister courts in this Circuit agree. *Montgomery v. AI Prods*., No. H-12-00497, 2012 U.S. Dist. LEXIS 196404, at *5 (S.D. Tex. Aug. 9, 2012) ("Issuing a *Lone Pine* order at the outset of this litigation would unduly limit plaintiffs' access to discovery … In these circumstances, it is more efficient for plaintiffs to obtain information from [the defendants] about the chemicals released instead of employing experts to make such a determination without the benefit of discovery."); *E-Z Line Pipe Support Co., LLC v. Piping Tech. & Prods.*, No. 3:20-cv-00176, 2021 U.S. Dist. LEXIS 83116, at *4 (S.D. Tex. Apr. 30, 2021) ("The notion that discovery in a wide range of cases should automatically be stayed—requiring a plaintiff to establish a prima facie case of injury and causation before moving forward with discovery—runs counter to how our courts generally operate."); *White v. Sherwin-Williams Co.*, No. 19-11580, 2020 U.S. Dist. LEXIS 93811, at *11 (E.D. La. May 29, 2020) ("to require plaintiff to produce evidence demonstrating … causation at this juncture of the proceedings, without the benefit of discovery, would place an additional burden on plaintiff not contemplated by the Federal Rules of Civil Procedure"); *Arnold v. BNSF Ry. Co., Civil Action* No. 3:18-CV-1931-L, 2019 U.S. Dist. LEXIS 58122, at *15 (N.D. Tex. Apr. 4, 2019) ("Request for entry of a *Lone Pine* order, shortly after the filing of this case and before any discovery has been conducted, is an improper attempt to shift the burden to Plaintiff to come forward

## II. THE PROPOSED *LONE PINE* ORDER IMPERMISSIBLY FACILITATES AN END-RUN AROUND PROCEDURAL SAFEGUARDS MANDATED BY THE FEDERAL RULES OF CIVIL PROCEDURE

If this Court enters the requested *Lone Pine* order, Defendants will be entitled to make end-runs around several important procedural requirements. *See* Engstrom, *The Lessons of Lone Pine,* 129 YALE L.J., *supra*, at 42 ("*Lone Pine* orders are not just innovative; they don't just operate in the interstices of existing rules. Rather, they stand in tension with – and permit courts to make end-runs around – certain procedural requirements.").

First, as mentioned *supra*, City and State Defendants have **already challenged the sufficiency** of the Complaint by way of Rule 12(b)(6) motions, which were fully briefed, intensely argued, and thoughtfully and thoroughly decided.[17] As Defendants well know, Rule 12 provides that any arguments regarding the sufficiency of a plaintiff's complaint, which were not raised in a Rule 12(b)(6) motion, are waived and cannot be raised again. Fed. R. Civ. P 12(h);(g)(2); *see also Doe v. Columbia-Brazoria Indep. Sch. Dist*., 855 F.3d 681, 686 (5th Cir. 2017) (Rule 12(g)(2) states that "a party that makes a motion under [Rule 12] must not make another motion

---

with evidence at the pleading stage of this case to establish the allegations in her Complaint.").

[17] Defendant Trilogy Engineering Services, LLC did not move against the Complaint, waiving their right to challenge it for failure to state a claim. *See* Rule 12 (h).

under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."). Therefore, permitting these Defendants to make new challenges as to the sufficiency of Plaintiffs' claims — by way of their *Lone Pine* order — erroneously allows them to circumvent crucial Rule 12 protections.

Second, City and State Defendants already sought virtually identical relief to that which they seek here, when they challenged the sufficiency of Plaintiffs' MTCA notices. *See* Main Docket, Doc. 141 (Transcript of March 2, 2023 MTD hearing) at 72:9-76:3, 118:18-120:16. They previously argued that the MTCA notices were deficient because they lacked medical <u>proof</u> that Plaintiffs experienced elevated levels of lead; <u>proof</u> of specific periods during which Plaintiffs were exposed to elevated lead levels; and <u>proof</u> that Plaintiffs' alleged damages were caused by lead exposure. MTD OR. at 51 (summarizing and quoting Defendants' notice arguments). The Court rejected these arguments, MTD OR. at 53, and Defendants did not seek reconsideration under Rule 59(e) or Rule 60(b). Nor could they, as the Court's legal reasoning was unimpeachable and reiterating the same arguments is impermissible on a motion for reconsideration. *See Ryan v. Phillips 66*, 838 F. App'x 832, 836 (5th Cir. 2020) ("These rules are 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'") (citation omitted). Thus, Defendants' attempt to reargue these issues

by way of their desired *Lone Pine* procedure should be rejected as an improper attempt at reconsideration, in violation of the Federal Rules.

Finally, the majority of Defendants' motion is spent challenging the underlined credibility of Plaintiffs' assertions regarding exposure to lead, injury, and causation. MOL at 1–9. In support, they attach several exhibits, including alleged test results and cherry-picked scientific literature. They essentially argue that there are issues of disputed fact,[18] and for that reason, a detailed *Lone Pine* order (in lieu of mutual discovery) is justified and necessary. On its face these arguments are improper, as they

---

[18] Defendants' attempts to create disputes of facts are disingenuous. For example, they assert that: "This litigation involves novel legal theories and factual averments, many of which are contradicted by publicly available data demonstrating that the majority of City of Jackson houses did not experience excess lead levels during the timeframe in question." Main Docket, Doc. 155 at 2–3. In support, they attach and refer to lead testing results from the MSDH website. However, these lead results are limited to the years of 2022 and 2023, and do not reflect a timeframe central to Plaintiffs claims (2015-2017). Doc. 154-2. Meanwhile, Virginia Tech testing during that time period *actually did* reveal high lead levels in Jackson water. *See* Kate Galbraith & Matthew Teague, *High Levels of Lead Found in Mississippi Capital's Water Likened to Flint Crisis*, THE GUARDIAN (Mar. 17, 2016), https://www.theguardian.com/us-news/2016/mar/17/high-levels-lead-mississippi-water-flint-michigan; Anna Wolfe, *Lead still high in some recent Jackson water samples*, CLARION LEDGER, (Mar. 18, 2016), https://www.clarionledger.com/story/news/local/2016/03/18/lead-still-high-some-recent-jackson-water-samples/81936374/; *see also* Amended Compl. at 28-67 (detailed allegations and documents in support of elevated lead levels and possible underreporting of lead levels). All of which is to say nothing of the fact that it is widely accepted in the scientific community that there is no safe level of lead, and that harm will occur at even "low" levels of exposure. *See, e.g.,* CDC, (October 20, 2023), https://www.cdc.gov/nceh/lead/overview.html.

improperly convert the proposed *Lone Pine* process into a summary judgment proceeding, **but without** the procedural safeguards of Rule 56, or the benefits of mutual discovery afforded by Rules 26, 30, and 37.

This is *exactly* what this Court and others have strongly cautioned against in the context of evaluating the propriety of *Lone Pine* orders. *See Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230; *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) (*Lone Pine* orders "should not be used as (or become) the platforms for pseudo-summary judgment motions at a time when the case is not at issue and the parties have not engaged in reciprocal discovery."). Indeed, some federal courts have even denied requests for *Lone Pine* orders on this basis alone. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2016 WL 4079531, at *6 (E.D. Tenn. July 29, 2016) (denying defendant's motion because "issuing a Lone Pine order at this juncture would" require plaintiffs "to set forth the same level of proof that a motion for summary judgment would require but without the benefit of first conducting discovery"); *Morgan v. Ford Motor Co.*, No. 06-1080 (JAP), 2007 WL 1456154, at *8 (D.N.J. May 17, 2007) (same).

Clearly, if Defendants' proposed *Lone Pine* order is implemented, it will deprive Plaintiffs of the procedural safeguards described above and therefore become something the Supreme Court has ruled is impermissible: "a heightened, court-imposed quasi-pleading standard." *Adinolfe*, 768 F.3d at 1168–69 ("[I]f these

procedural safeguards are not enforced, then *Lone Pine* orders might become the practical equivalent of a heightened, court-imposed quasi-pleading standard, something the Supreme Court has frowned on."); *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166–68, (1993) (rejecting a "more stringent" and court-devised pleading standard intended to weed out non-meritorious municipal liability claims under 42 U.S.C. § 1983 and shield municipalities from "expensive and time-consuming discovery"). For this reason alone, the Court should deny Defendants' request.

### III. THE BALANCE OF EQUITY AND EFFICIENCY MANDATE DENIAL OF DEFENDANTS' OPPRESSIVE REQUEST

This Court has indicated that it is essential to "strike balance between efficiency and equity" in the context of *Lone Pine* orders. *See Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230. Here, as between this community and these Defendants, the scales of equity and efficiency are completely tilted toward the latter, such that the only way to preserve any semblance of either or both is to deny Defendants' request for a *Lone Pine* order in its entirety.

### A. Fairness: Defendants' Proposal is Immensely Prejudicial and Prohibitive

### i. The Proposed Process will permit Defendants to Shift Costs and Shield Information about Liability.

Courts and commentators across the United States agree that a significant danger of *Lone Pine* orders is that they unfairly shift costs onto impoverished

plaintiffs, while permitting defendants to evade responsibility and shield information regarding liability, especially in the context of environmental crises. *See* Carl Tobias, *Environmental Litigation and Rule 11*, 33 WM. & MARY L. REV. 429, 481 (1992), https://scholarship.law.wm.edu/wmlr/vol33/iss2/4 (noting that *Lone Pine* orders enable defendants to shift costs and "evade responsibility," especially in the context of environmental disasters); Engstrom & Espeland, *Lone Pine Orders: A Critical Examination and Empirical Analysis*, 168 U. PA. L. REV. Online, *supra*, at 100 ("Thus, to enter a Lone Pine order is to impose a heavy (and lopsided) financial burden on plaintiffs.").

This concern is especially amplified for these minor Plaintiffs. The financial burden associated with Defendants' proposal will be ***extraordinary*** (for some, even prohibitively so). Conservatively, it will cost each child approximately **thirty thousand dollars ($30,000)** to ***attempt*** to comply with Defendants' proposed *Lone Pine* order. When aggregated, Plaintiffs will likely pay more than **seventy million dollars ($70,000,000)** just for the right to enter the early stages of discovery and litigation. *See* Exhibit A (October 30, 2023, Declaration from Corey M. Stern).

To compound matters, adoption of and conformity to Defendants' proposal will also cost these Plaintiffs an immeasurable amount of time. It could take up to

six years for full compliance.[19] *Id.* And only thereafter (according to Defendants) can the parties engage in mutual discovery, summary judgment proceedings, pre-trial proceedings, and then trials. Thus, overall, Defendants proposed *Lone Pine* procedure will likely delay Plaintiffs' <u>access</u> to justice for close to a decade (let alone actual justice, which could take much longer depending on outcomes and appeals).

Because the minor Plaintiffs are ultimately responsible for, and impacted by these financial and temporal costs, Plaintiffs' counsel is obligated to inform them and their families of same (as well as of the significant delay that will necessarily occur before any possible resolution). Once given this information, it is likely that some parents or guardians will determine it is simply easier or wiser to give up on their child's case. This is especially tragic, because these minor Plaintiffs are necessarily without the capacity to make these types of decisions. Thus, implementing this procedure increases the likelihood that some children's claims will be terminated — along with their chance to seek justice for the life altering brain injuries they suffered — without their full comprehension or ability to consent.

---

[19] As set forth in Plaintiffs opposition to Defendants' stay motion, even if Plaintiffs' counsel could schedule two examinations per day, every single day, for six months (which is obviously impossible given the fact that they, their families, and experts do not have unlimited availability), such would barely be enough time to complete affidavits for three hundred sixty-four of the more than two-thousand minor Plaintiffs.

Given the history of events, who could blame these families if they ultimately decide to give up? They are part of a community that has been historically victimized, lied to, and neglected by these Defendants. MTD OR at 29 (Judge Reeves: "the City and State Defendants knowingly concealed, misled, and gaslit the City's residents for years"); *see also* MTD OR at 3, 6. Even to this day, members of their community continue to fight for transparency from the City and State officials who are meant to protect them. Yet, they have still not received even one shred of respect, justice, or reliable information about the "lead-contaminated water that flows through Jackson's pipes [which] has poisoned their bodies and impeded their development." MTD OR. at 3 (quote from Judge Reeves).[20]

In the context of the aforementioned historical injustice, one cannot begin to imagine the irreparable impact of telling these Plaintiffs and their families that — at their own Government's insistence — they must first prove their claims to the highest degree of scrutiny, spend thousands of dollars, and still wait years before

_____

[20] On July 12 and 13 of **this year**, dozens of citizens of Jackson voiced their concerns regarding the ongoing water system problems, the water safety, and lack of transparency. *USA v. The City of Jackson,* 3:33-cv-00686, Docs. 39, 40 (Hearing Transcript "Tr."). One person explained: "My concern now is, through all of those things that we have accepted as living here, now my concern is, is the water safe and do I know if it's safe or not." Tr. 129:1-130:23. Another said: "If I could start with – I mean, I feel like this problem, the infrastructure problem, the water crisis, it has been going on for a long time." Tr. 116:24-117:7. And another stated: "I agree with the groups that are saying that there needs to be more transparency." Tr. 120:13-16.

they can truly access the courts, or before any Defendant is required to reveal any information about their conduct regarding Jackson's public water supply. The injustice of permitting the very individuals and entities that poisoned these children, and lied about it, to subsequently dictate what, when, and how each child must prove the elements of their claims is cruel. And that the proposal comes primarily from the very entities entrusted to protect them is a disgrace. Moreover, the ugly irony that is presented by the fact that the very Defendants who lied to these Plaintiffs about the safety of their water, can now say, 'nobody believes that the water poisoned you, prove it,' should not be lost on the Court.

In sum, the inequities that will necessarily flow to Plaintiffs if the Court enters the proposed *Lone Pine* order would be vast, cost-prohibitive, and justice-prohibitive. It is clear that Defendants' proposal should be rejected as it would impose an unprecedented injustice on the minor Plaintiffs.

ii.     **The Proposed *Lone Pine* Order will subject Plaintiffs to Unjust Causation and Appellate Standards**

In addition to the above, there is well-documented concern about the problematic causation[21] and appellate standards that would necessarily be imposed

---

[21] Also, regarding the type of injury and its cause, it is likely that contentious causation issues will arise collectively and individually as this action progresses. Indeed, Defendants have already attempted to argue these issues improperly and prematurely in their *Lone Pone* motion. They assert, with no medical expertise or support whatsoever, that: "Many people have been exposed to environmental hazards like asbestos or silica. Not all of them have contracted silicosis or asbestosis.

on Plaintiffs under Defendants' proposal. Because termination of any minor Plaintiff's case for a failure to abide by a *Lone Pine* order would be reviewed for abuse of discretion,[22] enacting Defendants' proposed procedure would not only require Plaintiffs to plead a higher standard of causation on the front end, but it would also lower the level of scrutiny under which a dismissal would be reviewed on the back end. *See* Engstrom, Th*e Lessons of Lone Pine*, 129 YALE L.J. 2, *supra*, at 44 ("Finally, and perhaps of gravest concern, a trial judge can use a *Lone Pine* order to terminate a case while insulating herself from meaningful appellate review."); *Cottle v. Superior Cour*t, 5 Cal. Rptr. 2s 882, 902 (Ct. App. 1992) (Johnson, J., dissenting) (criticizing majority for affirming the case's dismissal pursuant to a *Lone Pine*-style order, while noting that "what the trial court sought was an impossibility in this as in virtually all toxic tort cases--evidence a given toxic or combination of toxics was the cause in fact of a given disease or other condition

---

Likewise, most everyone is exposed to lead, but it does not result in neurological and behavioral effects in everyone." Main Docket, Doc. 155 at 8–9. Defense counsel's observations cannot serve as the basis for a credible causation analysis. Rather, the parties will present competing expert testimony as to causation. Therefore, it would be "unwise to begin addressing causation issues, in a summary-judgment type fashion that defendants surely contemplate, at this somewhat early juncture when those issues might proliferate and become more complex as the case proceeds." *In re Digitek Prod. Liab. Litig*., 264 F.R.D. at 259.

[22] *Compare Acuna*, 200 F.3d at 337 (reviewing dismissal for failure to comply with *Lone Pine* order under Fed. R. Civ. P. 16(f) for abuse of discretion), *with Brittan Communs. Int'l Corp. v. Sw. Bell Tel. Co*., 313 F.3d 899, 902 (5th Cir. 2002) ("An appellate court reviews a grant of summary judgment de novo.").

in a specific individual. This is not a reasonable causation standard to apply in a toxics tort case.").

In the end, entry of Defendants' proposed *Lone Pine* order would add serious insult to Constitutional injury and a decade of neglect. MTD OR at 3 (Judge Reeves: "A Decade of Neglect"). Perhaps worse yet, Defendants' proposed procedure gravely threatens Plaintiffs' rights to due process and to access the courts, piling one Constitutional harm upon another. This is oppressive, and the Court should reject Defendants' proposal outright.

**B. Efficiency: Defendants' Proposal is Unnecessary and Inefficient**

In addition to its blatant oppressiveness, Defendants' proposal is entirely unnecessary and will not efficiently address the "particular case management needs presented." *Abner*, No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *230-31 (considering, *inter alia*, "the case management needs presented"). Rather, those needs can be met through the measures the Court has ***already set forth***, with direction the Court has ***already provided***. To that end, Case Management Order 1 (Doc. 146) created: a main docket; procedures for adding plaintiffs; appellate procedures; a main complaint (which has already been streamlined by Defendants' multiple motions to dismiss);[23] a short form complaint; and a set number of no more

---

[23] *See In re Digitek Prod. Liab. Litig., 264 F.R.D.* at 258 (ruling that the fact that the master complaint already "withstood scrutiny under Rule 12(b)(6) [] largely eliminated any concerns respecting pleading defects").

than eight plaintiffs for the first trial group. Main Docket, Docs. 146, 152. As importantly, the Court has generally described the Bellwether process he envisions will occur, inclusive of Plaintiff Fact Sheets,[24] discovery, and an initial trial. Main Docket, Doc. 145 (Transcript of August 16, 2023 Conference) at 14, 26.

These procedures can and will absolve any purported "[c]laims of efficiency," and will ensure the "elimination of frivolous claims and fairness." *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. at 259 (rejecting *Lone Pine* proposal and reasoning that virtually identical procedures to the aforementioned effectively eased efficiency concerns by using standard means); *Abrams v. Ciba Specialty Chems. Corp.*, No. 08-00068-WS-B, 2008 U.S. Dist. LEXIS 86487, at *19 (S.D. Ala. Oct. 23, 2008) ("Moreover, since this case is going to proceed with a test group, the use of a *Lone Pine* order will not advance the goal of focusing the parties' attention and efforts on the efficient resolution of the test case."); *cf. Abner,* No. 2:14-CV-63-KS-MTP, 2016 U.S. Dist. LEXIS 179956 at *232–35 (finding *Lone Pine* to be appropriate when there was no "reasonably efficient, cost-effective, and practicable plan to move forward with full discovery and toward trial"). Importantly, as discussed *supra* at 12, those measures have already proven effective and successful in addressing case management needs in similarly situated litigation. Therefore, not only is Defendants'

---

[24] Engstrom, *The Lessons of Lone Pine*, 129 YALE L.J. 2, *supra*, at 21 ("An astute reader will notice that *Lone Pine* orders and plaintiff fact sheets share the same basic purpose.").

proposal grossly oppressive to Plaintiffs' rights, but it is also utterly unnecessary given the availability of procedures that the Court has considered, implemented and encouraged.

Finally, a court in this circuit recently held that **"*a Lone Pine order should be a court's last resort, not its first.*"** *Joecano v. BNSF Ry. Co*., No. 2:19-CV-117-BQ, 2019 U.S. Dist. LEXIS 243062, at *5 (N.D. Tex. Oct. 31, 2019) (emphasis added). That sentiment speaks volumes, especially in the context of the balancing of equity and efficiency set forth above. And for that reason, as well as those outlined throughout this brief, the Court should deny Defendants' motion it its entirety, and permit the litigation to proceed as the Court has already envisioned and expressly described.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request for a *Lone Pine* order.

Dated: October 31, 2023

Respectfully submitted,

**LEVY KONIGSBERG, LLP**

*/s/ Corey M. Stern*
Corey M. Stern, *PHV* 49568

*/s/ Melanie Daly*
Melanie Daly, *PHV* 49758
605 Third Avenue, 33rd Fl.
New York, New York 10158

(212) 605-6200
cstern@levylaw.com
mdaly@levylaw.com

**CHHABRA & GIBBS, P.A.**
Rogen K. Chhabra
Darryl M. Gibbs
120 N. Congress St., Suite 200
Jackson, MS 39201
(601) 948-8005
rchhabra@cglawms.com
dgibbs@cglawms.com

## CERTIFICATE OF SERVICE

I, Melanie Daly, counsel for Plaintiffs, hereby certify that on October 31, 2023, the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Melanie Daly*
Melanie Daly, *PHV* 49758
**LEVY KONIGSBERG, LLP**