## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**IN RE JACKSON WATER CASES**                    **CAUSE NO. 3:23-CV-614-CWR-LGI**

**THIS DOCUMENT RELATES TO ALL**
**PLAINTIFFS**


## REBUTTAL IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF
## PRE-DISCOVERY ("*LONE PINE*") CASE MANAGEMENT ORDER


## <u>TABLE OF CONTENTS</u>

I.     FIFTH CIRCUIT LAW SUPPORTS A *LONE PINE* CMO. ................................. 3

    A.    Plaintiffs cannot avoid the leading authority of *Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000). ............................................................. 3

    B.    Plaintiffs fail to distinguish *Acuna* ............................................................. 5

    C.    Plaintiffs' authority does not support their position. .................................. 8

    D.    Plaintiffs' objections have been considered and rejected by sister Courts. ................................................................................................................ 10

II.    CONCLUSION ................................................................................................. 13

CERTIFICATE OF SERVICE ...................................................................................... 16

i

The question before the Court is not *whether* each of the 2,139 Plaintiffs in this litigation must prove his/her claims now, but *how* and *when* this complex, mass tort action will proceed. These are personal injury suits and Defendants seek basic information that each Plaintiff actually has a diagnosed personal injury related to lead exposure before full scale discovery begins. The circuit-approved method to obtain this information is through the entry of a pre-discovery *Lone Pine* CMO. Compliance with a *Lone Pine* CMO would not require Plaintiffs to prove their whole case and it would not require Plaintiffs to put forth evidence sufficient to withstand summary judgment. It would, however, require them to provide *prima facie* evidence before discovery in earnest begins.

Plaintiffs' objections fall into a few basic categories, each of which lacks merit:

First, Plaintiffs unsuccessfully try to downplay and distinguish *Acuna*, but the undisputed facts and the record confirm that this is complex mass tort litigation and that a typical discovery plan will not suffice. This Court has repeatedly expressed its concerns over "unnecessary" costs and "efficien[cy]," [1] and the proposed *Lone Pine* CMO serves that very end.

Second, Plaintiffs wrongly argue the *Lone Pine* CMO request seeks to re-argue a motion to dismiss; that argument also fails in light of *Acuna*'s recognition that *Lone Pine* CMOs are pre-discovery orders. By definition, the CMO comes after Rule 12(b) motions but before a full discovery plan emerges.

Third, Plaintiffs inaccurately argue that a *Lone Pine* CMO would work an injustice to them procedurally and practically. To that end, Plaintiffs submit an improper, self-serving affidavit which is devoid of details about what experts are referenced or what they would be asked

---

[1] *See*, *e.g.*, Order (consolidating matters) (Doc. 110) in 3:23-cv-00614; CMO 1 ( (the Court will "require more efficient litigation . . . [a]dditional CMOs will be necessary.").

to do. It also does not address why each Plaintiff did not have a diagnosed injury before initiating suit.[2] Furthermore, courts in this Circuit have seen through the same objections raised by plaintiffs in similar cases. Ultimately, the injustice would be to permit full discovery against Defendants before Plaintiffs even show they have a diagnosed personal injury related to lead exposure—a requirement to pursue a claim.

Fourth, the *prima facie* information Defendants seek is or certainly should be within the possession of Plaintiffs—and Plaintiffs' failure to rebut any of the evidence (e.g., publicly available testing records) suggests that the claimed injuries here are questionable. Though lead injury information should have been in the possession of Plaintiffs *before* they sued Defendants, Plaintiffs' brief and counsel's affidavit repeatedly suggest they do not have this information. If Plaintiffs do not have proof of actual lead injury, they should not have filed suit. Plaintiffs should not be allowed to continue to pursue a suit claiming personal injury before they show they have an actual personal injury. As *Acuna* explained during the District Court proceedings, plaintiffs are not just "entitled" to full scale discovery without providing *prima facie* information of exposure, specific injuries, and causation. The proposed *Lone Pine* CMO here, in the form attached (Doc. 154-1), is designed to secure exactly that *prima facie* information before full discovery begins.

Alternatively, the Court should enter a *Lone Pine* CMO which, at a bare minimum, requires each Plaintiff to serve an affidavit verifying exposure, plus an affidavit of a medical professional who has examined and tested Plaintiff, identified quantifiable lead exposure, and found that an actual injury was caused by lead exposure.

---

[2]  It also does not address that Plaintiffs represented in their Complaints that the Plaintiffs had undergone blood testing that revealed lead poisoning. *See* Defs.' Mem., Doc. 155 at 3-4 & n. 4, 20 & n. 15.

I. **FIFTH CIRCUIT LAW SUPPORTS A *LONE PINE* CMO.**

A. **Plaintiffs cannot avoid the leading authority of *Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000).**

Plaintiffs first claim that Defendants, in the Motion for Entry of a *Lone Pine* CMO, argued that *Acuna* "mandates" a *Lone Pine* CMO and that the Court "must" enter it. Not so. Defendants—citing federal rules and case law—requested the Court enter a *Lone Pine* CMO as an appropriate exercise of its discretion and authority and to allay its concerns regarding unnecessary costs. *See*, *e.g.*, Defs.' Mem., Doc. 155 at 8 ("This Court has the authority and discretion to enter the proposed pre-discovery *Lone Pine* CMO.").

*Acuna* is the leading authority in this Circuit. As Defendants showed in their opening brief, *Lone Pine* CMOs have been frequently used in mass tort cases just like this one. Defs.' Mem., Doc. 155 at 14-18. Plaintiffs' Opposition does not even attempt to distinguish several of the cases cited in Defendants' Memorandum (Doc. 155 at 17-18). For instance, Plaintiffs ignore *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* No. MDL 2179, 2016 WL 614690, at *7 (E.D. La. Feb. 16, 2016), where the District Court stated: "The United States Court of Appeals for the Fifth Circuit has looked favorably upon *Lone Pine* case management orders that are employed to 'handle the complex issues and potential burdens on defendants and the court in mass tort litigation.'").

Defendants also cited *Matter of AET Inc.,* 2011 WL 13301617, at *3 (E.D. Tex. Dec. 14, 2011), where the District Court explained that "*Lone Pine* orders have been approved by the United States Court of Appeals for the Fifth Circuit and are issued under the wide discretion afforded federal judges under Federal Rule of Civil Procedure 16." *See also In re Vioxx*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008), *aff'd*, 388 F. App'x 391 (5th Cir. 2010); *In re 1994 Exxon Chem. Plant Fire*, No. 05-1639, 2005 WL 6252312, at *1 (M.D. La. Apr. 7, 2005) (entering *Lone*

*Pine* order where "plaintiffs broadly alleged that substances were released, they were exposed to the substances, and they were injured or otherwise suffered damages from the exposure"), *modified sub nom. In re 1994 Exxon Chem. Plant Fire Litig.*, 2005 WL 6252291 (M.D. La. Apr. 29, 2005). Plaintiffs ignore that these courts employed *Lone Pine* CMOs as a means to manage complex mass tort litigation.

Other than trying to argue that *Acuna* is distinguishable (it is not, *infra*) or that a *Lone Pine* CMO should not be entered early in the case (which *Acuna* refutes, as have other cases, *infra*), Plaintiffs did not (and cannot) challenge *Acuna*'s holding or its applicability. Plaintiffs did not (and cannot) cite any Fifth Circuit decision criticizing, let alone reversing, a district court's use of a *Lone Pine* CMO in complex mass torts like this case.

Plaintiffs similarly did not (and cannot) challenge the Fifth Circuit decisions where the Court relied on *Acuna* and endorsed the use of *Lone Pine* to manage civil litigation. Plaintiffs acknowledge *Steering Cmte. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006), but ignore the Fifth Circuit's recognition that "the district court has been careful to manage the litigation efficiently through the judicious use of . . . tools such as *Lone Pine* orders . . ." which the Court defined as "pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." *Id*. at 604-05 & n. 2 (citing *Lone Pine* and *Acuna*). And the same is true for Plaintiffs' inability to distinguish the Fifth Circuit's endorsement of *Lone Pine* CMOs in *In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 398 (5th Cir. 2010).

Plaintiffs further assert that "Defendants' statement that [*Lone Pine*] orders are 'frequently used' is false." Pls. Mem., Doc. 163 at 8. Far from being "false," Defendants have demonstrated that *Lone Pine* CMOs are frequently used. *See* Defs.' Mem., Doc. 155 at 9, 14-18. Indeed, on the

4

same day Defendants filed their opening briefs, yet another District Court in this Circuit—*Barrett v. Dresser, LLC*, No. 1:20-CV-01346, 2023 WL 6613163 (W.D. La. Oct. 10, 2023)—entered a *Lone Pine* CMO over plaintiffs' opposition. There, hundreds of plaintiffs asserted personal injury and property damage based on allegations that a manufacturing facility improperly disposed of solvents and other toxic materials, leading to groundwater contamination. *Id*. at *1-2 (explaining that "District courts in the Fifth Circuit routinely enter *Lone Pine* orders in mass tort cases to facilitate case management and provide structure to the discovery process."). Without question, the weight of authority supports entry of a *Lone Pine* CMO in a mass tort like this case.[3]

B.    **Plaintiffs fail to distinguish *Acuna*.**

Plaintiffs have no legal ground to challenge *Acuna*. Plaintiffs therefore try to portray this litigation as "clearly distinguishable." That effort fails, given these comparisons:

|  | *Acuna* | **This Litigation** |
|---|---|---|
| Mass Action? | **Yes** (1,600 plaintiffs) | **Yes** (2,139 plaintiffs) |
| Tort (Negligence) Claims? | **Yes** | **Yes** |
| Toxic Exposure Alleged? | **Yes** | **Yes** |
| Plaintiffs Must Prove Causation? | **Yes** | **Yes** |
| Personal Injury Alleged? | **Yes** | **Yes** |

---

[3]  Even the secondary material (Stanford law professor's article) relied on by Plaintiffs confirms *Lone Pine* CMOs are widely used in mass torts across the country—not just the Fifth Circuit. *See* Pls. Mem. (citing Engstrom, *Lone Pine Orders*: *A Critical Examination & Empirical Analysis*, 168 U. Pa. L. Rev. Online 91, 104 (2020), at *16 (recognizing use of *Lone Pine* CMOs in mass torts: "According to the *Annotated Manual for Complex Litigation*, *Lone Pine* orders are 'widely used in mass torts to isolate spurious claims,'" "Federal courts describe *Lone Pine* orders as 'common trial management technique, routine, and a tool being used with increased frequency," with commentators explaining "that *Lone Pine* orders are 'increasingly being required' and witnessing 'widespread use.'"); *id*. at *17-18 (explaining that *Lone Pine* orders "have played a role in many of the most prominent toxic-tort cases of all time"); *see also id*. at 18-19 ("no federal appellate court . . . has ruled that trial courts lack the authority to issue orders of this kind.").

| | *Acuna* | *This Litigation* |
|---|---|---|
| Plaintiffs Provided Boilerplate List of Personal Injuries for All Plaintiffs? | **Yes** | **Yes** (*see* Defs. Mem., Doc. 155 at 6-7: identifying boilerplate allegation in Complaints and copy-and-pasted list of injuries in MTCA Notices; not disputed by Plaintiffs, but further addressed below) |
| Complex Causation and Case Management Issues? | **Yes** | **Yes** (Plaintiffs repeatedly argue to this Court that multiple experts will be needed to prove causation for each Plaintiff's case) (*see* Defs. Mem., Doc. 155 at 3 & n. 4); CMO 1, ¶1) ("This first [CMO] is intended to provide . . .  guidance on how we will administer the more than 2,000 civil actions…"). |
| Various Exposure Pathways? | **Yes** | **Yes** (Defs. Mem., Doc. 155 at 3-6) |
| Regulated Industry? | **Yes** | **Yes** |
| Inspections Made & Reports Publicly Available? | **Yes** | **Yes** (Defs.' Mem., Doc. 155 at 1-2 & n. 1; Doc. 154-2 (Exh. 2: MSDH Water Testing); Doc. 155 at 4-5 & n. 6-8; Doc. 154-4, 154-5, 154-6 (Exhs. 4, 5, 6: Emergency Order, EPA NEIC Report, Lead Testing Results).[4] |
| Plaintiffs' Counsel Subject to Fed. R. Civ. P. 11(b)(3)? | **Yes** | **Yes** (undisputed that Plaintiffs are subject to Rule 11(b)(3); Plaintiffs dispute extent) |

Regarding the identification of personal injuries, Plaintiffs argue that Defendants MSDH and the City of Jackson received an "additional benefit" of having received pre-suit MTCA Notices. *See* Pls. Mem., Doc. 163 at 12. It is telling that Plaintiffs do not (and cannot) dispute that

---

[4]    Plaintiffs do not dispute that publicly available information exists concerning the water system but seemingly take issue with Defendants' citation to information listed on the MSDH's website. A careful study of the citation and underlying web link suggests that Plaintiffs failed to use the search function to enlarge and include the "central" period, including LCR results from as early as 2016. Prior to filing suit, Plaintiffs had (and have) the ability to select the date range parameters from the available calendar search function on the website.

literally every single one of the 2,000+ MTCA Notices (served pre-suit and not subject to Rule 11(b)) contained the exact same "laundry list" of a range of personal injuries, prefaced only "upon information and belief." Defs. Mem., Doc. 155 at 6. A copied-and-pasted, identical block list of injuries for 2,139 plaintiffs, which fails to account for varying exposure(s) to alleged excess lead, does not provide a basis for launching into a discovery plan for all cases.

Plaintiffs cannot (and certainly should not) legitimately dispute that the MTCA Notices fail to provide any meaningful, specific information about any Plaintiff to inform the next step—a discovery plan—let alone to create bellwether groups of similarly situated individuals.[5] Their only rejoinder is that the Court already ruled on the sufficiency of the MTCA Notices and that Defendants cannot relitigate a "pleading defect."[6] *See* Pls. Mem., Doc. 163 at 7-8, 17-19. Defendants are not asking the Court to reconsider its order on the MTCA Notices. The Court declined to dismiss the actions at the Rule 12(b)(6) stage because it concluded the MTCA Notices satisfied procedural requirements at the *pleading* stage. Now the litigation is progressing, and it is time to develop a discovery plan. And *that* is where and when a *Lone Pine* CMO comes into play—as a recognized means for the Court to manage the litigation. *Acuna* in fact clarifies that a

---

[5]  *See In re Chevron U.S.A., Inc*., 109 F.3d 1016, 1020 (5th Cir. 1997) ("We, therefore, hold that before a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases tried are representative of the larger group of cases or claims from which they are selected.").  One of the cases cited by Plaintiffs, *Abrams v. Ciba Specialty Chems. Corp.*, 2008 WL 4710724 (S.D. Ala. Oct. 23, 2008) drives home this point: there, even in a litigation with many fewer plaintiffs (271) than this litigation, the District Court ruled that any "test group" under *Chevron* would have to be composed in such a manner to mirror the respective percentages of alleged concentration levels of contamination in various locations. Here, creating such a group is at present impossible given the lack of any *prima facie* evidence of a location of exposure, or specific injuries, or causation.

[6]  Plaintiffs' reliance on *Adinolfe v. United Technologies Corp.*, 768 F. 3d 1161 (11th Cir. 2014) backfires on this point. *Adinolfe* ruled the district court abused its discretion by issuing a *Lone Pine* order before it determined that those claims survived a Rule 12(b)(6) motion to dismiss. *Adinolfe*, 768 F.3d at 1168.

*Lone Pine* CMO is appropriate precisely now: **pre-discovery**. A request for a *Lone Pine* CMO is not a Rule 12 motion.

###### C.    **Plaintiffs' authority does not support their position.**

Even beyond the above, the cases cited by Plaintiffs do not justify denial of a *Lone Pine* CMO. Collectively, their cases bear no resemblance to this litigation, are outside the Fifth Circuit (hence not governed by *Acuna*)—and in some instances, actually support a *Lone Pine* CMO here.

For instance, Plaintiffs cite *Clayton v. Denbury Onshore*, LLC, No. 2:17-cv-00153 (S.D. Miss.) and accuse Defendants of "omit[ting] reference to a relevant case from this Court." Pls. Mem., Doc. 163 at 6, 15.   In *Clayton*, Magistrate Judge Parker declined to enter a *Lone Pine* CMO—but Plaintiffs fail to explain that *Clayton* involved only six plaintiffs; the action did not involve complex causation issues; there was a single event at the defendant's facility; and the plaintiff "even submitted a nurse practitioner's note stating that one of the Plaintiff's medical conditions 'could be caused from carbon monoxide or carbon dioxide exposure," meaning the plaintiff had already provided medical certification of specific injuries and a causal link. *See Clayton*, No. 2:17-cv-00153, Doc. 24 at 2-3. *Clayton* bears no similarity to this litigation.

Other cases cited by Plaintiffs suffer from the same flaws. *See Montgomery v. AirProds., LLC*, 2012 WL 12904703, at *2 (S.D. Tex. Aug. 9, 2012) (case involving 69 plaintiffs who alleged ear/nose/throat irritation did not warrant *Lone Pine* CMO where the "architecture of this case is far less intricate than *Acuna*"); *E-Z Line Pipe Support Co., LLC v. Piping Tech. & Prod., Inc*., 2021 WL 1720007, at *2 (S.D. Tex. Apr. 30, 2021) ("This case is not a complex mass tort case. . . .  This is a one-plaintiff-one-defendant case."); *White v. Sherwin-Williams Co.*, 2020 WL 2812865, at *3 (E.D. La. May 29, 2020) ("this is not a mass tort case involving suit by hundreds of plaintiffs against numerous defendants. 'The number of plaintiffs—two, with just their child as the focus of the case—is simply too low to require the plaintiffs to provide prima facie proof

to support their claims pursuant to a *Lone Pine* order.'"); *Arnold v. BNSF Ry. Co.*, 2019 WL 1493160, at *6 (N.D. Tex. Apr. 4, 2019) ("the court only has before it two [ ] cases. Accordingly, this case is not, by definition, a mass tort litigation," and allegations were not complex); *Cano v. BNSF Ry. Co.*, 2019 WL 13193952 (N.D. Tex. Oct. 31, 2019) (single-plaintiff case).

Other cases relied on by Plaintiffs are also dissimilar and also hail from jurisdictions not governed by Fifth Circuit authority. *See Adkisson v. Jacobs Eng'g Grp.,* 2016 WL 4079531, at *3, 5 (E.D. Tenn. July 29, 2016) (noting the "Sixth Circuit Court of Appeals has not had occasion to address the nature and appropriateness of *Lone Pine* orders," and declining to enter in case with 71 plaintiffs); *Manning v. Arch Wood Prot., Inc.,* 40 F. Supp. 3d 861, 868 (E.D. Ky. 2014) (denying *Lone Pine* CMO where only six plaintiffs were involved and issues were not "extraordinary;" explaining that "most of the cases where courts grant *Lone Pine* motions . . .[involve] hundreds of plaintiffs . . . and the order is entered as a method of managing complex and very burdensome discovery in mass tort litigation); *Hostetler v. Johnson Controls, Inc.*, 2017 WL 359852, at *4 (N.D. Ind. Jan. 25, 2017) (using a "*but see*" for *In re Vioxx* (5th Cir.) and noting that cases in the Second, Fifth and Eighth Circuits suggest *Lone Pine* orders are routine in mass tort litigation). These cases do not advance Plaintiffs' position.

Plaintiffs rely on *Abner v. Hercules, Inc.*, No. 2:14-cv-00063. Pls. Mem., Doc. 163 at 1-2. This cite is curious, as Defendants cited *Abner* and its associated case (*Ashford*) to show that courts in this District enter *Lone Pine* CMOs to manage mass toxic tort cases. Plaintiffs attempt to distinguish *Abner* by pointing to existing discovery available in that case, but that argument fails. Plaintiffs do not dispute that they have in fact cited regulatory documents from governing regulatory agencies. *See* Defs. Mem., Doc. 155 at 1-5, 18-20; Table, *supra*. Moreover, those regulatory documents have nothing to do with injury. Plaintiffs do not need discovery at all to

provide affidavits from a medical provider that they actually have a diagnosed lead injury. No Defendant's discovery is needed to answer that question. It is information that should be in Plaintiffs' possession and, indeed, it should have been in their possession before any Plaintiff entered the personal injury tort system.

    D.    **Plaintiffs' objections have been considered and rejected by sister Courts.**

Plaintiffs argue that it would be unfair to enter a *Lone Pine* CMO here. Pls. Mem., Doc. 163 at 20-21. Plaintiffs cite no cases within the Fifth Circuit that support their argument. They also ignore cases in this Circuit that were cited in Defendants' Memorandum—cases where District Courts have considered and soundly rejected the same objections raised by Plaintiffs here.

An example is *Matter of AET Inc.*, No. 1:10-CV-51, 2011 WL 13301617 (E.D. Tex. Dec. 14, 2011) (Defs. Mem., Doc. 155 at 18). There, the Court entered a *Lone Pine* order in a case involving an oil tanker collision and crude oil spill into a waterway, where thousands of people asserted personal injuries and property damage claims. *Id.* at *1. Through a *Lone Pine* order, plaintiffs (some who were still claimants) were required to submit expert affidavits linking the cause of their alleged injuries to the event in question. *Id.* The plaintiffs objected on several grounds. *Id.*

One rejected contention—like what Plaintiffs argue here—was that "*Lone Pine* orders are usually entered in mass tort cases involving numerous defendants in which discovery is at an advanced stage or the plaintiffs have had ample time for pre-suit investigation." *AET,* 2011 WL 13301617, at *2. Regarding the alleged requirement of "numerous defendants," the Court explained "[n]o such restriction exists on the court's discretion to enter these orders, and, in fact, courts have issued them in cases involving only a single defendant." *Id*. (citing *Steering Comm.*, 461 F.3d at 600).

*AET* likewise rejected the notion that *Lone Pine* CMOs were only appropriate at late stages of the proceedings after ample time for discovery: the Court explained that *Lone Pine* orders are **pre-discovery** orders "designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." *Id*. at *3. "To hold otherwise would defeat the basic purpose of *Lone Pine* orders, which is to identify and cull potentially meritless claims and streamline the litigation process." *Id*. "Indeed, the Fifth Circuit's characterization of such orders as 'pre-discovery' case management devices lends weight to the conclusion that such orders are meant to be entered before the formal discovery process begins." *Id*.

*AET* also confirmed that entering a *Lone Pine* CMO is not tantamount to requiring summary judgment evidence at too-early a stage, nor is it an improper "extraordinary remedy:" "**_Lone Pine_ orders merely demand information necessary to present a _prima facie_ basis for the claims alleged. . . . They merely require production of _some_ evidence to support a credible claim.**" *Id*. (emphasis added). Just as *Acuna* held, *AET* reiterated that *Lone Pine* CMOs require "information that plaintiffs should have had before filing their claims" under Rule 11(b)(3). Thus, "[a]dvanced discovery is unnecessary to produce this basic information and an order requiring this evidence in the early stages of litigation is not improper." *Id*. In sum, "[w]hether the court will ultimately have to determine the issue of proximate causation as to each claimant need not now be ascertained. **At this juncture, the fact that the claimants bear this burden is sufficient to require a preliminary showing of their ability to do so**." *Id.* at *5.[7]

---

[7]    *See also Barrett*, 2023 WL 6613163, at *3 (entering *Lone Pine* CMO over plaintiffs' objection "that a *Lone Pine* order is an extraordinary remedy that is not appropriate at this juncture"). *Barrett* further explained: "*Lone Pine* orders have been found to be particularly useful, as Plaintiffs themselves point out, where there is some articulable suspicion or skepticism concerning the evidentiary support for certain of plaintiffs' claims. In fact, a central element supporting the original discovery order issued in the *Lone Pine* case was an EPA report casting serious doubt on the pollution alleged against those defendants. . . . .

*AET* disagreed that the *Lone Pine* order was "tantamount to a summary judgment motion, which threatens dismissal of their claims before allowing them a reasonable opportunity to conduct pre-suit investigation or discovery." *AET,* 2011 WL 13301617, at *7. Characterizing the argument as "unfounded," *Lone Pine* orders are pre-discovery, case management tools "used to ascertain the existence of a *prima facie* basis for the claims asserted." *Id*. The affidavit "ensures that Plaintiffs possess the minimum factual basis for their claims necessary to justify allowing full scale discovery to proceed, and to give Defendants a fair indication of the nature of those claims to permit discovery to be reasonably focused." *Id*. (also concluding *Lone Pine* "does not deprive the claimants of due process").

*AET* further rejected the argument that plaintiffs had insufficient time to have gathered the information: to the contrary, the claims had been "pending for almost a year" before the *Lone Pine* order was entered, and much of the data needed for the claims was publicly available. *AET,* 2011 WL 13301617, at *7. It noted that "if a claim is not frivolous, there should have been some support for the claimed damages at the time the claim was filed with the court. In a personal injury exposure case, this would presumably include some medical evidence that the claimant in fact suffered injury." *Id*. at *10.

The Court also rejected claimants' argument—like what Plaintiffs argue here—that it would be "logistically impossible" to complete the affidavits in the time provided by the order. *AET,* 2011 WL 13301617, at *7. Plaintiffs argued that medical providers lacked access to critical information needed to form accurate medical opinions because no discovery had taken place, but the Court disagreed. *Id*. at *10. Citing healthgrades.com, the Court identified that within a 50-

---

Subsequent courts considering *Lone Pine* orders have considered the defendant's ability to produce evidence demonstrating the plaintiff's claims as dubious." (citations omitted).

mile radius of the relevant location there were 50 pediatricians, 70+ internal medicine practitioners, 170 family doctors, and 10 hospitals. *Id.* "The court finds this a sufficient number of healthcare providers to address the *Lone Pine* Order's requirements." *Id.*[8]

In sum, objections from plaintiffs—including arguments about alleged unfairness, perceived lack of procedural protections and logistical concerns—have been considered in similar, mass tort litigation in this Circuit and found to be "not well taken." *E.g., AET,* 2011 WL 13301617 at *10. The same is true here.

## II.    CONCLUSION

Defendants request a pre-discovery *Lone Pine* CMO in the form proposed as Exhibit 1 (Doc. 154-1) and for all other relief to which they are entitled. At a minimum, the Court should enter a *Lone Pine* CMO which requires each Plaintiff to serve an affidavit of exposure and an affidavit of a medical professional who has examined and tested Plaintiff, identified quantifiable lead exposure, and found that an actual injury was caused by lead exposure.

Respectfully submitted, this the 14th day of November, 2023.

**MISSISSIPPI STATE DEPARTMENT OF HEALTH**

By:    */s/ Meade W. Mitchell*
Meade W. Mitchell, MB #9649
ONE OF ITS ATTORNEYS

OF COUNSEL:

Meade W. Mitchell, MB #9649
Orlando R. (Rod) Richmond, MB #9885
Edderek (Beau) Cole, MB #100444
Margaret Z. Smith, MB #104178
H. Barber Boone, MB #102266

---

[8]  Defendants likewise cited healthgrades.com in their Memorandum (Doc. 155 at 19-20). Plaintiffs did not address in their Opposition.

BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
Tel: 601-985-4560
Fax: 601-985-4500
Meade.Mitchell@butlersnow.com
Orlando.Richmond@butlersnow.com
Beau.Cole@butlersnow.com
Margaret.Smith@butlersnow.com
Barber.Boone@butlersnow.com

Charles F. Morrow, MB #10240
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Post Office Box 171443
Memphis, Tennessee 38187-1443
Tel:  (901) 680-7200
Fax: (901) 680-7201
Chip.Morrow@butlersnow.com

Gerald L. Kucia, MB #8716
Special Assistant Attorney
General
OFFICE OF THE ATTORNEY
GENERALCIVIL LITIGATION
DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4072
Fax: (601) 359-2003
Gerald.kucia@ago.ms.gov


                                    **THE CITY OF JACKSON, MISSISSIPPI**

                              By:    */s/ Clarence Webster, III*
                                     Clarence Webster, III, MB #102111
                                     ONE OF ITS ATTORNEYS

OF COUNSEL:

Clarence Webster, III, MB #102111
Kaytie M. Pickett, MB #103202
Adam Stone, MB #10412

14

JONES WALKER LLP
190 E. Capitol Street, Suite 800
Jackson, Mississippi 39201
Tel: (601) 949-4900
Fax: (601) 949-4804
cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com

**TRILOGY ENGINEERING SERVICES, LLC**

By:    */s/ Richard G. Daniels*
       Richard G. Daniels, *Admitted Pro hac vice*
       ONE OF ITS ATTORNEYS

OF COUNSEL:

Richard G. Daniels, *Admitted Pro hac vice*
Davide Macelloni, *Admitted Pro hac vice*
DANIELS, RODRIGUEZ, BERKELEY DANIELS & CRUZ, P.A.
4000 Ponce De Leon Boulevard, Suite 800
Coral Gables, Florida 33146
Tel: (305) 448-7988
Fax: (305) 448-7978
rdaniels@drdbc-law.com
dmacelloni@drbdc-law.com

D. Jason Childress, MB #103678
FLETCHER & SIPPEL LLC.
4400 Old Canton Road, Suite 220
Jackson, Mississippi 39211-5982
Tel: (601) 414-6010
jchildress@fletcher-sippel.com

**<u>CERTIFICATE OF SERVICE</u>**

       I, Meade W. Mitchell, one of the attorneys for Defendant Mississippi State Department of Health, do hereby certify that I have this day served a true and correct copy of the above and foregoing document by filing it using the ECF system which sent notice of such filing to all counsel of record.

       SO CERTIFIED, this the 14th day of November, 2023.


                              */s/ Meade W. Mitchell*
                              MEADE W. MITCHELL