## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| *In Re Jackson Water Cases*, | No. 3:23-cv-00614-CWR-LGI (Main Docket) |
| | Hon. Carlton W. Reeves |
| | Magistrate Judge LaKeysha Greer Isaac |

## **DOCUMENT PRODUCTION PROTOCOL**

**I.   SCOPE**

    **A.   General**

The procedures set forth in this Document Production Protocol (the "Order") shall govern the production of Documents in this above-captioned matter (the "Litigation"), unless otherwise agreed to in writing by the Parties or as ordered of the Court. To the extent that non-parties produce Documents in this case, the Parties agree to request that such non-parties adopt this Order.

    **B.   Scope of Production**

This Order does not address the scope of the Parties' productions.

    **C.   Subsequent Orders and Modification**

This Order shall not preclude subsequent agreements between the Parties relating to Documents, nor shall it preclude any Party from seeking an amendment or modification of this Order from the Court.

This Order may not be modified or amended except in writing signed by all Parties. Court approval is required to modify or amend this Order.

E.  **Confidentiality of Produced ESI**

If a document is produced subject to a claim that it is protected from disclosure under the Confidentiality Order, the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be burned electronically on each page of such document or otherwise identified as such consistent with this Order and any other orders entered by this Court.

II.  **DEFINITIONS**

A.  "**Documents**" means "Documents" as defined in the Federal Rules of Civil Procedure (the "FRCP"), and Electronically Stored Information, as defined below, and shall be interpreted in the broadest sense possible.

B.  "**Electronically stored information**" or "**ESI,**" as used herein, means and refers to computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB flash ("thumb") drives or other real or virtualized devices or media, as such information is defined in the FRCP or is otherwise defined by case law or other authority.

C.  "**Native Format**" means and refers to the format of ESI in which it was generated or as it is used by the Producing Party in the usual course of its business and in its regularly conducted activities.

D.  "**Media**" means an object or device, including but not limited to a disc, tape, computer, drive, or other device, whether in the Producing Party's physical possession, on which data is or was stored.

E.  "**Metadata**" means and refers to: (i) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

F.  "**OCR**" means and refers to an optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

G.  "**Party**" or "**Parties**" means and refers to the named Plaintiffs and/or Defendants in the above-captioned matter. "Producing Party" refers to a Party (or non-party that avails itself of this Order) that produces Documents in this Litigation.

H.  "**Redacted Document**" means any Document that contains a text box redaction over any portion of the Document or contains other means to intentionally obscure any portion of the Document.

I.  "**Withheld document**" means any Document that is omitted from production due to privilege or non-responsiveness.

## III. MISCELLANEOUS

A.  **English Language**

To the extent any data exists in more than one language, the data shall be produced in English, if available. If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of a document.

B.  **Cooperation**

The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of Documents.

C.  **Reservation of Rights**

Nothing contained herein is intended to create a precedent for, or to constitute a waiver or relinquishment of, any Party's objections or arguments pertaining to any potential future productions of Documents.

D.  **Relief from this Order**

Any Party may request that the Court modify or amend the terms of this Order by the filing of an appropriate motion. Prior to filing such a motion, the Party seeking such modification or amendment must first meet and confer with the relevant Parties.

E.  **Production Costs**

This Order does not address the costs of Document production and the Parties reserve their rights with respect to the allocation of those costs.

## IV. TECHNICAL SPECIFICATIONS

A.  **Image Files**

All Documents are to be produced as black and white images, unless otherwise addressed herein.

Black and white images are to be produced as Group IV, black and white single page TIFF images with the file extension, .TIFF.

To the extent a Party requests that any ESI be produced in color, as opposed to black and white, the Parties shall meet and confer as to whether reproduction in color is necessary and appropriate.

Each image file is to be named with its corresponding production bates number.

B.   **Image File Formats**

Microsoft Word documents will be imaged showing track changes and comments. Microsoft PowerPoint files will be imaged showing notes in Notes Pages.

C.   **Native Files**

When producing Documents in Native Format, the files are to be named with the bates number assigned to the Document and the confidentiality legend, if applicable. For Example: Bates123456 – Confidential.XLSX

For each Native Format file produced, a TIFF image placeholder should be included. The placeholder is to state, "This document has been produced in native format" and it should be endorsed with the confidentiality legend, if applicable, and bates number.

A text file must be provided for each native file. If extracted text is not available, the text file should include a machine generated OCR.

Both the image and text file must be named with the bates number.

Documents that cannot be accurately TIFF-imaged must be produced in their Native Formats, unless otherwise agreed to between the Parties, or as required by this Order. Such files include video and audio recording and database files.

All spreadsheets should be produced in their Native Format, except those that require redaction (the requirements of which are detailed below).

The Parties agree to work out a future protocol governing the use and format of Documents produced pursuant to this paragraph at trial, depositions, and hearings.

D.   **Hard Copy Paper Documents**

Hard copy paper documents shall be produced as images files, and, to the extent reasonably practicable, produced in the way those documents were kept in the ordinary course of business. Where hard copy paper documents have "post-it notes," tabs, or other labels, such information shall be produced to the extent reasonably practicable. The Producing Party will utilize reasonable best efforts to ensure that hard copy paper documents are produced in a manner that maintains the physical unitization of documents.

E.   **Proprietary Files**

To the extent that Documents produced cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in a reasonably usable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third-party.

F.   **Extracted Text/OCR**

Each produced Document will have a single text file, named for the production bates number. The text files will be delivered as multi-page ASCII. The location of the text file for a document will be captured in the TextFileLink field.

For native files, extracted text is to be produced.

For any redacted Documents, a machine generated OCR text file from the redacted image is to be provided, except that information which is redacted.

For any hard copy paper documents, a machine generated OCR text file is it to be provided.

G.   **Metadata**

Metadata fields associated with all Documents will be produced, as set forth below, except for Documents that do not include metadata, or the metadata is not machine extractable. For Redacted Documents, metadata fields must be produced, except those that disclose redacted information.

Metadata should be provided in a .DAT file. The first line of the load file must include the field names. Each subsequent line will contain the fielded information for the Document. All .DAT files produced in this Litigation should contain the same fields in a consistent order.

This Order shall not be construed to affect whether information contained in the metadata produced shall be admissible evidence about the corresponding Document; rather, the Parties' positions regarding admissibility shall be preserved.

H. **Load File Specifications – Delimiters**

The .DAT file will use the following delimiters for all Documents produced:

| Delimiter | Character | Function | ASCII Code |
|---|---|---|---|
| þ | Default | The field delimiter separates the load file columns | 254 |
| "\|" | Pipe | The text qualifier. Marks the beginning and end of each load file field. | 124 |
| ® | Newline | The delimiter that marks the end of a line of extracted or long text. Concordance replaces all carriage returns or carriage return linefeed combinations with the newline code. | 174 |

Sample Concordance (.DAT) load file:
þProdBegBatesþþProdEndBatesþþProdBegAttachþþProdEndAttachþ þGP0000001þþGP0000002þþþþ
þGP0000003þþGP0000057þþþþ

I.  **Load File Specifications – Production Fields**

The following fields will be provided for all Documents produced.

| Field Name | Description | Applies To |
|---|---|---|
| ProdBegBates | Beginning bates number of all produced document | All Documents |
| ProdEndBates | Ending bates number of all produced documents | All Documents |
| ProdBegAttach | Beginning attachment number | All Documents |
| ProdEndAttach | Ending attachment number | All Documents |
| Confidential | Confidentiality designation | All Documents |
| NativeFileLink | Production path to native file | All Documents |
| TextFileLink | Production path to extracted text or OCR file | All Documents |

J.  **Load File Specifications – Metadata Fields**

A Producing Party shall produce the following metadata fields for Documents, all Microsoft Word documents ("EDOC") and/or all email ("Email"), to the extent the information is available, as specified below:

| Field Name | Description | Applies To |
|---|---|---|
| Author | Native file author | EDOC |
| File Name | Name of the application file | EDOC |
| DateCreated | Date file was created | EDOC |
| TimeCreated | Time file was created | EDOC |
| DateMod | Date file was last modified | EDOC |
| TimeLastMod | Time file was modified | EDOC |
| To | Recipient(s) | Email |
| From | Sender | Email |
| CC | Carbon copy recipient(s) | Email |
| BCC | Blind carbon copy recipient(s) | Email |
| Subject | Subject line of the email | Email |
| Date Sent | Email sent date | Email |
| TimeSent | Email sent time | Email |
| Date Rec | Email received date | Email |
| TimeRcvd | Email received time | Email |
| Custodian | Individual in possession of the document or Mailbox. | All Documents |

| | | |
|---|---|---|
| Other Custodian or dup custodian | ***In the event cross custodian deduplication is employed | All Documents |
| Source | Physical location, computer or server from which the data was collected | All Documents |
| DocType | Type of file (Word, Excel, email, etc) | All Documents |
| DocExt | File extension of document | All Documents |
| Native File Size | Size of file in bytes | All Documents |
| Hash Value | MD5 Hash Value | All Documents |
| Confidentiality Designation | | All Documents |
| Redacted | | All Documents |
| Email Folder Path | | All Documents |
| Page Count | | All Documents |
| Conversation Index | | All Documents |

K.  **Deduplication**

ESI will be deduplicated globally following industry-standard global deduplication algorithms. An acceptable method, such as the MD5 hash format, shall be used for any deduplication. Additional custodians who had a copy prior to deduplication, such as email recipients, copyees, or blind copyees, will be populated in the "DupCustodian" or "Other Custodian" metadata fields.

L. **Document Families**

Whenever a Document is produced, the entire corresponding family of Documents (i.e., parent and all children, the "Document Family," and individually a "Family Member") will be also produced. When any part of an email or its attachments is responsive, the entire email and attachments will be produced, except any attachments that must be redacted or withheld on the basis of privilege. The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent email.

Withholding non-responsive attachments cannot be used as a basis to challenge the completeness of a document for evidentiary purposes under FRE 106.

M. **Email Threading**

For emails, in addition to de-duplication, email threading may be utilized. Threading allows emails that are wholly contained in a later, surviving email, with all the recipients and attachments contained, to be identified and suppressed from production. An email is only suppressed from production if 100% of the message body is contained, all addresses are included, and all attachments are included in a later email that is produced.

N. **Voicemails, Text Messages and Smart Phone ESI**

For production of these forms of ESI, the Parties shall meet and confer regarding the scope of said production and the applicable custodians for whom an obligation to search and produce exists. Production requests for these forms of ESI shall identify the custodian, search terms, and timeframe. Indiscriminate terms, such as the Party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. The Parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

O. **Redactions and Logs**

A Producing Party shall disclose and describe the basis for every redaction in a Redacted Document.

The basis for all redactions shall be specified in the appropriate metadata field that corresponds to the Redacted Document.

In addition, for each redaction, a Producing Party must also:

(a) include a text box describing the basis for the redaction

("Text Box Redactions") on the Redacted Document; or (b) produce a corresponding log that identifies and describes the basis for the redaction.

If a Party opts to utilize Text Box Redactions, the redactions on images shall be made with white boxes with black borders and shall contain black text that describes the basis for the redaction, for example, "Attorney-Client Privilege," "Work Product Privilege," "PPI" (Protected Personal Information), "PHI" (Protected Health Information), or "NRI" (Non-Responsive Information). If a Party has more than one basis for a redaction, then the Text Box Redaction need only identify one basis, but all bases must be identified in the metadata.
Where some or all the e-mail string is privileged, the Parties need only include one entry on the privilege log for the entire e-mail string and need not log each e-mail contained in the chain separately.

Documents that are to be produced in Native Format, but that require redactions, may be produced as TIFF images (as to spreadsheets, imaged unhiding hidden cells, rows, columns, or sheets), with extracted text, with the relevant portions redacted, or in Native Format using a commercially available "native redaction" tool, or by producing a copy of the Native Format file with the relevant portions replaced with the mark "[REDACTED"]or a similar mark. If modification of a Native Format file is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

P. **De-Nisting of ESI**

The Parties may remove operating system files and program files with the assistance of their respective information technology vendors or agents prior to conducting searches of data in accordance with the National Software Reference Library De-Nisting Process.

Q. **Replacement Images**

If an already produced Document or set of Documents must be re-produced or a new load file or "overlay" is produced for any production, the new production shall always maintain the same bates number for any reproduced Documents, with the addition of the suffix "-R" at the end of the bates number. If maintaining the same bates number is not possible, documents may be re-produced with new bates numbers along with a cross reference file containing previous bates ranges per document.

R. **Production of Databases and Other Structured Data**

Generally, databases should be produced in a mutually agreeable data exchange format, which may include production of reports generated from database rather than producing the entire database. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:

i. Database Name
ii. Type of Database
iii. Software Platform
iv. Software Version
v. Business Purpose
vi. Users
vii. Size in Records
viii. Size in Gigabytes
ix. A List of Standard Reports
x. Database Owner or Administrator's Name

Upon review of the list, the Parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

V. **PRODUCTION SPECIFICATIONS**

A. **All Deliveries**

Productions may be delivered either via encrypted physical media or via secure electronic download, or as otherwise agreed by the Parties.

All file paths should be relative.

Data to be encrypted and the decryption key should be provided prior to the delivery of the physical media.

An electronic version of the cover letter should be included. The decryption key should not be contained in the cover letter accompanying the physical media.

**B.**     **Physical Delivery**

Productions that are delivered via physical media should be self-contained and not require that multiple discs or drives be combined after delivery.

The disc or drive should be clearly labeled with the following information:

- Date of the production
- Producing Party
- Production Regarding
- Production Volume
- Bates Range
- Number of Records

**C.**     **Electronic Delivery**

The production should be announced via e-mail and made available for immediate download upon receipt of the e-mail.

Delivery should be via a secure file transfer (SFT) system, or a password protected link. Productions made via insecure file transfer sites or sent via email may be rejected.

Electronic deliveries must remain downloadable for seven days after the production date or until the production has been downloaded and confirmed to be complete.

SO ORDERED, this the 15th day of November 2023.

    /s/LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE