IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

IN RE: JACKSON WATER MASTER CASE                            ALL PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:23-cv-00614-CWR-LGI

THE CITY OF JACKSON, MISSISSIPPI,
MISSISSIPPI STATE DEPARTMENT OF
HEALTH, AND TRILOGY ENGINEERING
SERVICES, LLC                                                         DEFENDANTS

**ORDER**

This matter is before the Court on *Defendants' Opposed Motion for Entry of Pre-Discovery ("Lone Pine") Case Management Order* [154] and accompanying Memorandum in Support [155]. All Plaintiffs, collectively, filed a Response in Opposition [162] and accompanying Memorandum in Support [163]. Defendants filed a Rebuttal in Support of the initial motion [168].

A.  **Relevant Procedural History**

On October 10, 2023, Defendants filed the instant motion, seeking entry of their proposed *Lone Pine* Case Management Order (CMO). *See* Docs. [154], [154-1]. On October 18, 2023, an in-person Case Management Conference was held. *See* Minute Entry, dated 10/18/2023. During the conference, the undersigned discussed, among other things, the parties' positions regarding Defendants' request for a *Lone Pine* CMO. The Court, having considered the written submissions, the parties' preliminary discussions on the issue, the record, and relevant law, finds that *Defendants' Opposed Motion for Entry of Pre-Discovery ("Lone Pine") Case Management Order* [154] is DENIED, as discussed below.

B.  **Analysis & Arguments**

Defendants submit that *Lone Pine* orders are used to manage complex tort cases, involving large numbers of plaintiffs. Doc. [155] at 2. They offer the following overview of a *Lone Pine* order:

1

> A *Lone Pine* order is a pre-discovery case management tool that requires plaintiffs to prove, via affidavit, *prima facie* information on topics including . . . exposure to a substance . . . specific injuries from said exposure, with evidence of diagnoses by a healthcare provider . . . , and causation between said exposure and the identified injuries. . . .

*Id*. (as summarized by the Court). They assert that the instant case, which currently involves 2,139 Plaintiffs, also involves novel legal theories and factual averments, and is well-suited for a pre-discovery *Lone Pine* CMO to ensure judicial economy and promote efficiency of the parties' resources. *Id*. at 1-2. They attach, as an exhibit, their proposed *Lone Pine* CMO for this Court's consideration, which also includes a stay of discovery. *See* Exhibit 1, Doc. [154-1].

According to the Complaints, each Plaintiff alleges that they sustained personal injuries after drinking water with excessive lead levels in the City of Jackson. *Id*. at 3. Defendants argue that Plaintiffs' pre-suit MTCA Notices included generalized allegations of exposure, causation, and injury, but did not include prima facie information required to show that each claim has threshold merit to justify taking the next step into mass-scale discovery. *Id*. at 4. Defendants also contend that despite alleging diagnoses of elevated blood levels, Plaintiffs have not provided "meaningful information" of their exposure. *Id*. at 4-6. Defendants state the Plaintiffs bear the burden of showing that the elevated lead levels in their drinking water, during the relevant timeframe, is the proximate result of Defendant's negligence. *Id*. at 6-7. Thus, they contend the Plaintiffs' claims should not proceed to the next stage until Plaintiffs provide this information under a *Lone Pine* CMO. *Id*. at 7.

Defendants rely heavily on *Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000), which they present as the "leading and controlling authority in this Circuit," and point out the similarities between *Acuna* and the instant case.[1] *Id*. at 10. Defendants first note that the parties in *Acuna* proposed competing scheduling orders – plaintiffs proposed a "normal" scheduling order, while defendants proposed an order that included an early deadline for plaintiffs to establish a prima facie case of

---

[1] *See also* District Court case, *Acuna v. Brown & Root, Inc.,* Cause No. 5:96-cv-00543-OLG (W.D. Tex), Doc. [1].

causation using expert reports before the expense of discovery was incurred, "i.e. a *Lone Pine* order." *Id*. at 11 (citing *Acuna* Order, Doc. [54]). Defendants note that "*Acuna* observed that 'the Court must assume that plaintiffs are already in possession of evidence to support their allegations of personal injuries.'" *Id*. at 12.

In *Acuna*, the Magistrate Judge accepted the defendants' proposal and entered a *Lone Pine* scheduling order, requiring each plaintiff to serve an expert affidavit inclusive of an opinion about the alleged injuries, relevant exposure, and causation. *Id*. Defendants also point out that the *Acuna* plaintiffs objected to the Magistrate Judge's implementation of a *Lone Pine* order, but the District Judge affirmed. *Id*. The District Judge also accepted the Magistrate Judge's recommendation to dismiss the case after the *Acuna* plaintiffs failed to comply with the *Lone Pine* order. *Id*. at 13 (citing *Acuna*, 1998 WL 35283825, at *7-9 (W.D. Tex. Feb. 2, 1998), report and recommendation adopted sub nom. *Acuna v. Brown & Root, Inc.*, No. SA-96-CA-543-OG, 1998 WL 35283824 (W.D. Tex. Sept. 30, 1998)). Defendants pointedly advise that the Fifth Circuit affirmed the District Court's use of the "pre-discovery [Lone Pine] orders . . . [,] recognizing the Court's 'wide discretion . . . over the management of discovery' under Rule 16." *Id.* at 14.

Defendants also point to subsequent cases where "the Fifth Circuit[,] [other District Courts in this Circuit and Federal Courts across the country] ha[ve] continued its approval of *Lone Pine* orders to manage complex case."[2] *Id*. at 14-19. Essentially, Defendants claim the Plaintiffs have not provided sufficient notice regarding their alleged injuries, and therefore seek their proposed *Lone Pine* CMO

---

[2] For support, Defendants cite the following Fifth Circuit and District Court cases: *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 605 (5th Cir. 2006); *In re Vioxx Prods. Litig.*, 388 F. App'x 391, 398 (5th Cir. 2010); *Abner v. Hercules, Inc.*, 2016 WL 11609574 (S.D. Miss. Jan. 13, 2016); *Ashford v. Hercules, Inc.*, 2015 WL 6118387 (S.D. Miss. Oct. 16, 2015); *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* MDL No. 2179, 2016 WL 614690, at *7 (E.D. La. Feb. 16, 2016); *Matter of AET Inc.*, No. 1:10-CV-51, 2011 WL 13301617, at *3 (E.D. Tex. Dec. 14, 2011); *In re Vioxx*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008), aff'd, 388 F. App'x 391 (5th Cir.2010); *In re 1994 Exxon Chem. Plant Fire*, No. 05-1639, 2005 WL 6252312, at *1 (M.D. La. Apr. 7, 2005). Doc. [155]. *See also* Defendants' reference to recently entered *Lone Pine* CMO in *Barrett v. Dresser, LLC*, No. 1:20-CV-01346, 2023 WL 6613163 (W.D. La. Oct. 10, 2023). Doc. [168] at 6. Defendants also cite several cases from sister circuits. *See* Doc. [155] at 18-19.

"before all parties and the Court begin an extensive discovery process." *Id*. at 19. Defendants seek "proof of a concrete injury (at a minimum)." *Id*. They move for the "pre-discovery submission of *prima facie* evidence showing a minimum of exposure, injury, and causation from excess lead exposure due to Defendants' alleged acts in the relevant timeframe." *Id*. at 20. They urge this Court to recognize if Plaintiffs' cases proceed without the requested CMO, judicial resources will be wasted and Defendants will face unnecessary expenditures. *Id*. According to Defendants, there can be no expectation of a reasonable case management plan under the standard rules of procedure given the "uncertainty"; they submit that this Court "cannot formulate a bellwether or discovery pool/trial plan without more information." *Id*. at 21.

Plaintiffs vehemently oppose entry of the requested *Lone Pine* order, arguing that the proposed CMO is an "extreme measure" that would "deprive[] Plaintiffs of important safeguards afforded by the Federal Rules of Civil Procedure . . . ." Doc. [163] at 6. Plaintiffs first submit that *Lone Pine* orders are "not appropriate in every case or suitable at every stage of litigation." *Id*. (citing *Clayton v. Denbury Onshore, LLC*, No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150, at * 2 (S.D. Miss. Feb 23, 2018) (*see also Abner v. Hercules, Inc*, No. 2:14-cv-63-KS-MTP, 2016 WL 11609574 (S.D. Miss.)). Plaintiffs reject Defendants' reliance on *Acuna*, arguing that *Lone Pine* orders are neither frequently used nor mandated. Doc. [163] at 7. Instead, Plaintiffs contend "even the Magistrate Judge that initially issued the *Lone Pine* order in *Acuna* noted that doing so was 'certainly [] atypical." *Id*. at 8 (quoting *Acuna*, Cause No. 5:96-cv-543 (W.D. Tex. 1997) at Doc. [54], *Acuna* R&R).

Plaintiffs also urge this Court to reject Defendants' attempts to liken the instant cases to *Acuna*, as Plaintiffs argue that *Acuna* is both factually and legally distinguishable. Plaintiffs state the types of injuries and issues of causation in *Acuna* were far more complex, with the timeframe of injury spanning up to forty years, over one hundred defendants, and spanning the entire uranium and mining industry in Texas. *Id*. at 9 (citations and internal quotation marks omitted). Plaintiffs also argue their

4

claims are far more straightforward, as there is only one alleged injury, through one exposure pathway. *Id*. at 10. And, therefore, they submit that this case does not warrant the entry of a *Lone Pine* order. *Id*. at 10, 13.

Further, Plaintiffs contend this action is also distinguishable from *Acuna* because the plaintiffs in *Acuna* failed to put those defendants on notice of basic information; but here, Plaintiffs argue their Complaints clearly set forth the fundamental information of their alleged injury and the related causation. *Id*. at 11-12. Plaintiffs also state that the information requested and ordered by the *Acuna Lone Pine* order was less detailed than what Defendants seek here. *Id*. at 14. Plaintiffs argue they have already provided the very information that the *Acuna* plaintiffs lacked, yet Defendants propose an order "far more expansive that the *Acuna Lone Pine* order." *Id*. They also point out that they have already survived motions to dismiss, wherein Defendants challenged the sufficiency of Plaintiffs' Amended Complaint. *Id*. at 16. And, they assert that the Court previously rejected the City and State Defendants' challenge to the sufficiency of Plaintiff's MTCA notices, where Defendants argued that the notices were deficient because they lacked medical proof, lacked proof of exposure during specific periods, and lacked proof of alleged damages. *Id*. at 23. Plaintiffs argue this motion is an improper attempt at reconsideration of the Court's previous orders on these issues. *Id*. at 24. Plaintiffs also characterize this motion as Defendants' attempt to improperly convert the proposed *Lone Pine* process into a summary-judgment proceeding, while depriving Plaintiffs of procedural safeguards of Rule 56 or the benefits of mutual discovery. *Id.* at 25.

Plaintiffs also challenge several of the cases relied upon by Defendants, claiming that each is distinguishable from the instant action. They contend that the underlying circumstances in several cases cited by Defendants were patently dissimilar in procedural posture.[3] Plaintiffs argue the Defendants have omitted a relevant case from this Court – *Clayton,* No. 2:17-cv-153-KS-MTP, 2018

---

[3] For specific cases, *see* Doc. [163] at 18-21.

U.S. Dist. LEXIS 29150, at *1 (S.D. Miss.), wherein Magistrate Judge Parker "denied use of *Lone Pine* order, entered a different non-*Lone Pine* case management order, and allowed discovery to proceed." *Id*. at 21 (citation omitted). Relying on *Clayt*on, Plaintiffs argue a review of post-*Acuna* case law shows "that the entry of a *Lone Pine* order here – at this early pre-discovery, pre-summary judgment, pre-settlement posture – would be wholly inappropriate." *Id*.

Plaintiffs solidly resist entry of the proposed *Lone Pine* order, arguing that such an order unfairly shifts costs onto impoverished Plaintiffs, while allowing Defendants to evade responsibility. *Id*. at 27. Plaintiffs estimate it could cost each child around $30,000 to attempt to comply with Defendants' proposed *Lone Pine* order, and they add that it could take up to six years for full compliance, which "gravely threatens Plaintiffs' rights to due process" and would delay Plaintiffs' access to justice for close to a decade. *Id*. at 28, 32.

Moreover, Plaintiffs argue there are other procedures available that can serve the case management needs here. They point out that this Court has "already implemented and considered several procedures designed to put this litigation on track for just, speedy, and efficient disposition." *Id*. at 17. They submit that a straightforward application of *Acuna* requires that this Court deny the instant motion. *Id*. at 17. Instead, they proffer that the case management needs can "be met through the measures the Court has already set forth, with direction the Court has already provided" in Case Management Order 1 (Doc. 146) and through the Bellwether process, which includes the use of Plaintiff Fact Sheets, discovery, and an initial trial. *Id*. at 32-33 (emphasis in original omitted).

In their Rebuttal [168], Defendants reiterate that their proposed Lone Pine CMO "would not require Plaintiffs to prove their whole case. . . . It would, however, require them to provide prima facie evidence before discovery in earnest begins." Doc. [168] at 2. Defendants argue "the injustice would be to permit full discovery against Defendants before Plaintiffs even show they have a diagnosed personal injury related to lead exposure – a requirement to pursue a claim." *Id*. at 3. Again, they point

6

out that the requested injury information should have been in possession of Plaintiffs before they filed suit. *Id*. Defendants contend Plaintiffs' response fails to overcome the leading authority of *Acuna* and also fails to distinguish the instant case from other mass tort cases, wherein courts entered *Lone Pine* orders. *Id*. at 4.[4] Defendants argue Plaintiffs have pointed to no Fifth Circuit decision criticizing or reversing a district court's use of a *Lone Pine* CMO. *Id*. at 5. Defendants again urge the entry of a pre-discovery *Lone Pine* CMO to manage this complex mass tort litigation. *Id*. at 5.

### C. Law

"While no federal rule expressly authorizes *Lone Pine* orders, multiple courts have interpreted Fed. R. Civ. P. 16 to confer such authority to courts in complex litigation." *Clayton*, No. 2:17-cv-153-KS-MTP, 2018 U.S. Dist. LEXIS 29150, at *2-3 (S.D. Miss.) (citing *McManaway v. KBR, Inc.*, 265 F.R.D. 384 (S.D. Ind. 2009) ("*Lone Pine* orders are permitted by Rule 16(c)(2)(L) . . . which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . .'")). Even so, "a *Lone Pine* order is not appropriate in every case or suitable at every stage of litigation." *Id*. at *3; *see, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 744 (E.D. La. 2008).

The *Clayton* court, while considering the defendant's motion for a *Lone Pine* CMO, noted that the action differed from the typical *Lone Pine* cases, because it did not involve particularly complex causation issues or a large number of plaintiffs. However, the six plaintiffs had articulated the basic facts in support of their claims against defendant, which derived from alleged exposure to dangerous gases during a single event. Because the basic facts were clear, a *Lone Pine* order was not necessary,

---

[4] Defendants assert Plaintiffs ignore court's recognition and use of *Lone Pine* orders in: *In re Oil Spill by the Oil Rig "Deepwater Horizon*," No. MDL 2179, 2016 WL 614690, at *7 (E.D. La. Feb. 16, 2016), *Matter of AET Inc.*, 2011 WL 13301617, at *3 (E.D. Tex. Dec. 14, 2011), *In re Vioxx*, 557 F.Supp. 2d 741, 743 (E.D. La. 2008), aff'd, 388 F. App'x 391 (5th Cir. 2010); *In re 1994 Exxon Chem. Plant Fire*, No. 05-1639, 2005 WL 6252312, at *1 (M.D. La. Apr. 7, 2005); *Steering Cmte. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006).

7

and the *Clayton* court denied the motion. Instead, it entered a case management order that allowed for discovery that would be proportional to the needs of the case.

While the Court recognizes the distinctions between *Clayton* and the instant matter, the undersigned finds this Southern District of Mississippi case instructive. Like plaintiffs in *Clayton*, all Plaintiffs in this action allege injuries resulting from exposure from a single source – excessive levels of lead in the City of Jackson's drinking water. *See* Amended Complaint, Doc. [51] at 76 ¶ 371 (Plaintiff alleges to have "been diagnosed with an elevated blood-lead level, meaning Plaintiff was lead-poisoned"). While the exposure dates for all Plaintiffs are not the same, the Plaintiffs have specified a timeframe within which all Plaintiffs may have been exposed.

Both parties cite to *Abner*, No. 2:14-CV-63-KS-MTP, 2016 WL 11609574[5], noting that the Magistrate Judge entered a *Lone Pine* order in that case. In *Abner*, 400 plaintiffs alleged exposure to different contaminants from defendant's facility through surface water, groundwater, soil, and airborne pathways. *Id*. at *2. Although the plaintiffs were aware of every chemical produced or utilized on defendant's site, the plaintiffs failed to specify the contaminants on their 495 parcels of property or the pathways that carried them from the defendant's site. *Id*. The *Abner* court decided that a *Lone Pine* order was appropriate, noting that the plaintiffs would eventually be required to present scientific evidence of the contaminants and the pathways by which those contaminants traveled from the defendant's site. *Id*. The court concluded that "defendant's proposed *Lone Pine* order provided the most effective and efficient procedural tool to advance this litigation. It imposed no undue burden or expense on Plaintiffs, as they would eventually have to provide evidence of contamination anyway."

---

[5] Both parties also address *Ashford v. Hercules, Inc.*, No. 2:15CV27-KS-MTP, 2015 WL 6118387, at *1 (S.D. Miss. Oct. 16, 2015). The Court notes that the defendant is the same in both *Ashford* and *Abner*, and the cases involve nearly the same set of facts alleging contamination of properties surrounding the plant in recent years. Thus, this Court finds it unnecessary to reiterate its analysis under *Ashford*.

8

*Id*. at *2.

Here, just as in *Abner*, the Defendants contend that "[e]ach Plaintiff should have at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries." *Id*. at 1 (citing *Acuna*, 200 F.3d at 340). Defendants request that Plaintiffs be barred from moving forward without evidentiary support, as requested under the proposed *Lone Pine* CMO. Plaintiffs argue they have clearly and sufficiently set forth their claims in the Complaints and also satisfied the notice requirements of MCTA.

"The Fifth Circuit has approved the use of *Lone Pine* orders, but it has not endorsed an analytical framework for determining whether they are appropriate in a given case." *Abner*, 2016 WL 11609574, at *5 (citation omitted). "Other federal courts have considered the following factors: (1) the posture of the litigation, (2) the case management needs presented, (3) external agency decisions that may bear on the case, (4) the availability of other procedures that have been specifically provided for by rule or statute, and (5) the type of injury alleged and its cause." *Id*.

Defendants argue that all factors favor entry of a *Lone Pine* order:

> 1) There are currently 2,139 Plaintiffs, imposing a great burden on the Court and the parties to engage in case workup; 2) The locations of exposure appear to vary widely; 3) The extent of asserted injuries will vary widely and will be impacted by the extent and duration of alleged exposure; 4) Plaintiffs' exposures occurred as far back as seven to eight years ago, but Defendants and the Court lack information about Plaintiffs' individual exposures, injuries, or causation of their asserted injuries; 5) Plaintiffs have access to publicly available testing data to connect their alleged exposure(s) to their residences and/or locations of regular consumption of water in the relevant timeframe; 6) Plaintiffs have access to public and private health care professionals across the greater Jackson area. The AET Court, *supra*, used healthgrades.com to identify the estimated number of health care providers in a geographic area; 7) Using that site, entering the phrase "Family Medicine" providers within 25 miles of Jackson, Mississippi, showed more than 300 listings; 8) The testing for lead poisoning is a blood test; 9)Plaintiffs affirmatively represented in their Complaint that "Plaintiffs have been diagnosed with an elevated blood-lead level, meaning Plaintiff was lead-poisoned."

Doc. [155] 20-21 (internal citations omitted).

On the other hand, Plaintiffs contend all factors favor denial of Defendant's request. Instead, they prefer that this Court impose other procedural guidelines to govern the case management needs of this case. Plaintiffs argue that the type of injuries and causation is straightforward – lead poisoning from the use of Jackson's public water source. Doc. [163] at 10. They also assert that Defendants received proper notice of the claims, as the Complaint "clearly sets forth what disease each Plaintiff claims to have been caused by Defendants' conduct." *Id*. at 11. Thus, Plaintiffs claim they have already provided sufficient information about their claims. *Id*. at 13-14. As such, Plaintiffs urge denial of the instant motion in favor of other measures to address the case management needs. *Id*. at 17.

This Court, after consideration of the case's current posture, the parties' submissions, and the relevant factors and law, denies *Defendants' Opposed Motion for Entry of Pre-Discovery ("Lone Pine") Case Management Order* [154]. There are other procedures available (namely, a specially tailored, modified CMO) by which this Court may address the case management needs presented by this case. This is especially so given the current posture of the litigation. The case is in its early stages, discovery has not yet commenced, and the parties have not yet had an opportunity to engage in meaningful exchanges of information.

Plaintiffs have, however, provided descriptions of the basic elements of their claims, including their claimed injuries and the alleged cause of those injuries. This Court declines to stay these proceedings to facilitate the submission of more "meaningful information," as set forth in Defendants' proposed *Lone Pine* CMO. As worded, the proposed CMO would, among other things, have all 2,319 Plaintiffs provide expert affidavits, within 90 days of entry of the order, setting forth:

> [a]ll diagnosed injuries or illnesses that Plaintiff claims were caused by exposure(s) to lead in City of Jackson public water during the relevant timeframe of this litigation which Plaintiff contend were caused by the alleged actions of Defendants. Include for each injury or illness the date(s) of diagnosis by a health care provider, name and address of said provider(s), and the date, location and results of any lead screening or blood testing in this format. . . .

Doc. [154-1] at 3, [Proposed] Case Management Order No. __. The Court finds the proposed

10

framework unworkable in this case, even if the Court were to grant a stay of discovery, as suggested by Defendants. *See id.* at 3.

This Court finds that the proposed *Lone Pine* CMO is disproportionate to the needs of this case and further finds that relevant factors weigh against the entry of such an order. While the Court declines to adopt the Defendant's proposed *Lone Pine* CMO, the Court recognizes that a standard CMO is inadequate to address the issues presented by this litigation, or the number of litigants involved. Instead, the Court finds it necessary to enter a specially tailored, modified case management order setting forth governing procedures and timelines, and the Court will do so in due course. The undersigned invites the parties to submit their suggestions and proposals for organization of the specially tailored, modified case management order **on or before January 19, 2024**.

### D. Conclusion

IT IS, THEREFORE, ORDERED that *Defendants' Opposed Motion for Entry of Pre-Discovery ("Lone Pine") Case Management Order* [154] is hereby DENIED.

**SO ORDERED** this the 19th day of December, 2023.

                                                      /s/LaKeysha Greer Isaac
                                                      UNITED STATES MAGISTRATE JUDGE