IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**IN RE JACKSON WATER CASES**             **CAUSE NO. 3:23-CV-614-CWR-LGI**

**THIS DOCUMENT RELATES TO ALL
PLAINTIFFS**

**OBJECTIONS TO MAGISTRATE JUDGE'S DECEMBER 19, 2023, ORDER DENYING MOTION FOR ENTRY OF A PRE-DISCOVERY ("*LONE PINE*") CASE MANAGEMENT ORDER [DOC. 172]**

Pursuant to Federal Rule of Civil Procedure 72(a), Rule 72(a)(1) of the Uniform District Court Rules for the Northern and Southern Districts of Mississippi, and 28 U.S.C. § 636(b)(1)(A), Defendants Mississippi State Department of Health and Trilogy Engineering Services, LLC file these objections to the Magistrate Judge's Order denying Defendants' Motion for Entry of a Pre-Discovery ("*Lone Pine*") Case Management Order. (Doc. 172, "*Lone Pine* Order").

Upon timely objection by an aggrieved party, this Court has the authority to reverse, vacate, or modify a pretrial ruling of a magistrate judge that is found to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); S.D. Miss. Civ. R. 72(a)(1)(B). Recognizing the deferential nature of this standard, Defendants nevertheless submit that the Magistrate Judge's complete denial of Defendants' request for a *Lone Pine* CMO conflicts with the Fifth Circuit's precedent governing such orders and is contrary to law; further, the record as a whole reveals that the denial was clearly erroneous. Accordingly, to preserve their future appellate rights,[1] Defendants respectfully request that the Court reverse, vacate or modify the

---

[1] *See* Fed. R. Civ. P. 72(a) (for nondispositive matters resolved by the Magistrate Judge, "[a] party may not assign as error a defect in the order not timely objected to. . . .").

1

*Lone Pine* Order. Defendants further request the entry of the proposed or an alternate *Lone Pine* CMO.[2]

## MEMORANDUM IN SUPPORT

**I.     Introduction**

"The basic purpose of a *Lone Pine* Order is to identify and cull potentially meritless claims and streamline litigation in complex cases." *Abner v. Hercules, Inc.*, 2:14-cv-63-KS-MTP, 2016 WL 11609574, at *4 (S.D. Miss. Jan. 13, 2016) (quoting *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008), *aff'd*, 388 Fed. App'x 391 (5th Cir. 2010)). Given the circumstances of this litigation and the Fifth Circuit's precedent supporting the use *Lone Pine* Orders in similar cases, Defendants respectfully submit that the Magistrate Judge's denial of their motion for the entry of a *Lone Pine* CMO was contrary to law and clearly erroneous based on the complete record.

Each of the 2,139 Plaintiffs in this litigation alleges that they have suffered as-yet unidentified injuries as a result of their exposure to lead in the City of Jackson's drinking water. However, Plaintiffs have made representations to the Court suggesting that they have no evidence to support the basic allegation that they have diagnosed injury related to lead exposure. Indeed, one of Plaintiffs' objections to the entry of a *Lone Pine* CMO focused on time and resources needed to have each individual plaintiff tested for lead-related injuries—something that should have been done before this litigation commenced. (Pls.' Opp. to Mot. For *Lone Pine* CMO, Doc.

---

[2] The *Lone Pine* Order declined to adopt Defendants' proposed *Lone Pine* CMO in the form attached as Exhibit 1 to the Motion. However, the Magistrate Judge did not specifically address the alternative CMO proposed by Defendants. *See* Rebuttal, Doc. 168, at 2 (seeking alternative *Lone Pine* CMO, requiring each Plaintiff to serve an affidavit verifying exposure, plus an affidavit of a medical professional who has examined and tested Plaintiff, identified quantifiable lead exposure, and found that an actual injury was caused by lead exposure).

163 at 22-23) (arguing that it would take six years and cost more than $70,000,000 for all Plaintiffs to fully comply with the proposed *Lone Pine* CMO). Even setting aside the question of proximate causation, a claim that lacks foundational proof of injury can only be described as "meritless" and should not be allowed to proceed.

A *Lone Pine* Order is perfectly suited to identifying and eliminating such meritless claims in this litigation by requiring Plaintiffs to show proof of a diagnosed lead-related injury before this litigation progresses. Rather than following weight of Fifth Circuit precedent approving of the use of *Lone Pine* Orders in complex mass litigation and considering the numerous factors that support the entry of such an Order in this case, the Magistrate Judge relied on *Clayton v. Denbury Onshore, LLC*, No. 2:17-cv-00153 (S.D. Miss.)—an inapposite ruling and an outlier in this Circuit—to conclude that a *Lone Pine* Order would be disproportionate to the needs of this case. This finding was mistaken for several reasons. To begin with, we respectfully submit that there is nothing disproportionate about requiring a showing of a diagnosis of injury at the outset of a toxic tort case involving more than 2,000 plaintiffs. Indeed, Plaintiffs should have possessed this information before they filed suit, so in theory it should take little time or effort to provide it to Defendants.

Additionally, the Magistrate Judge concluded that this litigation, like *Clayton*, would not benefit from a *Lone Pine* CMO because Plaintiffs' injuries emanated from a single source: the City's drinking water. This finding assumes that every Plaintiff was actually exposed to elevated lead levels in the City's drinking water, an assumption that is not supported by the undisputed evidence Defendants provided with their motion.[3] It is not accurate to characterize this

---

[3] The City's Lead and Copper Rule ("LCR") test results, which are available to the public on the MSDH website, reveal that only small percentage of test sites actually experience lead concentrations above the LCR's action level for lead during a testing period. Even the test results

3

litigation—which involves alleged exposure to different concentrations of a contaminant by a large number of individuals in a large geographic area over an extended period of time—as a "single source" case, akin to *Clayton*. Moreover, this conclusion does not account for the fact that mere exposure to a contaminant does not equate to an injury. In a toxic tort case like this one, determination of an injury must consider dosage and duration of exposure to the contaminant. In other words, even assuming every Plaintiff in this litigation was exposed to some concentration of lead from the City's drinking water based on Defendants' actions, which is disputed, their claims would still lack merit unless there is a proof of some resulting injury, which Plaintiffs should already possess. Plaintiffs' suggestion that they all suffered actionable injuries simply because they consumed the City's drinking water is erroneous.

In sum, any Plaintiff who lacks proof of a lead-related injury is not properly before this Court, and declining to enter a *Lone Pine* Order at the outset of this litigation to identify and cull such invalid claims will subject Defendants and the Court to significant and unnecessary time and expense. Defendants, therefore, respectfully request that this Court reverse the Magistrate Judge's denial of their motion for entry of a *Lone Pine* CMO.

## II.  Legal Standard

Defendants' motion for entry of a *Lone Pine* CMO was heard by the Magistrate Judge, and objections to that Order are subject to review by the District Court under 28 U.S.C. § 636 and Rule 72. Both Section 636 and Rule 72 permit this Court to reverse, vacate, or modify the

---

for the summer of 2015—the first point at which the City exceeded the LCR's action level—showed that only 22% of the test sites were exposed to lead concentrations above the action level. The results of the 2015 LCR testing were actually cited in Plaintiffs' complaint and reveal that not all of the homes tested showed elevated lead levels. This test result was appended to Defendants' motion. Doc. 154, Motion Exh. 6.

Magistrate Judge's Order if it finds the ruling to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); S.D. Miss. Local Civ. R. 72(a)(1)(A)-(B).

"Contrary to law" is self-explanatory. "Clearly erroneous" has been defined by this Court as follows: based on the entire record, "the court is left with the definite and firm conviction that a mistake has been committed." *Verso Paper, LLC v. HireRight, Inc.*, No. 3:11-MC-628-CWR-LRA, 2012 WL 2376046, at *4 (S.D. Miss. June 22, 2012) (citing, e.g., *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir.2012) (finding clear error and reversing findings of fact)).

**III.    Argument and Authorities**

Although the *Lone Pine* Order (1) recognized the Fifth Circuit's 20+-year approval of the use of *Lone Pine* orders, (2) pointed out the myriad cases in this Circuit that have followed *Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000), by entering *Lone Pine* CMOs, and (3) recognized that the objections raised by Plaintiffs have been soundly addressed and rejected by sister Courts (Order at 2-3 & n. 2, 7 & n.4), the *Lone Pine* Order nevertheless did not follow *Acuna*. Instead, the ruling was based on what appears to be the only in-Circuit decision that purportedly supported Plaintiffs' opposition to the *Lone Pine* CMO: *Clayton v. Denbury Onshore, LLC*, No. 2:17-cv-00153 (S.D. Miss.).[4] But *Clayton* involved **only six plaintiffs** (this case has more than 2,100) and the issues in that case did not involve particularly complex causation issues (this case does, as Plaintiffs have repeatedly advanced).

Without likening *Clayton* to any factual or procedural aspect of this litigation, the *Lone Pine* Order nevertheless determined *Clayton* to be "instructive" because in that case, the six plaintiffs alleged injuries from a single "source." That finding, however, is incorrect, and does

---

[4] *Clayton* is not reported in Westlaw. The *Lone Pine* Order used the Lexis citation from Plaintiffs' briefing.

5

not reconcile the greater weight of authority in the Fifth Circuit approving of *Lone Pine* Orders in cases factually analogous to this one. The *Lone Pine* Order referred to a single "source" causing injury in *Clayton* (Order at 8), but the record shows it was narrower than that: in *Clayton*, there was not just a single "source," but rather, the Court pointed to a single *event*, a gas explosion, that was the stated cause of injury. *Clayton* Order at 3 ("Plaintiffs cite to a single event at Defendant's facility in which gases were released into the atmosphere").

In contrast, in this litigation, Plaintiffs allege City-wide water contamination over an extended period of time; this is not even a single source, let alone single "event," as in *Clayton*.[5] Moreover, the contention advanced by Plaintiffs that every home in Jackson experienced elevated lead levels has been shown to be incorrect, including in documents attached to their own Complaints. Further, this litigation asserts exposure either at individual residences or through regular consumption of City of Jackson water from other sources—and the only information supplied by Plaintiffs to date (the MTCA Notices) revealed that the Plaintiffs are geographically dispersed far and wide across the metro region; in some cases, it is undisputed that the Plaintiffs appear not to even reside in Jackson. In short, the basic underlying facts of this case are so distinguishable from *Clayton* that the Magistrate Judge's reliance on that case was mistaken. *Verso Paper,* 2012 WL 2376046, at *4.

The *Lone Pine* Order omitted an even more critical distinguishing fact. As explained in Defendants' Rebuttal, in *Clayton*, **the plaintiff had already produced medical records to the defendants showing a causal link to the particular injuries claimed from the gas explosion event**. (Doc. 168 at 8). The *Clayton* court pointed out that "Plaintiffs allege that particular injuries

---

[5] Indeed, in *Clayton*, the Plaintiffs' briefing stated that "Plaintiffs live in extremely close airborne proximity and less than ¼ of a mile away from lingering toxic residue from the gas explosion." Pl. Resp., Case No. 2:17-cv-00153, Doc. 22 at 1.

6

resulted from their exposure to the carbon dioxide" from the single event—and they had already provided medical records showing just that:

> [3] Plaintiff even submitted a nurse practitioner's note stating that one of the Plaintiff's medical conditions "could be caused from carbon monoxide or carbon dioxide exposure." Exhibit [22-1] at 23.

*Clayton*, Case No. 2:17-cv-00153, citing Doc. 22. This fact further shows that *Clayton* was not in the pre-discovery state, as is the case here. Indeed, the plaintiffs in *Clayton* opposed *Lone Pine* by arguing, in part, that they had **already produced evidence to the defendants**—medical records associating the single event (gas explosion) with the asserted injuries:

> 2.
> Defendant asserts in its brief that "Denbury is aware of no evidence that indicates the Plaintiffs came into contact with CO2 or other substance or suffered any injury whatsoever due to Denbury's action. Plaintiffs lack reliable evidence to support causation for any of their alleged injuries." To the contrary, the Plaintiffs have produced medical records associated with the
>
> Case 2:17-cv-00153-KS-MTP  Document 22  Filed 02/05/18  Page 2 of 4
>
> injuries as well as medical diagnosis stating the cause of injury being CO2 interaction. Also, Plaintiffs have a transcribed recording between Plaintiff Evelyn Clayton and Denbury John Does where defendants accepted responsibility for injuries, received notice, and requested all medicals be submitted to their attention.
> 3.
> Plaintiffs have filed discovery requests in accordance with the fundamental mandatory ethical due diligence necessary and afforded for quality representation. Further, the proof of causation, treatment, diagnosis of the plaintiffs are contained in the medical records of the plaintiffs which have been produced through their Initial Disclosures, a copy of same, which are attached hereto as composite Exhibit "A", Bates nos. 0003,0004, 00058-00069, 00085, 00086, 00259-00261, 00171, 00172, 00322-00325 and inclusive of bates nos. 0001 - 0325.

*Clayton*, Case No. 2:17-cv-00153, Doc. 22 at 1-2.

The *Clayton* plaintiffs' production of medical records showing "causation, treatment, [and] diagnosis" is worlds away from this litigation, where Plaintiffs have provided nothing but a boilerplate listing of generalized alleged injuries, offering zero specificity for any individual. *Clayton* is not instructive, as it is not remotely similar. The *Lone Pine* Order relied on contrary authority in arriving at its decision to deny a *Lone Pine* CMO here, contrary to the rules of civil procedure and Fifth Circuit law.

The *Lone Pine* Order also recognized—but then did not hold Plaintiffs to—the requirements of Rule 11. *Acuna* confirmed that in presenting a pleading for filing, the plaintiffs' attorney was subject to Rule 11(b)(3): i.e., the plaintiffs' attorney represented that, to the best of his/her knowledge "formed after an inquiry reasonable under the circumstances," "the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *E.g., Acuna*, 5:96-cv-00543, Doc. 74 (Def. Mot. at 154-11). Yet Defendants have not received a single item of supporting documentation for a single Plaintiff to show any injury related to the lead exposure. The *Lone Pine* Order recognized the only statement of "injuries" for each Plaintiff was one paragraph from MTCA Notices—an identical assertion for each of the 2,139 Plaintiffs. The *Lone Pine* Order acknowledged Rule 11(b)(3) and *Acuna*'s holding that counsel necessarily must have had supporting information before filing suit, but it did not hold Plaintiffs to that standard through a pre-discovery *Lone Pine* Order.

Beyond the above, the *Lone Pine* Order did not address that proof of a "concrete injury" is a constitutional mandate to show Article III standing "at all stages of litigation"—including now. *See* Defs. Mem. at 155 (citing *Transunion LLC v. Ramirez*, 594 U.S. --, 141 S. Ct. 2190,

8

2208 (2021). The need for implementing reasonable case management tools to avoid unnecessary waste is particularly important here.

Finally, the *Lone Pine* Order failed to give due consideration to the factors supporting the entry of a *Lone Pine* CMO in this case, particularly in light of the undisputed evidence presented to the Magistrate. For example, Plaintiffs have access to publicly available regulatory records, so they can begin to investigate their claims while providing the information required by a *Lone Pine* CMO. (Def. Mem., Doc. 155 at 1-8, 19-20, & n.1, 6, 7, 8; Def. Rebuttal, Doc. 168 at 2, 5-6 & n. 4).[6] Additionally, the posture of the litigation supports a *Lone Pine* CMO because the only "injuries" Plaintiffs have identified thus far amount to generalized allegations in the MTCA notices, most of which were submitted two years ago. Courts also consider the "type of injury and its cause" in evaluating *Lone Pine* (Order at 9). Defendants pointed out over 300 listings for family medical providers within 25 miles of Jackson who could have tested Plaintiffs for lead exposure and determined whether any plaintiff suffered an injury from such exposure. (Def. Mem., Doc. 155 at 20-21). Despite Plaintiffs' failure to rebut any of these undisputed facts, the Magistrate Judge did not cite these considerations in its *Lone Pine* Order.

In any or all of the above ways, the *Lone Pine* Order was contrary to law and clearly erroneous.

---

[6] *See, e.g.,* Def. Rebuttal, Doc. 168 at 11-12 (citing *Matter of AET Inc.,* No. 1:10-cv-00051, 2011 WL 13301617 (E.D. Tex. Dec. 14, 2011), which reiterated that claimants in a case involving a crude oil spill into a waterway should have been required to produce *some* evidence to support a credible claim—meaning a "preliminary showing of their ability to do so." *Id*. at *5, *7 (also noting the claims had been pending for almost a year before the *Lone Pine* order was entered, and much of the data needed for the claims was publicly available)).

## IV. CONCLUSION

The *Lone Pine* Order was contrary to law, as it conflicts with controlling Fifth Circuit law and instead accepts Plaintiffs' only in-Circuit case citation denying a *Lone Pine* CMO (*Clayton*), which is not instructive and does not support denial of the *Lone Pine* CMO request here. Additionally, the Order was clearly erroneous, as a review of the entire record—especially in light of the undisputed facts and application of compelling Fifth Circuit and District Court authority—shows that a *Lone Pine* CMO is necessary here.

Either of the above warrants the Court vacating or reversing the *Lone Pine* Order and entering the as-proposed Order (Doc. 154-1). In the alternative, a modification—to the extent of granting the *Lone Pine* request but tailoring the requirements for what Plaintiffs must produce (e.g., limiting the scope of information as proposed in Defendants' Rebuttal) is necessary. At minimum, this Court should require all Plaintiffs to produce proof of a lead-related injury before this matter proceeds further.

Respectfully submitted, this the 9th day of January, 2024.

                                              **MISSISSIPPI STATE DEPARTMENT OF HEALTH**

                                              By:    */s/ Meade W. Mitchell*
                                                            Meade W. Mitchell, MB #9649
                                                            ONE OF ITS ATTORNEYS

OF COUNSEL:

Meade W. Mitchell, MB #9649
Orlando R. (Rod) Richmond, MB #9885
Edderek (Beau) Cole, MB #100444
Margaret Z. Smith, MB #104178
H. Barber Boone, MB #102266
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Post Office Box 6010

Ridgeland, Mississippi 39158-6010
Tel: 601-985-4560
Fax: 601-985-4500
Meade.Mitchell@butlersnow.com
Orlando.Richmond@butlersnow.com
Beau.Cole@butlersnow.com
Margaret.Smith@butlersnow.com
Barber.Boone@butlersnow.com

Charles F. Morrow, MB #10240
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Post Office Box 171443
Memphis, Tennessee 38187-1443
Tel:  (901) 680-7200
Fax: (901) 680-7201
Chip.Morrow@butlersnow.com

Gerald L. Kucia, MB #8716
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERALCIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4072
Fax: (601) 359-2003
Gerald.kucia@ago.ms.gov


                                            **TRILOGY ENGINEERING SERVICES, LLC**

                                            By:    */s/ Richard G. Daniels*
                                                     Richard G. Daniels, *Admitted Pro hac vice*
                                                     ONE OF ITS ATTORNEYS

OF COUNSEL:

Richard G. Daniels, *Admitted Pro hac vice*
Davide Macelloni, *Admitted Pro hac vice*
DANIELS, RODRIGUEZ, BERKELEY DANIELS & CRUZ, P.A.
4000 Ponce De Leon Boulevard, Suite 800
Coral Gables, Florida 33146

Tel: (305) 448-7988
Fax: (305) 448-7978
rdaniels@drdbc-law.com
dmacelloni@drbdc-law.com

D. Jason Childress, MB #103678
FLETCHER & SIPPEL LLC.
4400 Old Canton Road, Suite 220
Jackson, Mississippi 39211-5982
Tel: (601) 414-6010
jchildress@fletcher-sippel.com

## CERTIFICATE OF SERVICE

I, Meade W. Mitchell, one of the attorneys for Defendant Mississippi State Department of Health, do hereby certify that I have this day served a true and correct copy of the above and foregoing document by filing it using the ECF system which sent notice of such filing to all counsel of record.

SO CERTIFIED, this the 9th day of January, 2024.

*/s/ Meade W. Mitchell*
MEADE W. MITCHELL